2C:1-1 et al

## LEGISLATIVE HISTORY CHECKLIST

NJSA: 2C:1-1 et al                    ("Code of Criminal Justice")

LAWS OF: 1978–                         CHAPTER: 95

Bill No: S738

Sponsor(s): Greenberg

Date Introduced: January 26, 1978

Committee:        Assembly: Judiciary, Law, Public Safety and Defense

                  Senate:  Judiciary

Amended during passage:    Yes          Substituted for A229 (not attached)

Date of Passage:           Assembly:   June 22, 1978

                           Senate: June 1, 1978

Date of Approval:   August 10, 1978

Following statements are attached if available:

Sponsor statement:                      Yes

Committee statement:   ·  · Assembly  · ·· No ·  ··

                       Senate           Yes

Fiscal Note:                            ~~Yes~~ n o

Veto Message:                           No

Message on Signing:                     ~~No~~ Yes

Following were printed:

Reports:                                Yes

Hearings:                               No

NJ          New Jersey. Criminal Law Revision Commission.
KA6.2            N.J. penal code; final report. Newark, NJ, October 1971.
1971a

and
974.90
C929
1971

(over)

EXHIBIT
C

DEPOSITORY COPY Do Not Remove From Library

Hearings and reports on earlier proposals:

| | |
|---|---|
| 974.90<br>C929<br>1972 | New Jersey. Legislature. Assembly. Judiciary Committees.<br>     Public hearings on proposed penal code (AR No.13), held 6-20<br>and 6-27-72. Trenton, 1972. |
| NJ<br>KA6.2<br>2B<br>1969 | New Jersey. Criminal Law Revision Commission.<br>     Study draft of a new penal code for New Jersey.<br>Newark, 1969-1970. |
| NJ<br>KA6.2<br>2B<br>1971 | New Jersey. Criminal Lqaw Revision Commission.<br>     Tentative draft of a new penal code for New Jersey.  Newark, 1971. |
| 974.90<br>C929<br>1970b | New Jersey. Criminal Law Revision Commission.<br>     Toward a new penal code for New Jersey; an interim report,<br>Newark, 1970. |
| 974.90<br>C929<br>1972d | Baime, David S.<br>     Report on the proposed N.J. penal code.  Trenton, 1972. |
| 974.90<br>C929<br>1972c | New Jersey. Division of Criminal Justice.<br>     Report on the proposed N.J. penal code.  Trenton, 1972. |
| 974.90<br>C929<br>1972a | New Jersey. Legislature. Assembly. Judiciary Committee.<br>     Report, pursuant to Assembly Resolution 13 of 1972, directing the<br>Committee to review the proposed Penal Code prepared by the Criminal Law<br>Revision Commission. |
| 974.90<br>C929<br>1975 | New Jersey. Legislature. Assembly. Judiciary, Law Public Safety and<br>Defense Committee.<br>     Public hearing on sentencing provisions of proposed criminal code.<br>3-10-75. |

See also:
     -"Criminal Justice Quarterly", vol. 7, no. 2 -- entire issue devoted to criminal
     code.

Case 2:21-cv-03400-JMV-JBC   Document 2-5   Filed 03/09/21   Page 3 of 197 PageID: 111

Amend page 190, section 2C:98–3, line 1, omit "The", insert "Pending enactment of acts to revise, repeal or to compile the same in Title 2C of the New Jersey Statutes, the".

Amend page 190, section 2C:98–3, line 3, omit "hereafter be reallocated", insert "remain in full force and effect for use, administration and enforcement or heretofore".

Amend page 191, section 2C:98–3, line 4, omit "Revised", insert "New Jersey".

Amend page 191, 2C:98–3, line 25, omit in its entirety.

Amend page 192, section 2C:98–3, line 61, omit "C. 2A:158–23 to C. 2A:158–25", insert "C. 2A:158A–23 to C. 2A:158A–25".

Amend page 192, section 2C:98–3, line 66, omit "C. 2A:168–1", insert "C. 2A:168A–1".

[ASSEMBLY REPRINT]

# SENATE, No. 738

[OFFICIAL COPY REPRINT]

with Assembly committee amendments adopted June 19, 1978

---

# STATE OF NEW JERSEY

---

### INTRODUCED JANUARY 26, 1978

### By Senator GREENBERG

### Referred to Committee on Judiciary

AN ACT to adopt a New Jersey Code of Criminal Justice to be known as Title 2C of the New Jersey Statutes, to revise and to repeal portions of the statutory law as amended and supplemented, and to provide for the effect and operation of said Title 2C.

1  BE IT ENACTED *by the Senate and General Assembly of the State*
2  *of New Jersey:*

TITLE 2C

THE NEW JERSEY CODE OF CRIMINAL JUSTICE

TABLE OF CONTENTS

SUBTITLE 1.  GENERAL PROVISIONS

CHAPTER 1.  PRELIMINARY

1  2C:1–1.  Short Title; Rules of Construction.
2  2C:1–2.  Purposes; Principles of Construction.
3  2C:1–3.  Territorial Applicability.
4  2C:1–4.  Classes of Offenses.
5  2C:1–5.  Abolition of Common Law Crimes; All Offenses De-
6           fined by Statute; Application of General Provisions
7           of the Code; Limitation of Local Government Laws.

EXPLANATION—Matter enclosed in bold-faced brackets [thus] in the above bill is not enacted and is intended to be omitted in the law.

8   2C:1–6.    Time Limitations.
9   2C:1–7.    *[Limitation on Dismissals]* *Blank*.
10  2C:1–8.    Method of Prosecution When Conduct Constitutes
11             More Than One Offense.
12  2C:1–9.    When Prosecution Barred by Former Prosecution for
13             the Same Offense.
14  2C:1–10.   When Prosecution Barred by Former Prosecution for
15             Different Offense.
16  2C:1–11.   Former Prosecution in Another Jurisdiction: When
17             a Bar.
18  2C:1–12.   Former Prosecution Before Court Lacking Jurisdiction
19             or When Fraudulently Procured by the Defendant.
20  2C:1–13.   Proof Beyond a Reasonable Doubt; Affirmative De-
21             fenses; Burden of Proving Fact When Not an Ele-
22             ment of an Offense.
23  2C:1–14.   General Definitions.

CHAPTER 2.  GENERAL PRINCIPLES OF LIABILITY

1   2C:2–1.    Requirement of Voluntary Act; Omission as Basis of
2              Liability; Possession as an Act.
3   2C:2–2.    General Requirements of Culpability.
4   2C:2–3.    Causal Relationship Between Conduct and Result; Di-
5              vergence Between Result Designed, Contemplated
6              or Risked and Actual Result.
7   2C:2–4.    Ignorance or Mistake.
8   2C:2–5.    Defenses Generally.
9   2C:2–6.    Liability for Conduct of Another; Complicity.
10  2C:2–7.    Liability of Corporations and Persons Acting, or Under
11             a Duty to Act, in Their Behalf.
12  2C:2–8.    Intoxication.
13  2C:2–9.    Duress.
14  2C:2–10.   Consent.
15  2C:2–11.   De Minimis Infractions.
16  2C:2–12.   Entrapment.

CHAPTER 3.  GENERAL PRINCIPLES OF JUSTIFICATION

1   2C:3–1.    Justification an Affirmative Defense; Civil Remedies
2              Unaffected.
3   2C:3–2.    Necessity and Other Justifications in General.
4   2C:3–3.    Execution of Public Duty.
5   2C:3–4.    Use of Force in Self-Protection.

6   2C:3–5.    Use of Force for the Protection of Other Persons.
7   2C:3–6.    Use of Force in Defense of Premises or Personal Prop-
8              erty.
9   2C:3–7.    Use of Force in Law Enforcement.
10  2C:3–8.    Use of Force by Persons With Special Responsibility
11             for Care, Discipline or Safety of Others.
12  2C:3–9.    Mistake of Law as to Unlawfulness of Force or Le-
13             gality of Arrest; Reckless or Negligent Use of Ex-
14             cessive But Otherwise Justifiable Force; Reckless or
15             Negligent Injury or Risk of Injury to Innocent
16             Persons.
17  2C:3–10.   Justification in Property Crimes.
18  2C:3–11.   Definitions.

CHAPTER 4.  RESPONSIBILITY

1   2C:4–1.    Insanity Defense *[Abolished]*.
2   2C:4–2.    Evidence of Mental Disease or Defect Admissible When
3              Relevant to Element of the Offense.
4   2C:4–3.    Requirement of Notice.
5   2C:4–4.    Mental Disease or Defect Excluding Fitness to Proceed.
6   2C:4–5.    Psychiatric Examination of Defendant With Respect
7              to Fitness to Proceed.
8   2C:4–6.    Determination of Fitness to Proceed; Effect of Finding
9              of Unfitness; Proceedings if Fitness is Regained;
10             Post-Commitment Hearing.
11  2C:4–7.    *[Testimony by Psychiatrists or Other Experts.]*
11A            *Disposition.*
12  2C:4–8.    Commitment of a Person by Reason of Mental Disease
13             or Defect.
14  2C:4–9.    Release of Persons Committed by Reason of Mental
15             Disease or Defect.
16  2C:4–10.   Statements for Purposes of Examination or Treatment
17             Inadmissible Except on Issue of Mental Condition.
18  2C:4–11.   Immaturity Excluding Criminal Conviction; Transfer
19             of Proceedings to Juvenile Court.

CHAPTER 5.  INCHOATE CRIMES

1   2C:5–1.    Criminal Attempt.
2   2C:5–2.    Conspiracy.
3   2C:5–3.    Incapacity, Irresponsibility or Immunity of Party to
4              Conspiracy.
5   2C:5–4.    Grading of Criminal Attempt and Conspiracy; Mitiga-
6              tion in Cases of Lesser Danger; Multiple Convictions
7              Barred.

8   2C:5–5.   Burglar's Tools.
9   2C:5–6.   Motor Vehicle Master Keys.

CHAPTER 6.   [RESERVED]

CHAPTER 7.   [RESERVED]

CHAPTER 8.   [RESERVED]

CHAPTER 9.   [RESERVED]

CHAPTER 10.   [RESERVED]

SUBTITLE 2.   DEFINITION OF SPECIFIC OFFENSES

PART 1.   OFFENSES INVOLVING DANGER TO THE PERSON

CHAPTER 11.   CRIMINAL HOMICIDE
1   2C:11–1.   Definitions.
2   2C:11–2.   Criminal Homicide.
3   2C:11–3.   Murder.
4   2C:11–4.   Manslaughter.
5   2C:11–5.   *[Negligent Homicide.]* *Death by Auto.*
6   2C:11–6.   Aiding Suicide.

CHAPTER 12.   ASSAULT; RECKLESS ENDANGERING; THREATS
1   2C:12–1.   Assault.
2   2C:12–2.   Recklessly Endangering Another Person.
3   2C:12–3.   Terroristic Threats.

CHAPTER 13.   KIDNAPPING AND RELATED OFFENSES: COERCION
1   2C:13–1.   Kidnapping.
2   2C:13–2.   Criminal Restraint.
3   2C:13–3.   False Imprisonment.
4   2C:13–4.   Interference with Custody.
5   2C:13–5.   Criminal Coercion.

CHAPTER 14.   SEXUAL OFFENSES
1   *[2C:14–1.   Rape.
2   2C:14–2.   Sodomy and Related Offenses.
3   2C:14–3.   Corruption of Minors and Seduction.
4   2C:14–4.   Sexual Assault.
5   2C:14–5.   Provisions Generally Applicable to Chapter 14.]*
6   *2C:14–1.   Definitions.
7   2C:14–2.   Sexual Assault.
8   2C:14–3.   Criminal Sexual Contact.

9   2C:14–4.   **[Criminal Exposure.]** **Lewdness.**
10   2C:14–5.   Provisions Generally Applicable to Chapter 14.
11   2C:14–6.   Sentencing.
12   2C:14–7.   Admissibility of Evidence.*

CHAPTER 15.   [RESERVED]

CHAPTER 16.   [RESERVED]

PART 2.   OFFENSES AGAINST PROPERTY

CHAPTER 17.   ARSON, CRIMINAL MISCHIEF, AND OTHER PROPERTY DESTRUCTION
1   2C:17–1.   Arson and Related Offenses.
2   2C:17–2.   Causing or Risking Widespread Injury or Damage.
3   2C:17–3.   Criminal Mischief.
4   2C:17–4.   Endangering Pipes Transmitting Certain Gases.
5   2C:17–5.   Damage to Pipes During Excavation or Discharge.

CHAPTER 18.   BURGLARY AND OTHER CRIMINAL INTRUSION
1   2C:18–1.   Definition.
2   2C:18–2.   Burglary.
3   2C:18–3.   Criminal Trespass.

CHAPTER 19.   ROBBERY
1   2C:19–1.   Robbery.

CHAPTER 20.   THEFT AND RELATED OFFENSES
1   2C:20–1.   Definitions.
2   2C:20–2.   Consolidation of Theft Offenses; Grading; Provisions
3            Applicable to Theft Generally.
4   2C:20–3.   Theft by Unlawful Taking or Disposition.
5   2C:20–4.   Theft by Deception.
6   2C:20–5.   Theft by Extortion.
7   2C:20–6.   Theft of Property Lost, Mislaid, or Delivered by Mis-
8            take.
9   2C:20–7.   Receiving Stolen Property.
10   2C:20–8.   Theft of Services.
11   2C:20–9.   Theft by Failure to Make Required Disposition of
12            Property Received.
13   2C:20–10.   Unlawful Taking of Means of Conveyance.
14   **2C:20–11.   Shoplifting.**

CHAPTER 21.   FORGERY AND FRAUDULENT PRACTICES
1   2C:21–1.   Forgery and Related Offenses.
2   2C:21–2.   Criminal Simulation.

3  2C:21–3.   Frauds Relating to Public Records and Recordable
4              Instruments.
5  2C:21–4.   Falsifying or Tampering With Records.
6  2C:21–5.   Bad Checks.
7  2C:21–6.   Credit Cards.
8  2C:21–7.   Deceptive Business Practices.
9  2C:21–8.   Misrepresentation of Mileage of Motor Vehicle.
10 2C:21–9.   Misconduct by Corporate Official.
11 2C:21–10.  Commercial Bribery and Breach of Duty to Act Dis-
12              interestedly.
13 2C:21–11.  Rigging Publicly Exhibited Contest.
14 2C:21–12.  Defrauding Secured Creditors.
15 2C:21–13.  Fraud in Insolvency.
16 2C:21–14.  Receiving Deposits in a Failing Financial Institution
17 2C:21–15.  Misapplication of Entrusted Property and Property
18              of Government or Financial Institution.
19 2C:21–16.  Securing Execution of Documents by Deception.
20 2C:21–17.  Wrongful Impersonating.
21 2C:21–18.  Slugs.
22 2C:21–19.  Wrongful Credit Practices and Related Offenses.

CHAPTER 22.   [RESERVED]

CHAPTER 23.   [RESERVED]

PART 3.   OFFENSES AGAINST OTHERS

CHAPTER 24.   OFFENSES AGAINST THE FAMILY, CHILDREN
AND INCOMPETENTS

1  2C:24–1.   Bigamy.
2  2C:24–2.   Blank.
3  2C:24–3.   Blank.
4  2C:24–4.   Endangering Welfare of Children.
5  2C:24–5.   Willful Nonsupport.
6  2C:24–6.   Unlawful Adoptions.
7  2C:24–7.   Endangering the Welfare of an Incompetent Person.

CHAPTER 25.   [RESERVED]

CHAPTER 26.   [RESERVED]

PART 4.   OFFENSES AGAINST PUBLIC ADMINISTRATION

CHAPTER 27.   BRIBERY AND CORRUPT INFLUENCE

1  2C:27–1.   Definitions.
2  2C:27–2.   Bribery in Official and Political Matters.

3  2C:27–3.   Threats and Other Improper Influence in Official and
4              Political Matters.
5  2C:27–4.   Compensation for Past Official Behavior.
6  2C:27–5.   Retaliation for Past Official Action.
7  2C:27–6.   Gifts to Public Servants by Persons Subject to Their
8              Jurisdiction.
9  2C:27–7.   Compensating Public Servant for Assisting Private
10             Interests in Relation to Matters Before Him.
11 2C:27–8.   Selling Political Endorsement; Special Influence.

CHAPTER 28.   PERJURY AND OTHER FALSIFICATION IN OFFICIAL
MATTERS

1  2C:28–1.   Perjury.
2  2C:28–2.   False Swearing.
3  2C:28–3.   Unsworn Falsification to Authorities.
4  2C:28–4.   False Reports to Law Enforcement Authorities.
5  2C:28–5.   Tampering With Witnesses and Informants; Retalia-
6              tion Against Them.
7  2C:28–6.   Tampering With or Fabricating Physical Evidence.
8  2C:28–7.   Tampering With Public Records or Information.
9  2C:28–8.   Impersonating a Public Servant.

CHAPTER 29.   OBSTRUCTING GOVERNMENTAL OPERATIONS: ESCAPES

1  2C:29–1.   Obstructing Administration of Law or Other Govern-
2              mental Function.
3  2C:29–2.   Resisting Arrest.
4  2C:29–3.   Hindering Apprehension or Prosecution.
5  2C:29–4.   Compounding.
6  2C:29–5.   Escape.
7  2C:29–6.   Implements for Escape; Other Contraband.
8  2C:29–7.   Bail Jumping; Default in Required Appearance.
9  2C:29–8.   Blank.

CHAPTER 30.   MISCONDUCT IN OFFICE: ABUSE OF OFFICE

1  2C:30–1.   Official Oppression.
2  2C:30–2.   Official Misconduct.
3  2C:30–3.   Speculating or Wagering on Official Action or Infor-
4              mation.

CHAPTER 31.   [RESERVED]

CHAPTER 32.   [RESERVED]

PART 5.   OFFENSES AGAINST PUBLIC ORDER, HEALTH AND DECENCY

CHAPTER 33.   RIOT, DISORDERLY CONDUCT, AND RELATED OFFENSES

1   2C:33–1.   Riot; Failure to Disperse.
2   2C:33–2.   Disorderly Conduct.
3   2C:33–3.   False Public Alarms.
4   2C:33–4.   Harassment.
5   2C:33–5.   Blank.
6   2C:33–6.   Blank.
7   2C:33–7.   Obstructing Highways and Other Public Passages.
8   2C:33–8.   Disrupting Meetings and Processions.
9   2C:33–9.   Desecration of Venerated Objects.
10  2C:33–10.  Blank.
11  2C:33–11.  Blank.
12  2C:33–12.  Maintaining a Nuisance.
13  2C:33–13.  Smoking in Public Conveyances.
14  2C:33–14.  Interference with Transportation.
15  **[2C:33–15.   Cutting in Line.]**

CHAPTER 34.   PUBLIC INDECENCY

1   **[2C:34–1.   Open Lewdness.]**
2   **[2C:34–2.]** **2C:34–1.** Prostitution and Related Offenses.
3   **[2C:34–3.]** **2C:34–2.** *[Blank.]* *Obscenity for Persons
3A              16 Years of Age or Older.*
4   **[2C:34–4.]** **2C:34–3.** Obscenity for Persons Under 16.
5   **[2C:34–5.]** **2C:34–4.** Public Communication of Obscenity.
6   **[2C:34–6.]** **2C:34–5.** Diseased Persons Having Sexual
7              Intercourse.

CHAPTER 35.   [RESERVED]

CHAPTER 36.   [RESERVED]

CHAPTER 37.   GAMBLING OFFENSES

1   2C:37–1.   Definitions.
2   2C:37–2.   Promoting Gambling.
3   2C:37–3.   Possession of Gambling Records.
4   2C:37–4.   Maintenance of a Gambling Resort.
5   2C:37–5.   Gambling Offenses; Presumption.
6   2C:37–6.   Lottery Offenses; No Defense.
7   2C:37–7.   Possession of a Gambling Device.
8   2C:37–8.   Gambling Offenses; Jurisdiction.

CHAPTER 38.   [RESERVED]

CHAPTER 39.   FIREARMS, OTHER DANGEROUS WEAPONS, AND
INSTRUMENTS OF CRIME

1   2C:39–1.   Definitions.
2   2C:39–2.   Presumptions.
3   2C:39–3.   Prohibited Weapons and Devices.
4   2C:39–4.   Possession of Weapons for Unlawful Purposes.
5   2C:39–5.   Unlawful Possession of Weapons.
6   2C:39–6.   Exemptions.
7   2C:39–7.   Blank.
8   2C:39–8.   Blank.
9   2C:39–9.   Manufacture, Transport, Disposition and Defacement
10             of Weapons and Dangerous Instruments and Appli-
11             ances.
12  2C:39–10.  Violation of the Regulatory Provisions Relating to
13             Firearms; False Representation in Applications.
14  2C:39–11.  Pawnbrokers; Loaning on Firearms.
15  2C:39–12.  Voluntary Surrender.

CHAPTER 40.   OTHER OFFENSES RELATING TO PUBLIC SAFETY

1   2C:40–1.   Creating a Hazard.
2   2C:40–2.   Refusing to Yield a Party Line.

CHAPTER 41.   [RESERVED]

CHAPTER 42.   [RESERVED]

SUBTITLE 3.   SENTENCING

CHAPTER 43.   AUTHORIZED DISPOSITION OF OFFENDERS

1   2C:43–1.   Degrees of Crimes.
2   2C:43–2.   Sentence in Accordance with Code; Authorized Dispo-
3              sitions.
4   2C:43–3.   Fines and Restitutions.
5   2C:43–4.   Penalties Against Corporations; Forfeiture of Corpo-
6              rate Charter or Revocation of Certificate Authorizing
7              Foreign Corporation to Do Business in the State.
8   2C:43–5.   Young Adult Offenders.
9   2C:43–6.   Sentence of Imprisonment for Crime; Ordinary Terms.
10  2C:43–7.   Sentence of Imprisonment for Crime; Extended Terms.
11  2C:43–8.   Sentence of Imprisonment for Disorderly Persons Of-
12             fenses and Petty Disorderly Persons Offenses.

| 13 | 2C:43–9. | First Release of All Offenders on Parole; Sentence of Imprisonment Includes Separate Parole Term; Length of Recommitment and Reparole After Revocation of Parole; Final Unconditional Release. |
| 17 | 2C:43–10. | Place of Imprisonment; Beginning Sentences; Transfers. |
| 19 | 2C:43–11. | Blank. |
| 20 | 2C:43–12. | Supervisory Treatment. |
| 21 | 2C:43–13. | Supervisory Treatment Procedure. |
| 22 | *2C:43–14. | Index and Reports. |
| 23 | 2C:43–15. | Disclaimer.* |

CHAPTER 44. AUTHORITY OF COURT IN SENTENCING

| 1 | 2C:44–1. | Criteria for Withholding or Imposing Sentence of Imprisonment. |
| 3 | 2C:44–2. | Criteria for Imposing Fines and Restitutions. |
| 4 | 2C:44–3. | Criteria for Sentence of Extended Term of Imprisonment. |
| 6 | 2C:44–4. | Former Conviction in Another Jurisdiction; Definition and Proof of Conviction. |
| 8 | 2C:44–5. | Multiple Sentences; Concurrent and Consecutive Terms. |
| 10 | 2C:44–6. | Procedure on Sentence; Presentence Investigation and Report. |
| 12 | 2C:44–7. | Appellate Review of Actions of Sentencing Court. |
| 13 | 2C:44–8. | Blank. |

CHAPTER 45. SUSPENSION OF SENTENCE; PROBATION

| 1 | 2C:45–1. | Conditions of Suspension or Probation. |
| 2 | 2C:45–2. | Period of Suspension or Probation; Modification of Conditions; Discharge of Defendant. |
| 4 | 2C:45–3. | Summons or Arrest of Defendant Under Suspended Sentence or on Probation; Commitment Without Bail; Revocation and Resentence. |
| 7 | 2C:45–4. | Notice and Hearing on Revocation or Modification of Conditions of Suspension or Probation. |

CHAPTER 46. FINES AND RESTITUTIONS

| 1 | 2C:46–1. | Time and Method of Payment; Disposition of Funds. |
| 2 | 2C:46–2. | Consequences of Nonpayment; Summary Collection. |
| 3 | 2C:46–3. | Revocation of Fine. |

CHAPTER 47. **[[RESERVED]]** **Adult Diagnostic and Treatment Center

| 1 | 2C:47–1. | Adult Diagnostic and Treatment Center. |
| 2 | 2C:47–2. | Referral. |
| 3 | 2C:47–3. | Examination. |
| 4 | 2C:47–4. | Treatment Arrangements. |
| 5 | 2C:47–5. | Parole. |
| 6 | 2C:47–6. | Compensation. |
| 7 | 2C:47–7. | Cost of Maintenance.** |

CHAPTER 48. **[[RESERVED]]** **Criminal Disposition Commission

| 1 | 2C:48–1. | Composition. |
| 2 | 2C:48–2. | Duties. |
| 3 | 2C:48–3. | Powers. |
| 4 | 2C:48–4. | Reports.** |

CHAPTER 49. [RESERVED]

CHAPTER 50. [RESERVED]

CHAPTER 51. LOSS AND RESTORATION OF RIGHTS INCIDENT TO CONVICTION OF AN OFFENSE

| 1 | 2C:51–1. | Basis of Disqualification or Disability. |
| 2 | 2C:51–2. | Forfeiture of Public Office. |
| 3 | 2C:51–3. | Voting and Jury Service. |
| 4 | 2C:51–4. | Order Sealing Records of Arrest or Conviction; Effect of Order of Sealing. |

CHAPTER 52. [RESERVED]

CHAPTER 53. [RESERVED]

CHAPTER 54. [RESERVED]

CHAPTER 55. [RESERVED]

CHAPTER 56. [RESERVED]

CHAPTER 57. [RESERVED]

CHAPTER 58. LICENSING AND OTHER PROVISIONS RELATING TO FIREARMS

| 1 | 2C:58–1. | Registration of Manufacturers and Wholesale Dealers of Firearms. |
| 3 | 2C:58–2. | Retailing of Firearms. |
| 4 | 2C:58–3. | Purchase of Firearms. |
| 5 | 2C:58–4. | Permits to Carry Handguns. |
| 6 | 2C:58–5. | Licenses to Possess and Carry Machine Guns. |
| 7 | 2C:58–6. | Limited Licenses to Carry Firearms by Minors. |

| 8 | 2C:58–7. | Persons Possessing Explosives or Destructive Devices |
| 9 | | to Notify Police. |
| 10 | 2C:58–8. | Certain Wounds to Be Reported. |
| 11 | 2C:58–9. | Certain Convictions to Be Reported. |
| 12 | 2C:58–10. | Incendiary or Tracer Ammunition. |
| 13 | 2C:58–11. | Property Rights in Weapons; Forfeiture. |

CHAPTER 59.   [RESERVED]

CHAPTER 60.   [RESERVED]

CHAPTER 61.   [RESERVED]

CHAPTER 62.   WILLFUL NONSUPPORT

| 1 | 2C:62–1. | Support Orders for Willful Nonsupport. |

CHAPTER 63.   [RESERVED]

CHAPTER 64.   FORFEITURE

| 1 | 2C:64–1. | Property Subject to Forfeiture. |
| 2 | 2C:64–2. | Forfeiture Procedures; Prima Facie Contraband. |
| 3 | 2C:64–3. | Forfeiture Procedures; Other Property. |
| 4 | 2C:64–4. | Seized Property; Evidentiary Use. |
| 5 | 2C:64–5. | Seized Property; Rights of Owners and Others Holding |
| 6 | | Interests. |
| 7 | 2C:64–6. | Disposal of Forfeited Property. |
| 8 | 2C:64–7. | Vesting of Title in Forfeited Property. |
| 9 | 2C:64–8. | Seized Property; Statute of Limitations on Claims. |

CHAPTER 65.   [RESERVED]

CHAPTER 66.   [RESERVED]

CHAPTER 67.   [RESERVED]

CHAPTER 68.   [RESERVED]

CHAPTER 69.   [RESERVED]

CHAPTER 70.   [RESERVED]

CHAPTER 71.   [RESERVED]

CHAPTER 72.   [RESERVED]

CHAPTER 73.   [RESERVED]

CHAPTER 74.   [RESERVED]

CHAPTER 75.   [RESERVED]

CHAPTER 76.   [RESERVED]

CHAPTER 77.   [RESERVED]

CHAPTER 78.   [RESERVED]

12

CHAPTER 79.   [RESERVED]

CHAPTER 80.   [RESERVED]

CHAPTER 81.   [RESERVED]

CHAPTER 82.   [RESERVED]

CHAPTER 83.   [RESERVED]

CHAPTER 84.   [RESERVED]

CHAPTER 85.   [RESERVED]

CHAPTER 86.   [RESERVED]

CHAPTER 87.   [RESERVED]

CHAPTER 88.   [RESERVED]

CHAPTER 89.   [RESERVED]

CHAPTER 90.   [RESERVED]

CHAPTER 91.   [RESERVED]

CHAPTER 92.   [RESERVED]

CHAPTER 93.   [RESERVED]

CHAPTER 94.   [RESERVED]

CHAPTER 95.   [RESERVED]

CHAPTER 96.   [RESERVED]

CHAPTER 97.   [RESERVED]

CHAPTER 98.   REPEALERS, ALLOCATIONS AND EFFECTIVE DATE

| 1 | 2C:98–1. | Construction. |
| 2 | 2C:98–2. | Repealers. |
| 3 | 2C:98–3. | Allocations. |
| 4 | 2C:98–4. | Effective Date. |

SUBTITLE 1.   GENERAL PROVISIONS

CHAPTER 1.   PRELIMINARY

Section

| 1 | 2C:1–1. | Short Title; Rules of Construction. |
| 2 | 2C:1–2. | Purposes; Principles of Construction. |
| 3 | 2C:1–3. | Territorial Applicability. |
| 4 | 2C:1–4. | Classes of Offense. |
| 5 | 2C:1–5. | Abolition of Common Law Crimes; All Offenses De- |
| 6 | | fined by Statute; Application of General Provisions |
| 7 | | of the Code; Limitation of Local Government Laws. |

13

| 8 | 2C:1-6. | Time Limitations. |
| 9 | 2C:1-7. | *[Limitation on Dismissals.]* *Blank.* |
| 10 | 2C:1-8. | Method of Prosecution When Conduct Constitutes More |
| 11 | | Than One Offense. |
| 12 | 2C:1-9. | When Prosecution Barred by Former Prosecution for |
| 13 | | the Same Offense. |
| 14 | 2C:1-10. | When Prosecution Barred by Former Prosecution for |
| 15 | | Different Offense. |
| 16 | 2C:1-11. | Former Prosecution in Another Jurisdiction: When a |
| 17 | | Bar. |
| 18 | 2C:1-12. | Former Prosecution Before Court Lacking Jurisdiction or When Fraudulently Procured by the De- |
| 19 | | |
| 20 | | fendant. |
| 21 | 2C:1-13. | Proof Beyond a Reasonable Doubt; Affirmative De- |
| 22 | | fenses; Burden of Proving Fact When Not an Ele- |
| 23 | | ment of an Offense. |
| 24 | 2C:1-14. | General Definitions. |

1  2C:1-1.  Short Title; Rules of Construction. a. This Title shall
2  be known and may be cited as the "New Jersey Code of Criminal
3  Justice."

4  b. Except as provided in subsections c. and d. of this section,
5  the code does not apply to offenses committed prior to its effective
6  date and prosecutions for such offenses shall be governed by the
7  prior law, which is continued in effect for that purpose, as if this
8  code were not in force. For the purposes of this section, an offense
9  was committed after the effective date of the code if any of the
10 elements of the offenses occurred subsequent thereto.

11 c. In any case pending on or initiated after the effective date
12 of the code involving an offense committed prior to such date:

13 (1) The procedural provisions of the code shall govern, insofar
14 as they are justly applicable and their application does not intro-
15 duce confusion or delay;

16 (2) The court, with the consent of the defendant, may impose
17 sentence under the provisions of the code applicable to the offense
18 and the offender.

19 (3) The court shall, if the offense committed is no longer an
20 offense under the provisions of the code, dismiss such prosecution.

21 d. (1) The provisions of the code governing the treatment and
22 the release or discharge of prisoners, probationers and parolees
23 shall apply to persons under sentence for offenses committed prior
24 to the effective date of the code, except that the minimum or maxi-
25 mum period of their detention or supervision shall in no case be
26 increased.

27 (2) Any person who is under sentence of imprisonment on the
28 effective date of the code for an offense committed prior to the
29 effective date of the code *which has been eliminated by the code or who has
30 been sentenced to a maximum term of imprisonment for an offense
31 committed prior to the effective date which exceeds the maximum
32 established by the code for such an offense* and who, on said
33 effective date, has not had his sentence suspended or been paroled
34 or discharged, may move to have his sentence reviewed by the
34A sentencing court and the court *[shall]* *may* impose a new
34B sentence**, for good cause shown** as though the person had been
34C convicted under the code, except that no period of detention or
34D supervision shall be increased as a result of such resentencing.

35 e. The provisions of the code not inconsistent with those of prior
36 laws shall be construed as a continuation of such laws.

37 f. The classification and arrangement of the several sections of
38 the code have been made for the purpose of convenience, reference
39 and orderly arrangement, and therefore no implication or pre-
40 sumption of a legislative construction is to be drawn therefrom.

41 g. In the construction of the code, or any part thereof, no outline
42 or analysis of the contents of said title or of any subtitle, chapter,
43 article or section, no cross-reference or cross-reference note and
44 no headnote or source note to any section shall be deemed to be a
45 part of the code.

46 h. If said title or any subtitle, chapter, article or section of the
47 code, or any provision thereof, shall be declared to be unconstitu-
48 tional, invalid or inoperative in whole or in part, by a court of
49 competent jurisdiction, such title, subtitle, chapter, article, section
50 or provision shall, to the extent that it is not unconstitutional,
51 invalid or inoperative, be enforced and effectuated, and no such
52 determination shall be deemed to invalidate or make ineffectual
53 the remaining provisions of the title, or of any subtitle, chapter,
54 article or section of the code.

55 Source: R. S. 1:1-15; Model Penal Code: 1.01.

1  2C:1-2.  Purposes; Principles of Construction. a. The general
2  purposes of the provisions governing the definition of offenses are:

3  (1) To forbid, prevent, and condemn conduct that unjustifiably
4  and inexcusably inflicts or threatens substantial harm to individual
5  or public interests;

6  (2) To insure the public safety by preventing the commission of
7  offenses through the deterrent influence of the sentences autho-
8  rized, the rehabilitation of those convicted, and their confinement
9  when required in the interests of public protection;

14

15

(3) To subject to public control persons whose conduct indicates that they are disposed to commit offenses;

(4) To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction;

(5) To differentiate on reasonable grounds between serious and minor offenses; and

(6) To define adequately the act and mental state which constitute each offense, and limit the condemnation of conduct as criminal when it is without fault.

b. The general purposes of the provisions governing the sentencing of offenders are:

(1) To prevent and condemn the commission of offenses;

(2) To promote the correction and rehabilitation of offenders;

(3) To insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection;

(4) To safeguard offenders against excessive, disproportionate or arbitrary punishment;

(5) To give fair warning of the nature of the sentences that may be imposed on conviction of an offense;

(6) To differentiate among offenders with a view to a just individualization in their treatment; and

(7) To advance the use of generally accepted scientific methods and knowledge in sentencing offenders.

c. The provisions of the code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved. The discretionary powers conferred by the code shall be exercised in accordance with the criteria stated in the code and, insofar as such criteria are not decisive, to further the general purposes stated in this section.

Source: Model Penal Code: 1.02.

2C:1–3. Territorial Applicability. a. Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:

(1) Either the conduct which is an element of the offense or the result which is such an element occurs within this State;

(2) Conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit a crime within the State;

16

(3) Conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of such conspiracy occurs within the State;

(4) Conduct occurring within the State establishes complicity in the commission of, or an attempt, or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this State;

(5) The offense consists of the omission to perform a legal duty imposed by the law of this State with respect to domicile, residence or a relationship to a person, thing or transaction in the State; or

(6) The offense is based on a statute of this State which expressly prohibits conduct outside the State, when the conduct bears a reasonable relation to a legitimate interest of this State and the actor knows or should know that his conduct is likely to affect that interest.

b. Subsection a. (1) does not apply when either causing a specified result or a purpose to cause or danger of causing such a result is an element of an offense and the result occurs or is designed or likely to occur only in another jurisdiction where the conduct charged would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result.

c. Subsection a. (1) does not apply when causing a particular result is an element of an offense and the result is caused by conduct occurring outside the State which would not constitute an offense if the result had occurred there, unless the actor purposely or knowingly caused the result within the State.

d. When the offense is homicide, either the death of the victim or the bodily impact causing death constitutes a "result," within the meaning of subsection a. (1) and if the body of a homicide victim is found within the State, it may be inferred that such result occurred within the State.

e. This State includes the land and water, including the waters set forth in R. S. 40:18–5 and the air space above such land and water with respect to which the State has legislative jurisdiction. It also includes any territory made subject to the criminal jurisdiction of this State by compacts between it and another state or between it and the Federal Government.

f. Notwithstanding that territorial jurisdiction may be found under this section, the court may dismiss, hold in abeyance for up to 6 months, or, with the permission of the defendant, place on

17

52 the inactive list a criminal prosecution under the law of this State
53 where it appears that such action is in the interests of justice
54 because the defendant is being prosecuted for an offense based on
55 the same conduct in another jurisdiction and this State's interest
56 will be adequately served by a prosecution in the other jurisdiction.
57 Source: Model Penal Code: 1.03.

1 2C:1-14. Classes of Offenses. a. An offense defined by this code or
2 by any other statute of this State, for which a sentence of imprison-
3 ment in excess of 6 months is authorized, constitutes a crime within
4 the meaning of the Constitution of this State. Crimes are desig-
5 nated in this code as being of the first, second, third or fourth
6 degree.
7 b. An offense is a disorderly persons offense if it is so desig-
8 nated in this code or in a statute other than this code or if it is
9 defined by a statute other than this code which now provides that
10 persons convicted thereof may not be sentenced to imprisonment
11 for a term of more than 6 months. An offense is a petty disorderly
12 persons offense if it is so designated in this code or in a statute
13 other than this code. Disorderly persons offenses and petty
14 disorderly persons offenses are petty offenses and are not crimes
15 within the meaning of the Constitution of this State. There shall
16 be no right to indictment by a grand jury nor any right to trial
17 by jury on such offenses. Conviction of such offenses shall not
18 give rise to any disability or legal disadvantage based on con-
19 viction of a crime.
20 c. An offense defined by any statute of this State other than
21 this code shall be classified as provided in this section or in sec-
22 tion 2C:43-1 and the sentence that may be imposed upon conviction
23 thereof shall hereafter be governed by this code. The provisions
24 of this subsection shall not, however, apply to the offenses defined
25 by the "New Jersey Controlled Dangerous Substances Act,"
26 (P. L. 1970, c. 226, C. 24:21-1 through 45), which shall be continued
27 in effect.
28 Source: N. J. S. 2A:169-4 amended 1968, c. 113; Model Penal
29 Code: 1.04.

1 2C:1-5. Abolition of Common Law Crimes; All Offenses Defined
2 by Statute; Application of General Provisions of the Code;
3 Limitation of Local Government Laws. a. Common law crimes are
4 abolished and no conduct constitutes an offense unless the offense
5 is defined by this code or another statute of this State.
6 b. The provisions of subtitles 1 and 3 of the code are applicable
7 to offenses defined by other statutes, unless the code otherwise
8 provides.

9 c. This section does not affect the power to punish for contempt,
10 either summarily or after indictment, or to employ any sanction
11 authorized by law for the enforcement of an order or a civil
12 judgment or decree.
13 d. Notwithstanding any other provision of law, the local govern-
14 mental units of this State may neither enact nor enforce any
15 ordinance or other local law or regulation conflicting with, or
16 preempted by, any provision of this code or with any policy of
17 this State expressed by this code, whether that policy be expressed
18 by inclusion of a provision in the code or by exclusion of that
19 subject from the code.
20 Source: N. J. S. 2A:85-1; Model Penal Code: 1.05.

1 2C:1-6. Time Limitations. a. A prosecution for murder may be
2 commenced at any time.
3 b. Except as otherwise provided in this section, prosecutions for
4 other offenses are subject to the following periods of limitations:
5 (1) A prosecution for a crime must be commenced within 5
6 years after it is committed;
7 (2) A prosecution for a disorderly persons offense or petty
8 disorderly persons offense must be commenced within 1 year after
9 it is committed.
9A **(3) A prosecution for any offense set forth in 2C:27-2, 2C:27-4,
9B 2C:27-6, 2C:27-7, 2C:27-8, 2C:29-4, 2C:30-1, 2C:30-2, 2C:30-3, or
9C any attempt or conspiracy to commit such an offense, must be
9D commenced within 7 years after the commission of the offense.**
10 c. An offense is committed either when every element occurs,
11 or, if a legislative purpose to prohibit a continuing course of con-
12 duct plainly appears, at the time when the course of conduct or
13 the defendant's complicity therein is terminated. Time starts to
14 run on the day after the offense is committed. **This subsection
14A shall not apply to any person accused of a violation of 2C:27-2.
14B 2C:27-4. 2C:27-6, 2C:27-7, 2C:27-8, 2C:29-4, 2C:30-1, 2C:30-2.
14C 2C:30-3, or any attempt or conspiracy to commit such offense.**
15 d. A prosecution is commenced for a crime when an indictment
16 is found and for a nonindictable offense, as defined in section
17 2C:1-4 b., when a warrant or other process is issued, provided that
18 such warrant or process is executed without unreasonable delay.
19 e. The period of limitation does not run during any time when a
20 prosecution against the accused for the same conduct is pending
21 in this State.
22 Source: N. J. S. 2A:159-1; 2A:159-2 amended 1953, c. 204;

23  2A:159–3; C. 2A:159–4 (1952, c. 74, s. 1 amended 1953, c. 243,
24  s. 1); N. J. S. 2A:169–10; Model Penal Code: 1.06.

1  2C:1–7.  [Limitation on Dismissals.  The court shall not dismiss
2  a prosecution for a first or second degree offense which involves
3  the use of a firearm as defined in 2C:39–1 (f) on a motion by the
4  prosecutor which is made pursuant to an agreement between the
5  prosecutor and the defendant.
6  Source: New.]* *Blank.*

1  2C:1–8.  Method of Prosecution When Conduct Constitutes More
2  Than One Offense.  a. Prosecution for multiple offenses; limitation
3  on convictions.  When the same conduct of a defendant may es-
4  tablish the commission of more than one offense, the defendant
5  may be prosecuted for each such offense.  He may not, however,
6  be convicted of more than one offense if:
7  (1) One offense is included in the other, as defined in subsec-
8  tion d. of this section;
9  (2) One offense consists only of a conspiracy or other form of
10  preparation to commit the other;
11  (3) Inconsistent findings of fact are required to establish the
12  commission of the offenses; or
13  (4) The offenses differ only in that one is defined to prohibit a
14  designated kind of conduct generally and the other to prohibit a
15  specific instance of such conduct.
16  b. Limitation on separate trials for multiple offenses.  Except
17  as provided in subsection c. of this section, a defendant shall not
18  be subject to separate trials for multiple offenses based on the same
19  conduct or arising from the same criminal episode, if such offenses
20  are known to the appropriate prosecuting officer at the time of the
21  commencement of the first trial and are within the jurisdiction and
22  venue of a single court.
23  c. Authority of court to order separate trials.  When a defendant
24  is charged with two or more offenses based on the same conduct
25  or arising from the same criminal episode, the court may order
26  any such charge to be tried separately in accordance with the
27  Rules of Court.
28  d. Conviction of included offense permitted.  A defendant may
29  be convicted of an offense included in an offense charged whether
30  or not the included offense is an indictable offense.  An offense is
31  so included when:
32  (1) It is established by proof of the same or less than all the facts
33  required to establish the commission of the offense charged; or

34  (2) It consists of an attempt or conspiracy to commit the offense
35  charged or to commit an offense otherwise included therein; or
36  (3) It differs from the offense charged only in the respect that a
37  less serious injury or risk of injury to the same person, property or
38  public interest or a lesser kind of culpability suffices to establish
39  its commission.
40  e. Submission of included offense to jury.  The court shall not
41  charge the jury with respect to an included offense unless there is
42  a rational basis for a verdict convicting the defendant of the
43  included offense.
44  Source:  Model Penal Code: 1.07.

1  2C:1–9.  When Prosecution Barred by Former Prosecution for
2  the Same Offense.  A prosecution of a defendant for a violation of
3  the same provision of the statutes based upon the same facts as a
4  former prosecution is barred by such former prosecution under
5  the following circumstances:
6  a. The former prosecution resulted in an acquittal by a finding
7  of not guilty by the trier of fact or in a determination that there
8  was insufficient evidence to warrant a conviction.  A finding of
9  guilty of a lesser included offense is an acquittal of the greater
10  inclusive offense, although the conviction is subsequently set aside.
11  b. The former prosecution was terminated, after the complaint
12  had been filed or the indictment found, by a final order or judg-
13  ment for the defendant, which has not been set aside, reversed, or
14  vacated and which necessarily required a determination incon-
15  sistent with a fact or a legal proposition that must be established
16  for conviction of the offense.  **This subsection shall not apply to
16a an order or judgment quashing an indictment prior to trial.**
17  c. The former prosecution resulted in a conviction.  There is a
18  conviction if the prosecution resulted in a judgment of conviction
19  which has not been reversed or vacated, a verdict of guilty which
20  has not been set aside and which is capable of supporting a judg-
21  ment, or a plea of guilty accepted by the court.  In the latter two
22  cases failure to enter judgment must be for a reason other than a
23  motion of the defendant.
24  d. The former prosecution was improperly terminated.  Except
25  as provided in this subsection, there is an improper termination
26  of a prosecution if the termination is for reasons not amounting
27  to an acquittal, and it takes place after the jury was impaneled and
28  sworn or, in a trial before a court without a jury, after the first
29  witness was sworn but before findings were rendered by the trier

30 of facts. Termination under any of the following circumstances is
31 not improper:

32   (1) The defendant consents to the termination or waives, by
33 motion to dismiss or otherwise, his right to object to the termi-
34 nation.

35   (2) The trial court finds that the termination is necessary be-
36 cause of the failure of the jury to agree upon a verdict after a
37 reasonable time for deliberation has been allowed.

38   (3) The trial court finds that the termination is required by a
39 sufficient legal reason and a manifest or absolute or overriding
40 necessity.

41 Source: Model Penal Code: 1.08.

1   2C:1-10. When Prosecution Barred by Former Prosecution for
2 Different Offense. A prosecution of a defendant for a violation of
3 a different provision of the statutes based on different facts than
4 a former prosecution is barred by such former prosecution under
5 the following circumstances:

6   a. The former prosecution resulted in an acquittal or in a con-
7 viction as defined in section 2C:1-9 and the subsequent prosecution
8 is for:

9   (1) Any offense of which the defendant could have been con-
10 victed on the first prosecution; or

11   (2) Any offense for which the defendant should have been tried
12 on the first prosecution under section 2C:1-8 unless the court
13 ordered a separate trial of the charge of such offense; or

14   (3) The same conduct, unless (a) the offense of which the de-
15 fendant was formerly convicted or acquitted and the offense for
16 which he is subsequently prosecuted each requires proof of a fact
17 not required by the other and the law defining each of such offenses
18 is intended to prevent a substantially different harm or evil, or (b)
19 the second offense was not consummated when the former trial
20 began.

21   b. The former prosecution was terminated, after the complaint
22 was filed or the indictment found, by an acquittal or by a final
23 order or judgment for the defendant which has not been set aside,
24 reversed or vacated and which acquittal, final order or judgment
25 necessarily required a determination inconsistent with a fact which
26 must be established for conviction of the second offense.

27   c. The former prosecution was improperly terminated, as im-
28 proper termination is defined in section 2C:1-9, and the subsequent
29 prosecution is for an offense of which the defendant could have

<center>22</center>

30 been convicted had the former prosecution not been improperly
31 terminated.

32 Source: Model Penal Code: 1.09.

1   2C:1-11. Former Prosecution in Another Jurisdiction: When
2 a Bar. When conduct constitutes an offense within the concurrent
3 jurisdiction of this State and of the United States, a prosecution
4 in the District Court of the United States is a bar to a subsequent
5 prosecution in this State under the following circumstances:

6   a. The first prosecution resulted in an acquittal or in a convic-
7 tion, or in an improper termination as defined in section 2C:1-9
8 and the subsequent prosecution is based on the same conduct, un-
9 less (1) the offense of which the defendant was formerly convicted
10 or acquitted and the offense for which he is subsequently prose-
11 cuted each requires proof of a fact not required by the other and
12 the law defining each of such offenses is intended to prevent a
13 substantially different harm or evil or (2) the offense for which
14 the defendant is subsequently prosecuted is intended to prevent a
15 substantially more serious harm or evil than the offense of which
16 he was formerly convicted or acquitted or (3) the second offense
17 was not consummated when the former trial began; or

18   b. The former prosecution was terminated, after the informa-
19 tion was filed or the indictment found, by an acquittal or by a final
20 order or judgment for the defendant which has not been set aside,
21 reversed or vacated and which acquittal, final order or judgment
22 necessarily required a determination inconsistent with a fact which
23 must be established for conviction of the offense of which the
24 defendant is subsequently prosecuted.

25 Source: Model Penal Code: 1.10.

1   2C:1-12. Former Prosecution Before Court Lacking Jurisdic-
2 tion or When Fraudulently Procured by the Defendant. A prose-
3 cution is not a bar within the meaning of sections 2C:1-9, 10 and 11
4 under any of the following circumstances:

5   a. The former prosecution was before a court which lacked
6 jurisdiction over the defendant or the offense tried in that court; or

7   b. The former prosecution was procured by the defendant with-
8 out the knowledge of the appropriate prosecuting officer; or

9   c. The former prosecution resulted in a judgment of conviction
10 which was held invalid in a subsequent proceeding on a petition
11 for post-conviction relief or similar process, except that any bar
12 as to reprosecution for a greater inclusive offense created by sec-
13 tion 2C:1-9 a. shall apply.

14 Source: Model Penal Code: 1.11.

<center>23</center>

2C:1-13. Proof Beyond a Reasonable Doubt; Affirmative Defenses; Burden of Proving Fact When Not an Element of an Offense. a. No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. In the absence of such proof, the innocence of the defendant is assumed.

b. Subsection a of this section does not:

(1) Require the disproof of an affirmative defense unless and until there is evidence supporting such defense; or

(2) Apply to any defense which the code or another statute plainly requires the defendant to prove by a preponderance of evidence.

c. A defense is affirmative, within the meaning of subsection b (1) of this section, when:

(1) It arises under a section of the code which so provides; or

(2) It relates to an offense defined by a statute other than the code and such statute so provides; or

d. When the application of the code depends upon the finding of a fact which is not an element of an offense, unless the code otherwise provides:

(1) The burden of proving the fact is on the prosecution or defendant, depending on whose interest or contention will be furthered if the finding should be made; and

(2) The fact must be proved to the satisfaction of the court or jury, as the case may be.

e. When the code or other statute defining an offense establishes a presumption with respect to any fact which is an element of an offense, it has the meaning accorded it by the law of evidence. Source: Model Penal Code: 1.12.

2C:1-14. General Definitions. In this code, unless a different meaning plainly is required:

a. "Statute" includes the Constitution and a local law or ordinance of a political subdivision of the State;

b. "Act" or "action" means a bodily movement whether voluntary or involuntary;

c. "Omission" means a failure to act;

d. "Conduct" means an action or omission and its accompanying state of mind, or, where relevant, a series of acts and omission;

e. "Actor" includes, where relevant, a person guilty of an omission;

f. "Acted" includes, where relevant, "omitted to act";

g. "Person," "he," and "actor" include any natural person and, where relevant, a corporation or an unincorporated association;

h. "Element of an offense" means (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as

(a) Is included in the description of the forbidden conduct in the definition of the offense;

(b) Establishes the required kind of culpability;

(c) Negatives an excuse or justification for such conduct;

(d) Negatives a defense under the statute of limitations; or

(e) Establishes jurisdiction or venue;

i. "Material element of an offense" means an element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unconnected with (1) the harm or evil, incident to conduct, sought to be prevented by the law defining the offense, or (2) the existence of a justification or excuse for such conduct;

j. "Reasonably believes" or "reasonable belief" designates a belief the holding of which does not make the actor reckless or criminally negligent.

Source: Model Penal Code: 1.13.

## CHAPTER 2. GENERAL PRINCIPLES OF LIABILITY

Section

| | | |
|---|---|---|
| 2C:2-1. | Requirement of Voluntary Act; Omission as Basis of Liability; Possession as an Act. | |
| 2C:2-2. | General Requirements of Culpability. | |
| 2C:2-3. | Causal Relationship Between Conduct and Result; Divergence Between Result Designed, Contemplated or Risked and Actual Result. | |
| 2C:2-4. | Ignorance or Mistake. | |
| 2C:2-5. | Defenses Generally. | |
| 2C:2-6. | Liability for Conduct of Another; Complicity. | |
| 2C:2-7. | Liability of Corporations and Persons Acting, or Under a Duty to Act, in Their Behalf. | |
| 2C:2-8. | Intoxication. | |
| 2C:2-9. | Duress. | |
| 2C:1-10. | Consent. | |
| 2C:2-11. | De Minimis Infractions. | |
| 2C:2-12. | Entrapment. | |

2C:2-1. Requirement of Voluntary Act; Omission as Basis of Liability; Possession as an Act. a. A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable. A bodily movement that is not a product of the effort or determination of the actor, either conscious or habitual, is not a voluntary act within the meaning of this section.

b. Liability for the commission of an offense may not be based on an omission unaccompanied by action unless:

(1) The omission is expressly made sufficient by the law defining the offense; or

(2) A duty to perform the omitted act is otherwise imposed by law.

c. Possession is an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession.

Source: Model Penal Code: 2.01.

2C:2-2. General Requirements of Culpability. a. Minimum Requirements of Culpability. Except as provided in subsection c. (3) of this section, a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.

b. Kinds of culpability defined.

(1) Purposely. A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances or he believes or hopes that they exist. "With purpose," "designed," "with design" or equivalent terms have the same meaning.

(2) Knowingly. A person acts knowingly with respect to nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result. "Knowing," "with knowledge" or equivalent terms have the same meaning.

(3) Recklessly. A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Recklessness," "with recklessness" or equivalent terms have the same meaning.

(4) Negligently. A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. "Negligently" or "negligence" when used in this code, shall refer to the standard set forth in this section and not to the standard applied in civil cases.

c. Construction of statutes with respect to culpability requirements.

(1) Prescribed culpability requirement applies to all material elements. When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.

(2) Substitutes for kinds of culpability. When the law provides that a particular kind of culpability suffices to establish an element of an offense such element is also established if a person acts with higher kind of culpability.

(3) Construction of statutes not stating culpability requirement. Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with mental culpability. This provision applies to offenses defined both within and outside of this code.

d. Culpability as to illegality of conduct. Neither knowledge nor recklessness nor negligence as to whether conduct constitutes an offense or as to the existence, meaning or application of the law

67 determining the elements of an offense is an element of such
68 offense, unless the definition of the offense or the code so provides.
69    c. Culpability as determinant of grade of offense. When the
70 grade or degree of an offense depends on whether the offense is
71 committed purposely, knowingly, recklessly or criminally negli-
72 gently, its grade or degree shall be the lowest for which the deter-
73 minative kind of culpability is established with respect to any
74 material element of the offense.
75 Source: Model Penal Code: 2.02.

1    2C:2–3. Causal Relationship Between Conduct and Result;
2 Divergence Between Result Designed, Contemplated or Risked
3 and Actual Result. a. Conduct is the cause of a result when:
4    (1) It is an antecedent but for which the result in question would
5 not have occurred; and
6    (2) The relationship between the conduct and result satisfies any
7 additional causal requirements imposed by the code or by the law
8 defining the offense.
9    b. When the offense requires that the defendant purposely or
10 knowingly cause a particular result, the actual result must be
11 within the design or contemplation, as the case may be, of the actor,
12 or, if not, the actual result must involve the same kind of injury
13 or harm as that designed or contemplated and not be too remote,
14 accidental in its occurrence, or dependent on another's volitional
15 act to have a just bearing on the actor's liability or on the gravity
16 of his offense.
17    c. When the offense requires that the defendant recklessly or
18 criminally negligently cause a particular result, the actual result
19 must be within the risk of which the actor is aware or, in the case
20 of criminal negligence, of which he should be aware, or, if not, the
21 actual result must involve the same kind of injury or harm as the
22 probable result and must not be too remote, accidental in its
23 occurrence, or dependent on another's volitional act to have a
24 just bearing on the actor's liability or on the gravity of his offense.
25    d. A defendant shall not be relieved of responsibility for causing
26 a result if the only difference between what actually occurred and
27 what was designed, contemplated or risked is that a different
28 person or property was injured or affected or that a less serious
29 or less extensive injury or harm occurred.
30    e. When causing a particular result is a material element of an
31 offense for which absolute liability is imposed by law, the element
32 is not established unless the actual result is a probable consequence
33 of the actor's conduct.
34 Source: Model Penal Code: 2.03.

28

1    2C:2–4. Ignorance or Mistake. a. Ignorance or mistake as to a
2 matter of fact or law is a defense if the defendant reasonably
3 arrived at the conclusion underlying the mistake and:
4    (1) It negatives the culpable mental state required to establish
5 the offense; or
6    (2) The law provides that the state of mind established by such
7 ignorance or mistake constitutes a defense.
8    b. Although ignorance or mistake would otherwise afford a
9 defense to the offense charged, the defense is not available if the
10 defendant would be guilty of another offense had the situation
11 been as he supposed. In such case, however, the ignorance or
12 mistake of the defendant shall reduce the grade and degree of the
13 offense of which he may be convicted to those of the offense of
14 which he would be guilty had the situation been as he supposed.
15    c. A belief that conduct does not legally constitute an offense is
16 a defense to a prosecution for that offense based upon such con-
17 duct when:
18    (1) The statute defining the offense is not known to the actor and
19 has not been published or otherwise reasonably made available
20 prior to the conduct alleged; or
21    (2) The actor acts in reasonable reliance upon an official state-
22 ment of the law, afterward determined to be invalid or erroneous,
23 contained in (a) a statute, (b) judicial decision, opinion, judgment,
24 or rule, (c) an administrative order or grant of permission, or
25 (d) an official interpretation of the public officer or body charged
26 by law with responsibility for the interpretation, administration
27 or enforcement of the law defining the offense; or
28    (3) The actor otherwise diligently pursues all means available to
29 ascertain the meaning and application of the offense to his conduct
30 and honestly and in good faith concludes his conduct is not an
31 offense in circumstances in which a law-abiding and prudent person
32 would also so conclude.
33    The defendant must prove a defense arising under subsection c.
34 of this section by *⟦a preponderance of⟧* *clear and convincing*
34A evidence.
35 Source. Model Penal Code: 2.04.

1    2C:2–5. Defenses Generally. Conduct which would otherwise be
2 an offense is excused or alleviated by reason of any defense now
3 provided by law for which neither the code nor other statutory
4 law defining the offense provides exceptions or defenses dealing
5 with the specific situation involved and a legislative purpose to
6 exclude the defense claimed does not otherwise plainly appear.
7 Source: New.

29

2C:2–6. Liability for Conduct of Another; Complicity. a. A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

b. A person is legally accountable for the conduct of another person when:

(1) Acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) He is made accountable for the conduct of such other person by the code or by the law defining the offense;

(3) He is an accomplice of such other person in the commission of an offense; or

(4) He is engaged in a conspiracy with such other person.

c. A person is an accomplice of another person in the commission of an offense if:

(1) With the purpose of promoting or facilitating the commission of the offense; he

(a) Solicits such other person to commit it;

(b) Aids or agrees or attempts to aid such other person in planning or committing it; or

(c) Having a legal duty to prevent the commission of the offense, fails to make proper effort so to do; or

(2) His conduct is expressly declared by law to establish his complicity.

d. A person who is legally incapable of committing a particular offense himself may be guilty thereof if it is committed by another person for whose conduct he is legally accountable, unless such liability is inconsistent with the purpose of the provision establishing his incapacity.

e. Unless otherwise provided by the code or by the law defining the offense, a person is not an accomplice in an offense committed by another person if:

(1) He is a victim of that offense;

(2) The offense is so defined that his conduct is inevitably incident to its commission; or

(3) He terminates his complicity under circumstances manifesting a complete and voluntary renunciation as defined in section 2C:5–1 d. prior to the commission of the offense. Termination by renunciation is an affirmative defense which the defendant must prove by a preponderance of evidence.

30

f. An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

Source: N. J. S. 2A:85–2; 2A:85–14; Model Penal Code: 2.06.

2C:2–7. Liability of Corporations and Persons Acting, or Under a Duty to Act, in Their Behalf. a. A corporation may be convicted of the commission of an offense if:

(1) The conduct constituting the offense is engaged in by an agent of the corporation while acting within the scope of his employment and in behalf of the corporation unless the offense is one defined by a statute which indicates a legislative purpose not to impose criminal liability on corporations. If the law governing the offense designates the agents for whose conduct the corporation is accountable or the circumstances under which it is accountable, such provisions shall apply;

(2) The offense consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by law; or

(3) The conduct constituting the offense is engaged in, authorized, solicited, requested, commanded, or recklessly tolerated by the board of directors or by a high managerial agent acting within the scope of his employment and in behalf of the corporation.

b. As used in this section:

(1) "Corporation" does not include an entity organized as or by a governmental agency for the execution of a governmental program;

(2) "Agent" means any director, officer, servant, employee or other person authorized to act in behalf of the corporation;

(3) "High managerial agent" means an officer of a corporation or any other agent of a corporation having duties of such responsibility that his conduct may fairly be assumed to represent the policy of the corporation.

c. In any prosecution of a corporation for the commission of an offense included within the terms of subsection a. (1) of this section, other than an offense for which absolute liability has been imposed, it shall be a defense if the defendant proves by a preponderance of evidence that the high managerial agent having supervisory responsibility over the subject matter of the offense employed due diligence to prevent its commission. This paragraph

31

35 shall not apply if it is plainly inconsistent with the legislative pur-
36 pose in defining the particular offense.
37    d. Nothing in this section imposing liability upon a corporation
38 shall be construed as limiting the liability for an offense of an
39 individual by reason of his being an agent of the corporation.
40 Source: Model Penal Code: 2.07.

1    2C:2–8. Intoxication. a. Except as provided in subsection d. of
2 this section, intoxication of the actor is not a defense unless it
3 negatives an element of the offense.
4    b. When recklessness establishes an element of the offense, if
5 the actor, due to self-induced intoxication, is unaware of a risk of
6 which he would have been aware had he been sober, such unaware-
7 ness is immaterial.
8    c. Intoxication does not, in itself, constitute mental disease
9 within the meaning of chapter 4.
10    d. Intoxication which (1) is not self-induced or (2) is patho-
11 logical is an affirmative defense if by reason of such intoxication
12 the actor at the time of his conduct lacks substantial and adequate
13 capacity either to appreciate its wrongfulness or to conform his
14 conduct to the requirement of law.
15    e. Definitions. In this section unless a different meaning plainly
16 is required:
17    (1) "Intoxication" means a disturbance of mental or physical
18 capacities resulting from the introduction of substances into the
19 body;
20    (2) "Self-induced intoxication" means intoxication caused by
21 substances which the actor knowingly introduces into his body, the
22 tendency of which to cause intoxication he knows or ought to know,
23 unless he introduces them pursuant to medical advice or under
24 such circumstances as would afford a defense to a charge of crime;
25    (3) "Pathological intoxication" means intoxication grossly ex-
26 cessive in degree, given the amount of the intoxicant, to which the
27 actor does not know he is susceptible.
28 Source: Model Penal Code: 2.08.

1    2C:2–9. Duress. a. Subject to subsection b. of this section, it is
2 an affirmative defense that the actor engaged in the conduct charged
3 to constitute an offense because he was coerced to do so by the use
4 of, or a threat to use, unlawful force against his person or the
5 person of another, which a person of reasonable firmness in his
6 situation would have been unable to resist.
7    b. The defense provided by this section is unavailable if the
8 actor recklessly placed himself in a situation in which it was

9 probable that he would be subjected to duress. The defense is also
10 unavailable if he was criminally negligent in placing himself in
11 such a situation, whenever criminal negligence suffices to establish
12 culpability for the offense charged. In a prosecution for murder,
13 the defense is only available to reduce the degree of the crime to
14 manslaughter.
15    c. It is not a defense that a woman acted on the command of her
16 husband, unless she acted under such coercion as would establish
17 a defense under this section. The presumption that a woman, act-
18 ing in the presence of her husband, is coerced is abolished.
19 Source: N. J. S. 2A:85–3; Model Penal Code: 2.09.

1    2C:2–10. Consent. a. In general. The consent of the victim to
2 conduct charged to constitute an offense or to the result thereof
3 is a defense if such consent negatives an element of the offense or
4 precludes the infliction of the harm or evil sought to be prevented
5 by the law defining the offense.
6    b. Consent to bodily harm. When conduct is charged to consti-
7 tute an offense because it causes or threatens bodily harm, consent
8 to such conduct or to the infliction of such harm is a defense if:
9    (1) The bodily harm consented to or threatened by the conduct
10 consented to is not serious; or
11    (2) The conduct and the harm are reasonably foreseeable haz-
12 ards of joint participation in a concerted activity of a kind not
13 forbidden by law; or
14    (3) The consent establishes a justification for the conduct under
15 chapter 3 of the code.
16    c. Ineffective consent. Unless otherwise provided by the code
17 or by the law defining the offense, assent does not constitute con-
18 sent if:
19    (1) It is given by a person who is legally incompetent to autho-
20 rize the conduct charged to constitute the offense; or
21    (2) It is given by a person who by reason of youth, mental
22 disease or defect or intoxication is manifestly unable or known by
23 the actor to be unable to make a reasonable judgment as to the
24 nature of harmfulness of the conduct charged to constitute an
25 offense; or
26    (3) It is induced by force, duress or deception of a kind sought
27 to be prevented by the law defining the offense.
28 Source: N. J. S. 2A:90–1; 2A:138–1 amended 1952, c. 94; 2A:138–2;
29    Model Penal Code: 2.11.

2C:2–11. De Minimis Infractions. The assignment judge may
dismiss a prosecution if, having regard to the nature of the conduct
charged to constitute an offense and the nature of the attendant
circumstances, it finds that the defendant's conduct:

a. Was within a customary license or tolerance, neither expressly
negated by the person whose interest was infringed nor incon-
sistent with the purpose of the law defining the offense;

b. Did not actually cause or threaten the harm or evil sought to
be prevented by the law defining the offense or did so only to an
extent too trivial to warrant the condemnation of conviction; or

c. Presents such other extenuations that it cannot reasonably be
regarded as envisaged by the Legislature in forbidding the offense.
The assignment judge shall not dismiss a prosecution under this
section without giving the prosecutor notice and an opportunity
to be heard. The prosecutor shall have a right to appeal any such
dismissal.

Source: Model Penal Code: 2.12.

2C:2–12. Entrapment. a. A public law enforcement official or
a person *[acting]* *engaged* in cooperation with such an official
*or one acting as an agent of a public law enforcement official*
perpetrates an entrapment if for the purpose of obtaining evidence
of the commission of an offense, he induces or encourages and, as a
direct result, causes another person to engage in conduct constitut-
ing such offense by either:

(1) Making knowingly false representations designed to induce
the belief that such conduct is not prohibited; or

(2) Employing methods of persuasion or inducement which
create a substantial risk that such an offense will be committed
by persons other than those who are ready to commit it.

b. Except as provided in subsection c. of this section, a person
prosecuted for an offense shall be acquitted if he proves by a pre-
ponderance of evidence that his conduct occurred in response to
an entrapment. The issue of entrapment shall be tried by the jury.

c. The defense afforded by this section is unavailable when
causing or threatening bodily injury is an element of the offense
charged and the prosecution is based on conduct causing or threat-
ening such injury to a person other than the person perpetrating
the entrapment.

Source: Model Penal Code: 2.13.

## CHAPTER 3.   GENERAL PRINCIPLES OF JUSTIFICATION

Section

2C:3–1.   Justification an Affirmative Defense; Civil Remedies
Unaffected.

2C:3–2.   Necessity and Other Justifications in General.

2C:3–3.   Execution of Public Duty.

2C:3–4.   Use of Force in Self-Protection.

2C:3–5.   Use of Force for the Protection of Other Persons.

2C:3–6.   Use of Force in Defense of Premises or Personal
Property.

2C:3–7.   Use of Force in Law Enforcement.

2C:3–8.   Use of Force by Persons With Special Responsibility
for Care, Discipline or Safety of Others.

2C:3–9.   Mistake of Law as to Unlawfulness of Force or Legality
of Arrest; Reckless or Negligent Use of Excessive
But Otherwise Justifiable Force; Reckless or Negli-
gent Injury or Risk of Injury to Innocent Persons.

2C:3–10.   Justification in Property Crimes.

2C:3–11.   Definitions.

2C:3–1. Justification an Affirmative Defense; Civil Remedies
Unaffected. a. In any prosecution based on conduct which is justi-
fiable under this chapter, justification is an affirmative defense.

b. The fact that conduct is justifiable under this chapter does
not abolish or impair any remedy for such conduct which is avail-
able in any civil action.

Source: Model Penal Code: 3.01.

2C:3–2. Necessity and Other Justifications in General. a. Neces-
sity. Conduct which would otherwise be an offense is justifiable
by reason of necessity to the extent permitted by law and as to
which neither the code nor other statutory law defining the offense
provides exceptions or defenses dealing with the specific situation
involved and a legislative purpose to exclude the justification
claimed does not otherwise plainly appear.

b. Other justifications in general. Conduct which would other-
wise be an offense is justifiable by reason of any defense of
justification provided by law for which neither the code nor other
statutory law defining the offense provides exceptions or defenses
dealing with the specific situation involved and a legislative pur-
pose to exclude the justification claimed does not otherwise plainly
appear.

Source: N. J. S. 2A:113–6; Model Penal Code: 3.02.

2C:3-3. Execution of public duty. a. Except as provided in subsection b. of this section, conduct is justifiable when it is required or authorized by:

(1) The law defining the duties or functions of a public officer or the assistance to be rendered to such officer in the performance of his duties;

(2) The law governing the execution of legal process;

(3) The judgment or order of a competent court or tribunal;

(4) The law governing the armed services or the lawful conduct of war; or

(5) Any other provision of law imposing a public duty.

b. The other sections of this chapter apply to:

(1) The use of force upon or toward the person of another for any of the purposes dealt with in such sections; and

(2) The use of deadly force for any purpose, unless the use of such force is otherwise expressly authorized by law.

c. The justification afforded by subsection a. of this section applies:

(1) When the actor reasonably believes his conduct to be required or authorized by the judgment or direction of a competent court or tribunal or in the lawful execution of legal process, notwithstanding lack of jurisdiction of the court or defect in the legal process; and

(2) When the actor reasonably believes his conduct to be required or authorized to assist a public officer in the performance of his duties, notwithstanding that the officer exceeded his legal authority.

Source: Model Penal Code: 3.03.

2C:3-4. Use of Force in Self-Protection. a. Use of force justifiable for protection of the person. Subject to the provisions of this section and of section 2C:3-9, the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

b. Limitations on justifying necessity for use of force.

(1) The use of force is not justifiable under this section:

(a) To resist an arrest which the actor knows is being made by a peace officer in the performance of his duties, although the arrest is unlawful**, *unless the peace officer employs unlawful force to effect such arrest***; or

(b) To resist force used by the occupier or possessor of property or by another person on his behalf, where the actor knows that the person using the force is doing so under a claim of right to protect the property, except that this limitation shall not apply if:

(i) The actor is a public officer acting in the performance of his duties or a person lawfully assisting him therein or a person making or assisting in a lawful arrest;

(ii) The actor has been unlawfully dispossessed of the property and is making a reentry or recaption justified by section 2C:3-6; or

(iii) The actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm.

(2) The use of deadly force is not justifiable under this section unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm; nor is it justifiable if:

(a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or

(b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take, except that:

(i) The actor is not obliged to retreat from his dwelling, unless he was the initial aggressor or is assailed in his dwelling by another person whose dwelling the actor knows it to be; and

(ii) A public officer justified in using force in the performance of his duties or a person justified in using force in his assistance or a person justified in using force in making an arrest or preventing an escape is not obliged to desist from efforts to perform such duty, effect such arrest or prevent such escape because of resistance or threatened resistance by or on behalf of the person against whom such action is directed.

(3) Except as required by paragraphs (1) and (2) of this subsection, a person employing protective force may estimate the necessity of using force when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do or abstaining from any lawful action.

Source: N. J. S. 2A:113-6; Model Penal Code: 3.04.

2C:3-5. Use of Force for the Protection of Other Persons. a. Subject to the provisions of this section and of section 2C:3-9,

3  the use of force upon or toward the person of another is justifiable
4  to protect a third person when:

5  (1) The actor would be justified under section 2C:3-4 in using
6  such force to protect himself against the injury he believes to be
7  threatened to the person whom he seeks to protect; and

8  (2) Under the circumstances as the actor reasonably believes
9  them to be, the person whom he seeks to protect would be justified
10  in using such protective force; and

11  (3) The actor reasonably believes that his intervention is neces-
12  sary for the protection of such other person.

13  b. Notwithstanding subsection a. of this section:

14  (1) When the actor would be obliged under section 2C:3-4
15  b. (2) (b) to retreat or take other action he is not obliged to do so
16  before using force for the protection of another person, unless he
17  knows that he can thereby secure the complete safety of such other
18  person, and

19  (2) When the person whom the actor seeks to protect would be
20  obliged under section 2C:3-4 b. (2) (b) to retreat or take similar
21  action if he knew that he could obtain complete safety by so doing,
22  the actor is obliged to try to cause him to do so before using force
23  in his protection if the actor knows that he can obtain complete
24  safety in that way; and

25  (3) Neither the actor nor the person whom he seeks to protect
26  is obliged to retreat when in the other's dwelling to any greater
27  extent than in his own.

28  Source: N. J. S. 2A:113-6; Model Penal Code: 3.05.

1  2C:3-6. Use of Force in Defense of Premises or Personal
2  Property. a. Use of force in defense of premises. Subject to the
3  provisions of this section and of section 2C:3-9, the use of force
4  upon or toward the person of another is justifiable when the actor
5  is in possession or control of premises or is licensed or privileged
6  to be thereon and he reasonably believes such force necessary to
7  prevent or terminate what he reasonably believes to be the com-
8  mission or attempted commission of a criminal trespass by such
9  other person in or upon such premises.

10  b. Limitations on justifiable use of force in defense of premises.

11  (1) Request to desist. The use of force is justifiable under this
12  section only if the actor first requests the person against whom
13  such force is used to desist from his interference with the property,
14  unless the actor reasonably believes that:

15  (a) Such request would be useless;

38

16  (b) It would be dangerous to himself or another person to make
17  the request; or

18  (c) Substantial harm will be done to the physical condition of
19  the property which is sought to be protected before the request can
20  effectively be made.

21  (2) Exclusion of trespasser. The use of force is not justifiable
22  under this section if the actor knows that the exclusion of the
23  trespasser will expose him to substantial danger of serious bodily
24  harm.

25  (3) Use of deadly force. The use of deadly force is not justifiable
26  under subsection a. of this section unless the actor reasonably
27  believes that:

28  (a) The person against whom the force is used is attempting to
29  dispossess him of his dwelling otherwise than under a claim of
30  right to its possession; or

31  (b) The person against whom the force is used is attempting to
32  commit or consummate arson, burglary, robbery or other criminal
33  theft or property destruction; except that

34  (c) Deadly force does not become justifiable under subsections
35  (a) and (b) of this subsection unless:

36    (i) The person against whom it is employed has employed
37  or threatened deadly force against or in the presence of the
38  actor; or

39    (ii) The use of force other than deadly force to prevent the
40  commission or the consummation of the crime would expose
41  the actor or another in his presence to substantial danger of
42  serious bodily harm.

43  c. Use of force in defense of personal property. Subject to the
44  provisions of subsection d. of this section and of section 2C:3-9,
45  the use of force upon or toward the person of another is justifiable
46  when the actor reasonably believes it necessary to prevent what he
47  reasonably believes to be an attempt by such other person to commit
48  theft, criminal mischief or other criminal interference with personal
49  property in his possession or in the possession of another for whose
50  protection he acts.

51  d. Limitations on justifiable use of force in defense of personal
52  property.

53  (1) Request to desist and exclusion of trespasser. The limita-
54  tions of subsection b. (1) and (2) of this section apply to subsec-
55  tion c of this section.

56  (2) Use of deadly force. The use of deadly force in defense of
57  personal property is not justified unless justified under another
58  provision of this chapter.

39

59  Source: N. J. S. 2A:113–6; Model Penal Code: 3.06.

1  2C:3–7. Use of Force in Law Enforcement. a. Use of force
2  justifiable to effect an arrest. Subject to the provisions of this
3  section and of section 2C:3–9, the use of force upon or toward the
4  person of another is justifiable when the actor is making or assisting
5  in making an arrest and the actor reasonably believes that such
6  force is immediately necessary to effect a lawful arrest.

7  b. Limitations on the use of force.

8  (1) The use of force is not justifiable under this section unless:
9  (a) The actor makes known the purpose of the arrest or reason-
10  ably believes that it is otherwise known by or cannot reasonably
11  be made known to the person to be arrested; and
12  (b) When the arrest is made under a warrant, the warrant is
13  valid or reasonably believed by the actor to be valid.

14  (2) The use of deadly force is not justifiable under this section
15  unless:
16  (a) The actor effecting the arrest is authorized to act as a
17  peace officer or has been summoned by and is assisting a person
18  whom he reasonably believes to be authorized to act as a peace
19  officer; and
20  (b) The actor reasonably believes that the force employed cre-
21  ates no substantial risk of injury to innocent persons; and
22  (c) The actor reasonably believes that the crime for which the
23  arrest is made was homicide, kidnapping, *【rape, sodomy】* *an
24  offense under 2C:14–2 or 2C:14–3*, arson, robbery, burglary of
25  an occupied dwelling, or an attempt to commit one of these crimes.
25A  **(d) The actor reasonably believes:
25B  (i) There is an imminent threat of deadly force to himself
25C  or a third party;
25D  (ii) The use of deadly force is necessary to thwart the
25E  commission of a crime as set forth in subparagraph (c) of this
25F  paragraph; or
25G  (iii) The use of deadly force is necessary to prevent an
25H  escape.**

26  c. Use of force to prevent escape from custody. The use of force
27  to prevent the escape of an arrested person from custody is justi-
28  fiable when the force could, under subsections a. and b. of this
29  section, have been employed to effect the arrest under which the
30  person is in custody. A **【guard】** ** **correction officer** or other
31  person authorized to act as a peace officer is, however, justified in
32  using any force including deadly force, which he reasonably believes
33  to be immediately necessary to prevent the escape of a person

34  committed to a jail, prison, or other institution for the detention of
35  persons charged with or convicted of an offense so long as the actor
36  believes that the force employed creates no substantial risk of
37  injury to innocent persons.

38  d. Use of force by private person assisting an unlawful arrest.
39  (1) A private person who is summoned by a peace officer to
40  assist in effecting an unlawful arrest is justified in using any force
41  which he would be justified in using if the arrest were lawful, pro-
42  vided that he does not believe the arrest is unlawful.

43  (2) A private person who assists another private person in
44  effecting an unlawful arrest, or who, not being summoned, assists
45  a peace officer in effecting an unlawful arrest, is justified in using
46  any force which he would be justified in using if the arrest were
47  lawful, provided that (a) he reasonably believes the arrest is lawful,
48  and (b) the arrest would be lawful if the facts were as he believes
49  them to be and such belief is reasonable.

50  e. Use of force to prevent suicide or the commission of a crime.
51  The use of force upon or toward the person of another is justifiable
52  when the actor reasonably believes that such force is immediately
53  necessary to prevent such other person from committing suicide,
54  inflicting serious bodily harm upon himself, committing or con-
55  summating the commission of a crime involving or threatening
56  bodily harm, damage to or loss of property or a breach of the peace,
57  except that:

58  (1) Any limitations imposed by the other provisions of this
59  chapter on the justifiable use of force in self-protection, for the
60  protection of others, the protection of property, the effectuation
61  of an arrest or the prevention of an escape from custody shall
62  apply notwithstanding the criminality of the conduct against which
63  such force is used; and

64  (2) The use of deadly force is not in any event justifiable under
65  this subsection unless the actor reasonably believes that it is likely
66  that the person whom he seeks to prevent from committing a crime
67  will endanger human life or inflict serious physical injury upon
68  another unless the commission or the consummation of the crime is
69  prevented and that the use of such force presents no substantial
70  risk of injury to innocent persons.

71  Source: N. J. S. 2A:113–6; Model Penal Code: 3.07.

1  2C:3–8. Use of Force by Persons With Special Responsibility
2  for Care, Discipline or Safety of Others. The use of force upon or
3  toward the person of another is justifiable as permitted by law or

as would be a defense in a civil action based thereon where the actor has been vested or entrusted with special responsibility for the care, supervision, discipline or safety of another or of others and the force is used for the purpose of and, subject to section 2C:3-9 (b), to the extent necessary to further that responsibility. unless:

a. The code or the law defining the offense deals with the specific situation involved; or

b. A legislative purpose to exclude the justification claimed otherwise plainly appears; or

c. Deadly force is used, in which case such force must be otherwise justifiable under the provisions of this chapter.

Source: Model Penal Code: 3.08.

2C:3-9. Mistake of Law as to Unlawfulness of Force or Legality of Arrest; Reckless or Negligent Use of Excessive But Otherwise Justifiable Force; Reckless or Negligent Injury or Risk of Injury to Innocent Persons. a. The justification afforded by sections 2C:3-4 to 2C:3-7 is unavailable when:

(1) The actor's belief in the unlawfulness of the force or conduct against which he employs protective force or his belief in the lawfulness of an arrest which he endeavors to effect by force is erroneous; and

(2) His error is due to ignorance or mistake as to the provisions of the code, any other provisions of the criminal law or the law governing the legality of an arrest or search.

b. When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under sections 2C:3-3 to 3-8 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those sections shall not prevent the actor being found guilty of an offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

c. When the actor is justified under sections 2C:3-3 to 3-8 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons.

Source: Model Penal Code: 3.09.

42

2C:3-10. Justification in Property Crimes. Conduct involving the appropriation, seizure or destruction of, damage to, intrusion on, or interference with, property is justifiable under circumstances which would establish a defense of privilege in a civil action based thereon, unless:

a. The code or the law defining the offense deals with the specific situation involved; or

b. A legislative purpose to exclude the justification claimed otherwise plainly appears.

Source: Model Penal Code: 3.10.

2C:3-11. Definitions. In the chapter, unless a different meaning plainly is required: a. "Unlawful force" means force, including confinement, which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or actionable tort or would constitute such offense or tort except for a defense (such as the absence of intent, negligence, or mental capacity; duress, youth, or diplomatic status) not amounting to a privilege to use the force. Assent constitutes consent, within the meaning of this section, whether or not it otherwise is legally effective, except assent to the infliction of death or serious bodily harm.

b. "Deadly force" means force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm. Purposely firing a firearm in the direction of another person or at a vehicle**, *building or structure** in which another person is believed to be constitutes deadly force. A threat to cause death or serious bodily harm, by the production of a weapon or otherwise, so long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force.

c. "Dwelling" means any building or structure, though movable or temporary, or a portion thereof, which is for the time being the actor's home or place of lodging.

d. "Serious bodily harm" means bodily harm which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ or which results from aggravated rape or aggravated sodomy.

Source: Model Penal Code: 3.11

43

CHAPTER 4.   RESPONSIBILITY

Section

1   2C:4-1.   Insanity Defense *[Abolished]*.
2   2C:4-2.   Evidence of Mental Disease or Defect Admissible When
3             Relevant to Element of the Offense.
4   2C:4-3.   Requirement of Notice.
5   2C:4-4.   Mental Disease or Defect Excluding Fitness to Proceed.
6   2C:4-5.   Psychiatric Examination of Defendant With Respect to
7             Fitness to Proceed.
8   2C:4-6.   Determination of Fitness to Proceed; Effect of Finding
9             of Unfitness; Proceedings if Fitness is Regained;
10            Post-Commitment Hearing.
11  2C:4-7.   *[Testimony by Psychiatrists or Other Experts.]*
11A           *Disposition.*
12  2C:4-8.   Commitment of a Person by Reason of Mental Disease
13            or Defect.
14  2C:4-9.   Release of Persons Committed by Reason of Mental
15            Disease or Defect.
16  2C:4-10.  Statements for Purposes of Examination or Treatment
17            Inadmissible Except on Issue of Mental Condition.
18  2C:4-11.  Immaturity Excluding Criminal Conviction; Transfer
19            of Proceedings to Juvenile Court.

1   *[2C:4-1. Insanity Defense Abolished. Insanity as a specific,
2   separate defense to a charge of a crime is abolished.
3   Source: New.]*

4   *2C:4-1. Insanity Defense. A person is not criminally responsible
5   for conduct if at the time of such conduct he was laboring under
6   such a defect of reason, from disease of the mind as not to know
7   the nature and quality of the act he was doing, or if he did know it,
8   that he did not know what he was doing was wrong.*

1   2C:4-2. Evidence of Mental Disease or Defect Admissible When
2   Relevant to Element of the Offense. a. Evidence that the defendant
3   suffered from a mental disease or defect is admissible whenever it
4   is relevant to prove that the defendant did not have a state of mind
5   which is an element of the offense.
6   b. Whenever evidence is admitted under subsection a. of this
7   section, the prosecution may thereafter offer evidence in rebuttal.
8   Source: Model Penal Code: 4.02.

1   *[2C:4-3. Requirement of Notice. If the defendant intends to
2   claim mental disease or defect as negating a state of mind which is
3   an element of the crime charged or as a matter which should be

44

4   considered at trial in determining the penalty, he shall serve
5   notice of such intention upon the prosecutor in accordance with
6   the Rules of the Court.]*

7   *2C:4-3. Requirement of Notice.
8   a. Mental disease or defect excluding responsibility is an affirma-
9   tive defense to be proved by the accused by a preponderance of the
10  evidence.
11  b. If a defendant intends to claim insanity or mental infirmity
12  as a defense, he shall serve notice of such intention upon the pros-
13  ecuting attorney in accordance with the Rules of Court.
14  c. When a defendant is acquitted on the ground of mental disease
15  or defect excluding responsibility, the verdict and judgment shall
16  so state.*
17  Source: N. J. S. 2A:163-3; Model Penal Code: 4.03.

1   2C:4-4. Mental Disease or Defect Excluding Fitness to Proceed.
2   *a.* No person who as a result of mental disease or defect lacks
3   capacity to understand the proceedings against him or to assist in
4   his own defense shall be tried, convicted or sentenced for the com-
5   mission of an offense so long as such incapacity endures.
6   *b. A person shall be considered mentally competent to stand
7   trial on criminal charges if the proofs shall establish:
8   (1) That the defendant has the mental capacity to appreciate his
9   presence in relation to time, place and things; and
10  (2) That his elementary mental processes are such that he com-
11  prehends:
12  (a) That he is in a court of justice charged with a criminal
13  offense;
14  (b) That there is a judge on the bench;
15  (c) That there is a prosecutor present who will try to convict
16  him of a criminal charge;
17  (d) That he has a lawyer who will undertake to defend him
18  against that charge;
19  (e) That he will be expected to tell to the best of his mental
20  ability the facts surrounding him at the time and place where the
21  alleged violation was committed if he chooses to testify and under-
22  stands the right not to testify;
23  (f) That there is or will be a jury present to pass upon evidence
24  adduced as to guilt or innocence of such charge or, that if he should
25  choose to enter into plea negotiations or to plead guilty, that he
26  comprehend the consequences of a guilty plea and that he be able
27  to knowingly, intelligently, and voluntarily waive those rights which
28  are waived upon such entry of a guilty plea; and

45

29    *(g) That he has the ability to participate in an **[intelligent]** 
30  **adequate** presentation of his defense.*

31  Source: N. J. S. 2A:163–2; Model Penal Code: 4.04.

1    2C:4–5. Psychiatric Examination of Defendant With Respect to
2  Fitness to Proceed. a. Whenever there is reason to doubt the
3  defendant's fitness to proceed, the court may on motion by the
4  prosecutor, the defendant or on its own motion, appoint at least
5  one qualified psychiatrist to examine and report upon the mental
6  condition of the defendant. The psychiatrist so appointed shall be
7  either:

8    *[(1) From a list maintained by the Commissioner of Institutions
9  and Agencies of members of the staff of appropriate public
10  institutions;]*

11    *[(2)]* *(1)* From a list agreed to by the court, the prosecutor
12  and the defendant; or

13    *[(3)]* *(2)* Agreed to by the court, prosecutor and defendant.
14  The court may order the defendant to be committed to a hospital or
15  other suitable facility for the purpose of the examination for a
16  period of not exceeding 30 days. A qualified psychiatrist retained
17  by the defendant or by the prosecution shall, if requested, be per-
18  mitted to examine the defendant. Upon showing of particular need,
19  upon motion, the court may order commitment for an additional
20  period not exceeding *[30]* *15* days.

21    b. The report of the examination shall include at least the fol-
22  lowing: (1) a description of the nature of the examination; (2) a
23  diagnosis of the mental condition of the defendant; (3) if the
24  defendant suffers from a mental disease or defect, an opinion as to
25  his capacity to understand the proceedings against him and to
26  assist in his own defense. The examining psychiatrist or psychia-
27  trists may ask questions respecting the crime charged when such
28  questions are necessary to enable formation of an opinion as to
29  a relevant issue*, however, the evidentiary character of any in-
29A  culpatory statement shall be limited expressly to the question of
29B  competency and shall not be admissible on the issue of guilt*.

30    c. If the examination cannot be conducted by reason of the
31  unwillingness of the defendant to participate therein, the report
32  shall so state and shall include, if possible, an opinion as to
33  whether such unwillingness of the defendant was the result of
34  mental disease or defect. Upon the filing of such a report, the
35  Court may permit examination without cooperation, may appoint a
36  different psychiatrist, or may commit the defendant for observation

37  for a period not exceeding 30 days except on good cause shown,
38  or exclude or limit testimony by the defense psychiatrist.

39    d. The report of the examination shall be sent by the psychiatrist
40  to the court, the prosecutor and counsel for the defendant.

41  Source: Model Penal Code: 4.05.

1    2C:4–6. Determination of Fitness to Proceed; Effect of Finding
2  of Unfitness; Proceedings if Fitness is Regained; Post-Commit-
3  ment Hearing. a. When the issue of the defendant's fitness to
4  proceed is raised, the issue shall be determined by the court. If
5  neither the prosecutor nor counsel for the defendant contests the
6  finding of the report filed pursuant to section 2C:4–5, the court may
7  make the determination on the basis of such report. If the finding
8  is contested or if there is no report, the court shall hold a hearing
9  on the issue. If the report is received in evidence upon such hearing,
10  either party shall have the right to summon and examine the
11  psychiatrists who joined in the report and to offer evidence upon
12  the issue.

13    b. If the court determines that the defendant lacks fitness to
14  proceed, the proceeding against him shall be suspended, except as
15  provided in subsection c. of this section. At this time, the court
16  may commit him to the custody of the Commissioner of *[Institu-
17  tions and Agencies]* *Human **[Resources]** **Services** to
18  be placed in an appropriate institution if it is found that the
19  defendant is so dangerous to himself or others as to require institu-
20  tionalization, or it shall proceed to determine whether placement in
21  an out-patient setting or release is appropriate; provided, however,
22  that no commitment to any institution shall be in excess of such
23  period of time during which it can be determined whether it is
24  substantially probable that the defendant could regain his compe-
24A  tence within the foreseeable future.

25    c. If the defendant has not regained his fitness to proceed within
26  *[a period of 12 months]* *such time as the court may deem
27  adequate* from the time that it was determined that the defendant
28  lacked such fitness, the court shall after a hearing, if one is re-
29  quested, dismiss thee charges and either order the defendant dis-
30  charged, or, subject to law governing civil commitment of persons
31  suffering from mental disease or defect, order the defendant com-
31A  mitted to an appropriate institution. **When the charges are not
31B  dismissed, each defendant's case shall be specifically reviewed by
31C  the court at 6 month intervals until an order is made by the court
31D  that the defendant stand trial or that the charges be dismissed.**

32      d. When the court, on its own motion or upon application of the
33 commissioner, his designee or either party, determines after a
34 hearing, if a hearing is requested, that the defendant has regained
35 fitness to proceed, the proceedings shall be resumed.

36      e. When the court, on its own motion or upon application to the
37 commissioner, his designee, or either party, determines after a
38 hearing, if a hearing is requested, that the defendant has not
39 regained fitness to proceed, the court may order the institution of
40 civil commitment proceedings, or, if it is found that the defendant
41 may be paroled or released on condition without danger to himself
42 or to others, the court may so order. If it is determined that it is
43 not substantially probable that the defendant will regain his compe-
44 tence in the foreseeable future, the court may dismiss the charge
45 and either order the defendant to be discharged, or, subject to the
46 law governing the civil commitment of persons suffering from
47 mental disease or defect, order the defendant committed to an
48 appropriate institution.

49      f. The fact that the defendant is unfit to proceed does not pre-
50 clude determination of any legal objection to the prosecution which
51 is susceptible of fair determination prior to trial and without the
52 personal participation of the defendant.

53 Source: N. J. S. 2A:163–2; R. S. 30:4–82 amended 1953, c. 29, s. 40;
54 1956, c. 43; 1965, c. 59, s. 67; Model Penal Code: 4.06.

1      *[2C:4–7. Testimony by Psychiatrists or Other Experts. When
2 a psychiatrist or other expert testifies concerning the defendant's
3 mental condition, he shall be permitted to testify as to the nature
4 of any examination of the defendant, any diagnosis of the mental
5 condition of the defendant at the time of the commission of the
6 offense charged and, as permitted by section 2C:4–2, his opinion
7 as to whether the defendant had the particular state of mind which
8 is an element of the offense charged, or, as permitted by section
9 2C:4–8, his opinion as to the extent, if any, to which the capacity
10 of the defendant to appreciate the wrongfulness of his conduct or
11 conform his conduct to the requirements of law was impaired by
12 mental disease or defect. His testimony may include information
13 reasonably serving to clarify his diagnosis and opinion and may be
14 cross-examined as to any matter bearing on his competency or
15 credibility or the validity of his diagnosis or opinion.]*

16      *2C:4–7. Disposition. If a defendant is acquitted by reason of
17 insanity the court shall dispose of the case as provided for in sec-
18 tion 2C:4–8 of this chapter.*

48

19 Source: N. J. S. 2A:163–2; R. S. 30:4–82 amended 1953, c. 29, s. 40;
20 1956, c. 43; 1965, c. 59, s. 67; Model Penal Code: 4.07.

1      2C:4–8. Commitment of a Person by Reason of Mental Disease
2 or Defect. *[a. After conviction, upon motion of the defendant or
3 the prosecutor, that disposition of the defendant be made pursuant
4 to this section, the court shall order a hearing on the issue.

5      b. The court may, upon motion of the prosecutor, for good cause
6 shown,]* *a. After acquittal by reason of insanity or mental
7 defect, the court shall* order that the defendant undergo a psy-
8 chiatric examination by a psychiatrist of the prosecutor's choice.
9 If the examination cannot take place because of the unwillingness
10 of the defendant to participate, the court shall proceed as in section
11 2C:4–5c. The defendant, pursuant to this section, may also be
11A examined by a psychiatrist of his own choice.

12      *[c. If at the hearing, the court finds from the evidence before
13 it, that the defendant at the time of the commission of the crime
14 suffered from a mental disease or defect (such mental disease or
15 defect shall not include any abnormality manifested only by
16 repeated criminal or other repeated wrongful conduct) which sub-
17 stantially impaired his capacity to appreciate the wrongfulness of
18 his conduct or to conform his conduct to the requirements of the
19 law, the court shall, in lieu of sentence:]*

19A      *b. The court shall dispose of the defendant in the following
19B manner:*

20      (1) If the court finds that the defendant may be released without
21 danger to the community *or to himself* without supervision, the
22 court shall so release the defendant; or

23      (2) If the court finds that the defendant may be released without
24 danger to the community *or to himself* under supervision or
25 under conditions, the court shall so order; or

26      (3) If the court finds that the defendant cannot be released with
27 or without supervision or conditions without posing a danger to
28 the community *or to himself*, it shall commit the defendant to a
29 mental health facility approved for this purpose by the Commis-
30 sioner of **[Institutions and Agencies]** **Human Services** for
31 an indeterminate term not to exceed the maximum term of impris-
32 onment provided by law for the crime of which the defendant has
33 been *[convicted]* *acquitted*.

33      *[d.]* *c.* No person committed under this section shall be con-
34 fined within any penal or correctional institution or any part
34A thereof.

49

35   *[e. If the court finds from the evidence admitted at the hearing
36 that the defendant did not at the time of the commission of the
37 crime suffer from a mental disease or defect which substantially
38 impaired his capacity to appreciate the wrongfulness of his conduct
39 or conform his conduct to the requirements of the law, the Court
40 shall impose sentence in the manner provided by law.

41   f. No statute relating to the remission of sentence by way of
42 commutation time for good behavior and for work performed shall
43 apply to any person committed pursuant to this section, but provi-
44 sion may be made for monetary compensation in amount to be
45 prescribed by the state parole board in lieu of remission of sentence
46 for work performed.

47   g. No civil disability applying to persons convicted of an offense
48 shall apply to persons committed or released under this section.

49 Source: Model Penal Code: 4.08.]*

1   2C:4-9. Release of Persons Committed by Reason of Mental
2 Disease or Defect. a. If a person has been committed because of
3 dangerousness to the community and if the commissioner, or his
4 designee, or the superintendent of the institution to which the
5 person has been committed, is of the view that a person committed
6 to his custody, pursuant to section 2C:4-8, may be discharged or
7 released on condition without danger to himself or to others, or
8 that he may be transferred to a less restrictive setting for treat-
9 ment, the commissioner or superintendent shall make application
10 for the discharge or release of such person in a report to the court
11 by which such person was committed and shall transmit a copy of
12 such application and report to the prosecutor, the court, and
13 defense counsel. The court may, in its discretion, appoint at least
14 two qualified psychiatrists, neither of whom may be on the staff
15 of the hospital to which the defendant had been committed, to exam-
16 ine such person and to report within 30 days, or such longer period
17 as the court determines to be necessary for the purpose, their
18 opinion as to his mental condition.

19   b. If the court is satisfied by the report filed pursuant to sub-
20 section a. of this section and such testimony of the reporting
21 psychiatrists as the court deems necessary that the committed
22 person may be discharged, released on condition without danger to
23 himself or others, or treated as in civil commitment the court shall
24 order his discharge, his release on such conditions as the court
25 determines to be necessary or his transfer. If the court is not so
26 satisfied, it shall promptly order a hearing to determine whether
27 such person may safely be discharged, released or transferred. Any

28 such hearing shall be deemed a civil proceeding. According to the
29 determination of the court upon the hearing, the court shall pro-
30 ceed as in section 2C:4-8 *[e.]* *b.* (1), (2) or (3).

31   c. A committed person may make application for his discharge
32 or release to the court by which he was committed, and the pro-
33 cedure to be followed upon such application shall be the same as
34 that prescribed above in the case of an application by the com-
35 missioner.

36   d. Each defendant's case shall be specifically reviewed by the
37 committing court at 6-month intervals until the expiration of the
38 maximum period pursuant to subsection *[e.]* *b.* (3) of section
39 2C:4-8. At the expiration of that maximum, the defendant must be
40 discharged; however, the State or other properly specified party
41 may then choose to bring an involuntary civil commitment action
42 pursuant to R. S. 30:4-25 et seq.

43 Source: Model Penal Code: 4.08.

1   2C:4-10. Statements for Purposes of Examination or Treatment
2 Inadmissible Except on Issue of Mental Condition. A statement
3 made by a person subjected to psychiatric examination or treat-
4 ment pursuant to sections 2C:4-5, 6 or 9 for the purposes of such
5 examination or treatment shall not be admissible in evidence against
6 him in any criminal proceeding on any issue other than that of
7 his mental condition but it shall be admissible upon that issue,
8 whether or not it would otherwise be deemed a privileged communi-
9 cation. When such a statement constitutes an admission of guilt
10 of the crime charged or of an element thereof, it shall only be
11 admissible where it appears at trial that conversations with the
12 examining psychiatrist were necessary to enable him to form an
13 opinion as to a matter in issue.

14 Source: Model Penal Code: 4.09.

1   2C:4-11. Immaturity Excluding Criminal Conviction; Transfer
2 of Proceedings to Juvenile Court. a. A person shall not be tried
3 for or convicted of an offense if:

4   (1) At the time of the conduct charged to constitute the offense
5 he was less than *[16]* *14* years of age, in which case the juvenile
6 and domestic relations court shall have exclusive jurisdiction; or

7   (2) At the time of the conduct charged to constitute the offense
8 he was *[16 or 17]* *14 *[or]* ** 15* **, 16, or 17** years of
8A age, unless:

9   (a) The juvenile and domestic relations court has no jurisdic-
10 tion over him;

11    (b) The juvenile and domestic relations court has, pursuant to
12  P. L. 1973, c. 306, s. 7 (C. 2A:4–48), entered an order waiving
13  jurisdiction and referring the case to the county prosecutor for
14  the institution of criminal proceedings against him;
15    (c) The juvenile has, pursuant to P. L. 1973, c. 306, s. 8
16  (C. 2A:4–49), demanded indictment and trial by jury.
17    b. No court shall have jurisdiction to try and convict a person
18  of an offense if criminal proceedings against him are barred by
19  subsection a. of this section. When it appears that a person
20  charged with the commission of an offense may be of such an age
21  that proceedings may be barred under subsection a. of this section,
22  the court shall hold a hearing thereon, and the burden shall be on
23  the prosecution to establish to the satisfaction of the court that
24  the proceeding is not barred upon such grounds. If the court de-
25  termines that the proceeding is barred, custody of the person
26  charged shall be surrendered to the juvenile and domestic relations
27  court, and the case, including all papers and processes relating
28  thereto shall be transferred.
29  Source: N. J. S. 2A:85–4; Model Penal Code: 4.10.

## CHAPTER 5.  INCHOATE CRIMES

Section
1  2C:5–1.  Criminal Attempt.
2  2C:5–2.  Conspiracy.
3  2C:5–3.  Incapacity, Irresponsibility or Immunity of Party to
4        Conspiracy.
5  2C:5–4.  Grading of Criminal Attempt and Conspiracy; Mitiga-
6        tion in Cases of Lesser Danger; Multiple Convictions
7        Barred.
8  2C:5–5.  Burglar's Tools.
9  2C:5–6.  Motor Vehicle Master Keys.

1    2C:5–1. Criminal Attempt. a. Definition of attempt. A person
2  is guilty of an attempt to commit a crime if, acting with the kind of
3  culpability otherwise required for commission of the crime, he:
4    (1) Purposely engages in conduct which would constitute the
5  crime if the attendant circumstances were as a reasonable person
6  would believe them to be;
7    (2) When causing a particular result is an element of the crime,
8  does or omits to do anything with the purpose of causing such
9  result without further conduct on his part; or
10   (3) Purposely does or omits to do anything which, under the
11  circumstances as a reasonable person would believe them to be, is

12  an act or omission constituting a substantial step in a course of
13  conduct planned to culminate in his commission of the crime.
14   b. Conduct which may be held substantial step under subsection
15  a. (3). Conduct shall not be held to constitute a substantial step
16  under subsection a. (3) of this section unless it is strongly cor-
17  roborative of the actor's criminal purpose.
18   c. Conduct designed to aid another in commission of a crime.
19  A person who engages in conduct designed to aid another to commit
20  a crime which would establish his complicity under section 2C:2–6
21  if the crime were committed by such other person, is guilty of an
22  attempt to commit the crime, although the crime is not committed
23  or attempted by such other person.
24   d. Renunciation of criminal purpose. When the actor's conduct
25  would otherwise constitute an attempt under subsection a. (2) or
26  (3) of this section, it is an affirmative defense which he must
27  prove by a preponderance of the evidence that he abandoned his
28  effort to commit the crime or otherwise prevented its commission,
29  under circumstances manifesting a complete and voluntary re-
30  nunciation of his criminal purpose. The establishment of such
31  defense does not, however, affect the liability of an accomplice
32  who did not join in such abandonment or prevention.
33   Within the meaning of this chapter, renunciation of criminal
34  purpose is not voluntary if it is motivated, in whole or in part, by
35  circumstances, not present or apparent at the inception of the
36  actor's course of conduct, which increase the probability of detec-
37  tion or apprehension or which make more difficult the accomplish-
38  ment of the criminal purpose. Renunciation is not complete if it
39  is motivated by a decision to postpone the criminal conduct until a
40  more advantageous time or to transfer the criminal effort to an-
41  other but similar objective or victim. Renunciation is also not
42  complete if mere abandonment is insufficient to accomplish avoid-
43  ance of the offense in which case the defendant must have taken
44  further and affirmative steps that prevented the commission
45  thereof.
46  Source: N. J. S. 2A:85–1; 2A:85–5; Model Penal Code: 5.01.

1    2C:5–2. Conspiracy. a. Definition of conspiracy. A person is
2  guilty of conspiracy with another person or persons to commit a
3  crime if with the purpose of promoting or facilitating its commis-
4  sion he:
5    (1) Agrees with such other person or persons that they or one
6  or more of them will engage in conduct which constitutes such
7  crime or an attempt or solicitation to commit such crime; or

8    (2) Agrees to aid such other person or persons in the planning
9   or commission of such crime or of an attempt or solicitation to
10  commit such crime.

11-12  b. Scope of conspiratorial relationship. If a person guilty of
13  conspiracy, as defined by subsection a. of this section, knows that
14  a person with whom he conspires to commit a crime has conspired
15  with another person or persons to commit the same crime, he is
16  guilty of conspiring with such other person or persons, whether
17  or not he knows their identity, to commit such crime.

18  c. Conspiracy with multiple objectives. If a person conspires
19  to commit a number of crimes, he is guilty of only one conspiracy
20  so long as such multiple crimes are the object of the same agree-
21  ment or continuous conspiratorial relationship.

22  d. Overt act. No person may be convicted of conspiracy to com-
23  mit a crime, other than a crime of the first or second degree, unless
24  an overt act in pursuance of such conspiracy is proved to have
25  been done by him or by a person with whom he conspired.

26  e. Renunciation of purpose. It is an affirmative defense which
27  the actor must prove by a preponderance of the evidence that he,
28  after conspiring to commit a crime, informed the authority of the
29  existence of the conspiracy and his participation therein, and
30  thwarted or caused to be thwarted the commission of any offense
31  in furtherance of the conspiracy, under circumstances manifesting
32  a complete and voluntary renunciation of criminal purpose as de-
33  fined in 2C:5–1 (d), provided, however, that an attempt as defined
34  in 2C:5–1 shall not be considered an offense for purposes of re-
35  nunciation under this subsection.

36  f. Duration of conspiracy. For the purpose of section 2C:1–6 d.:
37  (1) Conspiracy is a continuing course of conduct which termi-
38  nates when the crime or crimes which are its object are committed
39  or the agreement that they be committed is abandoned by the de-
40  fendant and by those with whom he conspired; and

41  (2) Such abandonment is presumed if neither the defendant nor
42  anyone with whom he conspired does any overt act in pursuance of
43  the conspiracy during the applicable period of limitation; and

44  (3) If an individual abandons the agreement, the conspiracy is
45  terminated as to him only if and when he advises those with whom
46  he conspired of his abandonment or he informs the law enforce-
47  ment authorities of the existence of the conspiracy and of his
48  participation therein.

49  Source: N. J. S. 2A:85–1; 2A:98–1 amended 1952, c. 91; 2A:98–2;

54

50  C. 2A:98–3 (1961, c. 53, s. 1); C. 2A:98–4 (1961, c. 53, s. 2);
51  Model Penal Code: 5.03.

1  2C:5–3. Incapacity, Irresponsibility or Immunity of Party to
2  Conspiracy. a. In general. Except as provided in subsection b.
3  of this section, it is immaterial to the liability of a person who
4  conspires with another to commit a crime that:

5  (1) He or the person with whom he conspires does not occupy a
6  particular position or have a particular characteristic which is an
7  element of such crime, if he believes that one of them does; or

8  (2) The person with whom he conspires is irresponsible or has
9  an immunity to prosecution or conviction for the commission of
10  the crime.

11  b. Exceptions to subsection **[c.]** ** **a.**: Victims, behavior
12  inevitably incident to the commission of the crime. It is a defense to
13  a charge of conspiracy to commit a crime that if the object of the
14  conspiracy were achieved, the person charged would not be guilty
15  of a crime under the law defining the crime or as an accomplice
16  under section 2C:2–6 c. (1) or (2).

17  Source: Model Penal Code: 5.04.

1  2C:5–4. Grading of Criminal Attempt and Conspiracy; Mitiga-
2  tion in Cases of Lesser Danger; Multiple Convictions Barred.
3  a. Grading. Except as otherwise provided in this section:

4  (1) Attempt is a crime of the same grade and degree as the
5  most serious crime which is attempted; and

6  (2) Conspiracy is a crime of the same grade and degree as the
7  most serious crime which is an object of the conspiracy.

8  An attempt or conspiracy to commit a crime of the first degree
9  is a crime of the second degree.

10  b. Mitigation. The court may impose sentence for a crime of a
11  lower grade or degree if neither the particular conduct charged
12  nor the defendant presents a public danger warranting the grading
13  provided for such crime under subsection a. because:

14  (1) The criminal attempt or conspiracy charged is so inherently
15  unlikely to result or culminate in the commission of a crime; or

16  (2) The conspiracy, as to the particular defendant charged, is
17  so peripherally related to the main unlawful enterprise.

18  Source: N. J. S. 2A:85–5; 2A:98–1 amended 1952, c. 91; 2A:98–2;
19  C. 2A:98–3 (1961, c. 53, s. 1); C. 2A:98–4 (1961, c. 53, s. 2);
20  Model Penal Code: 5.05.

1  2C:5–5. Burglar's Tools. Any person who manufactures or
2  possesses any engine, machine, tool or implement adapted, designed

55

3 or commonly used for committing or facilitating offenses involving
4 forcible entry into premises, larceny by a physical taking, or theft
5 of services
6  a. Knowing the same to be so adapted or designed or commonly
7 used; and
8  b. With either a purpose so to use or employ it, or with a pur-
9 pose to provide it to some person who he knows has such a purpose
10 to use or employ it, is guilty of an offense.
11  The offense is a crime of the fourth degree if the defendant
12 manufactured such instrument or implements; otherwise it is a
13 disorderly persons offense.
14 Source: N. J. S. 2A:94-3; 2A:170-3.

1  2C:5-6. Motor Vehicle Master Keys. a. Any person who know-
2 ingly possesses a motor vehicle master key or device designed to
3 operate a lock or locks on motor vehicles or to start a motor vehicle
4 without an ignition key is guilty of a **[disorderly persons
4A offense]** **crime of the fourth degree**.
5  b. Any person who offers or advertises for sale, sells or gives
6 to any person other than those excepted in subsection c. a motor
7 vehicle master key or device designed to operate a lock or locks
8 on a motor vehicle or to start a motor vehicle without an ignition
9 key is guilty of a **[disorderly persons offense]** **crime of the
9A fourth degree**.
10  c. Subsection a. shall not apply to a law enforcement officer,
11 constable, locksmith or dealer, distributor or manufacturer of
12 motor vehicles or motor vehicle locks, a garage keeper, or **[corpo-
13 rations]** **a person** engaged in the business of lending on the
14 security of motor vehicles, or in the business of acquiring by
15 purchase evidence of debt secured by interests in motor vehicles,
16 and **[their]** **his** employees and agents.
17 Source: C. 2A:170-3.1 to 2A:170-3.3 (Laws of 1971, c. 315).

CHAPTER 6. [RESERVED]

CHAPTER 7. [RESERVED]

CHAPTER 8. [RESERVED]

CHAPTER 9. [RESERVED]

CHAPTER 10. [RESERVED]

SUBTITLE 2. DEFINITION OF SPECIFIC OFFENSES

PART 1. OFFENSES INVOLVING DANGER TO THE PERSON

CHAPTER 11. CRIMINAL HOMICIDE

Section
1 2C:11-1. Definitions.
2 2C:11-2. Criminal Homicide.
3 2C:11-3. Murder.
4 2C:11-4. Manslaughter.
5 2C:11-5. *[Negligent Homicide.]* *Death by Auto.*
6 2C:11-6. Aiding Suicide.

1  2C:11-1. Definitions. In chapters 11 through 14, unless a differ-
2 ent meaning plainly is required:
3  a. "Bodily injury" means physical pain, illness or any impair-
4 ment of physical condition;
5  b. "Serious bodily injury" means bodily injury which creates a
6 substantial risk of death or which causes serious, permanent dis-
7 figurement, or protracted loss or impairment of the function of any
8 bodily member or organ;
9  c. "Deadly weapon" means any firearm or other weapon, device,
10 instrument, material or substance, whether animate or inanimate,
11 which in the manner it is used or is intended to be used, is known
12 to be capable of producing death or serious bodily injury.
13 Source: Model Penal Code: 210.0.

1  2C:11-2. Criminal Homicide. a. A person is guilty **[or]**
2 **of** criminal homicide if he purposely, knowingly, recklessly or,
3 under the circumstances set forth in section 2C:11-5, negligently
4 causes the death of another human being.
5  b. Criminal homicide is murder, manslaughter or *[negligent
6 homicide]* *death by auto*.
7 Source: N. J. S. 2A:113-1 amended 1971, c. 2, s. 7; 2A:113-2
8 amended 1965, c. 212; 2A:113-3; 2A:113-4; 2A:113-5; 2A:113-6;
9 2A:113-7; 2A:113-8; 2A:113-9; Model Penal Code: 210.1.

1  2C:11-3. Murder. a. Except as provided in section 2C:11-4
2 a. (1), criminal homicide constitutes murder when:
3  (1) It is committed purposely; or
4  (2) It is committed knowingly; or
5  (3) It is committed when the actor, acting either alone or with
6 one or more other persons, is engaged in the commission of, or
7 an attempt to commit, or flight after committing or attempting to

8  commit robbery, *[aggravated rape, aggravated sodomy, aggra-
9  vated]* ** *sexual assault,** arson, burglary, kidnapping or crim-
10  inal escape, and in the course of and in furtherance of such crime
11  or of immediate flight therefrom, *[he, or another participant, if
12  there be any,] *any person* causes the death of a person other than
13  one of the participants*[; except that in any prosecution under this
14  subsection, in which the defendant was not the only participant in
15  the underlying crime, it is an affirmative defense that the
15A  defendant:]* **[*.*]** **; except that in any prosecution under
15B  this subsection, in which the defendant was not the only participant
15C  in the underlying crime, it is an affirmative defense that the
15D  defendant:**

16  *[(a) Did not commit the homicidal act or in any way solicit,
17  request, command, importune, cause or aid the commission
18  thereof; and
19  (b) Was not armed with a deadly weapon, or any instrument,
20  article or substance readily capable of causing death or serious
21  physical injury and of a sort not ordinarily carried in public places
22  by law-abiding persons; and
23  (c) Had no reasonable ground to believe that any other par-
24  ticipant was armed with such a weapon, instrument, article or
25  substance; and
26  (d) Had no reasonable ground to believe that any other partici-
27  pant intended to engage in conduct likely to result in death or
28  serious physical injury.]*

28A  **(a) Did not commit the homicidal act or in any way solicit,
28B  request, command, importune, cause or aid the commission thereof;
28C  and
28D  (b) Was not armed with a deadly weapon, or any instrument,
28E  article or substance readily capable of causing death or serious
28F  physical injury and of a sort not ordinarily carried in public places
28G  by law-abiding persons; and
28H  (c) Had no reasonable ground to believe that any other par-
28I  ticipant was armed with such a weapon, instrument, article or
28J  substance; and
28K  (d) Had no reasonable ground to believe that any other partici-
28L  pant intended to engage in conduct likely to result in death or
28M  serious physical injury.**

29  b. Murder is a crime of the first degree but a person convicted
30  of murder may be sentenced by the court to (1) a term of 30 years
31  of which the person must serve 15 years before being eligible for
32  parole or (2) as in a crime of the first degree except that the

33  maximum term for such a crime of the first degree shall be 30 years.
33A  **Nothing contained in this subsection shall prohibit the court from
33B  imposing an extended term pursuant to 2C:43–7 for the crime of
33C  murder.**

34  Source: N. J. S. 2A:113–1 amended 1971, c. 2, s. 7; 2A:113–2
35  amended 1965, c. 212; Model Penal Code: 210.2.

1  2C:11–4. Manslaughter. a. Criminal homicide constitutes man-
2  slaughter when:
3  (1) It is committed recklessly; or
4  (2) A homicide which would otherwise be murder under section
5  2 C:11–3 is committed in the heat of passion resulting from a
6  reasonable provocation.
7  b. Manslaughter is a crime of the second degree.
8  Source: N. J. S. 2A:113–5; Model Penal Code: 210.3.

1  *[2C:11–5. Negligent Homicide. a. Criminal homicide constitutes
2  negligent homicide when it is committed negligently.
3  b. Negligent homicide is a crime of the fourth degree.]*
4  *2C:11–5. Death by Auto. a. Criminal homicide constitutes
5  death by auto when it is caused by driving a vehicle carelessly and
6  heedlessly, in a willful or wanton disregard of the rights or safety
7  of others.
8  b. Death by auto is a crime of the fourth degree.
9  c. For good cause shown the court may, in accepting a plea of
10  guilty under this section, order that such plea not be evidential in
11  any civil proceeding.*
12  Source: N. J. S. 2A:113–9; Model Penal Code: 210.4.

1  2C:11–6. Aiding Suicide. A person who purposely aids another
2  to commit suicide is guilty of a crime of the second degree if his
3  conduct causes such suicide or an attempted suicide, and otherwise
4  of a crime of the fourth degree.
5  Source: Model Penal Code: 210.5.

CHAPTER 12.  ASSAULT; RECKLESS ENDANGERING; THREATS

Section
1  2C:12–1.    Assault.
2  2C:12–2.    Recklessly Endangering Another Person.
3  2C:12–3.    Terroristic Threats.

1  2C:12–1. Assault. a. Simple assault. A person is guilty of
2  assault if he:

3 (1) Attempts to cause or purposely, knowingly or recklessly
4 causes bodily injury to another; or

5 (2) Negligently causes bodily injury to another with a deadly
6 weapon; or

7 (3) Attempts by physical menace to put another in fear of
8 imminent serious bodily injury.

9 Simple assault is a disorderly persons offense unless committed
10 in a fight or scuffle entered into by mutual consent, in which case
11 it is a petty disorderly persons offense.

12 b. Aggravated assault. A person is guilty of aggravated assault
13 if he:

14 (1) Attempts to cause serious bodily injury to another, or causes
15 such injury purposely, knowingly or recklessly under circum-
16 stances manifesting extreme indifference to the value of human
17 life; or

18 (2) Attempts to cause or purposely or knowingly causes bodily
19 injury to another with a deadly weapon; or

20 (3) Recklessly causes bodily injury to another with a deadly
21 weapon; or

22 (4) Knowingly under circumstances manifesting extreme indif-
23 ference to the value of human life points a firearm, as defined in
24 section 2C:39–1 f., at or in the direction of another, whether or
25 not the actor believes it to be loaded; or

26 (5) Commits a simple assault as defined in subsections a. (1) and
27 (2) of this section upon

28 (a) Any law enforcement officer acting in the performance of
29 his duties while in uniform or exhibiting evidence of his authority;
30 or

31 (b) Any paid or volunteer fireman acting in the performance of
32 his duties while in uniform or otherwise clearly identifiable as being
33 engaged in the performance of the duties of a fireman; or

34 (c) Any person engaged in emergency first-aid or medical ser-
35 vices acting in the performance of his duties while in uniform or
36 otherwise clearly identifiable as being engaged in the performance
37 of emergency fire-aid or medical services.

38 Aggravated assault under subsection b. (1) is a crime of the
39 second degree; under subsection b. (2) is a crime of the third
40 degree; under subsection b. (3) and b. (4) is a crime of the fourth
41 degree; and under subsection b. (5) is a crime of the third degree
42 if the victim suffers bodily injury. Otherwise it is a crime of the
43 fourth degree.

60

44 Source: N. J. S. 2A:90–1; 2A:90–2; 2A:90–3; C. 2A:90–4 (1962,
45 c. 39, s. 1 amended 1967, c. 183; 1967, c. 262); N. J. S. 2A:99–1;
46 2A:101–1; 2A:125–1; 2A:129–1; 2A:148–6; 2A:170–26;
47 2A:170–27; Model Penal Code: 211.1.

1 2C:12–2. Recklessly Endangering Another Person. a. A person
2 who purposely or knowingly does any act, including putting up a
3 false light, which results in the loss or destruction of a vessel
4 commits a crime of the third degree.

5 b. A person commits a crime of the fourth degree if he:

6 (1) Manufactures or sells a golf ball containing acid or corrosive
7 fluid substance; or

8 (2) Purposely or knowingly offers, gives or entices any *[child
9 under the age of 16]* *person* to take or accept any treat, candy,
10 gift or food which is poisonous, deleterious or harmful to the health
11 or welfare of such *[child]* *person*.

12 Source: N. J. S. 2A:123–1; 2A:128–1; C. 2A:170–54.2 (1968,
13 c. 324.).

1 2C:12–3. Terroristic Threats. A person is guilty of a crime of
2 the third degree if he threatens to commit any crime of violence
3 with purpose to terrorize another or to cause evacuation of a
4 building, place of assembly, or facility of public transportation, or
5 otherwise to cause serious public inconvenience, or in reckless
6 disregard of the risk of causing such terror or inconvenience.

7 Source: N. J. S. 2A:105–3 amended 1963, c. 152; 2A:113–8;
8 2A:118–2; 2A:170–9 amended 1971, c. 87, s. 1; 2A:170–28;
9 2A:170–29 amended 1965, c. 172; Model Penal Code: 211.3.

CHAPTER 13. KIDNAPPING AND RELATED OFFENSES: COERCION

Section

1 2C:13–1. Kidnapping.
2 2C:13–2. Criminal Restraint.
3 2C:13–3. False Imprisonment.
4 2C:13–4. Interference with Custody.
5 2C:13–5. Criminal Coercion.

1 2C:13–1. Kidnapping. a. Holding for ransom, reward or as a
2 hostage. A person is guilty of kidnapping if he unlawfully removes
3 another from the place where he is found or if he unlawfully con-
4 fines another with the purpose of holding that person for ransom
5 or reward or as a shield or hostage.

61

6   b. Holding for other purposes. A person is guilty of kidnapping
7 if he unlawfully removes another from his place of residence or
8 business, or a substantial distance from the vicinity where he is
9 found, or if he unlawfully confines another for a substantial period,
10 with any of the following purposes:

11   (1) To facilitate commission of any crime or flight thereafter;

12   (2) To inflict bodily injury on or to terrorize the victim or
13 another; or

14   (3) To interfere with the performance of any governmental or
15 political function.

16   c. Graduation of kidnapping. *[Kidnapping is a crime of the
17 first degree unless the actor voluntarily releases the victim un-
18 harmed and in a safe place prior to apprehension, in which case it
19 is a crime of the second degree.]* *Unless the actor releases the
19A victim unharmed and in a safe place prior to apprehension, in which
19B case it is a crime of the second degree, kidnapping is a crime of the
19C first degree except that a person convicted of kidnapping as a
19D crime of the first degree, may be sentenced to an ordinary term of
19E imprisonment of between 15 years and 30 years.*

20   d. "Unlawful" removal or confinement. A removal or confine-
21 ment is unlawful within the meaning of this section and of sections
22 2C:13-2 and 3 if it is accomplished by force, threat or deception,
23 or, in the case of a person who is under the age of 14 or is incom-
24 petent, if it is accomplished without the consent of a parent,
25 guardian or other person responsible for general supervision of
26 his welfare.

27 Source: N. J. S. 2A:118-1; Model Penal Code: 212.1.

1   2C:13-2. Criminal Restraint. A person commits a crime of the
2 third degree if he knowingly:

3   a. Restrains another unlawfully in circumstances exposing the
4 other to risk of serious bodily injury; or

5   b. Holds another in a condition of involuntary servitude.

6   The creation by the actor of circumstances resulting in a belief
7 by another that he must remain in a particular location shall for
8 purposes of this section be deemed to be a holding in a condition
9 of involuntary servitude.

10   In any prosecution under subsection b., it is an affirmative defense
11 that the person held was a child less than 18 years old and the
12 actor was a relative or legal guardian of such child and his sole
13 purpose was to assume control of such child.

14 Source: N. J. S. 2A:133-3; 2A:133-4; 2A:133-5; 2A:133-6;

15   2A:133-7; 2A:133-8; 2A:133-9; 2A:133-10; 2A:133-11;
16   2A:133-12; Model Penal Code: 212.2.

1   2C:13-3. False Imprisonment. A person commits a disorderly
2 persons offense if he knowingly restrains another unlawfully so as
3 to interfere substantially with his liberty. In any prosecution
4 under this section, it is an affirmative defense that the person
5 restrained was a child less than eighteen years old and that the
6 actor was a relative of such child and that his sole purpose was to
7 assume control of such child.

8 Source: N. J. S. 2A:85-1; Model Penal Code: 212.3.

1   2C:13-4. Interference With Custody. a. Custody of **[childen]**
2 **children**. A person commits an offense if he knowingly takes or
3 entices any child under the age of 18 from the custody of its parent,
4 guardian or other lawful custodian, when he has no privilege to
5 do so**, or he does so in violation of a court order**. It is an
5A affirmative defense that:

6   (1) The actor believed that his action was necessary to preserve
7 the child from danger to its welfare; or

8   (2) The child, being at the time not less than 14 years old, was
9 taken away at its own volition and without purpose to commit a
10 criminal offense with or against the child.

11   Proof that the child was below the critical age gives rise to a
12 presumption that the actor knew the child's age.

13   The offense is a crime of the fourth degree if the actor is neither
14 a parent of or person in equivalent relation to the child and if he
15 acted with knowledge that his conduct would cause serious alarm
16 for the child's safety or in reckless disregard of a likelihood of
17 causing such alarm. In all other cases it is a disorderly persons
18 offense.

19   b. Custody of committed persons. A person is guilty of a crime
20 of the fourth degree if he knowingly takes or entices any committed
21 person away from lawful custody when he is not privileged to do
22 so. "Committed person" means, in addition to anyone committed
23 under judicial warrant, any orphan, neglected or delinquent child,
24 mentally defective or insane person, or other dependent or incom-
25 petent person entrusted to another's custody by or through a
26 recognized social agency or otherwise by authority of law.

27 Source: N. J. S. 2A:86-3; Model Penal Code: 212.4.

1   2C:13-5. Criminal Coercion. a. Offense defined. A person is
2 guilty of criminal coercion if, with purpose unlawfully to restrict
3 another's freedom of action to engage or refrain from engaging in
4 conduct, he threatens to:

5   (1) Inflict bodily injury on anyone or commit any other offense;

6   (2) Accuse anyone of an offense;

7   (3) Expose any secret which would tend to subject any person
8   to hatred, contempt or ridicule, or to impair his credit or business
9   repute;

10   (4) Take or withhold action as an official, or cause an official to
11   take or withhold action;

12   (5) Bring about or continue a strike, boycott or other collective
13   action, except that such a threat shall not be deemed coercive when
14   the restriction compelled is demanded in the course of negotiation
15   for the benefit of the group in whose interest the actor acts;

16   (6) Testify or provide information or withhold testimony or
17   information with respect to another's legal claim or defense; or

18   (7) Perform any other act which would not in itself substantially
19   benefit the actor but which is calculated to substantially harm
20   another person with respect to his health, safety, business, calling,
21   career, financial condition, reputation or personal relationships.

22   It is an affirmative defense to prosecution based on paragraphs
23   (2), (3), (4), (6) and (7) that the actor believed the accusation or
24   secret to be true or the proposed official action justified and that
25   his purpose was limited to compelling the other to behave in a way
26   reasonably related to the circumstances which were the subject of
27   the accusation, exposure or proposed official action, as by desisting
28   from further misbehavior, making good a wrong done, or refrain-
29   ing from taking any action or responsibility for which the actor
30   believes the other disqualified.

31   b. Grading. Criminal coercion is a crime of the fourth degree
32   unless the threat is to commit a crime more serious than one of the
33   fourth degree or the actor's purpose is criminal, in which cases the
34   offense is a crime of the third degree.

35   Source: N. J. S. 2A:105-3 amended 1963, c. 152; C. 2A:105-5
36   (1968, c. 83); Model Penal Code: 212.5.

CHAPTER 14.   SEXUAL OFFENSES

*[Section
1   2C:14-1.   Rape.
2   2C:14-2.   Sodomy and Related Offenses.
3   2C:14-3.   Corruption of Minors and Seduction.
4   2C:14-4.   Sexual Assault.
5   2C:14-5.   Provisions Generally Applicable to Chapter 14.]*

*Section
6   2C:14-1.   Definitions.
7   2C:14-2.   Sexual Assault.
8   2C:14-3.   Criminal Sexual Contact.
9   2C:14-4.   **[Criminal Exposure.]** **Lewdness.**
10   2C:14-5.   Provisions Generally Applicable to Chapter 14.
11   2C:14-6.   Sentencing.
12   2C:14-7.   Admissibility of Evidence.

1   *[2C:14-1. Rape. a. Aggravated rape. Any person who has
2   sexual intercourse with another not his spouse, is guilty of aggra-
3   vated rape if:

4   (1) He compels the other person to submit by force or by threat
5   of imminent death, serious bodily injury, extreme pain or kid-
6   napping, to be inflicted on such other person or on any third
7   person; or

8   (2) He has substantially impaired the other person's power to
9   appraise or control his conduct by administering or employing,
10   without the knowledge of such other person, drugs, intoxicants or
11   other means for the purpose of preventing resistance; or

12   (3) The other person is unconscious; or

13   (4) The other person is less than 12 years old.

14   Aggravated rape is a crime of the first degree if (a) in the course
15   thereof the actor inflicts serious bodily injury upon anyone, or (b)
16   the victim was not a voluntary social companion of the actor upon
17   the occasion of the crime and had not previously permitted him
18   sexual liberties. Otherwise the offense is a crime of the second
19   degree. Sexual intercourse includes intercourse per os or per anum
20   with some penetration, however slight; emission is not required.

21   b. Rape. Any person who has sexual intercourse with another
22   not his spouse, commits a crime of the third degree if:

23   (1) He compels the other person to submit by any threat that
24   would prevent resistance by a person of ordinary resolution; or

25   (2) He knows that the other person suffers from a mental
26   disease or defect which renders that person incapable of appraising
27   the nature of his conduct; or

28   (3) He knows that the other person is unaware that a sexual
29   act is being committed or that the other person submits because
30   that person mistakenly supposes that the actor is his spouse.

31   c. It is an affirmative defense to prosecution under this section
32   that the actor believed he was the spouse of the other person at
33   the time of the act.]*

34   *2C:14–1.   *Definitions.   The following definitions apply to this*
35 *chapter:*

36   *a. "Actor" means a person accused of an offense proscribed*
37 *under this act;*

38   *b. "Victim" means a person alleging to have been subjected to*
39 *offenses proscribed by this act;*

40   *c. "Sexual penetration" means vaginal intercourse, cunnilingus,*
41 *fellatio or anal intercourse between persons or insertion of the*
42 *hand, finger or object into the anus or vagina either by the actor or*
43 *upon the actor's instruction. The depth of insertion shall not be*
44 *relevant as to the question of commission of the crime;*

45   *d. "Sexual contact" means an intentional touching by the*
46 *victim or actor, either directly or through clothing, of the victim's*
47 *or actor's intimate parts for the purpose of degrading or humiliat-*
48 *ing the victim or sexually arousing or sexually gratifying the actor.*
49 *Sexual contact of the actor with himself must be in view of the*
50 *victim whom the actor knows to be present;*

51   *e. "Intimate parts" means the following body parts: sexual*
52 *organs, genital area, anal area, inner thigh, groin, buttock or breast*
53 *of a person;*

54   *f. "Severe personal injury" means severe bodily injury, dis-*
55 *figurement, disease, incapacitating mental anguish or chronic pain;*

56   *g. "Physically helpless" means that condition in which a person*
57 *is unconscious or is physically unable to flee or is physically unable*
58 *to communicate unwillingness to act;*

59   *h. "Mentally defective" means that condition in which a person*
60 *suffers from a mental disease or defect which renders that person*
61 *temporarily or permanently incapable of appraising the nature of*
62 *his conduct;*

63   *i. "Mentally incapacitated" means that condition in which a*
64 *person is rendered temporarily incapable of appraising or con-*
65 *trolling his conduct due to the influence of a narcotic, anesthetic,*
66 *intoxicant, or other substance administered to that person without*
67 *his prior knowledge or consent, or due to any other act committed*
68 *upon that person which rendered that person incapable of apprais-*
69 *ing or controlling his conduct;*

70   *j. "Coercion" as used in this chapter shall refer to those acts*
71 *which are defined as criminal coercion in section 2C:13–5(1), (2),*
72 *(3), (4), (6) and (7).*

73 Source: N. J. S. 2A:138–1 amended 1952, c. 94; 2A:138–2; Model
74   Penal Code: 213.1.

66

---

1   *[2C:14–2. Sodomy and Related Offenses. a. Aggravated*
2 *Sodomy. A person who engages in deviate sexual conduct or who*
3 *causes another to engage in deviate sexual conduct, is guilty of*
3A aggravated sodomy if:

4   (1) He compels the other person to participate by force or by
5 threat of imminent death, serious bodily injury, extreme pain or
6 kidnapping, to be inflicted on anyone; or

7   (2) He has substantially impaired the other person's power to
8 appraise or control his conduct, by administering or employing
9 without the knowledge of the other person drugs, intoxicants or
10 other means for the purpose of preventing resistance; or

11   (3) The other person is less than 12 years old.

12   Aggravated sodomy is a crime of the first degree if (a) in the
13 course thereof the actor inflicts serious bodily injury upon any-
14 one, or (b) the victim was not a voluntary social companion of
15 the actor upon the occasion of the crime and had not previously
16 permitted the actor sexual liberties. Otherwise it is a crime of the
17 second degree.

18   For purposes of this chapter, deviate sexual conduct includes
19 sexual intercourse per os or per anum between persons who are
20 not husband and wife.

21   b. Sodomy. A person who engages in deviate sexual conduct
22 with another person, or who causes another to engage in deviate
23 sexual conduct, commits a crime of the third degree if:

24   (1) He compels the other person to participate by any threat
25 that would prevent resistance by a person of ordinary resolution;
26 or

27   (2) He knows that the other person suffers from a mental
28 disease or defect which renders him incapable of appraising the
29 nature of his conduct; or

30   (3) He knows that the other person submits because he is
31 unaware that a sexual act is being committed upon him.

32   c. Sexual contact with a human dead body. A person who
33 knowingly engages in sexual contact, as defined in section 2C:14–4,
34 with a human dead body is a disorderly person.]*

35   **2C:14–2. a. Sexual Assault. a. An actor is guilty of aggravated*
36 *sexual assault if he commits an act of sexual penetration with*
37 *another person under any one of the following circumstances:*

38   *(1) The victim is less than 13 years old and the actor is at least*
39 *4 years older than the victim** [.]** **;**

40   *(2) The victim is at least 13 but less than 16 years old and*

67

41    *(a) The actor is related to the victim by blood or affinity to the*
42 *third degree, or*

43    *(b) The actor has supervisory or disciplinary power over the*
44 *victim by virtue of the actor's legal, professional, or occupational*
45 *status, or*

46    *(c) The actor is a foster parent, a guardian, or stands in loco*
47 *parentis within the household;*

48    *(3) The act is committed during the commission, or attempted*
49 *commission, whether alone or with one or more other persons, of*
50 *robbery, kidnapping, homicide,* **[***atrocious assault and bat-*
51 *tery*]** **, *aggravated assault*** *on another, breaking and enter-*
51A *ing, burglary, arson or criminal escape;*

52    *(4) The actor is armed with a weapon or any object fashioned*
53 *in such a manner as to lead the victim to reasonably believe it to be*
54 *a weapon and threatens by word or gesture to use the weapon or*
55 *object;*

56    *(5) The actor is aided or abetted by one or more other persons*
57 *and either of the following circumstances exists:*

58    *(a) The actor uses physical force or coercion, or*

59    *(b) The victim is one whom the actor knew or should have*
60 *known was physically helpless, mentally defective or mentally in-*
61 *capacitated;*

62    *(6) The actor uses physical force or coercion and severe personal*
63 *injury is sustained by the victim.*

64    *Aggravated sexual assault is a crime of the first degree.*

65    *b. An actor is guilty of sexual assault if he commits an act of*
66 *sexual contact with a victim who is less than 13 years old and at*
67 *least 4 years younger than the actor, or if the actor commits an act*
68 *of sexual penetration with another person under any one of the*
69 *following circumstances:*

70    *(1) The actor uses physical force***[.]** *or coercion***,** *but*
71 *the victim does not sustain severe personal injury***;*** 

72    *(2) The victim is one whom the actor knew or should have*
73 *known was physically helpless, or mentally incapacitated;*

74    *(3) The victim is on probation or parole, or is detained in a*
75 *hospital, prison or other institution or is mentally defective, and*
76 *the actor has supervisory or disciplinary power over the victim*
77 *by virtue of the actor's legal, professional or occupational status;*

78    *(4) The victim is at least 16 but less than 18 years old and the*
79 *actor is a member of the victim's household with supervisory or*
80 *disciplinary power over the victim.*

81    *Sexual assault is a crime of the second degree.**

82 Source: N. J. S. 2A:143–1; 2A:143–2; Model Penal Code: 213.2.

1    *[2C:14–3. Corruption of Minors and Seduction. a. Offense de-
2 fined. Any person who has sexual intercourse with another not
3 his spouse, or any person who engages in deviate sexual conduct,
4 or causes another to engage in deviate sexual conduct, is guilty
5 of an offense if:

6    (1) He is at least 4 years older than the other person and such
7 other person is less than 16 years old; or

8    (2) He is the guardian of the other person or is otherwise re-
9 sponsible for the general supervision of his welfare and such other
10 person is less than 18 years old; or

11    (3) He has supervisory or disciplinary authority over the other
12 person and such other person is in custody of law or detained in
13 a hospital or other institution.

14    b. Grading. An offense under subsection a. (1) is a crime of the
15 third degree. Otherwise an offense under this section is a crime
16 of the fourth degree.]**

17    *2C:14–3. Criminal Sexual Contact. a. An actor is guilty of*
18 *aggravated criminal sexual contact if he commits an act of sexual*
19 *contact with the victim under any of the circumstances set forth*
20 *in 2C:14–2a.* **[***(1)*]** ** *(2)*** *through (6).*

21    *Aggravated criminal sexual contact is a crime of the third degree.*

22    *b. An actor is guilty of criminal sexual contact if he commits an*
23 *act of sexual contact with the victim under any of the circumstances*
24 *set forth in section 2C:14–2b. (1)-(4).*

25    *Criminal sexual contact is a crime of the fourth degree.**

26 Source: N. J. S. 2A:138–1 amended 1952, c. 94; 2A:138–2; N. J. S.
27    2A:143–2; Model Penal Code: 213.3.

1    *[2C:14–4. Sexual Assault. A person who has sexual contact with
2 another not his spouse, or causes such other to have sexual contact
3 is guilty of sexual assault if:

4    a. He knows that the contact is offensive to the other person; or
5    b. Under the circumstances he should have known that such
6 contact would be offensive to the other person; or
7    c. He knows that the other person suffers from a mental disease
8 or defect which renders him or her incapable of appraising the
9 nature of his or her conduct; or
10    d. He knows that the other person is unaware that a sexual act
11 is being committed; or
12    e. The other person is less than 12 years old; or

f. He has substantially impaired the other person's power to appraise or control his or her conduct, by administering or employing without the other's knowledge drugs, intoxicants or other means for the purpose of preventing resistance; or

g. The other person is less than 16 years old and the actor is at least 4 years older than the other person; or

h. The other person is less than 18 years old and the actor is his guardian or otherwise responsible for general supervision of his welfare; or

i. The other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over him.

Sexual assault under subsection e. is a crime of the third degree. Sexual assault under subsections f. and g. is a crime of the fourth degree. Otherwise, it is a disorderly persons offense.

Sexual contact is any touching of the human genitals, pubic region, or female breast of another person.

Source: Model Penal Code: 213.4.]*

**[*2C:14–4. Criminal Exposure. A person who exposes his genitals under circumstances not covered elsewhere in the code and under circumstances in which he knows his conduct is likely to cause affront or alarm is a disorderly person.*]**

**[*2C:14–4. Lewdness. A person commits a disorderly persons offense if he does any flagrantly lewd and offensive act which he knows or reasonably expects is likely to be observed by other non-consenting persons who would be affronted or alarmed. "Lewd acts" shall include the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or of any other person.*]**

[2C:14–5. Provisions Generally Applicable to Chapter 14. a. Mistake as to age. Whenever in this chapter the criminality of conduct depends on a child's being below the age of 12, it is no defense that the actor did not know the child's age, or reasonably believed the child to be older than 12. When criminality depends on the child's being below a critical age other than 12, it is a defense that the actor to prove by a preponderance of evidence that he reasonably believed the child to be above the critical age.

b. Spouse relationships. Whenever in this chapter the definition of an offense excludes conduct with a spouse, the exclusion shall be deemed to extend to persons living as man and wife, regardless of the legal status of their relationship. The exclusion shall be inoperative as respects spouses living apart in a state of legal separation or for a period of more than 18 months. Where the definition of an offense excludes conduct with a spouse this shall not preclude conviction of a spouse as accomplice in a sexual act which he causes another person, not within the exclusion to perform.

Source: Model Penal Code: 213.6.]*

*2C:14–5. Provisions Generally Applicable to Chapter 14.

a. The prosecutor shall not be required to offer proof that the victim resisted, or resisted to the utmost, or reasonably resisted the sexual assault in any offense proscribed by this **[act]** **chapter**.

b. No actor shall be presumed to be incapable of committing a crime under this **[act]** **chapter** because of age or impotency or marriage to the victim.

c. It shall be no defense to a prosecution for a crime under this **[act]** **chapter** that the actor believed the victim to be above the age stated for the offense, even if such a mistaken belief was reasonable.

2C:14–6. Sentencing. If a person is convicted of a second or subsequent offense under sections 2C:14–2 or 2C:14–3a., the sentence imposed under those sections for the second or subsequent offense shall, unless the person is sentenced pursuant to the provisions of 2C:43–7, include a fixed minimum sentence of not less than 5 years during which the defendant shall not be eligible for parole. The court may not suspend or make any other non-custodial disposition of any person sentenced as a second or subsequent offender pursuant to this section. For the purpose of this section an offense is considered a second or subsequent offense, if the actor has at any time been convicted under sections 2C:14–2 or **[2C:14–3a.]** **2C:14–3a.** or under any similar statute of the United States, this state, or any other state for an offense that is substantially equivalent to sections 2C:14–2 or 2C:14–3a.

2C:14–7. Admissibility of Evidence.

a. In prosecutions for aggravated sexual assault, sexual assault, aggravated criminal sexual contact, or criminal sexual contact, evidence of the victim's previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury except as provided in this **[act]** **section**. When the defendant seeks to admit such evidence for any purpose he must apply for an order of the court before the trial or preliminary hearing, except

52 *that the court may allow the motion to be made during trial if the*
53 *court determines that the evidence is newly discovered and could*
54 *not have been obtained earlier through the exercise of due diligence.*
55 *After the application is made, the court shall conduct a hearing*
56 *in camera to determine the admissibility of the evidence. If the*
57 *court finds that evidence offered by the defendant regarding the*
58 *sexual conduct of the victim is relevant and that the probative*
59 *value of the evidence offered is not outweighed by its collateral*
60 *nature or the probability that its admission will create undue*
61 *prejudice, confusion of the issues, or unwarranted invasion of the*
62 *privacy of the victim, the court shall enter an order setting forth*
63 *with specificity what evidence may be introduced and the nature*
64 *of the questions which shall be permitted, and the reasons why the*
65 *court finds that such evidence satisfies the standards contained*
66 *in this ** [chapter]** ** section**. The defendant may then offer*
66A *evidence under the order of the court.*
67 *b. In the absence of clear and convincing proof to the contrary,*
68 *evidence of the victim's sexual conduct occurring more than 1 year*
69 *before the date of the offense charged is presumed to be inadmis-*
70 *sible under this ** [chapter]** ** section**.*
71 *c. Evidence of previous sexual conduct shall not be considered*
72 *relevant unless it is material to negating the element of force or*
73 *coercion or to proving that the source of semen, pregnancy or*
74 *disease is a person other than the defendant. For the purposes of*
75 *this ** [chapter]** ** section**, "sexual conduct" shall mean any*
76 *conduct or behavior relating to sexual activities of the victim,*
77 *including but not limited to previous or subsequent experience of*
78 *sexual penetration or sexual contact, use of contraceptives, living*
79 *arrangement and life style.\**

CHAPTER 15.  [RESERVED]

CHAPTER 16.  [RESERVED]

PART 2.  OFFENSES AGAINST PROPERTY

CHAPTER 17.  ARSON, CRIMINAL MISCHIEF,
AND OTHER PROPERTY DESTRUCTION

Section
1  2C:17-1.  Arson and Related Offenses.
2  2C:17-2.  Causing or Risking Widespread Injury or Damage.
3  2C:17-3.  Criminal Mischief.
4  2C:17-4.  Endangering Pipes Transmitting Certain Gases.
5  2C:17-5.  Damage to Pipes During Excavation or Discharge.

72

1  2C:17-1. Arson and Related Offenses. a. Aggravated arson.
2  A person is guilty of aggravated arson, a crime of the second
3  degree, if he starts a fire or causes an explosion, whether on his
4  own property or another's:
5  (1) Thereby purposely or knowingly placing another person in
6  danger of death or bodily injury;
7  (2) With the purpose of destroying a building or occupied struc-
8  ture of another; or
9  (3) With the purpose of collecting insurance for the destruction
10 or damage to such property under circumstances which recklessly
11 place any other person in danger of death or bodily injury.
12 b. Arson. A person is guilty of arson, a crime of the third
13 degree, if he purposely starts a fire or causes an explosion, whether
14 on his own property or another's:
15 (1) Thereby recklessly placing another person in danger of
16 death or bodily injury; or
17 (2) Thereby recklessly placing a building or occupied structure
18 of another in danger of damage or destruction; or
19 (3) With the purpose of collecting insurance for the destruction
20 or damage to such property.
21 c. Failure to control or report dangerous fire. A person who
22 knows that a fire is endangering life or a substantial amount of
23 property of another and fails to take reasonable measure to put
24 out or control the fire, when he can do so without substantial risk
25 to himself, or to give prompt fire alarm, commits a crime of the
26 fourth degree if:
27 (1) He knows that he is under an official, contractual, or other
28 legal duty to prevent or combat the fire; or
29 (2) The fire was started, albeit lawfully, by him or with his
30 assent, or on property in his custody or control.
31 ** *d. Any person who, directly or indirectly, pays or accepts any*
32 *form of consideration including, but not limited to, money or any*
33 *other pecuniary benefit, for the purpose of starting a fire or*
34 *causing an explosion in violation of this section commits a crime*
35 *of the first degree.***
36 ** [d.]** ** e.** Definitions. "Occupied structure" is defined in
37 section 2C:18-1. Property is that of another, for the purpose of
38 this section, if anyone other than the actor has a possessory or
39 proprietary interest therein. If a building or structure is divided
40 into separately occupied units, any unit not occupied by the actor
41 is an occupied structure of another.
42 Source: N. J. S. 2A:89-1; 2A:89-2; 2A:89-3; 2A:89-4; 2A:89-5;
43 2A:89-6; Model Penal Code: 220.1.

73

2C:17-2. Causing or Risking Widespread Injury or Damage. a. A person who purposely or knowingly causes an explosion, fire, flood, avalanche, collapse of a building, release of poison gas, radioactive material or any other harmful or destructive substance or otherwise causes widespread injury or damage, commits a crime of the second degree.

b. A person who recklessly causes widespread injury or damage is guilty of a crime of the third degree.

c. A person who recklessly creates a risk of widespread injury or damage commits a crime of the fourth degree even if no such injury or damage occurs.

d. A person who knowingly or recklessly fails to take reasonable measures to prevent or mitigate widespread injury or damage commits a crime of the fourth degree if:

(1) He knows that he is under an official, contractual or other legal duty to take such measures; or

(2) He did or assented to the act causing or threatening the injury or damage.

e. For purposes of this section, widespread injury or damage means serious bodily injury to 10 or more people or damage to 10 or more habitations or to a building which would normally have contained 50 or more persons at the time of the offense.

Source: N. J. S. 2A:122-9; C. 2A:170-69.4 (1964, c. 53, s. 1); C. 2A:170-69.5 (1964, c. 53, s. 2); C. 2A:170-69.6 (1954, c. 53, s. 3); Model Penal Code: 220.2.

2C:17-3. Criminal Mischief. a. Offense defined. A person is guilty of criminal mischief if he:

(1) Damages tangible property of another purposely, recklessly, or negligently in the employment of fire, explosives, or other dangerous means listed in section 2C:17-2a; or

(2) Purposely or recklessly tampers with tangible property of another so as to endanger person or property.

b. Grading. Criminal mischief is a crime of the third degree if the actor purposely causes pecuniary loss in excess of $2,000.00, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service. It is a crime of the fourth degree if the actor causes pecuniary loss in excess of $500.00, or a disorderly persons offense if he causes pecuniary loss of less than $500.00.

Source: N. J. S. 2A:122-1; 2A:122-2; 2A:122-3; 2A:122-4;

2A:122-5; 2A:122-6; 2A:122-7; 2A:122-8; 2A:122-9; C. 2A:122-10 (1960, c. 5); C. 2A:122-12 (1967, c. 72); N. J. S. 2A:170-32; 2A:170-33 amended 1954, c. 16, s. 1; 2A:170-34; 2A:170-35; 2A:170-36; 2A:170-37; 2A:170-39; 2A:170-93; Model Penal Code: 220.3.

2C:17-4. Endangering Pipes Transmitting Certain Gases. a. A person who discharges explosives in the ground within a distance of 200 feet of any pipe distributing or transmitting manufactured, mixed or natural gas, or synthetic natural gas, liquefied natural gas or propane gas, or who excavates in a street, highway, or public place, or on private property, without having first ascertained whether any such pipe is located within 200 feet of the place of discharge or excavation, is guilty of a disorderly persons offense.

The term "excavate" shall not include the opening of the surface and the disturbance of the subsoil thereunder of any street, highway, public place or private property for the purpose of installing or replacing poles and their appurtenances used or to be used in connection with the supplying to the public of electricity for light, heat or power or of communication services. This section shall not apply to any work performed by or on behalf of the New Jersey Department of Transportation, New Jersey Highway Authority or New Jersey Turnpike Authority or by any person excavating with nonpowered hand tools on private property to a depth not to exceed 18 inches.

b. To ascertain whether such pipes are within 200 feet of the proposed discharge or excavation, the person responsible for such discharge or excavation shall serve a written notice of intention at least 3 full working days (excluding Saturdays, Sundays and holidays) prior to the discharge of explosives or commencement of any excavation on the person engaged in the distribution or transmission of manufactured, mixed or natural gas in the area. The said written notice of intention shall be served personally or by registered or certified mail, return receipt requested, on the person so engaged in the transmission or distribution of the aforesaid gases and shall contain the name of the person responsible, the date, place and type of discharge or excavation to be conducted. Service of a single notice of intention shall constitute compliance with this section when the discharge of explosives or the excavations take place on more than one day provided either or both are part of a single continuing project. Within 3 days after receipt of such notice of intention, the person engaged in the distribution or transmission of the aforesaid gases shall advise

39 the person named in the notice of the location of all such pipes
40 within 200 feet of the place of discharge or place of excavation.

41 c. It shall be an affirmative defense to prosecution under this
42 section that:

43 (1) There was an emergency involving danger to life, health or
44 property, the excavation was done without using explosives, and
45 such notice and reply were given as soon as reasonably possible; or

46 (2) There was an emergency involving an immediate and sub-
47 stantial danger of death or serious personal injury, and the dis-
48 charge of explosives in the ground was done only after notice and
49 reply were given.

50 d. A public utility engaged in supplying electricity for light,
51 heat or power or in furnishing communication services may enter
52 into a written agreement with a person engaged in the distribution
53 or transmission of manufactured, mixed or natural gas, or syn-
54 thetic natural gas, liquefied natural gas or propane gas with
55 respect to the securing of information as to the location of its
56 transmission or distribution pipes within any private place in
57 order to ascertain whether pipes are within 200 feet of the proposed
58 excavation in lieu of the 3-day written notification.

59 e. No person who proposes to excavate or discharge explosives
60 shall be issued a building permit, street opening permit or other
61 permit for such excavation or discharge of explosives until he
62 presents satisfactory proof to the issuing authority in the form of
63 a written statement that he has complied with the requirements of
64 this section. Upon issuance of such permit or permits the person
65 proposing to excavate or discharge explosives shall be provided
66 with a placard not less than 8½ inches by 11 inches by the issuing
67 authority which shall be prominently displayed at the site of the
68 excavation or discharge of explosives, clearly indicating that such
69 permit or permits have been issued and that the holder thereof
70 has complied with this section.

71 Source: C. 2A:170-69.4 (1964, c. 53, s. 1).

1 2C:17-5. Damage to Pipes During Excavation or Discharge.
2 Any excavation or discharge within 200 feet of a pipe distributing
3 or transmitting manufactured, mixed or natural or synthetic
4 natural gas, liquefied natural gas or propane gas, shall be per-
5 formed in such manner as to avoid damage to any such pipe.
6 In the event that damage does occur, the person performing the
7 excavation or discharge shall immediately notify the person who is
8 distributing or transmitting manufactured, mixed or natural gas,
9 or synthetic natural gas, liquefied natural gas or propane gas in

76

10 the area. Any person who fails to do so is guilty of a disorderly
11 persons offense.

12 Source: C. 2A:170-69.5 (1964, c. 53, s. 2); C. 2A:170-69.6 (1964,
13 c. 53, s. 3).

CHAPTER 18. BURGLARY AND OTHER CRIMINAL INTRUSION

Section
1 2C:18-1. Definition.
2 2C:18-2. Burglary.
3 2C:18-3. Criminal Trespass.

1 2C:18-1. Definition. In this chapter, unless a different meaning
2 plainly is required, "occupied structure" means any structure,
3 vehicle*, boat, airplane* or place adapted for overnight accommo-
4 dation of persons, or for carrying on business therein, whether or
5 not a person is actually present.

6 Source: Model Penal Code: 221.0.

1 2C:18-2. Burglary. a. Burglary defined. A person is guilty of
2 burglary if, with purpose to commit an offense therein he:

3 (1) Enters a building or occupied structure, or a separately
4 secured or occupied portion thereof, unless the premises are at the
5 time open to the public or the actor is licensed or privileged to
6 enter; or

7 (2) Surreptitiously remains in a building or occupied structure
8 or a separately secured or occupied portion thereof knowing that
9 he is not licensed or privileged to do so.

10 It is an affirmative defense to prosecution for burglary that the
11 building or structure was abandoned.

12 b. Grading. Burglary is a crime of the second degree if in the
13 course of committing the offense, the actor:

14 (1) Purposely, knowingly or recklessly inflicts, attempts to in-
15 flict or threatens to inflict bodily injury on anyone; or

16 (2) Is armed with or displays what appears to be explosives or
17 a deadly weapon.

18 Otherwise burglary is a crime of the third degree if the defend-
19 ant's purpose was to commit a crime and is a crime of the fourth
20 degree if the defendant's purpose was to commit a disorderly per-
21 son's offense. An act shall be deemed "in the course of committing"
22 an offense if it occurs in an attempt to commit an offense or in
23 immediate flight after the attempt or commission.

24 *[c. Multiple convictions. A person may not be convicted both for
25 burglary and for the offense which it was his purpose to commit

77

26 after the burglarious entry or for an attempt to commit that
26A offense.]*

27 Source: N. J. S. 2A:94–1; 2A:94–2; 2A:170–3; Model Penal Code:
28 221.1.

1   2C:18–3. Criminal Trespass. a. Buildings and occupied struc-
2 tures. A person commits an offense if, knowing that he is not
3 licensed or privileged to do so, he enters or surreptitiously remains
4 in any building or occupied structure, or separately secured or
5 occupied portion thereof. An offense under this subsection is a
6 crime of the fourth degree if it is committed in a dwelling. Other-
7 wise it is a disorderly persons offense.

8   b. Defiant trespasser. A person commits a petty disorderly
9 persons offense if, knowing that he is not licensed or privileged
10 to do so, he enters or remains in any place as to which notice against
11 trespass is given by:

12   (1) Actual communication to the actor; or

13   (2) Posting in a manner prescribed by law or reasonably likely
14 to come to the attention of intruders; or

15   (3) Fencing or other enclosure manifestly designed to exclude
16 intruders.

17   c. Defenses. It is an affirmative defense to prosecution under
18 this section that:

19   (1) A building or occupied structure involved in an offense
20 under subsection a. was abandoned.

21   (2) The premises were at the time open to members of the public
22 and the actor complied with all lawful conditions imposed on access
23 to or remaining in the premises; or

24   (3) The actor reasonably believed that the owner of the premises,
25 or other person empowered to license access thereto, would have
26 licensed him to enter or remain.

27 Source: N. J. S. 2A:170–31; C. 2A:170–31.1 (1956, c. 185); N. J. S.
28 2A:170–33 amended 1954, c. 16, s. 1; 2A:170–34; 2A:170–58;
29 2A:170–59 amended 1965, c. 68; 1972, c. 140.

### CHAPTER 19. ROBBERY

Section

1   2C:19–1. Robbery.

1   2C:19–1. Robbery. a. Robbery defined. A person is guilty of
2 robbery if, in the course of committing a theft, he:

3   (1) Inflicts bodily injury upon another;

4   (2) Threatens another with or purposely puts him in fear of
5 immediate bodily injury; or

6   (3) Commits or threatens immediately to commit any crime of
7 the first or second degree.

8   An act shall be deemed "in the course of committing a theft"
9 if it occurs in an attempt to commit theft or in immediate flight
10 after the attempt or commission.

11   b. Grading. Robbery is a crime of the second degree, except
12 that it is a crime of the first degree if in the course of committing
13 the theft the actor attempts to kill anyone, or purposely inflicts or
14 attempts to inflict serious bodily injury, or is armed with, or uses
15 or threatens the immediate use of a deadly weapon.

16 Source: N. J. S. 2A:90–2; 2A:90–3; 2A:141–1; 2A:151–5 amended
17 1959, c. 148, s. 1; 1963, c. 160; 1966, c. 60, s. 4.

### CHAPTER 20. THEFT AND RELATED OFFENSES

Section

1   2C:20–1.   Definitions.
2   2C:20–2.   Consolidation of Theft Offenses; Grading; Provisions
3                   Applicable to Theft Generally.
4   2C:20–3.   Theft by Unlawful Taking or Disposition.
5   2C:20–4.   Theft by Deception.
6   2C:20–5.   Theft by Extortion.
7   2C:20–6.   Theft of Property Lost, Mislaid, or Delivered by Mis-
8                   take.
9   2C:20–7.   Receiving Stolen Property.
10   2C:20–8.   Theft of Services.
11   2C:20–9.   Theft by Failure to Make Required Disposition of
12                   Property Received.
13   2C:20–10.   Unlawful Taking of Means of Conveyance.
14   **2C:20–11.   Shoplifting.**

1   2C:20–1. Definitions. In chapters 20 and 21 unless a different
2 meaning plainly is required:

3   a. "Deprive" means: (1) to withhold or cause to be withheld
4 property of another permanently or for so extended a period as to
5 appropriate a substantial portion of its economic value, or with
6 purpose to restore only upon payment of reward or other compen-
7 sation; or (2) to dispose or cause disposal of the property so as
8 to make it unlikely that the owner will recover it.

9  b. "Fiduciary" means an executor, general administrator of an
10 intestate, administrator with the will annexed, substituted admin-
11 istrator, guardian, substituted guardian, trustee under any trust
12 expressed, implied, resulting or constructive, substituted trustee,
13 executor, conservator, curator, receiver, trustee in bankruptcy,
14 assignee for the benefit of creditors, partner, agent or officer of a
15 corporation, public or private, temporary administrator, adminis-
16 trator, administrator pendente litej administrator ad prosequen-
17 dum, administrator ad litem or other person acting in a similar
18 capacity.

19  c. "Financial institution" means a bank, insurance company,
20 credit union, savings and loan association, investment trust or
21 other organization held out to the public as a place of deposit of
22 funds or medium of savings or collective investment.

23  d. "Government" means the United States, any State, county,
24 municipality, or other political unit, or any department, agency or
25 subdivision of any of the foregoing, or any corporation or other
26 association carrying out the functions of government.

27  e. "Movable property" means property the location of which
28 can be changed, including things growing on, affixed to, or found
29 in land, and documents although the rights represented thereby
30 have no physical location. "Immovable property" is all other
31 property.

32  f. "Obtain" means: (1) in relation to property, to bring about
33 a transfer or purported transfer of a legal interest in the property,
34 whether to the obtainer or another; or (2) in relation to labor or
35 service, to secure performance thereof.

36  g. "Property" means anything of value, including real estate,
37 tangible and intangible personal property, trade secrets, contract
38 rights, choses-in-action and other interests in or claims to wealth,
39 admission or transportation tickets, captured or domestic animals,
40 food and drink, electric, gas, steam or other power.

41  h. "Property of another" includes property in which any person
42 other than the actor has an interest which the actor is not privileged
43 to infringe, regardless of the fact that the actor also has an interest
44 in the property and regardless of the fact that the other person
45 might be precluded from civil recovery because the property was
46 used in an unlawful transaction or was subject to forfeiture as
47 contraband. Property in possession of the actor shall not be
48 deemed property of another who has only a security interest
49 therein, even if legal title is in the creditor pursuant to a condi-
50 tional sales contract or other security agreement.

80

51  i. "Trade secret" means the whole or any portion or phase of
52 any scientific or technical information, design, process, procedure,
53 formula or improvement which is secret and of value. A trade
54 secret shall be presumed to be secret when the owner thereof takes
55 measures to prevent it from becoming available to persons other
56 than those selected by the owner to have access thereto for limited
57 purposes.
58 Source: N. J. S. 2A:119–2 amended 1957, c. 56; 1970, c. 298; 1972,
59  c. 159, s. 1; C. 2A:119–5.2 (1965, c. 52, s. 2); Model Penal Code:
60  223.0.

1  2C:20–2.  Consolidation of Theft Offenses; Grading; Provisions
2 Applicable to Theft Generally.  a. Consolidation of Theft Offenses.
3 Conduct denominated theft in this chapter constitutes a single of-
4 fense. A charge of theft may be supported by evidence that it was
5 committed in any manner that would be theft under this chapter,
6 notwithstanding the specification of a different manner in the in-
7 dictment or accusation, subject only to the power of the court to
8 ensure fair trial by granting a bill of particulars, discovery, a
9 continuance, or other appropriate relief where the conduct of the
10 defense would be prejudiced by lack of fair notice or by surprise.
11  b. Grading of theft offenses.

12  (1) Theft constitutes a crime of the second degree if the prop-
13 erty is taken by extortion.

14  (2) Theft constitutes a crime of the third degree if:

15  (a) The amount involved exceeds $500.00;

16  (b) The property stolen is a firearm, automobile **, boat** or
16A airplane;

17  (c) The property stolen is a controlled dangerous substance as
18 defined in P. L. 1970, c. 226 (C. 24:21–1 et seq.);

19  (d) It is from the person of the victim;

20  (e) It is in breach of an obligation by a person in his capacity
21 as a fiduciary;

22  (f) It is by threat not amounting to extortion; or

23  (g) It is of a public record, writing or instrument kept, filed
24 or deposited according to law with or in the keeping of any public
25 office or public servant.

26  (3) Theft not within the preceding paragraphs constitutes a
27 crime of the fourth degree. If, however, the amount involved was
28 less than $200.00 the offense constitutes a disorderly persons of-
29 fense.

30  (4) The amount involved in a theft shall be determined by the
31 trier of fact. Amounts involved in thefts committed pursuant to

81

32  one scheme or course of conduct, whether from the same person or
33  several persons, may be aggregated in determining the grade of
34  the offense.

35  c. Claim of right. It is an affirmative defense to prosecution for
36  theft that the actor:

37  (1) Was unaware that the property or service was that of an-
38  other;

39  (2) Acted under an honest claim of right to the property or ser-
40  vice involved or that he had a right to acquire or dispose of it as
41  he did; or

42  (3) Took property exposed for sale, intending to purchase and
43  pay for it promptly, or reasonably believing that the owner, if
44  present, would have consented.

45  d. Theft from spouse. It is no defense that theft was from the
46  actor's spouse, except that misappropriation of household and per-
47  sonal effects, or other property normally accessible to both spouses,
48  is theft only if it occurs after the parties have ceased living
49  together.

50  Source: Model Penal Code: 223.1.

1  2C:20-3. Theft by Unlawful Taking or Disposition. a. Movable
2  property. A person is guilty of theft if he unlawfully takes, or
3  exercises unlawful control over, movable property of another with
4  purpose to deprive him thereof.

5  b. Immovable property. A person is guilty of theft if he unlaw-
6  fully transfers any interest in immovable property of another with
7  purpose to benefit himself or another not entitled thereto.

8  Source: Model Penal Code: 223.2.

1  2C:20-4. Theft by Deception. A person is guilty of theft if he
2  purposely obtains property of another by deception. A person
3  deceives if he purposely:

4  a. Creates or reinforces a false impression, including false
5  impressions as to law, value, intention or other state of mind; but
6  deception as to a person's intention to perform a promise shall not
7  be inferred from the fact alone that he did not subsequently per-
8  form the promise;

9  b. Prevents another from acquiring information which would
10  affect his judgment of a transaction; or

11  c. Fails to correct a false impression which the deceiver previ-
12  ously created or reinforced, or which the deceiver knows to be
13  influencing another to whom he stands in a fiduciary or confidential
14  relationship.

82

15  The term "deceive" does not, however, include falsity as to
16  matters having no pecuniary significance, or puffing or exaggera-
17  tion by statements unlikely to deceive ordinary persons in the
18  group addressed.

19  Source: N. J. S. 2A:111-1; 2A:111-2 amended 1954, c. 117, s. 1;
20  1962, c. 76, s. 1; 2A:111-3 amended 1954, c. 117, s. 2; 1962, c. 76,
21  s. 2; 2A:111-4; 2A:111-5; 2A:111-6; 2A:111-7; 2A:111-8;
22  2A:111-9; 2A:111-10; 2A:111-11; 2A:111-12; 2A:111-13;
23  2A:111-14; 2A:111-15 amended 1965, c. 184, s. 2; 2A:111-16 to
24  2A:111-21; C. 2A:111-21.1 (1964, c. 179); N. J. S. 2A:111-22;
25  2A:111-23; 2A:111-24; C. 2A:111-25 (1952, c. 332, s. 1 amended
26  1953, c. 432, s. 1); C. 2A:111-26 (1952, c. 332, s. 2 amended 1953,
27  c. 432, s. 2); C. 2A:111-27 (1952, c. 332, s. 3); C. 2A:111-28
28  (1954, c. 58, s. 1); C. 2A:111-29 (1954, c. 58, s. 2); C. 2A:111-30
29  (1954, c. 58, s. 3); C. 2A:111-31 (1954, c. 58, s. 4); C. 2A:111-32
30  (1960, c. 62, s. 1 amended 1967, c. 301, s. 3); C. 2A:111-33 (1960,
31  c. 62, s. 2); C. 2A:111-34 (1964, c. 294, s. 1); C. 2A:111-35 (1964,
32  c. 294, s. 2); C. 2A:111-36 (1964, c. 294, s. 3); C. 2A:111-37
33  (1968, c. 253, s. 1); C. 2A:111-38 (1968, c. 253, s. 2); C. 2A:111-39
34  (1968, c. 260, s. 1); C. 2A:111-40 (1968, c. 300, s. 1); C. 2A:111-41
35  (1968, c. 300, s. 2); C. 2A:111-42 (1968, c. 300, s. 3); C. 2A:111-43
36  (1968, c. 300, s. 4); C. 2A:111-44 (1968, c. 300, s. 5); C. 2A:111-45
37  (1968, c. 300, s. 6); C. 2A:111-46 (1968, c. 300, s. 7); C. 2A:111-47
38  (1968, c. 300, s. 8); C. 2A:111-48 (1968, c. 300, s. 9); C. 2A:111-49
39  (1968, c. 300, s. 10 amended 1969, c. 299); C. 2A:111-50 (1968,
40  c. 300, s. 11); 2A:111-51 (1968, c. 300, s. 12); Model Penal Code:
41  223.3.

1  2C:20-5. Theft by Extortion. A person is guilty of theft by
2  extortion if he purposely obtains property of another by extortion.
3  A person extorts if he purposely threatens to:

4  a. Inflict bodily injury on or physically confine or restrain any-
5  one or commit any other criminal offense;

6-7  b. Accuse anyone of an offense or cause charges of an offense
8  to be instituted against any person;

9  c. Expose or publicize any secret or any asserted fact, whether
10  true or false, tending to subject any person to hatred, contempt or
11  ridicule, or to impair his credit or business repute;

12  d. Take or withhold action as an official, or cause an official to
13  take or withhold action;

14  e. Bring about or continue a strike, boycott or other collective
15  action, if the property is not demanded or received for the benefit
16  of the group in whose interest the actor purports to act;

83

f. Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or

g. Inflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person.

It is an affirmative defense to prosecution based on paragraphs b, c, d or f that the property obtained was honestly claimed as restitution or indemnification for harm done in the circumstances or as lawful compensation for property or services.

Source: N. J. S. 2A:105–1; 2A:105–2; 2A:105–3 amended 1963, c. 152; 2A:105–4; 2A:105–5 (1968, c. 83); C. 2A:119A–1 (1968, c. 349, s. 1 amended 1970, c. 76); C. 2A:119A–2 (1968, c. 349, s. 2); C. 2A:119A–3 (1968, c. 349, s. 3); C. 2A:119A–4 (1968, c. 349, s. 4); Model Penal Code: 223.4.

2C:20–6. Theft of Property Lost, Mislaid, or Delivered by Mistake. A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, knowing the identity of the owner and with purpose to deprive said owner thereof, he converts the property to his own use.

Source: Model Penal Code: 223.5.

2C:20–7. Receiving Stolen Property. a. Receiving. A person is guilty of theft if he purposely receives movable property of another knowing that it has been stolen, or believing that it has probably been stolen. It is an affirmative defense that the property was received with purpose to restore it to the owner. "Receiving" means acquiring possession, control or title, or lending on the security of the property.

b. Presumption of knowledge. The requisite knowledge or belief is presumed in the case of a person who:

(1) Is found in possession or control of two or more items of property stolen on two or more separate occasions;

(2) Has received stolen property in another transaction within the year preceding the transaction charged; or

(3) Being a person in the business of buying or selling property of the sort received, acquires the property without having ascertained by reasonable inquiry that the person from whom he obtained it had a legal right to possess and dispose of it.

Source: N. J. S. 2A:139–1 amended 1972, c. 160, s. 1; 2A:139–2; 2A:139–3; 2A:139–4; Model Penal Code: 223.6.

84

2C:20–8. Theft of Services. a. A person is guilty of theft if he purposely obtains services which he knows are available only for compensation, by deception or threat, or by false token**, slug,** or other means**, including but not limited to mechanical or electronic devices or through fraudulent statements,** to avoid payment for the service. "Services" include labor, professional service, transportation, telephone, or other public service, accommodation in hotels, restaurants or elsewhere, entertainment, admission to exhibitions, use of vehicles or other movable property. Where compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants, absconding without payment or offer to pay gives rise to a presumption that the service was obtained by deception as to intention to pay.

b. A person commits theft if, having control over the disposition of services of another, to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto.

**c. Any person who, without permission and for the purpose of obtaining electric current, gas or water with intent to defraud any vendor of electricity, gas or water:

(1) Connects or causes to be connected by wire or any other device with the wires, cables or conductors of any such vendor; or

(2) Connects or disconnects the meters, pipes or conduits of such vendor or in any other manner tampers or interferes with such meters, pipes or conduits, or connects with such meters, pipes or conduits by pipes, conduits or other instruments—is guilty of a disorderly persons offense.

The existence of any of the conditions with reference to meters, pipes, conduits or attachments, described in this section, is presumptive evidence that the person to whom gas, electricity or water is at the time being furnished by or through such meters, pipes, conduits or attachments has, with intent to defraud, created or caused to be created with reference to such meters, pipes, conduits or attachments, the condition so existing; provided, however, that the presumption shall not apply to any person so furnished with gas, electricity or water for less than 31 days or until there has been at least one meter reading.

d. Any person who, without permission or authority, connects or causes to be connected by wires or other devices, any meter erected or set up for the purpose of registering or recording the amount of electric current supplied to any customer by any vendor of

85

41  *electricity within this State, or changes or shunts the wiring lead-*
42  *ing to or from any such meter, or by any device, appliance or means*
43  *whatsoever tampers with any such meter so that the meter will not*
44  *measure or record the full amount of electric current supplied to*
45  *such customer, is guilty of a disorderly persons offense.*

46  *The existence of any of the conditions with reference to meters*
47  *or attachments described in this subsection or in subsection c. is*
48  *presumptive evidence that the person to whom electricity is at the*
49  *time being furnished by or through such meters or attachments*
50  *has, with intent to defraud, created or caused to be created with*
51  *reference to such meters or attachments, the condition so existing;*
52  *provided, however, that the presumption shall not apply to any*
53  *person so furnished with electricity for less than 31 days or until*
54  *there has been at least one meter reading.\*\**

55  Source: Model Penal Code: 223.7\*\*, N. J. S. 2A:170–63;
56  2A:170–64\*\*.

1  2C:20-9. Theft by Failure to Make Required Disposition of
2  Property Received. A person who purposely obtains or retains
3  property upon agreement or subject to a known legal obligation to
4  make specified payment or other disposition, whether from such
5  property or its proceeds or from his own property to be reserved
6  in equivalent amount, is guilty of theft if he deals with the property
7  obtained as his own and fails to make the required payment or
8  disposition. The foregoing applies notwithstanding that it may be
9  impossible to identify particular property as belonging to the
10  victim at the time of the actor's failure to make the required
11  payment or disposition. An officer or employee of the government
12  or of a financial institution is presumed: (a) to know any legal
13  obligation relevant to his criminal liability under this section, and
14  (b) to have dealt with the property as his own if he fails to pay
15  or account upon lawful demand, or if an audit reveals a shortage
16  or falsification of accounts.

17  Source: N. J. S. 2A:102–1;  2A:102–2;  2A:102–3;  2A:102–4;
18  2A:102–5;    2A:102–6;    2A:102–7;    2A:102–8;    2A:102–9;
19  2A:102–10 amended 1954, c. 123, s. 1; 2A:102–11 amended 1954,
20  c. 123, s. 2; 2A:102–12; Model Penal Code: 223.8.

1  2C:20-10. Unlawful Taking of Means of Conveyance. a. A
2  person commits a disorderly persons offense if he takes, operates,
3  or exercises control over any means of conveyance without consent
4  of the owner or other person authorized to give consent. "Means
5  of conveyance" includes but is not limited to motor vehicles,
6  motorcycles, motorbikes, bicycles, boats, vessels, surfboards, raft,

7  skimobiles, airplanes, trains, trams and trailers. It is an affirma-
8  tive defense to prosecution under this section that the actor reason-
9  ably believed that the owner or any other person authorized to
10  give consent would have consented to the operation had he known
11  of it.

12  b. A person commits a petty disorderly persons offense if he
13  knowingly rides in a vehicle described in subsection a. if he at
14  the time he entered he knew or had been informed that it had been
15  taken, or was being operated or controlled in violation of sub-
16  section a.

17  Source: N. J. S. 2A:170–38 amended 1972, c. 142, s. 1; Model
18  Penal Code: 223.9.

1  *\*\*2C:20–11. Shoplifting. a. Definitions. The following defini-*
2  *tions apply to this section:*
3  *(1) "Shopping cart" means those push carts of the type or types*
4  *which are commonly provided by grocery stores, drug stores or*
5  *other retail mercantile establishments for the use of the public in*
6  *transporting commodities in stores and markets and, incidentally,*
7  *from the stores to a place outside the store;*
8  *(2) "Store or other retail mercantile establishment" means a*
9  *place where merchandise is displayed, held, stored or sold or offered*
10  *to the public for sale;*
11  *(3) "Merchandise" means any goods, chattels, foodstuffs or*
12  *wares of any type and description, regardless of the value thereof;*
13  *(4) "Merchant" means any owner or operator of any store or*
14  *other retail mercantile establishment, or any agent, servant, em-*
15  *ployee, lessee, consignee, officer, director, franchisee or independent*
16  *contractor of such owner or proprietor;*
17  *(5) "Person" means any individual or individuals, including an*
18  *agent, servant or employee of a merchant where the facts of the*
19  *situation so require;*
20  *(6) "Conceal" means to conceal merchandise so that, although*
21  *there may be some notice of its presence, it is not visible through*
22  *ordinary observation;*
23  *(7) "Full retail value" means the merchant's stated or adver-*
24  *tised price of the merchandise;*
25  *(8) "Premises of a store or retail mercantile establishment"*
26  *means and includes but is not limited to, the retail mercantile es-*
27  *tablishment; any common use areas in shopping centers and all*
28  *parking areas set aside by a merchant or on behalf of a merchant*
29  *for the parking of vehicles for the convenience of the patrons of*
30  *such retail mercantile establishment;*

31    *(9) "Under-ring" means to cause the cash register or other sale*
32  *recording device to reflect less than the full retail value of the*
33  *merchandise.*

34    *b. Shoplifting. Shoplifting shall consist of any one or more of*
35  *the following acts:*

36    *(1) For any person purposely to take possession of, carry away,*
37  *transfer or cause to be carried away or transferred, any merchan-*
38  *dise displayed, held, stored or offered for sale by any store or other*
39  *retail mercantile establishment with the intention of depriving the*
40  *merchant of the possession, use or benefit of such merchandise or*
41  *converting the same to the use of such person without paying to the*
42  *merchant the full retail value thereof.*

43    *(2) For any person purposely to conceal upon his person or*
44  *otherwise any merchandise offered for sale by any store or other*
45  *retail mercantile establishment with the intention of depriving the*
46  *merchant of the processes, use or benefit of such merchandise or*
47  *converting the same to the use of such person without paying to*
48  *the merchant the value thereof.*

49    *(3) For any person purposely to alter, transfer or remove any*
50  *label, price tag or marking indicia of value or any other markings*
51  *which aid in determining value affixed to any merchandise dis-*
52  *played, held, stored or offered for sale by any store or other retail*
53  *mercantile establishment and to attempt to purchase such mer-*
54  *chandise personally or in consort with another at less than the full*
55  *retail value with the intention of depriving the merchant of all or*
56  *some part of the value thereof.*

57    *(4) For any person purposely to transfer any merchandise dis-*
58  *played, held, stored or offered for sale by any store or other retail*
59  *merchandise establishment from the container in or on which the*
60  *same shall be displayed to any other container with intent to de-*
61  *prive the merchant of all or some part of the retail value thereof.*

62    *(5) For any person purposely to under-ring with the intention*
63  *of depriving the merchant of the full retail value thereof.*

64    *(6) For any person purposely to remove a shopping cart from*
65  *the premises of a store or other retail mercantile establishment*
66  *without the consent of the merchant given at the time of such re-*
67  *moval with the intention of permanently depriving the merchant*
68  *of the possession, use or benefit of such cart.*

69    *c. Gradation. Any person found guilty of an offense under sub-*
70  *section b. is a disorderly person, except that notwithstanding the*
71  *fine provided under 2C:43-3, such person shall be sentenced to pay*

88

72  *a fine of not more than $500.00 for a first offense; to pay a fine of*
73  *not less than $100.00, nor more than $500.00 for a second offense*
74  *and to pay a fine of not less than $250.00, nor more than $1,000.00*
75  *for a third and any subsequent offense. Additionally, notwith-*
76  *standing the term of imprisonment provided in 2C:43-8, any per-*
77  *son convicted of a third or subsequent shoplifting offense shall*
78  *serve a minimum term of not less than 30 days.*

79    *d. Presumptions. Any person purposely concealing unpurchased*
80  *merchandise of any store or other retail mercantile establishment,*
81  *either on the premises or outside the premises of such store or*
82  *other retail mercantile establishment, shall be prima facie presumed*
83  *to have so concealed such merchandise with the intention of depriv-*
84  *ing the merchant of the possession, use, or benefit of such merchan-*
85  *dise without paying the full retail value thereof, and the finding of*
86  *such merchandise concealed upon the person or among the belong-*
87  *ings of such person shall be prima facie evidence of purposeful*
88  *concealment; and if such person conceals, or causes to be concealed,*
89  *such merchandise upon the person or among the belongings of an-*
90  *other, the finding of the same shall also be prima facie evidence of*
91  *willful concealment on the part of the person so concealing such*
92  *merchandise.\*\**

CHAPTER 21.  FORGERY AND FRAUDULENT PRACTICES

Section
1   2C:21-1.    Forgery and Related Offenses.
2   2C:21-2.    Criminal Simulation.
3   2C:21-3.    Frauds Relating to Public Records and Recordable
4                   Instruments.
5   2C:21-4.    Falsifying or Tampering With Records.
6   2C:21-5.    Bad Checks.
7   2C:21-6.    Credit Cards.
8   2C:21-7.    Deceptive Business Practices.
9   2C:21-8.    Misrepresentation of Mileage of Motor Vehicle.
10  2C:21-9.    Misconduct by Corporate Official.
11  2C:21-10.   Commercial Bribery and Breach of Duty to Act Dis-
12                  interestedly.
13  2C:21-11.   Rigging Publicly Exhibited Contest.
14  2C:21-12.   Defrauding Secured Creditors.
15  2C:21-13.   Fraud in Insolvency.
16  2C:21-14.   Receiving Deposits in a Failing Financial Institution.
17  2C:21-15.   Misapplication of Entrusted Property and Property of
18                  Government or Financial Institution.

89

Section
19  2C:21-16.  Securing Execution of Documents by Deception.
20  2C:21-17.  Wrongful Impersonating.
21  2C:21-18.  Slugs.
22  2C:21-19.  Wrongful Credit Practices and Related Offenses.

1   2C:21-1.  Forgery and Related Offenses. a. Forgery. A person
2   is guilty of forgery if, with purpose to defraud or injure anyone,
3   or with knowledge that he is facilitating a fraud or injury to be
4   perpetrated by anyone, the actor:

5   (1) Alters or changes any writing of another without his au-
6   thorization or ratification;

7   (2) Makes, completes, executes, authenticates, issues or trans-
8   fers any writing so that it purports to be the act of another who
9   did not authorize that act or of a fictitious person, or to have been
10  executed at a time or place or in a numbered sequence other than
11  was in fact the case, or to be a copy of an original when no such
12  original existed; or

13  (3) Utters any writing which he knows to be forged in a manner
14  specified in paragraphs (1) or (2).

15  "Writing" includes printing or any other method of recording
16  information, money, coins, tokens, stamps, seals, credit cards,
17  badges, trademarks, and other symbols of value, right, privilege,
18  or identification.

19  b. Grading of forgery. Forgery is a crime of the third degree
20  if the writing is or purports to be part of an issue of money, securi-
21  ties, postage or revenue stamps, or other instruments, certificates
22  or licenses issued by the government, or part of an issue of stock,
23  bonds or other instruments representing interest in or claims
24  against any property or enterprise.

25  Otherwise forgery is a crime of the fourth degree.

26  c. Possession of forgery devices. A person is guilty of posses-
27  sion of forgery devices, a crime of the third degree, when with
28  purpose to use, or to aid or permit another to use the same for
29  purposes of forging written instruments, he makes or possesses
30  any device, apparatus, equipment or article specially designed or
31  adapted to such use.

32  Source: N. J. S. 2A:109-1; 2A:109-2; 2A:109-3; 2A:109-4;
33  2A:109-5; 2A:109-6; 2A:109-7; 2A:109-8; 2A:109-9; 2A:109-10;
34  2A:109-11: C. 2A:111-25 (1952, c. 332, s. 1 amended 1953, c. 432,
35  s. 1): C. 2A:111-26 (1952, c. 332, s. 2 amended 1953, c. 432, s. 2);
36  C. 2A:111-27 (1952, c. 332, s. 3); N. J. S. 2A:147-1; Model Penal
37  Code: 224.1.

1   2C:21-2.  Criminal Simulation. A person commits a crime of the
2   fourth degree if, with purpose to defraud anyone or with knowledge
3   that he is facilitating a fraud to be perpetrated by anyone, he
4   makes, alters or utters any object so that it appears to have value
5   because of antiquity, rarity, source, or authorship which it does
6   not possess.

7   Source: N. J. S. 2A:111-23; 2A:111-24; Model Penal Code: 224.2.

1   2C:21-3.  Frauds Relating to Public Records and Recordable In-
2   struments. a. Fraudulent destruction, removal or concealment of
3   recordable instruments. A person commits a crime of the third
4   degree if, with purpose to deceive or injure anyone, he destroys,
5   removes or conceals any will, deed, mortgage, security instrument
6   or other writing for which the law provides public recording.

7   b. Offering a false instrument for filing. A person is guilty of
8   a disorderly persons offense when, knowing that a written instru-
9   ment contains a false statement or false information, he offers or
10  presents it to a public office or public servant with knowledge or
11  belief that it will be filed with, registered or recorded in or other-
12  wise become a part of the records of such public office or public
13  servant.

14  Source: N. J. S. 2A:119-4; 2A:119-5; Model Penal Code: 224.3.

1   2C:21-4.  Falsifying or Tampering with Records. a. Except as
2   provided in subsection b. of this section, a person commits a crime
3   of the fourth degree if, knowing that he has no privilege to do so,
4   he falsifies, destroys, removes or conceals any writing or record,
5   with purpose to deceive or injure anyone or to conceal any wrong-
6   doing.

7   b. Issuing a false financial statement. A person is guilty of
8   issuing a false financial statement, a crime of the third degree,
9   when, with purpose to deceive or injure anyone or to conceal any
10  wrongdoing, he **by oath or affirmation**:

11  (1) Knowingly makes or utters a written instrument which pur-
12  ports to describe the financial condition or ability to pay of some
13  person and which is inaccurate in some **[material]** ** **substan-
13A  tial** respect; or

14  (2) Represents in writing that a written instrument purporting
15  to describe a person's financial condition or ability to pay as of a
16  prior date is accurate with respect to such person's current finan-
17  cial condition or ability to pay, whereas, he knows it is **[ma-
18  terially]** ** **substantially** inaccurate in that respect.

19  Source: N. J. S. 2A:91-3; 2A:91-5; 2A:91-6; 2A:91-7; 2A:91-8;
20  2A:111-9; 2A:111-10; 2A:111-11; 2A:111-12; C. 2A:111-39

21 (1986, c. 260); N. J. S. 2A:119–4; 2A:122–3; Model Penal Code:
22 224.4.

1 **2C:21–5. Bad Checks.** A person who issues or passes a check
2 or similar sight order for the payment of money, knowing that it
3 will not be honored by the drawee, commits a disorderly persons
4 offense. For the purposes of this section as well as in any prose-
5 cution for theft committed by means of a bad check, an issuer is
6 presumed to know that the check or money order (other than a
7 post-dated check or order) would not be paid, if:

8 a. The issuer had no account with the drawee at the time the
9 check or order was issued; or

10 b. Payment was refused by the drawee for lack of funds, upon
11 presentation within 30 days after issue, and the issuer failed to
12 make good within 10 days after receiving notice of that refusal.

13 Source: N. J. S. 2A:111–15 amended 1965, c. 184, s. 2; 2A:111–16;
14 2A:111–17; C. 2A:170–50.4 (1965, c. 184, s. 3); C. 2A:170–50.5
15 (1965, c. 184, s. 4); C. 2A:170–50.6 (1965, c. 184, s. 5); Model
16 Penal Code: 224.5.

1 **2C:21–6. Credit Cards.** A person commits a **[disorderly per-
2 sons offense]** **crime of the fourth degree** if he uses a credit
3 card for the purpose of obtaining property or services with knowl-
3a edge that:

4 a. The card is stolen or forged;

5 b. The card has been revoked, canceled or expired;

6 c. For any other reason his use of the card is unauthorized by
7 the issuer.

8 "Credit card" means a writing or other evidence of an under-
9 taking to pay for property or services delivered or rendered to
10 or upon the order of a designated person or bearer.

11 Source: C. 2A:111–40 (1968, c. 300. s. 1); C. 2A:111–41 (1968,
12 c. 300, s. 2); C. 2A:111–42 (1968, c. 300, s. 3); C. 2A:111–43 (1968,
13 c. 300, s. 4); C. 2A:111–44 (1968, c. 300, s. 5); C. 2A:111–45 (1968,
14 c. 300, s. 6); C. 2A:111–46 (1968, c. 300, s. 7); C. 2A:111–47 (1968,
15 c. 300, s. 8); C. 2A:111–48 (1968, c. 300, s. 9); C. 2A:111–49 (1968,
16 c. 300, s. 10 amended 1969, c. 299); C. 2A:111–50 (1968, c. 300,
17 s. 11); 2A:111–51 (1968, c. 300, s. 12); Model Penal Code: 224.6.

1 **2C:21–7. Deceptive Business Practices.** A person commits an
2 offense if in the course of business he:

3 a. Uses or possesses for use a false weight or measure, or any
4 other device for falsely determining or recording any quality or
5 quantity;

6 b. Sells, offers or exposes for sale, or delivers less than the rep-
7 resented quantity of any commodity or service;

8 c. Takes or attempts to take more than the represented quantity
9 of any commodity or service when as buyer he furnishes the weight
10 or measure;

11 d. Sells, offers or exposes for sale adulterated or mislabeled
12 commodities;

13 e. Makes a false or misleading statement in any advertisement
14 addressed to the public or to a substantial segment thereof for the
15 purpose of promoting the purchase or sale of property or services;

16 f. Makes a false or misleading written statement for the purpose
17 of obtaining property or credit; or

18 g. Makes a false or misleading written statement for the purpose
19 of promoting the sale of securities, or omits information required
20 by law to be disclosed in written documents relating to securities.

21 The offense is a crime of the fourth degree if subsection f. or g.
22 is violated. Otherwise it is a disorderly persons offense.

23 It is an affirmative defense to prosecution under this section if
24 the defendant proves by a preponderance of the evidence that his
25 conduct was not knowingly or recklessly deceptive.

26 "Adulterated" means varying from the standard of composi-
27 tion or quality prescribed by or pursuant to any statute providing
28 criminal penalties for such variance, or set by established com-
29 mercial usage. "Mislabeled" means varying from the standard of
30 truth or disclosure in labeling prescribed by or pursuant to any
31 statute providing criminal penalties for such variance, or set by
32 established commercial usage.

33 Source: N. J. S. 2A:108–1; 2A:108–2; 2A:108–3; 2A:108–4;
34 2A:108–5 amended 1966, c. 215, s. 1; 2A:108–6; 2A:108–7 amended
35 1966, c. 215, s. 2; 1967, c. 98; 2A:111–22; 2A:111–23; 2A:111–24;
36 C. 2A:111–32 (1960, c. 62); 2A:150–1; 2A:170–42; 2A:170–72;
37 Model Penal Code: 224.7.

1 **2C:21–8. Misrepresentation of Mileage of Motor Vehicle.** A per-
2 son commits a disorderly persons offense when he sells, exchanges,
3 offers for sale or exchange or exposes for sale or exchange a used
4 motor vehicle on which he has changed or disconnected the mileage
5 registering instrument on the vehicle to show a lesser mileage read-
6 ing than that actually recorded on the vehicle or on the instrument
7 with purpose to misrepresent the mileage of the vehicle. This pro-
8 vision shall not prevent the servicing, repair or replacement of a
9 mileage registering instrument which by reason of normal wear or
10 through damage requires service, repair or replacement if the

11 instrument is then set at zero or at the actual previously recorded
12 mileage.

13    In addition to the penalty authorized for violation of this sec-
14 tion, the Director of the Division of Motor Vehicles may, after
15 notice and hearing, revoke the license of any motor vehicle dealer
16 as defined in R. S. 39:1-1 so convicted.

17 Source: C. 2A:170-50.1 (1956, c. 195, s. 1 amended 1957, c. 125
18 s. 1); C. 2A:170-50.2 (1956, c. 195, s. 2 amended 1957, c. 125, s. 2);
19 C. 2A:170-50.3 (1956, c. 195, s. 3 amended 1957, c. 125, s. 3).

1    2C:21-9. Misconduct by Corporate Official. A person is guilty
2 of a crime **⟦of the fourth degree⟧** when:

3    a. Being a director of a stock corporation, he knowingly with
4 purpose to defraud, concurs in any vote or act of the directors of
5 such corporation, or any of them, which has the purpose of:

6    (1) Making a dividend except in the manner provided by law;

7    (2) Dividing, withdrawing or in any manner paying to any
8 stockholder any part of the capital stock of the corporation except
9 in the manner provided by law;

10    (3) Discounting or receiving any note or other evidence of debt
11 in payment of an installment of capital stock actually called in
12 and required to be paid, or with purpose of providing the means of
13 making such payment;

14    (4) Receiving or discounting any note or other evidence of debt
15 with purpose of enabling any stockholder to withdraw any part
16 of the money paid in by him on his stock; or

17    (5) Applying any portion of the funds of such corporation,
18 directly or indirectly, to the purchase of shares of its own stock,
19 except in the manner provided by law; or

20    b. Being a director or officer of a stock corporation, he, with
21 purpose to defraud:

22    (1) Issues, participates in issuing, or concurs in a vote to issue
23 any increase of its capital stock beyond the amount of the capital
24 stock thereof, duly authorized by or in pursuance of law; or

25    (2) Sells, or agrees to sell, or is directly interested in the sale
26 of any share of stock of such corporation, or in any agreement to
27 sell the same, unless at the time of such sale or agreement he is
28 an actual owner of such share, provided that the foregoing shall
29 not apply to a sale by or on behalf of an underwriter or dealer in
30 connection with a bona fide public offering of shares of stock of
31 such corporation.

32    *If the benefit derived from a violation of this section exceeds*
33 *$75,000.00, the offender shall be guilty of a crime of the second*

94

34 *degree. If the benefit derived exceeds $1,000.00, the offender shall*
35 *be guilty of a crime of the third degree. If the benefit derived is*
36 *less than $1,000.00, the offender shall be guilty of a crime of the*
37 *fourth degree.***

38 Source: N. J. S. 2A:111-12.

1    2C:21-10. Commercial Bribery and Breach of Duty to Act Dis-
2 interestedly. a. A person commits a crime **⟦of the fourth de-
3 gree⟧** if he solicits, accepts or agrees to accept any benefit as con-
4 sideration for knowingly violating or agreeing to violate a duty of
5 fidelity to which he is subject as:

6    (1) An agent, partner or employee of another;

7    (2) A trustee, guardian, or other fiduciary;

8    (3) A lawyer, physician, accountant, appraiser, or other pro-
9 fessional adviser or informant;

10    (4) An officer, director, manager or other participant in the di-
11 rection of the affairs of an incorporated or unincorporated associa-
12 tion;

13    (5) A labor official, including any duly appointed representative
14 of a labor organization or any duly appointed trustee or repre-
15 sentative of an employee welfare trust fund; or

16    (6) An arbitrator or other purportedly disinterested adjudicator
17 or referee.

17A    ***If the benefit derived from a violation of this section exceeds*
17B *$75,000.00, the offender shall be guilty of a crime of the second de-*
17C *gree. If the benefit derived exceeds $1,000.00, the offender shall be*
17D *guilty of a crime of the third degree. If the benefit derived is less*
17E *than $1,000.00, the offender shall be guilty of a crime of the fourth*
17F *degree.***

18    b. A person who holds himself out to the public as being engaged
19 in the business of making disinterested selection, appraisal, or
20 criticism of commodities, real properties or services commits a
21 crime of the fourth degree if he solicits, accepts or agrees to accept
22 any benefit to influence his selection, appraisal or criticism.

23    c. A person commits a crime of the fourth degree if he confers,
24 or offers or agrees to confer, any benefit the acceptance of which
25 would be criminal under this section.

26 Source: Model Penal Code: 224.8.

1    2C:21-11. Rigging Publicly Exhibited Contest. a. A person
2 commits a crime **⟦of the fourth degree⟧** if, with purpose to
3 prevent a publicly exhibited contest from being conducted in ac-
4 cordance with the rules and usages **⟦purporting to⟧** ** *which*
4A govern it, he:

95

(1) Confers or offers or agrees to confer any benefit upon, or threatens any injury to a participant, official or other person associated with the contest or exhibition; or

(2) Tampers with any person, animal or thing.

*\*If the benefit derived from a violation of this subsection exceeds $75,000.00, the offender shall be guilty of a crime of the second degree. If the benefit derived exceeds $1,000.00, the offender shall be guilty of a crime of the third degree. If the benefit derived is less than $1,000.00, the offender shall be guilty of a crime of the fourth degree.\**

b. Soliciting or accepting benefit for rigging. A person commits a crime of the fourth degree if he knowingly solicits, accepts or agrees to accept any benefit the giving of which would be criminal under subsection a.

c. Failure to report solicitation for rigging. A person commits a disorderly persons offense if he fails to report, with reasonable promptness, a solicitation to accept any benefit or to do any tampering, the giving or doing of which would be criminal under subsection a.

d. Participation in rigged contest. A person commits a crime of the fourth degree if he knowingly engages in, sponsors, produces, judges, or otherwise participates in a publicly exhibited contest knowing that the contest is not being conducted **[in compliance with the rules and usages purporting to govern it, by reason of conduct which would be criminal under this section]** **in violation of subsection a. of this section**.

Source: N. J. S. 2A:93-10; 2A:93-11; 2A:93-12; 2A:93-13; 2A:93-14; Model Penal Code: 224.9.

2C:21-12. Defrauding Secured Creditors. A person is guilty of a **[disorderly persons offense]** ** **crime of the fourth degree** when he destroys, removes, conceals, encumbers, transfers or otherwise deals with property subject to a security interest with purpose to hinder enforcement of that interest.

Source: N. J. S. 2A:111-20; C. 2A:111 21.1 (1964, c. 179); N. J. S. 2A:122-2; Model Penal Code: 224.10.

2C:21-13. Fraud in Insolvency. A person commits a crime **[of the fourth degree]** ** if, knowing that proceedings have been or are about to be instituted for the appointment of a receiver or other person entitled to administer property for the benefit of creditors, or that any other composition or liquidation for the benefit of creditors has been or is about to be made, he:

a. Destroys, removes, conceals, encumbers, transfers, or otherwise deals with any property or obtains any substantial part of or interest in the debtor's estate with purpose to defeat or obstruct the claim of any creditor, or otherwise to obstruct the operation of any law relating to administration of property for the benefit of creditors;

b. Knowingly falsifies any writing or record relating to the property; or

c. Knowingly misrepresents or refuses to disclose to a receiver or other person entitled to administer property for the benefit of creditors, the existence, amount or location of the property, or any other information which the actor could be legally required to furnish in relation to such administration.

*\*If the benefit derived from violation of this section exceeds $75,000.00, the offender shall be guilty of a crime of the second degree. If the benefit derived exceeds $1,000.00 but not more than $75,000.00, the offender shall be guilty of a crime of the third degree. If the benefit derived is less than $1,000.00, the offender shall be guilty of a crime of the fourth degree.\**

Source: N. J. S. 2A:111-8; Model Penal Code: 224.11.

2C:21-14. Receiving Deposits in a Failing Financial Institution. An officer, manager or other person directing or participating in the direction of a financial institution commits a crime of the fourth degree if he receives or permits the receipt of a deposit, premium payment or other investment in the institution knowing that:

a. Due to financial difficulties the institution is about to suspend operations or go into receivership or reorganization; and

b. The person making the deposit or other payment is unaware of the precarious situation of the institution.

Source: N. J. S. 2A:91-8; Model Penal Code: 224.12.

2C:21-15. Misapplication of Entrusted Property and Property of Government or Financial Institution. A person commits a crime **[of the third degree]** ** if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted whether or not the actor has derived a pecuniary benefit. "Fiduciary" includes trustee, guardian, executor, administrator, receiver and any person carrying on fiduciary functions on behalf of a corporation or other organization which is a fiduciary.

*\*If the benefit derived from violation of this section exceeds*

13 *$75,000.00, the offender shall be guilty of a crime of the second de-*
14 *gree. If the benefit derived exceeds $1,000.00 but not more than*
15 *$75,000.00, the offender shall be guilty of a crime of the third de-*
16 *gree. If the benefit derived is less than $1,000.00, the offender shall*
17 *be guilty of a crime of the fourth degree.\*\**
18 Source: N. J. S. 2A:102–2; 2A:102–3; C. 2A:111–30 (1954, c. 58);
19 N. J. S. 2A:135–3 amended 1960, c. 97; 2A:135–4; 2A:135–5;
20 Model Penal Code: 224.13.

1 2C:21–16. Securing Execution of Documents by Deception. A
2 person commits a crime of the fourth degree if by deception as to
3 the contents of the instrument, he causes or induces another to
4 execute any instrument affecting, purporting to affect, or likely
5 to affect the pecuniary interest of any person.
6 Source: N. J. S. 2A:111–5; Model Penal Code: 224.14.

1 2C:21–17. Wrongful Impersonating. A person is guilty of a dis-
2 orderly persons offense when he:
3 (1) Impersonates another or assumes a false identity and does
4 an act in such assumed character or false identity for purpose of
5 obtaining a pecuniary benefit for himself or another or to injure
6 or defraud another; or
7 (2) Pretends to be a representative of some person or organiza-
8 tion and does an act in such pretended capacity for the purpose of
9 obtaining a benefit for himself or another or to injure or defraud
10 another.
11 Source: N. J. S. 2A:116–1; 2A:111–18; 2A:170–19.

1 2C:21–18. Slugs. A person is guilty of a petty disorderly persons
2 offense when:
3 (1) He inserts or deposits a slug in a coin machine with purpose
4 to defraud; or
5 (2) He makes, possesses or disposes of a slug with purpose to
6 enable a person to insert or deposit it in a coin machine.
7 "Slug" means an object or article which, by virtue of its size,
8 shape or any other quality is capable of being inserted or deposited
9 in a coin machine as an improper substitute for money.
9A *\*Nothing in this section shall be deemed applicable to any activi-*
9B *ties permitted pursuant to P. L. 1977, c. 110, "The Casino Control*
9C *Act."\**
10 Source: New.

1 2C:21–19. Wrongful Credit Practices and Related Offenses.
2 a. Criminal usury. A person is guilty of criminal usury when not
3 being authorized or permitted by law to do so, he:

98

4 (1) Loans or agrees to loan, directly or indirectly, any money or
5 other property at a rate exceeding the maximum rate permitted
6 by law; or
7 (2) Takes, agrees to take, or receives any money or other prop-
8 erty as interest on the loan or on the forbearance of any money or
9 other interest in excess of the maximum rate permitted by law.
10 Criminal usury is a crime of the second degree if the rate of
11 interest on any loan made to any person exceeds 50% per annum
12 or the equivalent rate for a longer or shorter period. It is a crime
13 of the third degree if the interest rate on any loan made to any
14 person except a corporation does not exceed 50% per annum but
15 the amount of the loan or forbearance exceeds $1,000.00. Otherwise,
16 making a loan to any person in violation of subsection a. (1) and
17 a. (2) of this section is a disorderly persons offense.
18 b. Business of criminal usury. Any person who knowingly en-
19 gages in the business of making loans or forbearances in violation
20 of subsection a. is guilty of a crime of the second degree and may
21 be subject to a fine not to exceed $25,000.00.
21A c. Possession of usurious loan records. A person is guilty of
21B a crime of the third degree when, with knowledge of the nature
21C thereof, he possesses any writing, paper instrument or article used
21D to record criminally usurious transactions prohibited by subsec-
21E tion a.
22 d. Unlawful collection practices. A person is guilty of a dis-
23 orderly persons offense when, with purpose to enforce a claim or
24 judgment for money or property, he sends, mails or delivers to
25 another person a notice, document or other instrument which has
26 no judicial or official sanction and which in its format or appear-
27 ance simulates a summons, complaint, court order or process or
28 an insignia, seal or printed form of a Federal, State or local
29 government or an instrumentality thereof, or is otherwise calcu-
30 lated to induce a belief that such notice, document or instrument
31 has a judicial or official sanction.
32 e. Making a false statement of credit terms. A person is guilty
33 of a disorderly persons offense when he understates or fails to
34 state the interest rate, or fails to make or makes a false or inaccu-
35 rate or incomplete statement of any other credit terms.
36 f. Debt adjusters. Any person who shall act or offer to act
37 as a debt adjuster shall be guilty of a crime of the fourth degree.
38 "Debt adjuster" means a person who acts or offers to act for a
39 consideration as an intermediary between a debtor and his creditors
40 for the purpose of settling, compounding, or otherwise altering the

99

41 terms of payment of any debts of the debtor and, to that end,
42 receives money or other property from the debtor, or on behalf
43 of the debtor, for payment to, or distribution among, the creditors
44 of the debtor. "Debtor" means an individual or two or more indi-
45 viduals who are jointly and severally, or jointly or severally
46 indebted.
47   The following persons shall not be deemed debt adjusters for
48 the purposes of this section: an attorney at law of this State; a
49 person who is a regular, full-time employee of a debtor, and who
50 acts as an adjuster of his employer's debts; a person acting
51 pursuant to any order or judgment of court, or pursuant to author-
52 ity conferred by any law of this State or of the United States; a
53 person who is a creditor of the debtor, or an agent of one or more
54 creditors of the debtor, and whose services in adjusting the debtor's
55 debts are rendered without cost to the debtor; or a person who,
56 at the request of a debtor, arranges for or makes a loan to the
57 debtor, and who, at the authorization of the debtor, acts as an
58 adjuster of the debtor's debts in the disbursement of the proceeds
59 of the loan, without compensation for the services rendered in
60 adjusting such debts.
61 Source: C. 2A:99A-1 (1960, c. 177, s. 1); C. 2A:99A-2 (1960,
62   c. 177, s. 2); C. 2A:99A-4 (1960, c. 177, s. 4); C. 2A:119A-1 (1968,
63   c. 349, s. 1 amended 1970, c. 76); C. 2A:119-2 (1968, c. 349, s. 2);
64   C. 2A:119A-3 (1968, c. 349, s. 3); C. 2A:119A-4 (1968, c. 349,
65   s. 4); C. 2A:170-102 (1968, c. 256, s. 1 amended 1970, c. 75);
66   2A:170-103 (1968, c. 256, s. 2).

CHAPTER 22.   [RESERVED]

CHAPTER 23.   [RESERVED]

PART 3.   OFFENSES AGAINST OTHERS

CHAPTER 24.   OFFENSES AGAINST THE FAMILY, CHILDREN
AND INCOMPETENTS

Section
1  2C:24-1.  Bigamy.
2  2C:24-2.  Blank.
3  2C:24-3.  Blank.
4  2C:24-4.  Endangering Welfare of Children.
5  2C:24-5.  Willful Non-Support.
6  2C:24-6.  Unlawful Adoptions.
7  2C:24-7.  Endangering the Welfare of an Incompetent Person.

100

1  2C:24-1. Bigamy. a. Bigamy. A married person is guilty of
2 bigamy, a disorderly persons offense**.** if he contracts or pur-
3 ports to contract another marriage, unless at the time of the sub-
4 sequent marriage:
5   (1) The actor believes that the prior spouse is dead;
6   (2) The actor and the prior spouse have been living apart for
7 5 consecutive years throughout which the prior spouse was not
8 known by the actor to be alive;
9   (3) A court has entered a judgment purporting to terminate or
10 annul any prior disqualifying marriage, and the actor does not
11 know that judgment to be invalid; or
12   (4) The actor reasonably believes that he is legally eligible to
13 remarry.
14   b. Other party to bigamous marriage. A person is guilty of
15 bigamy if he contracts or purports to contract marriage with
16 another knowing that the other is thereby committing bigamy.
17 Source: N. J. S. 2A:92-1; 2A:92-2; Model Penal Code: 230.1.

1  2C:24-2.  Blank.

1  2C:24-3.  Blank.

1  2C:24-4. Endangering Welfare of Children. **a.** Any person
2 having a legal duty for the care of a child or who has assumed
3 responsiblity for such care, who causes such child such harm as
4 would make such child an abused or neglected child as defined in
5 P. L. 1974, c. 119, § 1 (C. 9:6-8.21) shall be guilty of a crime of the
6 **[fourth]** **third** degree.
7   **b. As used in this subsection:**
8   (1) "Child" shall mean any person under 16 years of age.
9   (2) "Prohibited sexual act" means
10     (a) Sexual intercourse; or
11     (b) Anal intercourse; or
12     (c) Masturbation; or
13     (d) Bestiality; or
14     (e) Sadism; or
15     (f) Masochism; or
16     (g) Fellatio; or
17     (h) Cunnilingus; or
18     (i) Any other sexual activity; or
19     (j) Nudity, if such nudity is to be depicted for the purpose
20 of sexual stimulation or gratification of any person who may
21 view such depiction.

101

*(3) Any person, including any parent, guardian, or other person legally charged with the care or custody of a child, who causes or permits a child to engage in a prohibited sexual act or in the simulation of such an act if such person knows, has reason to know or intends that such act may be photographed or filmed is guilty of a crime of the second degree.*

*(4) Any person who photographs or films a child in a prohibited sexual act or in the simulation of such an act is guilty of a crime of the second degree.*

*(5) Any person who knowingly receives for the purpose of selling or who sells any photograph or film which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the second degree.*

*(6) For purposes of this subsection, a person who is depicted as or presents the appearance of being under the age of 16 in any photograph or film shall be rebuttably presumed to be under the age of 16.\*\**

Source: N. J. S. 2A:96-2; 2A:96-3; 2A:96-4; C. 9:6-8.21 (1974, c. 119, s. 1); Model Penal Code: 230.4.

2C:24-5. Willful Nonsupport. A person commits a crime of the fourth degree if he willfully fails to provide support which he can provide and which he knows he is legally obliged to provide to a spouse, child or other dependent. In addition to the sentence authorized by the code, the court may proceed under section 2C:62-1.

Source: N. J. S. 2A:100-1; 2A:100-2; Model Penal Code: 230.5.

2C:24-6. Unlawful Adoptions. a. Placing child for adoption without legal authority. Any person who shall place, offer to place, or aid in the placement of a child with any other person for the purpose of adoption is guilty of a crime of the fourth degree. This section shall not apply:

(1) To the placement of a child with a brother, sister, aunt, uncle, grandparent or stepparent of such child;

(2) To the parent who has legal custody of such child;

(3) To any other person who shall have been approved by law for such purpose; or

(4) To any attorney who aids in such an authorized placement.

b. Placing child for adoption for consideration. Any person, including a natural parent or parent by adoption, other than an agency approved by law to place children for adoption, who shall place, offer to place, or aid in the placement of a child in the home

of any other person for the purpose of adoption and, in so doing, take, receive or pay any pecuniary benefit or obligation, other than expenses in connection with the birth or illness of the child, or legal fees connected with the adoption is guilty of a crime of the third degree.

Source: C. 2A:96-6 (1953, c. 265, s. 1); C. 2A:96-7 (1953, c. 265, s. 2).

2C:24-7. Endangering the Welfare of an Incompetent Person. A person is guilty of a disorderly persons offense when he knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a person who is unable to care for himself because of mental disease or defect.

Source: New.

<div align="center">

CHAPTER 25.   [RESERVED]

CHAPTER 26.   [RESERVED]

PART 4.   OFFENSES AGAINST PUBLIC ADMINISTRATION

CHAPTER 27.   BRIBERY AND CORRUPT INFLUENCE

</div>

Section
2C:27-1.   Definitions.
2C:27-2.   Bribery in Official and Political Matters.
2C:27-3.   Threats and Other Improper Influence in Official and Political Matters.
2C:27-4.   Compensation for Past Official Behavior.
2C:27-5.   Retaliation for Past Official Action.
2C:27-6.   Gifts to Public Servants by Persons Subject to Their Jurisdiction.
2C:27-7.   Compensating Public Servant for Assisting Private Interests in Relation to Matters Before Him.
2C:27-8.   Selling Political Endorsement; Special Influence.

2C:27-1. Definitions. In chapter 27-30, unless a different meaning plainly is required:

a. "Benefit" means gain or advantage, or anything regarded by the beneficiary as gain or advantage, including benefit to any other person or entity in whose welfare he is interested;

b. "Government" includes any branch, subdivision or agency of the government of the State or any locality within it;

e. "Harm" means loss, disadvantage or injury, or anything so regarded by the person affected, including loss, disadvantage or injury to any other person or entity in whose welfare he is interested;

d. "Official proceeding" means a proceeding heard or which may be heard before any legislative, judicial, administrative or other governmental agency, arbitration proceeding, or official authorized to take evidence under oath, including any arbitrator, referee, hearing examiner, commissioner, notary or other person taking testimony or deposition in connection with any such proceeding;

e. "Party official" means a person who holds an elective or appointive post in a political party in the United States by virtue of which he directs or conducts, or participates in directing or conducting party affairs at any level of responsibility;

f. "Pecuniary benefit" is benefit in the form of money, property, commercial interests or anything else the primary significance of which is economic gain;

g. "Public servant" means any officer or employee of government, including legislators and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses;

h. "Administrative proceeding" means any proceeding, other than a judicial proceeding, the outcome of which is required to be based on a record or documentation prescribed by law, or in which law or regulation is particularized in application to individuals;

j. "Statement" means any representation, but includes a representation of opinion, belief or other state of mind only if the representation clearly relates to state of mind apart from or in addition to any facts which are the subject of the representation.

Source: Model Penal Code: 240.0; 241.0.

2C:27-2. Bribery in Official and Political Matters. A person is guilty of bribery **[, a crime of the third degree,]** if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:

a. Any pecuniary benefit as consideration for the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party, official or voter; or

b. Any benefit as consideration for the recipient's decision, vote, recommendation or other exercise of official discretion in a judicial or administrative proceeding; or

c. Any benefit as consideration for a violation of a known legal duty as public servant or party official.

It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office, or lacked jurisdiction, or for any other reason.

In any prosecution under this section of an actor who solicited, accepted or agreed to accept a benefit, it is no defense that he did so as a result of conduct by another constituting theft by extortion or coercion or an attempt to commit either of those crimes.

**Any offense proscribed by this section shall be a crime of the second degree. If the thing of value offered, conferred, agreed to be conferred, solicited, accepted or agreed to be accepted is money in an amount of $200.00 or less, any offense proscribed by this section shall be a crime of the third degree.**

Source: N. J. S. 2A:93-1; 2A:93-2; 2A:93-3; 2A:93-4; 2A:93-6; 2A:103-1; 2A:103-2; 2A:105-1; 2A:105-2; Model Penal Code: 240.1.

2C:27-3. Threats and Other Improper Influence in Official and Political Matters. a. Offenses defined. A person commits an offense if he:

(1) Threatens unlawful harm to any person with purpose to influence his decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter;

(2) Threatens harm to any public servant with purpose to influence his decision, opinion, recommendation, vote or other exercise of discretion in a judicial or administrative proceeding:

(3) Threatens harm to any public servant or party official with purpose to influence him to violate his known legal duty; or

(4) Privately addresses to any public servant who has or will have an official discretion in a judicial or administrative proceeding any representation, entreaty, argument or other communication with purpose to influence the outcome on the basis of considerations other than those authorized by law.

It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way, whether because he had not yet assumed office or lacked jurisdiction, or for any other reason.

b. Grading. An offense under this section is a crime of the third degree.

Source: Model Penal Code: 240.2.

2C:27-4. Compensation for Past Official Behavior. A person commits a crime **[of the third degree]** if he knowingly solicits, accepts or agrees to accept any pecuniary benefit as compensation for having, as public servant, given a decision, opinion, recommendation or vote favorable to another, or for having otherwise exercised a discretion in his favor, or for having violated his duty. A person commits a crime **[of the third degree]** if he offers, confers or agrees to confer compensation acceptance of which is prohibited by this section. **Any offense proscribed by this section shall be a crime of the second degree. If the thing of value solicited, accepted, agreed to be accepted, offered, conferred or agreed to be conferred is money in an amount of $200.00 or less, any offense proscribed by this section shall be a crime of the third degree.**

Source: Model Penal Code: 240.3.

2C:27-5. Retaliation for Past Official Action. A person commits a crime of the fourth degree if he harms another by any unlawful act with purpose to retaliate for or on account of the service of another as a public servant.

Source: Model Penal Code: 240.4.

2C:27-6. Gifts to Public Servants by Persons Subject to Their Jurisdiction. a. Regulatory and law enforcement officials. No public servant in any department or agency exercising regulatory functions, or conducting inspections or investigations, or carrying on civil or criminal litigation on behalf of the government, or having custody of prisoners, shall solicit, accept or agree to accept any **[pecuniary benefit]** **thing of value** from a person **[known by the public servant to be subject to such regulation, inspection, investigation or custody, or against whom such litigation is known to be pending or contemplated or from an agent or representative of such a person]** **as consideration for any action pertaining to such regulation, inspection, investigation, custody or litigation**.

b. Officials concerned with government contracts and pecuniary transactions. No public servant having any discretionary function to perform in connection with contracts, purchases, payments, claims or other pecuniary transactions of the government shall solicit, accept or agree to accept any **[pecuniary benefit]** **thing of value** from any person **[known by the public servant to be interested in or likely to become interested in]** **as consideration for any action pertaining to** any such contract, purchase, payment, claim or transaction.

c. Judicial and administrative officials. No public servant having judicial or administrative authority and no public servant employed by or in a court or other tribunal having such authority, or participating in the enforcement of its decisions, shall solicit, or accept or agree to accept any **[pecuniary benefit]** **thing of value** from a person **[known by the public servant to be interested in or likely to become interested in]** **as consideration for any action pertaining to** any matter before such public servant or a tribunal **[with which he is associated]**.

d. Legislative officials. No legislator or public servant employed by the legislature or by any committee or agency thereof shall solicit, accept or agree to accept any personal **[pecuniary benefit]** **thing of value** from any person **[known by the legislator or public servant to be interested in]** **as consideration for any action pertaining to** a bill, transaction or proceeding, pending or contemplated, before the legislature or any committee or agency thereof.

e. Exceptions. This section shall not apply to:

(1) Fees prescribed by law to be received by a public servant, or any other benefit for which the recipient gives legitimate consideration or to which he is otherwise legally entitled; or

(2) Gifts or other benefits conferred on account of kinship or other personal, professional or business relationship independent of the official status of the receiver; or

(3) Trivial benefits incidental to personal, professional or business contacts and involving no substantial risk of undermining official impartiality.

f. Offering benefits prohibited. No person shall knowingly confer, or offer or agree to confer, any benefit prohibited by the foregoing subsections.

g. Grade of offense. **[An offense under this section is a crime of the *[fourth]* *third* degree.]** **An offense proscribed by this section shall be a crime of the second degree. If the thing of value solicited, accepted, agreed to be accepted, conferred, offered, or agreed to be conferred is money in an amount of $200.00 or less, an offense proscribed by this section shall be a crime of the third degree.**

Source: Model Penal Code: 240.5.

2C:27-7. Compensating Public Servant for Assisting Private Interests in Relation to Matters Before Him. a. Receiving Compensation. A public servant commits a crime **[of the fourth degree]** if he solicits, accepts or agrees to accept any pecuniary

benefit for advice or other assistance in preparing or promoting
a bill, contract, claim, or other transaction or proposal as to
which he knows that he has or is likely to have an official discretion
to exercise.

b. Paying compensation. A person commits a crime **[of the
fourth degree]** if he pays or offers or agrees to pay any
pecuniary benefit to a public servant with knowledge that
acceptance by the public servant is unlawful.

**An offense proscribed by this section shall be a crime of the
second degree. If the thing of value solicited, accepted, agreed
to be accepted, paid, offered or agreed to be paid is money in an
amount of $200.00 or less, an offense proscribed by this section
shall be a crime of the third degree.**

Source: Model Penal Code: 240.6.

2C:27-8. Selling Political Endorsement; Special Influence.
a. Selling political endorsement. A person commits a crime **[of
the fourth degree]** if he solicits, receives, agrees to receive, or
agrees that any political party or other person shall receive, any
pecuniary benefit as consideration for approval or disapproval of
an appointment or advancement in public service, or for approval
or disapproval of any person or transaction for any benefit con-
ferred by an official or agency of government. "Approval" in-
cludes recommendation, failure to disapprove, or any other mani-
festation of favor or acquiescence. "Disapproval" includes failure
to approve, or any other manifestation of disfavor or nonacquies-
cence.

b. Other trading in special influence. A person commits a crime
**[of the fourth degree]** if he solicits, receives, or agrees to
receive any pecuniary benefit as consideration for exerting special
influence upon a public servant or procuring another to do so.
"Special influence" means power to influence through kinship,
friendship or other relationship, apart from the merits of the
transaction.

c. Paying for endorsement or special influence. A person com-
mits a crime **[of the fourth degree]** if he offers, confers or
agrees to confer any pecuniary benefit, receipt of which is pro-
hibited by this section.

**An offense proscribed by this section shall be a crime of the
second degree. If the thing of value solicited, received, agreed to
be received, offered, conferred or agreed to be conferred is money
in an amount of $200.00 or less, an offense proscribed by this section
shall be a crime of the third degree.**

Source: N. J. S. 2A:93-6; Model Penal Code: 240.7.

108

CHAPTER 28. PERJURY AND OTHER FALSIFICATION
IN OFFICIAL MATTERS

Section
2C:28-1.   Perjury.
2C:28-2.   False Swearing.
2C:28-3.   Unsworn Falsification to Authorities.
2C:28-4.   False Reports to Law Enforcement Authorities.
2C:28-5.   Tampering With Witnesses and Informants; Retaliation
           Against Them.
2C:28-6.   Tampering With or Fabricating Physical Evidence.
2C:28-7.   Tampering With Public Records or Information.
2C:28-8.   Impersonating a Public Servant.

2C:28-1. Perjury. a. Offense defined. A person is guilty of
perjury, a crime of the third degree, if in any official proceeding
he makes a false statement under oath or equivalent affirmation, or
swears or affirms the truth of a statement previously made, when
the statement is material and he does not believe it to be true.

b. Materiality. Falsification is material, regardless of the
admissibility of the statement under rules of evidence, if it could
have affected the course or outcome of the proceeding or the dis-
position of the matter. It is no defense that the declarant
mistakenly believed the falsification to be immaterial. Whether a
falsification is material is a question of law.

c. Irregularities no defense. It is not a defense to prosecution
under this section that the oath or affirmation was administered
or taken in an irregular manner. A document purporting to be
made upon oath or affirmation at any time when the actor presents
it as being so verified shall be deemed to have been duly sworn or
affirmed.

d. Retraction. It is an affirmative defense under this section that
the actor retracted the falsification in the course of the proceeding
or matter in which it was made prior to the termination of the
proceeding or matter.

e. Corroboration. No person shall be convicted of an offense
under this section where proof of falsity rests solely upon contra-
diction by testimony of a single person other than the defendant.

Source: N. J. S. 2A:131-1; 2A:131-2; 2A:131-3; 2A:131-4;
2A:131-5; 2A:131-6; 2A:131-7; Model Penal Code: 241.1.

2C:28-2. False Swearing. a. False swearing **[in official
matters]**. **[A person who makes a false statement under oath

109

3 or equivalent affirmation, or swears or affirms the truth of such a
4 statement previously made, when he does not believe the state-
5 ment to be true, is guilty of a crime of the fourth degree if the
6 falsification is made with the purpose of misleading a public
7 servant in performing his official function.]**

8 **[b. Other false swearing.]** A person who makes a false
9 statement under oath or equivalent affirmation, or swears or affirms
10 the truth of such a statement previously made, when he does not
11 believe the statement to be true, is guilty of a disorderly persons
12 offense.

13 **[c.]** **b.** Perjury provisions applicable. Subsections c.
14 **[through e.]** **and d.** of section 2C:28–1 apply to the present
15 section.

16 **[d.]** **c.** Inconsistent statements. Where the defendant
17 made inconsistent statements under oath or equivalent affirmation,
18 both having been made within the period of the statute of limita-
19 tions, the prosecution may proceed by setting forth the incon-
20 sistent statements in a single count alleging in the alternative
21 that one or the other was false and not believed by the defendant.
22 In such case it shall not be necessary for the prosecution to prove
23 which statement was false but only that one or the other was false
24 and not believed by the defendant to be true.

25 Source: N. J. S. 2A:131–4; 2A:131–5; 2A:131–6; 2A:131–7; Model
26  Penal Code: 241.2.

1 2C:28–3. Unsworn Falsification to Authorities. a. Statements
2 "Under Penalty." A person commits a disorderly persons offense
3 if he makes a written false statement which he does not believe to
4 be true, on or pursuant to a form bearing notice, authorized by
5 law, to the effect that false statements made therein are punishable.

6 b. In general. A person commits a petty disorderly persons
7 offense if, with purpose to mislead a public servant in performing
8 his function, he:

9 (1) Makes any written false statement which he does not believe
10 to be true;

11 (2) Purposely creates a false impression in a written applica-
12 tion for any pecuniary or other benefit, by omitting information
13 necessary to prevent statements therein from being misleading;

14 (3) Submits or invites reliance on any writing which he knows
15 to be forged, altered or otherwise lacking in authenticity; or

16 (4) Submits or invites reliance on any sample, specimen, map,
17 boundary-mark, or other object which he knows to be false.

18 c. Perjury provisions applicable. Subsections c. **[through
19 e.]** **and d.** of section 2C:28–1 and subsection d. of 2C:28–2
20 apply to the present section.

21 Source: N. J. S. 2A:131–6; Model Penal Code: 241.3.

1 2C:28–4. False Reports to Law Enforcement Authorities.
2 a. Falsely incriminating another. A person who knowingly gives
3 or causes to be given false information to any law enforcement
4 officer with purpose to implicate another commits a crime of the
5 fourth degree.

6 b. Fictitious reports. A person commits a disorderly persons
7 offense if he:

8 (1) Reports or causes to be reported to law enforcement author-
9 ities an offense or other incident within their concern knowing that
10 it did not occur; or

11 (2) Pretends to furnish or causes to be furnished such author-
12 ities with information relating to an offense or incident when he
13 knows he has no information relating to such offense or incident.

14 Source: C. 2A:148–22.1 (1957, c. 49, s. 1); N. J. S. 2A:170–9
15 amended 1971, c. 87, s. 1; Model Penal Code: 241.5.

1 2C:28–5. Tampering With Witnesses and Informants; Retalia-
2 tion Against Them. a. Tampering. A person commits an offense
3 if, believing that an official proceeding or investigation is pending
4 or about to be instituted, he knowingly attempts to induce or other-
5 wise cause a witness or informant to:

6 (1) Testify or inform falsely;

7 (2) Withhold any testimony, information, document or thing;

8 (3) Elude legal process summoning him to testify or supply
9 evidence; or

10 (4) Absent himself from any proceeding or investigation to
11 which he has been legally summoned.

12 The offense is a crime of the third degree if the actor employs
13 force, deception, threat or offer of pecuniary benefit. Otherwise
14 it is a crime of the fourth degree. Privileged communications may
15 not be used as evidence in any prosecution for violations of para-
16 graphs (2), (3) or (4).

17 b. Retaliation against witness or informant. A person commits
18 a crime of the fourth degree if he harms another by an unlawful
19 act with purpose to retaliate for or on account of the service of
20 another as a witness or informant.

21 c. Witness or informant taking bribe. A person commits a crime
22 of the third degree if he solicits, accepts or agrees to accept any

23   benefit in consideration of his doing any of the things specified in
24   subsections a. (1) through (4) of this section.

25   Source: Model Penal Code: 241.6.

1   2C:28-6. Tampering With or Fabricating Physical Evidence.
2   A person commits a crime of the fourth degree if, believing that
3   an official proceeding or investigation is pending or about to be
4   instituted, he:

5   (1) Alters, destroys, conceals or removes any article, object,
6   record, document or other thing of physical substance with pur-
7   pose to impair its verity or availability in such proceeding or in-
8   vestigation; or

9   (2) Makes, devises, prepares, presents, offers or uses any article,
10   object, record, document or other thing of physical substance know-
11   ing it to be false and with purpose to mislead a public servant who
12   is engaged in such proceeding or investigation.

13   Source: Model Penal Code: 241.7.

1   2C:28-7. Tampering With Public Records or Information.
2   a. Offense defined. A person commits an offense if he:

3   (1) Knowingly makes a false entry in, or false alteration of, any
4   record, document or thing belonging to, or received or kept by, the
5   government for information or record, or required by law to be
6   kept by others for information of the government:

7   (2) Makes, presents, offers for filing, or uses any record, docu-
8   ment or thing knowing it to be false, and with purpose that it be
9   taken as a genuine part of information or records referred to in
10   paragraph (1); or

11   (3) Purposely and unlawfully destroys, conceals, removes, mu-
12   tilates, or otherwise impairs the verity or availability of any such
13   record, document or thing.

14   b. Grading. An offense under this section is a disorderly persons
15   offense unless the actor's purpose is to defraud or injure anyone,
16   in which case the offense is a crime of the third degree.

17   Source: Model Penal Code: 241.8.

1   2C:28-8. Impersonating a Public Servant. A person commits a
2   disorderly persons offense if he falsely pretends to hold a position
3   in the public service with purpose to induce another to submit to
4   such pretended official authority or otherwise to act in reliance upon
5   that pretense.

6   Source: N. J. S. 2A:135-10; 2A:135-11; C. 2A:170-20.5 (1954,
7   c. 181, s. 6); Model Penal Code: 241.9.

112

CHAPTER 29.   OBSTRUCTING GOVERNMENTAL OPERATIONS; ESCAPES
Section

1   2C:29-1.   Obstructing Administration of Law or Other Govern-
2                  mental Function.
3   2C:29-2.   Resisting Arrest.
4   2C:29-3.   Hindering Apprehension or Prosecution.
5   2C:29-4.   Compounding.
6   2C:29-5.   Escape.
7   2C:29-6.   Implements for Escape; Other Contraband.
8   2C:29-7.   Bail Jumping; Default in Required Appearance.
9   2C:29-8.   Blank.

1   2C:29-1. Obstructing Administration of Law or Other Govern-
2   mental Function. A person commits a disorderly persons offense
3   if he purposely obstructs, impairs or perverts the administration
4   of law or other governmental function or prevents or attempts to
5   prevent a public servant from **lawfully** performing an official
6   function by means of intimidation, force, violence, or physical
7   interference or obstacle, or by means of any independently unlawful
8   act. This section does not apply to flight by a person charged with
9   crime, refusal to submit to arrest, failure to perform a legal duty
10   other than an official duty, or any other means of avoiding com-
11   pliance with law without affirmative interference with govern-
12   mental functions.

13   Source: Model Penal Code: 242.1; 242.9.

1   2C:29-2. Resisting Arrest. A person is guilty of an offense if he
2   purposely prevents a law enforcement officer from effecting a
3   lawful arrest. The offense is a crime of the fourth degree if he:

4   a. Uses or threatens to use physical force or violence against
5   the law enforcement officer or another; or

6   b. Uses any other means to create a substantial risk of causing
7   physical injury to the public servant or another. Otherwise it is a
8   disorderly persons offense.

9   It is not a defense to a prosecution under this section that the
10   law enforcement officer was acting unlawfully in making the arrest,
11   provided he was acting under color of his official authority and
12   provided the law enforcement officer announces his intention to
13   arrest prior to the resistance.

14   Source: Model Penal Code: 242.2.

1   2C:29-3. Hindering Apprehension or Prosecution. A person
2   commits an offense if, with purpose to hinder the apprehension,
3   prosecution, conviction or punishment of another for an offense he:

113

a. Harbors or conceals the other;

b. Provides or aids in providing a weapon, money, transportation, disguise or other means of avoiding discovery or apprehension or affecting escape;

c. Suppresses, by way of concealment or destruction; any evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence, which might aid in the discovery or apprehension of such person or in the lodging of a charge against him;

d. Warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law;

e. Prevents or obstructs, by means of force, intimidation or deception, any one from performing an act which might aid in the discovery or apprehension of such person or in the lodging of a charge against him;

f. Aids such person to protect or expeditiously profit from an advantage derived from such crime; or

g. Volunteers false information to a law enforcement officer. The offense is a crime of the third degree if the conduct which the actor knows has been charged or is liable to be charged against the person aided would constitute a crime of the second degree or greater, unless the actor is a spouse, parent or child of the person aided, in which case the offense is a crime of the fourth degree. The offense is a crime of the fourth degree if such conduct would constitute a crime of the third degree. Otherwise it is a disorderly persons offense.

Source: N. J. S. 2A:85–2; Model Penal Code: 242.3; 242.4.

2C:29–4. Compounding. A person commits a crime **[of the fourth degree]** if he accepts or agrees to accept any pecuniary benefit in consideration of refraining from reporting to law enforcement authorities the commission or suspected commission of any offense or information relating to an offense or from seeking prosecution of an offense. A person commits a crime **[of the fourth degree]** if he confers or agrees to confer any pecuniary benefit in consideration of the other person agreeing to refrain from any such reporting or seeking prosecution. It is an affirmative defense to prosecution under this section that the pecuniary benefit did not exceed an amount which the actor reasonably believed to be due as restitution or indemnification for harm caused by the offense. *An offense proscribed by this section shall*

*be a crime of the second degree. If the thing of value accepted, agreed to be accepted, conferred or agreed to be conferred is money in an amount of $200.00 or less, an offense proscribed by this section shall be a crime of the third degree.***

Source: N. J. S. 2A:97–1; Model Penal Code: 242.5.

2C:29–5. Escape. a. Escape. A person commits an offense if he without lawful authority removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. "Official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but "official detention" does not include supervision of probation or parole, or constraint incidental to release on bail.

b. Permitting or facilitating escape. A public servant concerned in detention commits an offense if he knowingly or recklessly permits an escape. Any person who knowingly causes or facilitates an escape commits an offense.

c. Effect of legal irregularity in detention. Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, shall not be a defense to prosecution under this section if the escape is from a prison or other custodial facility or from detention pursuant to commitment by official proceedings. In the case of other detentions, irregularity or lack of jurisdiction shall be a defense only if:

(1) The escape involed no substantial risk of harm to the person or property of anyone other than the detainee; or

(2) The detaining authority did not act in good faith under color of law.

d. Grading of offenses. An offense under this section is a crime of the third degree where:

(1) The actor was under arrest for or detained on a charge of crime or following conviction of an offense; or

(2) The actor employs force, threat, deadly weapon or other dangerous instrumentality to effect the escape; or

(3) A public servant concerned in detention of persons convicted of crime purposely facilitates or permits an escape from a detention facility.

Otherwise it is a crime of the fourth degree.

36   Source:  N. J. S. 2A:104–1; 2A:104–2; 2A:104–3; 2A:104–4;
37      2A:104–5;   2A:104–6;   2A:104–7;   2A:104–8;   2A:104–9;
38      2A:104–10; Model Penal Code: 242.6.

1      2C:29–6. Implements for Escape; Other Contraband. a. Escape
2   implements.  A person commits an offense if he knowingly and
3   unlawfully introduces within a detention facility, or knowingly and
4   unlawfully provides an inmate with any weapon, tool or other thing
5   which may be useful for escape. An inmate commits an offense if
6   he knowingly and unlawfully procures, makes, or otherwise pro-
7   vides himself with, or has in his possession, any such implement of
8   escape. "Unlawfully" means surreptitiously or contrary to law,
9   regulation or order of the detaining authority. The offense is a
10   crime of the third degree if the item is a weapon. Otherwise it is
11   a crime of the fourth degree.

12      b.  Other contraband.  A person commits a petty disorderly per-
13   sons offense if he, provides an inmate with any other thing which
14   the actor knows or should know it is unlawful for the inmate to
15   possess.

16   Source:  N. J. S. 2A:104–8; 2A:104–11; 2A:104–12; Model Penal
17      Code: 242.7.

1      2C:29–7. Bail Jumping; Default in Required Appearance. A
2   person set at liberty by court order, with or without bail, upon
3   condition that he will subsequently appear at a specified time and
4   place in connection with any offense, commits an offense if, without
5   lawful excuse, he fails to appear at that time and place. It is an
6   affirmative defense for the defendant to prove, by a preponderance
7   of evidence, that he did not knowingly fail to appear. The offense
8   constitutes a crime of the third degree where the required appear-
9   ance was to answer to a charge of a crime of the third degree or
10   greater, or for disposition of any such charge and the actor took
11   flight or went into hiding to avoid apprehension, trial or punish-
12   ment. The offense constitutes a crime of the fourth degree where
13   the required appearance was otherwise to answer to a charge of
14   crime of the third degree or for disposition of such charge. The offense constitutes a
15   disorderly persons offense or a petty disorderly persons offense,
16   respectively, when the required appearance was to answer a charge
17   of such an offense or for disposition of any such charge.

18      This section does not apply to obligations to appear incident
19   to release under suspended sentence or on probation or parole.
20   Nothing herein shall interfere with or prevent the exercise by any
21   court of this State of its power to punish for contempt.

22   Source:  C. 2A:104–13 (1964, c. 265, s. 1); C. 2A:104–14 (1964,
23      c. 265, s. 2); Model Penal Code: 242.8.

1   2C:29–8.  Blank.

## CHAPTER 30.   MISCONDUCT IN OFFICE; ABUSE OF OFFICE

Section
1   2C:30–1.   Official Oppression.
2   2C:30–2.   Official Misconduct.
3   2C:30–3.   Speculating or Wagering on Official Action or Informa-
4      tion.

1      2C:30–1. Official Oppression. A person acting or purporting to
2   act in an official capacity or taking advantage of such actual or
3   purported capacity commits a crime of the **[fourth]** **third**
4   degree if, knowing that his conduct is illegal, he:

5      a.  Subjects another to arrest, detention, search, seizure, mis-
6   treatment, dispossession, assessment, lien or other infringement of
7   personal or property rights; or

8      b.  Denies or impedes another in the exercise or enjoyment of any
9   right, privilege, power or immunity.

10   Source:  Model Penal Code: 243.1.

1      2C:30–2. Official Misconduct. A public servant is guilty of
2   official misconduct when, with **corrupt** purpose to obtain a
3   benefit for himself or another or to injure or to deprive another
3A   of a benefit:

4      a.  He commits an act relating to his office but constituting an
5   unauthorized exercise of his official functions, knowing that such
6   act is unauthorized or he is committing such act in an unauthorized
7   manner; or

8      b.  He knowingly refrains from performing a duty which is im-
9   posed upon him by law or is clearly inherent in the nature of his
10   office.

11      Official misconduct is a crime of the **[third degree]** **second
12   degree.  If the thing of value obtained or sought to be obtained,
13   or of which another is deprived or sought to be deprived, is money
14   in an amount of $200.00 or less, the offense of official misconduct
15   shall be a crime of the third degree.**

16   Source; New.

1      2C:30–3. Speculating or Wagering on Official Action or Informa-
2   tion. A public servant commits a crime **[of the fourth degree]**

3  if, in contemplation of official action by himself or by a govern-
4  mental unit with which he is or has been associated, or in reliance
5  on information to which he has or has had access in an official
6  capacity and which has not been made public, he:

7    a. Acquires a pecuniary interest in any property, transaction or
8  enterprise which may be affected by such information or official; or

9    b. Speculates or wagers on the basis of such information or
10  official action; or

11    c. Aids another to do any of the foregoing, while in office or
12  after leaving office with a purpose of using such information.

13    *An offense proscribed by this section shall be a crime of the
14  second degree. If the thing of value acquired or sought to be
15  acquired is money of a value of $200.00 or less, an offense pro-
16  scribed by this section shall be a crime of the third degree.**

17  Source: Model Penal Code: 243.2.

CHAPTER 31.   [RESERVED]

CHAPTER 32.   [RESERVED]

PART 5.   OFFENSES AGAINST PUBLC ORDER,
HEALTH AND DECENCY

CHAPTER 33.   RIOT, DISORDERLY CONDUCT,
AND RELATED OFFENSES

Section

1  2C:33–1.  Riot; Failure to Disperse.
2  2C:33–2.  Disorderly Conduct.
3  2C:33–3.  False Public Alarms.
4  2C:33–4.  Harassment.
5  2C:33–5.  Blank.
6  2C:33–6.  Blank.
7  2C:33–7.  Obstructing Highways and Other Public Passages.
8  2C:33–8.  Disrupting Meetings and Processions.
9  2C:33–9.  Desecration of Venerated Objects.
10  2C:33–10.  *[Cruelty to Animals.]* *Blank.*
11  2C:33–11.  Blank.
12  2C:33–12.  Maintaining a Nuisance.
13  2C:33–13.  Smoking in Public Conveyances.
14  2C:33–14.  Interference with Transportation.
15  **[2C:33–15.  Cutting in Line.]**

1    2C:33–1. Riot; Failure to Disperse. a. Riot. A person is guilty
2  of riot, a crime of the fourth degree, if he participates with four or
3  more others in a course of disorderly conduct as defined in section
4  **[2C:33–2]** ** **2C:33–2a.**

5    (1) With purpose to commit or facilitate the commission of a
6  crime;

7    (2) With purpose to prevent or coerce official action; or

8    (3) When he or any other participant, known to him, uses or
9  plans to use a firearm or other deadly weapon.

10    b. Failure of disorderly persons to disperse upon official order.
11  Where four or more persons are participating in a course of dis-
12  orderly conduct as defined in section **[2C:33–2]** ** 2C:33–2a.**
13  likely to cause substantial harm, a peace officer or other public
14  servant engaged in executing or enforcing the law may order the
15  participants and others in the immediate vicinity to disperse. A
16  person who refuses or knowingly fails to obey such an order
17  commits a disorderly persons offense.

18  Source: N. J. S. 2A:126–1; 2A:126–2; 2A:126–3; 2A:126–4;
19    2A:126–5; 2A:126–6; 2A:126–7; Model Penal Code: 250.1.

1    2C:33–2. Disorderly Conduct. a. **[Violent]** ** **Improper**
2  behavior. A person is guilty of a petty disorderly persons offense,
3  if with purpose to cause public inconvenience, annoyance or alarm,
4  or recklessly creating a risk thereof he

5    (1) Engages in fighting or threatening, or in violent or
6  tumultuous behavior; or

7    (2) Creates a hazardous or physically dangerous condition by
8  any act which serves no legitimate purpose of the actor.

9    b. Offensive language. A person is guilty of a petty disorderly
10  persons offense if, in a public place, and with purpose to offend
11  the sensibilities of a hearer or in reckless disregard of the proba-
12  bility of so doing, he addresses unreasonably loud and offensively
13  coarse or abusive language, given the circumstances of the person
14  present and the setting of the utterance, to any person present.

15    ''Public'' means affecting or likely to affect persons in a place
16  to which the public or a substantial group has access; among the
17  places included are highways, transport facilities, schools, prisons,
18  apartment houses, places of business or amusement, or any neigh-
19  borhood.

20  Source: N. J. S. 2A:170–26; 2A:170–27; 2A:170–29 amended 1965,
21    c. 172; 2A:170–30; Model Penal Code: 250.2.

2C:33-3. False Public Alarms. A person is guilty of a crime of the fourth degree if he initiates or circulates a report or warning of an impending fire, explosion, bombing, crime, catastrophe or emergency knowing that the report or warning is false or baseless and that it is likely to cause evacuation of a building, place of assembly, or facility of public transport, or to cause public inconveniences or alarm. A person is guilty of a crime of the fourth degree if he knowingly causes such false alarm to be transmitted to or within any organization, official or volunteer, for dealing with emergencies involving danger to life or property.

Source: C. 2A:122-11 (1960, c. 69); N. J. S. 2A:132-1; 2A:170-9 amended 1971, c. 87, s. 1; Model Penal Code: 241.4; 250.3.

2C:33-4. Harassment. A person commits a petty disorderly persons offense if, with purpose to harass another, he:

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

Source: Model Penal Code: 250.4.

2C:33-5. Blank.

2C:33-6. Blank.

2C:33-7. Obstructing Highways and Other Public Passages. a. A person, who, having no legal privilege to do so, purposely or recklessly obstructs any highway or other public passage whether alone or with others, commits a petty disorderly persons offense. "Obstructs" means renders impassable without unreasonable inconvenience or hazard. No person shall be deemed guilty of recklessly obstructing in violation of this subsection solely because of a gathering of persons to hear him speak or otherwise communicate, or solely because of being a member of such a gathering.

b. A person in a gathering commits a petty disorderly persons offense if he refuses to obey a reasonable official request or order to move:

(1) To prevent obstruction of a highway or other public passage; or

(2) To maintain public safety by dispersing those gathered in dangerous proximity to a fire or other hazard.

An order to move, addressed to a person whose speech or other lawful behavior attracts an obstructing audience, shall not be deemed reasonable if the obstruction can be readily remedied by police control of the size or location of the gathering.

Source: Model Penal Code: 250.7.

2C:33-8. Disrupting Meetings and Processions. A person commits a disorderly persons offense if, with purpose to prevent or disrupt a lawful meeting, procession or gathering, he does an act tending to obstruct or interfere with it physically.

Source: N. J. S. 2A:170-28.

2C:33-9. Desecration of Venerated Objects. A person commits a disorderly persons offense if he purposely desecrates any public monument**, *insignia, symbol,** or structure, or place of worship or burial. "Desecrate" means defacing, damaging or polluting.

Source: N. J. S. 2A:95-1; 2A:95-2 amended 1954, c. 219, s. 1; C. 2A:95-3 (1954, c. 219, s. 2 amended 1973, c. 219, s. 37); C. 2A:122-10 (1960, c. 5); C. 2A:122-12 (1967, c. 72); Model Penal Code: 250.9.

2C:33-10. Blank.

2C:33-11. Blank.

2C:33-12. Maintaining a Nuisance. A person is guilty of a disorderly persons offense when:

a. By conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons; or

b. He knowingly conducts or maintains any premises, place or resort where persons gather for purposes of engaging in unlawful conduct.

Upon conviction under subsection b. of this section in addition to the sentence authorized by this code, the court may proceed as set forth in section 2C:56-1.

Source: N. J. S. 2A:130-3.

2C:33-13. Smoking in Public **[Conveyances]**. **a.** Any person who smokes or carries lighted tobacco in or upon any bus or other public conveyance, other than in the places provided, is a petty disorderly person.

4A  **b. Any person who smokes or carries lighted tobacco in any
4B  public place, including but not limited to places of public accom-
4C  modation, where such smoking is prohibited by the owner or other
4D  lawful authority, and when adequate notice of such prohibition has
4E  been conspicuously posted, is guilty of a petty disorderly persons
4F  offense. Notwithstanding the provisions of 2C:43-3, the maximum
4G  fine which can be imposed for violation of this section is $200.00.**

5  Source: N. J. S. 2A:170–65 amended 1972, c. 85, s. 1.

1  2C:33–14. Interference with Transportation. Any person who
2  casts, shoots or throws anything at, against or into any vehicle,
3  railroad car, airplane, or other facility of transportation, or places
4  any stick, stone or other substance upon any street railway track,
5  trolley track or railroad track, or who unlawfully climbs into or
6  upon any **[coal]** **railroad** car, either in motion or standing
7  on the track of any railroad company in this State, **[and throws
8  from the same any coal, or takes up from the tracks or alongside
9  the tracks any coal so thrown from the cars,]** is guilty of a
9A  disorderly persons offense.

10  Source: N. J. S. 2A:170–60 amended 1966, c. 231.

1  **[2C:33–15. Cutting in Line. A person who purposely or know-
2  ingly places himself in front of another who is in line awaiting his
3  turn to use or make a purchase at any public or private facility is
4  guilty of a petty disorderly persons offense. It is an affirmative
5  defense to prosecution under this section that there was an emer-
6  gency or the actor was the owner, manager or an employee of the
7  facility.

8  Source: New.]**


CHAPTER 34.   PUBLIC INDECENCY

Section
1  **[2C:34–1.   Open Lewdness.]**
2  **[2C:34–2.]** **2C:34–1.** Prostitution and Related Offenses.
3  **[2C:34–3.]** **2C:34–2.** **[Blank]** Obscenity for Persons
4            16 Years of Age or Older.
5  **[2C:34–4.]** **2C:34–3.** Obscenity for Persons Under 16.
6  **[2C:34–5.]** **2C:34–4.** Public Communication of Obscenity.
7  **[2C:34–6.]** **2C:34–5.** Diseased Person Having Sexual
8            Intercourse.

122

1  **[2C:34–1. Open Lewdness. A person commits a disorderly per-
2  sons offense if in a place exposed to public view he does any flag-
3  rantly lewd and offensive act which he knows or reasonably expects
4  is likely to be observed by members of the public who would be
5  affronted or alarmed. "Lewd acts" shall include the exposing of
6  the genitals for the purpose of arousing or gratifying the sexual
7  desire of the actor or of any other person.

8  Source: N. J. S. 2A:115–1; Model Penal Code: 213.5; 251.1.]**

1  **[2C:34–2.]** **2C:34–1.** Prostitution and Related Offenses.
2  a. Prostitution. A person is guilty of prostitution, a **petty**
3  disorderly persons offense, if he or she:

4  (1) Is an inmate of a house of prostitution or otherwise engages
5  in sexual activity as a business; or

6  (2) Solicits another person in or within view of any public place
7  for the purpose of being hired to engage in sexual activity,
8  "Sexual activity" includes homosexual and other deviate sexual
9  relations. A "house of prostitution" is any place where prostitu-
10  tion or promotion of prostitution is regularly carried on by one
11  person under the control, management or supervision of another.
12  An "inmate" is a person who engages in prostitution in or through
13  the agency of a house of prostitution. "Public place" means any
14  place to which the public or any substantial group thereof has
15  access.

16  b. Promoting prostitution. A person who knowingly promotes
17  prostitution of another commits an offense. The following acts
18  shall, without limitation of the foregoing, constitute promoting
19  prostitution:

20  (1) Owning, controlling, managing, supervising or otherwise
21  keeping, alone or in association with others, a house of prostitution
22  or a prostitution business;

23  (2) Procuring an inmate for a house of prostitution or a place in
24  a house of prostitution for one who would be an inmate;

25  (3) Encouraging, inducing, or otherwise purposely causing an-
26  other to become or remain a prostitute;

27  (4) Soliciting a person to patronize a prostitute;

28  (5) Procuring a prostitute for a patron;

29  (6) Transporting a person into or within this State with purpose
30  to promote that person's engaging in prostitution, or procuring
31  or paying for transportation with that purpose;

32  (7) Leasing or otherwise permitting a place controlled by the
33  actor, alone or in association with others, to be regularly used for

123

34 prostitution or the promotion of prostitution, or failure to make
35 reasonable effort to abate such use by ejecting the tenant, notifying
36 law enforcement authorities, or other legally available means; or

37 (8) Soliciting, receiving, or agreeing to receive any benefit for
38 doing or agreeing to do anything forbidden by this subsection.

39 c. Grading of offenses under subsection b. An offense under sub-
40 section b. constitutes a crime of the third degree if:

41 (1) The offense falls within paragraph (1), (2) or (3) of that
42 subsection;

43 (2) The actor compels another to engage in or promote prostitu-
44 tion;

45 (3) The actor promotes prostitution of a child under 16, whether
46 or not he is aware of the child's age; or

47 (4) The actor promotes prostitution of the actor's spouse, child,
48 ward or any person for whose care he is responsible.

49 Otherwise, the offense is a crime of the fourth degree.

50 d. Presumption from living off prostitutes. A person, other than
51 the prostitute or the prostitute's minor child or other legal de-
52 pendent incapable of self-support, who is supported in whole or
53 substantial part by the proceeds of prostitution is presumed to be
54 knowingly promoting prostitution in violation of subsection b.

55 e. Patronizing prostitutes. A person commits a **petty** dis-
56 orderly persons offense if he hires a prostitute to engage in sexual
57 activity with him, or if he enters or remains in a house of prostitu-
58 tion for the purpose of engaging in sexual activity or if he solicits
59 or requests another person to engage in sexual activity with him
60 for hire.

61 Source: N. J. S. 2A:133–1; 2A:133–2; 2A:133–3; 2A:133–4;
62 2A:133–5; 2A:133–6; 2A:133–7; 2A:133–8; 2A:133–9; 2A:133–10;
63 2A:133–11; 2A:133–12; 2A:170–5; Model Penal Code: 251.2.

1 °*.**[2C:34-3.]**°*°**2C:34-2.** *[Blank.]* *Obscenity for persons
2 **[16]** **18** Years of Age or Older. a. Definitions for purpose
3 of this section:

3A (1) "Obscene material" means any description, narrative ac-
4 count**. display,** or depiction of sexual activity or anatomical
5 area contained in, or consisting of, a picture of other representation,
6 publication, sound recording°*, live performance,** or film, which
7 by means of posing, composition, format or animated sensual
7A details;

8 (a) Depicts or describes in a patently offensive way, ultimate
9 sexual acts, normal or perverted, actual or simulated, masturba-
10 tion, excretory functions, or lewd exhibition of the genitals,

124

11 (b) Lacks serious literary, artistic, political, or scientific value,
12 when taken as a whole, and

13 (c) Is a part of a work, which to the average person applying
14 contemporary community standards, has a dominant theme taken
15 as a whole, which appeals to the prurient interest.

16 b. A person who sells obscene material to a person 16 years of
17 age or older is a disorderly person **and** any person charged pur-
18 suant to this section shall have the right to a trial by jury.

19 Nothing contained herein shall be construed to prohibit a munici-
20 pality from adopting as a part of its zoning ordinances an ordinance
21 permitting the sale of obscene material, in which event such sale
22 shall be deemed legal**.*

1 **[2C:34-4.]** **2C:34-3.** Obscenity For Persons Under
2 **[16]** **18**. a. Definitions for purposes of this section:

3 (1) "Obscene material" means any description, narrative
4 account**, display,** or depiction of a specified anatomical area or
5 specified sexual activity contained in, or consisting of, a picture
6 or other representation, publication, sound recording°*, live per-
7 formance** or film, which by means of posing, composition, format
8 or animated sensual details, emits sensuality with sufficient impact
9 to concentrate prurient interest on the area or activity.

10 (2) "Obscene film" means any motion picture film or preview
11 or trailer to a film, not including newsreels portraying actual
12 current events or pictorial news of the day, in which a scene, taken
13 by itself.

14 (a) Depicts a specified anatomical area or specified sexual
15 activity, or the simulation of a specified sexual activity, or verbal-
16 ization concerning a specified sexual activity; and

17 (b) Emits sensuality sufficient, in terms of the duration and
18 impact of the depiction, to appeal to prurient interest.

19 (3) "Specified anatomical area" means:

20 (a) Less than completely and opaquely covered human genitals,
21 pubic region, buttock or female breasts below a point immediately
22 above the top of the areola; or

23 (b) Human male genitals in a discernibly turgid state, even if
24 covered.

25 (4) "Specified sexual activity" means:

26 (a) Human genitals in a state of sexual stimulation or arousal;
27 or

28 (b) Any act of human masturbation, sexual intercourse or
29 deviate sexual intercourse; or

125

30 (c) Fondling or other erotic touching of covered or uncovered
31 human genitals, pubic region, buttock or female breast.

32 (5) "Knowingly" means:

33 (a) Having knowledge of the character and content of the ma-
34 terial or film described herein; or

35 (b) Having failed to exercise reasonable inspection which would
36 disclose its character and content.

37 b. Sale of obscene material.

38 A person who knowingly sells to a person under **〔16〕** **18**
39 years of age obscene material is guilty of a crime of the fourth
39A degree.

40 c. Admitting to exhibition of obscene film.

41 Any person who knowingly admits a person under **〔16〕**
42 *18* years of age to a theatre then exhibiting an obscene film is
43 guilty of a crime of the fourth degree.

44 d. Presumption of knowledge and age.

45 The requisite knowledge with regard to the character and con-
46 tent of the film or material and of the age of the person is presumed
47 in the case of an actor who sells obscene material to a person under
48 **〔16〕** ** *18* years of age or admits to a film obscene for a per-
49 son under **〔16〕** ** *18** years of age a person who is under
49A 〔16〕 **18* years of age.

50 e. Defenses.

51 (1) It is an affirmative defense to a prosecution under subsec-
52 tions b. and c. which the defendant must prove by a preponderance
53 of evidence that:

54 (a) The person under age **〔16〕** **18** falsely represented
55 in or by writing that he was age **〔16〕** ** *18** or over;

56 (b) The person's appearance was such that an individual of
57 ordinary prudence would believe him to be age **〔16〕** ** *18**
57A or over; and

58 (c) The sale to or admission of the person was made in good
59 faith relying upon such written representation and appearance and
60 in the reasonable belief that he was actually age **〔16〕** ** *18**
60A or over.

61 (2) It is an affirmative defense to a prosecution under subsection
62 c. that the defendant is an employee in a motion picture theatre who
63 has no financial interest in that motion picture theatre other than
64 his wages and has no decision-making authority or responsibility
65 with respect to the selection of the motion picture show which is
66 exhibited.

67 Source: C. 2A:115-1.6 (1971, c. 446, s. 1); C. 2A:115-1.7 (1971,
68 c. 446, s. 2); C. 2A:115-1.8 (1971, c. 446, s. 3); C. 2A:115-1.9
69 (1971, c. 446, s. 4); C. 2A:115-1.10 (1971, c. 446, s. 5); C.
70 2A:115-1.11 (1971, c. 446, s. 6); C. 2A:115-2.5 (1971, c. 448,
71 s. 1); C. 2A:115-2.6 (1971, c. 448, s. 2); C. 2A:115-2.7 (1971,
72 c. 448, s. 3); C. 2A:115-2.8 (1971, c. 448, s. 4); C. 2A:115-2.9
73 (1971, c. 448, s. 5).

1 **〔2C:34-5〕** ** **2C:34-4.** Public Communication of Obscen-
2 ity. a. "Publicly communicate" means to display, post, exhibit,
3 give away or vocalize material in such a way that its character
4 and content may be readily and distinctly perceived by the public
5 by normal unaided vision or hearing when viewing or hearing it
6 in, on or from a public street, road, thoroughfare, recreation or
7 shopping center or area, public transportation facility or vehicle
8 used for public transportation.

9 b. A person who knowingly publicly communicates obscene ma-
10 terial, as defined in section **〔2C:34-4〕** ** **2C:34-3** or causes
11 or permits it to be publicly communicated on property he owns or
11A leases or operates is guilty of a crime of the fourth degree.

12 c. Public communication of obscene material shall constitute
13 presumptive evidence that the defendant made the communication
14 or caused or permitted it to be made knowingly.

15 Source: C. 2A:115-2.1 (1971, c. 447, s. 1); C. 2A:115-2.2 (1971,
16 c. 447, s. 2); C. 2A:115-2.3 (1971, c. 447, s. 3); C. 2A:115-2.4
17 (1971, c. 447, s. 4).

1 **〔2C:34-6〕** ** **2C:34-5.** Diseased Person Having Sexual
2 Intercourse. Any person who, knowing that he or she is infected
3 with a venereal disease such as chancroid, gonorrhoea, syphillis**,
4 *herpes virus,** or any of the varieties or stages of such diseases,
5 has sexual intercourse or deviate sexual intercourse, is a petty
6 disorderly person.

7 Source: N. J. S. 2A:170-6.

CHAPTER 35.   [RESERVED]

CHAPTER 36.   [RESERVED]

CHAPTER 37.   GAMBLING OFFENSES

Section
1 2C:37-1.   Definitions.
2 2C:37-2.   Promoting Gambling.
3 2C:37-3.   Possession of Gambling Records.

Section

4  2C:37-4.  Maintenance of a Gambling Resort.
5  2C:37-5.  Gambling Offenses; Presumption.
6  2C:37-6.  Lottery Offenses; No Defense.
7  2C:37-7.  Possession of a Gambling Device.
8  2C:37-8.  Gambling Offenses; Jurisdiction.
9  *2C:37-9.  *Nonapplicability.*

1  2C:37-1.  Definitions. The following definitions apply to this
2  chapter and to chapter 64:

3  a. "Contest of chance" means any contest, game, pool, gaming
4  scheme or gaming device in which the outcome depends in a ma-
5  terial degree upon an element of chance, notwithstanding that skill
6  of the contestants or some other persons may also be a factor
7  therein.

8  b. "Gambling" means staking or risking something of value
9  upon the outcome of a contest of chance or a future contingent event
10  not under the actor's control or influence, upon an agreement or
11  understanding that he will receive something of value in the event
12  of a certain outcome.

13  c. "Player" means a person who engages in any form of gam-
14  bling solely as a contestant or bettor, without receiving or becoming
15  entitled to receive any profit therefrom other than personal gam-
16  bling winnings, and without otherwise rendering any material
17  assistance to the establishment, conduct or operation of the par-
18  ticular gambling activity. A person who gambles at a social game
19  of chance on equal terms with the other participants therein does
20  not thereby render material assistance to the establishment, con-
21  duct or operation of such game if he performs, without fee or
22  remuneration, acts directed toward the arrangement or facilitation
23  of the game, such as inviting persons to play, permitting the use
24  of premises therefor or supplying cards or other equipment used
25  therein. A person who engages in "bookmaking," as defined in
26  this section is not a "player."

27  d. "Something of value" means any money or property, any
28  token, object or article exchangeable for money or property, or any
29  form of credit or promise directly or indirectly contemplating
30  transfer of money or property or of any interest therein, or involv-
31  ing extension of a service, entertainment or a privilege of playing
32  at a game or scheme without charge.

33  e. "Gambling device" means any device, machine, paraphernalia
34  or equipment which is used or usable in the playing phases of any
35  gambling activity, whether such activity consists of gambling

36  between persons or gambling by a person involving the playing of a
37  machine. Notwithstanding the foregoing, lottery tickets, policy
38  slips and other items used in the playing phases of lottery and
39  policy schemes are not gambling devices.

40  f. "Slot machine" means a gambling device which, as a result of
41  the insertion of a coin or other object, operates, either completely
42  automatically or with the aid of some *physical act by the player, in
43  such manner that, depending upon elements of chance, it may
44  eject something of value. A device so constructed, or readily adapt-
45  able or convertible to such use, is no less a slot machine because it
46  is not in working order or because some mechanical act of manipu-
47  lation or repair is required to accomplish its adaptation, con-
48  version or workability. Nor is it any less a slot machine because,
49  apart from its use or adaptability as such, it may also sell or deliver
50  something of value on a basis other than chance. A machine which
51  sells items of merchandise which are of equivalent value, is not a
52  slot machine merely because such items differ from each other in
53  composition, size, shape or color.

54  g. "Bookmaking" means advancing gambling activity by un-
55  lawfully accepting bets from members of the public *[as a business,
56  rather than in a casual or personal fashion, upon the outcomes of
57  future contingent events.]* * *upon the outcome of future contingent
57A  events as a business.*

58  h. "Lottery" means an unlawful gambling scheme in which (a)
59  the players pay or agree to pay something of value for chances,
60  represented and differentiated by numbers or by combinations of
61  numbers or by some other media, one or more of which chances are
62  to be designated the winning ones; and (b) the winning chances
63  are to be determined by a drawing or by some other method based
64  upon the element of chance; and (c) the holders of the willing
65  chances are to receive something of value.

66  i. "Policy" or "the numbers game" means a form of lottery
67  in which the winning chances or plays are not determined upon the
68  basis of a drawing or other act on the part of persons conducting or
69  connected with the scheme, but upon the basis of the outcome or
70  outcomes of a future contingent event or events otherwise unre-
71  lated to the particular scheme.

72  j. "Gambling resort" means a place to which persons may
73  resort for engaging in gambling activity.

74  k. "Unlawful" means not specifically authorized by law.

75  Source: N. J. S. 2A:112-1; 2A:112-2; 2A:112-3; C. 2A:121-6
76  (1961, c. 39, s. 1 amended 1964, c. 65).

2C:37-2. Promoting Gambling. a. Promoting Gambling Defined. A person is guilty of promoting gambling when he knowingly:

(1) Accepts or receives money or other property, *[other than as a player,]* pursuant to an agreement or understanding with any person whereby he participates or will participate in the proceeds of gambling activity; or

(2) Engages in conduct, *[other than as a player,]* which materially aids any form of gambling activity. Such conduct includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.

b. Grading. A person who violates the provisions of subsection a. by:

(1) Engaging in bookmaking to the extent he receives or accepts in any 1 day more than five bets totaling more than $1,000.00; or

(2) Receiving, in connection with a lottery or policy scheme or enterprise (a) money or written records from a person other than a player whose chances or plays are represented by such money or records, or (b) more than $100.00 in any 1 day of money played in such scheme or enterprise, is guilty of a crime of the third degree and *[notwithstanding the provisions of 2C:43-3,]* *in lieu of the fine provided in 2C:43-3,* shall be subject to a fine of not more than $25,000.00.

A person who violates the provisions of subsection a. by engaging in bookmaking to the extent he receives or accepts three or more bets in any 2-week period is guilty of a crime of the fourth degree and *[notwithstanding the provisions of 2C:43-3,]* *in lieu of the fine provided in 2C:43-3,* shall be subject to a fine of not more than $15,000.00. Otherwise, promoting gambling is a disorderly persons offense and °[notwithstanding the provisions of 2C:43-3,]* *in lieu of the fine provided in 2C:43-3,* shall be subject to a fine of not more than $10,000.00.

*[c) It is a defense to a prosecution under subsection a. that the person participated only as a player. It shall be the burden of the defendant to prove by clear and convincing evidence his status as such player.*

130

---

Source: N. J. S. 2A:112-3, 2A:121-1, 2A:121-2, 2A:121-3, 2A:121-4.

2C:37-3. Possession of Gambling Records. a. A person is guilty of possession of gambling records when, with knowledge of the contents thereof, he possesses any writing, paper, instrument or article:

(1) Of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise, including any paper or paper product in sheet form chemically converted to nitrocellulose having explosive characteristics as well as any water soluble paper or paper derivative in sheet form; or

(2) Of a kind commonly used in the operation, promotion or playing of a lottery or policy scheme or enterprise.

b. Defenses.

(1) It is a defense to a prosecution under subsection a. (2) that the writing, paper, instrument or article possessed by the defendant constituted, reflected or represented plays, bets or chances of the defendant himself in a number not exceeding 10.

(2) It is a defense to a prosecution under subsection a. that the writing, paper, instrument or article possessed by the defendant was neither used nor intended to be used in the operation or promotion of a bookmaking scheme or enterprise, or in the operation, promotion or playing of a lottery or policy scheme or enterprise.

c. Grading. Possession of gambling records is a crime of the third degree and *[notwithstanding the provisions of 2C:43-3]* *in lieu of the fine provided in 2C:43-3,* shall be subject to a fine of not more than $25,000.00 when the writing, paper, instrument or article:

(1) In a bookmaking scheme or enterprise, constitute, reflect or represent more than five bets totaling more than $1,000.00; or

(2) In the case of a lottery or policy scheme or enterprise, constitute, reflect or represent more than one hundred plays or chances therein.

Otherwise, possession of gambling records is a disorderly persons offense and *[notwithstanding the provisions of 2C:43-3]* *in lieu of the fine provided in 2C:43-3,* such a person shall be subject to a fine of not more than $10,000.00.

Source: N. J. S. 2A:170-18; 2A:121-3 amended 1967, c. 88, s. 2.

131

2C:37-4. Maintenance of a Gambling Resort. a. A person is guilty of a crime of the *[third]* *fourth* degree if, having substantial proprietary or other authoritative control over premises which are being used with his knowledge for purposes of *[gambling activity]* *activities prohibited by 2C:37-2 and 2C:37-3*, he permits such to occur or continue or makes no effort to prevent its occurrence or continuation and he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or will participate in the proceeds of such gambling activity on such premises and, *[notwithstanding the provisions of 2C:43-3]* *in lieu of the fine provided in 2C:43-3*, shall be subject to a fine of not more than *[$25,000.00]* *$15,000.00*.

b. A person is guilty of a *[disorderly persons offense]* *crime of the fourth degree* if, having substantial proprietary or other authoritative control over premises open to the general public which are being used with his knowledge for purposes of gambling activity, he permits such to occur or continue or makes no effort to prevent its occurrence or continuation *and in lieu of the fine provided in 2C:43-3, shall be subject to a fine of not more than $15,000.00*.

Source: N. J. S. 2A:112-3.

2C:37-5. Gambling Offenses; Presumption. In any prosecution under this article in which it is necessary to prove the occurrence of a sporting event, a published report of its occurrence in any daily newspaper, magazine or other periodically printed publication of general circulation shall be admissible in evidence and shall constitute presumptive proof of the occurrence of such event.

Source: New.

2C:37-6. Lottery Offenses: No Defense. Any offense defined in this article which consists of the commission of acts relating to a lottery is no less criminal because the lottery itself is drawn or conducted without the State and *[is not violative of the laws of the jurisdiction in which it was so drawn or conducted]*. *This section shall not apply to any person who has in his possession or custody any paper, document, slip or memorandum of a lottery which is authorized, sponsored and operated by any state of the United States, provided that the paper, document, slip or memorandum was purchased by the holder thereof in the State wherein such lottery was authorized, sponsored and operated.*

Source: New.

2C:37-7. Possession of a Gambling Device. A person except a player is guilty of possession of a gambling device when, with knowledge of the character thereof, he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of:

a. A slot machine; or

b. Any other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity.

Possession of a gambling device is a disorderly persons offense**, *provided, however, that possession of not more than one slot machine or other gambling device for social use within the home shall not be an offense under this section**.

Source: N. J. S. 2A:112-2.

2C:37-8. Gambling Offenses; Jurisdiction. All offenses under this chapter shall be prosecuted in the County Court.

Source: New.

*2C:37-9. Nonapplicability. Nothing in this chapter shall be deemed applicable to any activities permitted pursuant to P. L. 1977, c. 110, "The Casino Control Act."*

CHAPTER 38.   [RESERVED]

CHAPTER 39.   FIREARMS, OTHER DANGEROUS WEAPONS AND INSTRUMENTS OF CRIME

Section

| 2C:39-1. | Definitions. |
| 2C:39-2. | Presumptions. |
| 2C:39-3. | Prohibited Weapons and Devices. |
| 2C:39-4. | Possession of Weapons for Unlawful Purposes. |
| 2C:39-5. | Unlawful Possession of Weapons. |
| 2C:39-6. | Exemptions. |
| 2C:39-7. | Blank. |
| 2C:39-8. | Blank. |
| 2C:39-9. | Manufacture, Transport, Disposition and Defacement of Weapons and Dangerous Instruments and Appliances. |
| 2C:39-10. | Violation of the Regulatory Provision Relating to Firearms; False Representation in Applications. |
| 2C:39-11. | Pawnbrokers; Loaning on Firearms. |
| 2C:39-12. | Voluntary Surrender. |

2C:39–1. Definitions. The following definitions apply to this chapter and to chapter 58:

a. "Antique firearm" means any firearm which is incapable of being fired or discharged, or which does not fire fixed ammunition, or which was manufactured before 1898 for which cartridge ammunition is not commercially available, and is possessed as a curiosity or ornament or for its historical significance or value.

b. "Deface" means to remove, deface, cover, alter or destroy the name of the maker, model designation, manufacturer's serial number or any other distinguishing identification mark or number on any firearm.

c. "Destructive device" means any device, instrument or object designed to explode or produce uncontrolled combustion, including (1) any explosive or incendiary bomb, mine or grenade; (2) any rocket having a propellant charge of more than four ounces or any missile having an explosive or incendiary charge of more than one quarter of an ounce; (3) any weapon capable of firing a projectile of a caliber greater than .60 caliber, except a shotgun or shotgun ammunition generally recognized as suitable for sporting purposes; (4) any Molotov cocktail or other device consisting of a breakable container containing flammable liquid and having a wick or similar device capable of being ignited. The term does not include any device manufactured for the purpose of illumination, distress signaling, line-throwing, safety or similar purposes.

d. "Dispose of" means to give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer, or otherwise transfer possession.

e. "Explosive" means any chemical compound or mixture that is commonly used or is possessed for the purpose of producing an explosion and which contains any oxidizing and combustible materials or other ingredients in such proportions, quantities or packing that an ignition by fire, by friction, by concussion or by detonation or any part of the compound or mixture may cause such a sudden generalization of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects. The term shall not include small arms ammunition, or explosives in the form prescribed by the official United States Pharmacopœia.

f. "Firearm" means any hand gun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectile ball, slug, pellet, missile or bullet, or any gas

vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.

g. "Firearm silencer" means any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearm to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearm.

h. "Gravity knife" means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force.

i. "Machine gun" means any firearm, mechanism or instrument not requiring that the trigger be pressed for each shot and having a reservoir, belt or other means of storing and carrying ammunition which can be loaded into the firearm, mechanism or instrument and fired therefrom.

j. "Manufacturer" means any person who receives or obtains raw materials or parts and processes them into firearms or finished parts of firearms, except a person who exclusively processes grips, stocks and other nonmetal parts of firearms. The terms does not include a person who repairs existing firearms or receives new and used raw materials or parts solely for the repair of existing firearms.

k. "Hand gun" means any pistol, revolver or other firearm originally designed or manufactured to be fired by the use of a single hand.

l. "Retail dealer" means any person including a gunsmith, except a manufacturer or a wholesale dealer, who sells, transfers or assigns for a fee or profit any firearm or parts of firearms or ammunition which he has purchased or obtained with the intention, or for the purpose, of reselling or reassigning to persons who are reasonably understood to be the ultimate consumer, and includes any person who is engaged in the business of repairing firearms or who sells any firearm to satisfy a debt secured by the pledge of a firearm.

m. "Rifle" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a fixed metallic

86 cartridge to fire a single projectile through a rifled bore for each
87 single pull of the trigger.

88    n. "Shotgun" means any firearm designed to be fired from the
89 shoulder and using the energy of the explosive in a fixed shotgun
90 shell to fire through a smooth bore either a number of ball shot
91 or a single projectile for each pull of the trigger, or any firearm
92 designed to be fired from the shoulder which does not fire fixed
93 ammunition.

94    o. "Sawed-off shotgun" means any shotgun having a barrel or
95 barrels of less than 18 inches in length measured from the breach
96 to the muzzle, or a rifle having a barrel or barrels of less than 16
97 inches in length measured from the breach to the muzzle, or any
98 firearm made from a rifle or a shotgun, whether by alteration, or
99 otherwise, if such firearm as modified has an overall length of less
100 than 26 inches.

101    p. "Switchblade knife" means any knife or similar device which
102 has a blade which opens automatically by hand pressure applied
103 to a button, spring or other device in the handle of the knife.

104    q. "Superintendent" means the Superintendent of the State
105 Police.

106    r. "Weapon" means anything readily capable of lethal use or of
107 inflicting serious bodily injury. The term includes**, *but is not*
108 *limited to*,** all (1) firearms, even though not loaded or lacking a
109 clip or other component to render them immediately operable; (2)
110 components which can be readily assembled into a weapon; and
111 (3) gravity knives, switchblade knives, daggers, dirks, stilettos, or
112 other dangerous knives, billies, blackjacks, bludgeons, metal
113 knuckles, sandclubs, slingshots, cestus or similar leather bands
114 studded with metal filings or razor blades imbedded in wood; and
115 any weapon or other device which projects, releases, or emits tear
116 gas or any other substance intended to produce temporary physical
117 discomfort or permanent injury through being vaporized or other
118 wise dispensed in the air.

118ᴀ    s. "Wholesale dealer" means any person, except a manufacturer,
119 who sells, transfers, or assigns firearms, or parts of firearms, to
120 persons who are reasonably understood not to be the ultimate
121 consumer, and includes persons who receive finished parts of fire-
122 arms and assemble them into completed or partially completed
123 firearms, in furtherance of such purpose, except that it shall not
124 include those persons dealing exclusively in grips, stocks and other
125 nonmetal parts of firearms.

136

126 Source: N. J. S. 2A:151–1 amended 1966, c. 60, s. 1; 2A:151–14;
127    2A:151–15 amended 1966, c. 60, s. 13; 2A:151–18 amended 1966,
128    c. 60, s. 15; 2A:151–49 amended 1966, c. 60, s. 40; 2A:151–59
129    amended 1968, c. 100; C. 2A:151–62 (1952, c. 5 amended 1959,
130    c. 29).

1 2C:39–2. Presumptions. a. Possession of firearms, weapons,
2 destructive devices, silencers, and explosives in an automobile.
3 When a firearm, weapon, destructive device, silencer, and explo-
4 sives described in this chapter is found in an automobile, it is
5 presumed to be in the possession of the occupant if there is but
6 one. If there is more than one occupant in the automobile, it shall
7 be presumed to be in the possession of all, except under the follow-
8 ing circumstances:

9    (1) When it is found upon the person of one of the occupants,
10 it shall be presumed to be in the possession of that occupant alone;

11    (2) When the automobile is not a stolen one and the weapon or
12 other instrument is found out of view in a glove compartment,
13 trunk or other enclosed customary depository, it shall be presumed
14 to be in the possession of the occupant or occupants who own or
15 have authority to operate the vehicle; and

16    (3) When the vehicle is a taxicab, a weapon or other instrument
17 found in the passengers' portion of the vehicle, it shall be presumed
18 to be in the possession of all the passengers, if there are any, and
19 if not, in the possession of the driver.

20    b. Licenses and permits. When the legality of a person's conduct
21 under this chapter depends on his possession of a license or permit
22 or on his having registered with or given notice to a particular
23 person or agency, it shall be presumed that he does not possess
24 such a license or permit or has not registered or given the required
25 notice, until he establishes the contrary.

26 Source: New.

1 2C:39–3. Prohibited weapons and devices. a. Destructive de-
2 vices. Any person who knowingly has in his possession any de-
3 structive device is guilty of a crime of the third degree.

4    b. Sawed-off shotguns. Any person who knowingly has in his
5 possession any sawed-off shotgun is guilty of a crime of the third
6 degree.

7    c. Silencers. Any person who knowingly has in his possession
8 any firearm silencer is guilty of a crime of the fourth degree.

9    d. Defaced firearms. Any person who knowingly has in his pos-
10 session any firearm except an antique firearm which has been
11 defaced is guilty of a crime of the fourth degree.

137

12    e. Certain weapons. Any person who knowingly has in his possession any gravity knives, switchblade knives, daggers, dirks,
13 stilettos, billies, blackjacks, metal knuckles, sandclubs, slingshots,
14 cestus or similar leather bands studded with metal filings or razor
15 blades imbedded in wood, without any explainable lawful purpose,
16 is guilty of a crime of the fourth degree.
17

18    f. Dum-dum bullets. Any person, other than a law enforcement
19 officer or persons engaged in activities pursuant to 2C:39-6f., who
20 knowingly has in his possession any hollow nose or dum-dum bullet,
20A is guilty of a crime of the fourth degree.

21    g. Exceptions. **(1)** Nothing in this section shall apply to any
22 member of the Armed Forces of the United States or the National
23 Guard, or except as otherwise provided by any law enforcement
24 officer while actually on duty or traveling to or from an authorized
25 place of duty, provided that his possession of the prohibited weapon
26 or device has been duly authorized under the applicable laws, regula-
27 tions or military or law enforcement orders, or to the possession
28 of any weapon or device by a law enforcement officer who has con-
29 fiscated, seized or otherwise taken possession of said weapon or
30 device as evidence of the commission of a crime or because he
31 believed it to be possessed illegally by the person from whom it
32 was taken, provided that said law enforcement officer promptly
33 notifies his superiors of his possession of such prohibited weapon
34 or device.

35    *∗∗(2) Nothing in subsection (f) shall be construed to prevent a*
36 *person from keeping such ammunition at his dwelling, premises or*
37 *other land owned or possessed by him, or from carrying such am-*
38 *munition from the place of purchase to said dwelling or land; nor*
39 *shall subsection (f) be construed to prevent any licensed retail or*
40 *wholesale firearm dealer from possessing such ammunition at its*
41 *licensed premises, provided that the possessor or purchaser has a*
42 *valid firearms purchase identification card. Such card must be pre-*
43 *sented to the firearm dealer at the time the ammunition is pur-*
44 *chased.∗∗*

45 Source: N. J. S. 2A:151–14; 2A:151–41 amended 1960, c. 26; 1966,
46 c. 60, s. 32; 1968, c. 307.

1    2C:39-4. Possession of weapons for unlawful purposes. a. Fire-
2 arms. Any person who has in his possession any firearm with a
3 purpose to use it unlawfully against the person or property of
4 another is guilty of a crime of the second degree.

5    b. Knives and other weapons. Any person who has in his pos-
6 session any knife, razor or any other weapon except a firearm,

138

7 with a purpose to use the same unlawfully against the person or
8 property of another, is guilty of a crime of the third degree.

9    c. Explosives. Any person who, with a purpose to use the same
10 unlawfully against the person or property of another, possesses
11 or carries any explosive substance is guilty of a crime of the second
12 degree.

13    d. Destructive devices. Any person who, with purpose to use
14 the same unlawfully against the person or property of another,
15 has in his possession any destructive device is guilty of a crime
16 of the second degree.

17 Source: N. J. S. 2A:151–41 amended 1960, c. 26; 1966, c. 60, s. 32;
18    1968, c. 307; 2A:151–56 amended 1959, c. 148, s. 2.

1    2C:39-5. Unlawful possession of weapons. a. Machine guns.
2 Any person who knowingly has in his possession a machine gun
3 or any instrument or device adaptable for use as a machine gun,
4 without being licensed to do so as provided in section 2C:58–5, is
5 guilty of a crime of the third degree.

6    b. Handguns. Any person who knowingly has in his possession
7 any handgun, without first having obtained a permit to purchase
8 a handgun as provided for in section 2C:58–3 and a permit to
9 carry the same as provided in section 2C:58–4, is guilty of a crime
10 of the third degree.

11    c. Rifles and shotguns. **(1)** Any person who knowingly has
12 in his possession any rifle or shotgun (other than a sawed-off shot-
13 gun) without having first obtained a firearms purchaser identifica-
14 tion card in accordance with the provisions of section 2C:58–3, is
15 guilty of a crime of the third degree.

15A    *∗∗(2) Unless otherwise permitted by law, any person who know-*
15B *ingly has in his possession any loaded rifle or shotgun (other than*
15C *a sawed-off shotgun) is guilty of a crime of the third degree.∗∗*

16    d. Other weapons. Any person who knowingly has in his pos-
17 session any weapon other than a machine gun, handgun, rifle or
18 shotgun under circumstances not manifestly appropriate for such
19 lawful uses as it may have is guilty of a crime of the fourth degree.

20    e. Firearms in educational institutions. Any person who know-
21 ingly has in his possession any firearm in or upon any part of the
22 buildings or grounds of any school, college, university or other
23 educational institution, without the written authorization of the
24 governing officer of the institution, is guilty of a crime of the third
25 degree, irrespective of whether he possesses a valid permit to carry
26 the firearm or a valid firearms purchaser identification card.

139

27  Source: N. J. S. 2A:151–41 amended 1960, c. 26; 1966, c. 60, s. 32;
28  1968, c. 307; C. 2A:151–41.1 (1969, c. 157, s. 1); C. 2A:151–41.2
29  (1969, c. 157, s. 2); N. J. S. 2A:151–50.

1  2C:39–6. Exemptions. a.  Section 2C:39–5 does not apply to:

2  (1) Members of the Armed Forces of the United States or the
3  National Guard while actualy on duty, or while traveling between
4  places of duty and carrying authorized weapons in the manner
5  prescribed by the appropriate military authorities;

6  (2) Federal law enforcement officers, and any other Federal
7  officers and employees required to carry firearms in the perform-
8  ance of their official duties;

9  (3) Members of the State Police*, *a motor vehicle inspector*;

10  (4) A sheriff, undersheriff, ***sheriff's officer,*** county prosecu-
11  tor, assistant prosecutor, prosecutor's detective or investigator**,
11A  *State investigator employed by the Division of Criminal Justice*
11B  *of the Department of Law and Public Safety, or State park ran-*
11C  *ger**;*

12  (5) A prison or jail warden or his deputies, a **[guard]**
13  ***correction officer*** or keeper of any penal institution in this
14  State, while in the performance of his duties, and when required to
15  possess such a weapon by his superior officer;

16  (6) A civilian employee of the United States Government under
17  the supervision of the commanding officer of any post, camp, sta-
18  tion, base or other military or naval installation located in this
19  State who is required, in the performance of his official duties, to
20  carry firearms, and who is authorized to carry such firearms by
21  said commanding officer, while in the actual performance of his
22  official duties; or

23  (7) A regularly employed member, including a detective, of the
24  police department of any county or municipality, or of any State,
25  interstate, municipal or **[county park or]** boulevard police
26  force, at all times while in the State of New Jersey, or a special
27  policeman appointed by the governing body of any county or mu-
28  nicipality or by the commission, board or other body having control
29  of a county park or boulevard police force, while engaged in the
30  actual performance of his official duties and when specifically au-
31  thorized by the governing body to carry weapons.

31A  ***(8) County park police while engaged in the actual perform-*
31B  *ance of their official duties.****

32  b.  Subsections a., b. and c. of section 2C:39–5 do not apply to:

33  (1) A law enforcement officer employed by a governmental
34  agency outside of the State of New Jersey while actually engaged

35  in his official duties, provided, however, that he has first notified
36  the superintendent or the chief law enforcement officer of the
37  municipality or the prosecutor of the county in which he is engaged;
38  or

39  (2) A licensed retail dealer in firearms and his registered em-
40  ployees during the course of their normal business while traveling
41  to and from their place of business and other places for the pur-
42  pose of demonstration, exhibition or delivery in connection
43  with a sale, provided, however, that any such weapon is carried
44  in the manner specified in subsection g. of this section.

45  c.  Subsections b. and c. of section 2C:39–5 do not apply to:

46  (1) A *[motor vehicle inspector,]* railway policeman**, *campus*
47  *police officer appointed pursuant to N. J. S. 18A:6–4.2 et seq.,** or
47A  any other police officer, while in the actual performance of his offi-
47B  cial duties;

47C  (2) A conservation officer or a full-time employee of the Division
48  of Shell Fisheries having the power of arrest and authorized to
49  carry weapons, while in the actual performance of his official duties;

50  (3) A full-time member of the marine patrol force or a special
51  marine patrolman authorized to carry such a weapon by the Com-
52  missioner of Environmental Protection, while in the actual per-
53  formance of his official duties;

54  (4) The **[director, deputy directors,]** inspectors and investi-
55  gators of the Division of Alcoholic Beverage Control in the De-
56  partment of Law and Public Safety, while in the actual perform-
57  ance of his official duties;

58  (5) A court attendant serving as such under appointment by
59  the sheriff of the county or by the judge or magistrate of any court
60  of this State; while in the actual performance of his official duties;

61  (6) A guard in the employ of any railway express company,
62  banking or building and loan or savings and loan institution of
63  this State, while in the actual performance of his official duties;

64  (7) A member of a legally recognized military organization
65  while actually under orders or while going to or from the prescribed
66  place of meeting and carrying the weapons prescribed for drill,
67  exercise or parade;

68  (8) An officer of the Society for the Prevention of Cruelty to
69  Animals, while in the actual performance of his duties; or

70  (9) An employee of a public utilities corporation actually en-
71  gaged in the transportation of explosives.

72  d.  Subsections b., c. and d. of section 2C:39–5 do not apply to
73  antique firearms, provided that such antique firearms are unloaded

74 or are being fired for the purposes of exhibition or demonstration
75 at an authorized target range or in such other manner as has
76 been approved in writing by the chief law enforcement officer of
77 the municipality in which the exhibition or demonstration is held.

78 e. Nothing in subsections b., c. and d. of section 2C:39–5 shall
79 be construed to prevent a person keeping or carrying about his
80 place of business, **[dwelling house]** **residence**, premises or
81 other land owned or possessed by him, any firearm, or from carry-
82 ing the same, in the manner specified in subsection g. of this section,
83 between his **[dwelling]** **dwellings** and his place of business
84 or between his dwelling or place of business and place where such
85 firearms are repaired, for the purpose of repair. **For the pur-
85A poses of this section, a place of business shall be deemed to be a
85B fixed location.**

85C f. Nothing in subsections b., c. and d. of Section 2C:39–5 shall
86 be construed to prevent:

87 (1) A member of any rifle or pistol club organized in accordance
88 with the rules prescribed by the National Board for the Promotion
89 of Rifle Practice, in going to or from a place of target practice,
90 carrying such firearms as are necessary for said target practice,
91 provided that the club has filed a copy of its charter with the super-
92 intendent and annually submits a list of its members to the superin-
93 tendent, and provided further that the firearms are carried in the
94 manner specified in subsection g. of this section;

95 (2) A person carrying a firearm or knife in the woods or fields
96 or upon the waters of this State for the purpose of hunting, target
97 practice or fishing, provided that the firearm or knife is legal and
98 appropriate for hunting or fishing purposes in this State and he
99 has in his possession a valid hunting or fishing license;

100 (3) A person transporting any firearm or knife while traveling:
101 **[a.]** **(a)** Directly to or from any place for the purpose
102 of hunting or fishing, provided such person has in his possession a
103 valid hunting or fishing license; or

104 (b) Directly to or from any target range or other authorized
105 place for the purpose of practice, match, target, trap or skeet shoot-
106 ing exhibitions, provided in all cases that during the course of
107 such travel all firearms are carried in the manner specified in sub-
108 section g. of this section and the person has complied with all the
109 provisions and requirements of Title 23 of the Revised Statutes
110 and any amendments thereto and all rules and regulations promul-
111 gated thereunder:

112 **(c) In the case of a firearm, directly to or from any exhibition
113 or display of firearms which is sponsored by any law enforcement
114 agency, any rifle or pistol club, or any firearms collectors club,
115 for the purpose of displaying of the firearms to the public or to the
116 members of such organization or club, provided, however, that not
117 less than 30 days prior to such exhibition or display, notice of such
118 exhibition or display shall be given to the Superintendent of the
119 State Police by the sponsoring organization or club, and the spon-
120 sor has complied with such reasonable safety regulations or the
121 superintendent may promulgate. Any firearms transported pur-
122 suant to this section must be transported in accordance with
123 2C:39–6.**

124 g. All weapons being transported under subsections (b) (2), e.
125 or f. (1) or (3) of this section shall be carried unloaded and con-
126 tained in a closed and fastened case, gunbox, securely tied package,
127 or locked in the trunk of the automobile in which it is being trans-
128 ported, and the course of travel shall include only such deviations
129 as are reasonably necessary under the circumstances.

130 Source: N. J. S. 2A:151–42 amended 1966, c. 60, s. 33; 2A:151–43
131 amended 1952, c. 308; 1953, c. 398; 1955, c. 265; 1956, c. 191, s. 2;
132 1960, c. 113; 1963, c. 174; 1966, c. 60, s. 34; 1968, c. 41, s. 2; 1970,
133 c. 245; 1971, c. 427, s. 1.

1 2C:39–7.  Blank.

1 2C:39–8.  Blank.

1 2C:39–9.  Manufacture, Transport, Disposition and Defacement
2 of Weapons and Dangerous Instruments and Appliances. a. Ma-
3 chine guns. Any person who manufactures, causes to be manufac-
4 tured, transports, ships, sells or disposes of any machine gun
5 without being registered or licensed to do so as provided in chap-
6 ter 58 is guilty of a crime of the third degree.

7 b. Sawed-off shotguns. Any person who manufactures, causes
8 to be manufactured, transports, ships, sells or disposes of any
9 sawed-off shotgun is guilty of a crime of the third degree.

10 c. Firearm silencers. Any person who manufactures, causes
11 to be manufactured, transports, ships, sells or disposes of any fire-
12 arm silencer is guilty of a crime of the fourth degree.

13 d. Weapons. Any person who manufactures, causes to be manu-
14 factured, transports, ships, or disposes of any weapon including
15 gravity knives, switchblade knives, daggers, dirks, stilettos, black-
16 jacks, metal knuckles, sandclubs, slingshots, cestus or similar
17 leather bands studded with metal filings, or in the case of firearms

142

143

18 is he is not licensed or registered to do so as provided in chapter 58,
19 is guilty of a crime of the fourth degree. Any person who manu-
20 factures, causes to be manufactured, transports, ships, sells or dis-
21 poses of any billy or any weapon or other device which projects,
22 releases or emits tear gas or any other substance intended to pro-
23 duce temporary physical discomfort or permanent injury through
24 being vaporized or otherwise dispensed in the air, which is intended
25 to be used for any purpose other than for authorized military or
26 law enforcement purposes by duly authorized military or law en-
27 forcement personnel, is guilty of a crime of the fourth degree.

28   c. Defaced firearms. Any person who defaces any firearm is
29 guilty of a crime of the third degree. Any person who knowingly
30 buys, receives, disposes of or conceals a defaced firearm is guilty
31 of a crime of the fourth degree.

32 Source: N. J. S. 2A:151–12 amended 1966, c. 60, s. 11; 2A:151–15
33   amended 1966, c. 60, s. 13; 2A:151–50; 2A:151–60; C. 2A:151–62
34   (1952, c. 5 amended 1959, c. 29).

1 2C:39–10. Violation of the Regulatory Provision Relating to
2 Firearms; False Representation in Applications. a. Any person
3 who knowingly violates the regulatory provisions relating to manu-
4 facturing or wholesaling of firearms (section 2C:58–2), permits
5 to purchase certain firearms (section 2C:58–3), permits to carry
6 certain firearms (section 2C:58–4), licenses to procure machine
7 guns (section 2C:58–5), or incendiary or tracer ammunition (sec-
8 tion 2C:58–10), except acts which are punishable under section
9 2C:39–5 or section 2C:39–9, is guilty of a crime of the fourth
10 degree.

11   b. Any person who knowingly violates the regulatory provisions
12 relating to notifying the authorities of possessing certain items of
13 explosives (section 2C:58–7), or of certain wounds (section
14 2C:58–8) is a disorderly person.

15   c. Any person who gives or causes to be given any false informa-
16 tion, or signs a fictitious name or address, in applying for a fire-
17 arms purchaser identification card of a permit to purchase or a
18 permit to carry a handgun, or a permit to possess a machine gun,
19 or in completing the certificate or any other instrument required
20 by law in purchasing or otherwise acquiring delivery of any rifle,
21 shotgun, handgun, machine gun, or any other firearm, is guilty of
22 a crime of the third degree.

23 Source: N. J. S. 2A:151–31; 2A:151–40; 2A:151–46; 2A:151–48
24   amended 1966, c. 60, s. 39; 2A:151–55; 2A:170–17; C. 2A:170–25.7
25   (1959, c. 194).

144

1   2C:39–11. Pawnbrokers; Loaning on Firearms. a. Any pawn-
2 broker who sells, offers to sell or to lend or to give away any weapon,
3 destructive device or explosive is guilty of a crime of the fourth
4 degree.

5   b. Any person who loans money secured by mortgage, deposit or
6 pledge on any handgun, rifle or shotgun is guilty of a disorderly
7 persons offense.

8 Source: N. J. S. 2A:151–2 amended 1966, c. 60, s. 2.

1   2C:39–12. Voluntary Surrender. No person shall be convicted
2 of an offense under this chapter for possessing any firearms,
3 weapons, destructive devices, silencers or explosives, if after giving
4 written notice of his intention to do so, including the proposed date
5 and time of surrender, he voluntarily surrendered the weapon, de-
6 vice, instrument or substance in question to the superintendent or to
7 the chief of police in the municipality in which he resides, provided
8 that the required notice is received by the superintendent or chief
9 of police before any charges have been made or complaints filed
10 against such person for the unlawful possession of the weapon,
11 device, instrument or substance in question and before any investi-
12 gation has been commenced by any law enforcement agency con-
13 cerning the unlawful possession. Nothing in this section shall be
14 construed as granting immunity from prosecution for any crime or
15 offense except that of the unlawful possession of such weapons,
16 devices, instruments or substances surrendered as herein provided.

17 Source: New.

CHAPTER 40.   OTHER OFFENSES RELATING TO PUBLIC SAFETY

Section

1 2C:40–1.   Creating a Hazard.
2 2C:40–2.   Refusing to Yield a Party Line.

1   2C:40–1. Creating a Hazard. a. A person is guilty of a dis-
2 orderly persons offense when:

3   a. He maintains, stores or displays unattended in a place other
4 than a permanently enclosed building or discards in any public or
5 private place, including any junkyard, where it might attract
6 children, a container which has a compartment of more than one
7 and one-half cubic feet capacity and a door or lid which locks
8 or fastens automatically when closed and which cannot easily be
9 opened from the inside, he fails to remove the door, lid, locking or
10 fastening device;

145

11   b. Being the owner or otherwise having possession of property
12 upon which an abandoned well or cesspool is located, he fails to
13 cover the same with suitable protective construction; or

14   c. He discards or abandons in any public or private place acces-
15 sible to children, whether or not such children are trespassers, any
16 intact television picture tube, or being the owner, lessee or manager
17 of such place, knowingly permits such abandoned or discarded tele-
18 vision picture tube to remain there in such condition.

19 Source: C. 2A:170-25.2 (1953, c. 67, s. 1 amended 1954, c. 157, s. 1;
20 1971, c. 325, s. 1); C. 2A:170-25.16 (Laws of 1970, c. 133).

1   2C:40-2. Refusing to Yield a Party Line. A person is guilty of a
2 disorderly persons offense when, being informed that a party line is
3 needed for an emergency call, he refuses immediately to relinquish
4 such line.

5   "Party line" means a subscriber's line telephone circuit, con-
5A sisting of two or more main telephone stations connected therewith,
6 each station with a distinctive ring or telephone number.

7   "Emergency call" means a telephone call to a police or fire de-
8 partment or for medical aid or ambulance service, necessitated by a
9 situation in which human life or property is in jeopardy and
10 prompt summoning of aid is essential.

11 Source: C. 2A:170-25.5 (1955, c. 250, s. 1).

CHAPTER 41.   [RESERVED]

CHAPTER 42.   [RESERVED]

SUBTITLE 3.   SENTENCING

CHAPTER 43.   AUTHORIZED DISPOSITION OF OFFENDERS

Section
1  2C:43-1.   Degrees of Crimes.
2  2C:43-2.   Sentence in Accordance with Code; Authorized Dis-
3          positions.
4  2C:43-3.   Fines and Restitutions.
5  2C:43-4.   Penalties Against Corporations; Forfeiture of Corpo-
6          rate Charter or Revocation of Certificate Authorizing
7          Foreign Corporation to do Business in the State.
8  2C:43-5.   Young Adult Offenders.
9  2C:43-6.   Sentence of Imprisonment for Crime; Ordinary Terms.
10  2C:43-7.   Sentence of Imprisonment for Crime; Extended Terms.
11  2C:43-8.   Sentence of Imprisonment for Disorderly Persons
12          Offenses and Petty Disorderly Persons Offenses.

146

Section
13  2C:43-9.   First Release of All Offenders on Parole; Sentence of
14          Imprisonment Includes Separate Parole Term;
15          Length of Recommitment and Reparole After Revo-
16          cation of Parole; Final Unconditional Release.
17  2C:43-10.   Place of Imprisonment; Beginning Sentences;
18          Transfers.
19  2C:43-11.   Blank.
20  2C:43-12.   Supervisory Treatment.
21  2C:43-13.   Supervisory Treatment Procedure.
22  *2C:43-14.   Index and Reports.*
23  2C:43-15.   Disclaimer.*

1   2C:43-1. Degrees of Crimes. a. Crimes defined by this code are
2 classified, for the purpose of sentence, into four degrees, as follows:

3   (1) Crimes of the first degree;
4   (2) Crimes of the second degree;
5   (3) Crimes of the third degree; and
6   (4) Crimes of the fourth degree.

7   A crime is of the first, second, third or fourth degree when it is
8 so designated by the code. An offense, declared to be a crime,
9 without specification of degree, is of the fourth degree.

10   b. Notwithstanding any other provision of law, a crime defined
11 by any statute of this State other than this code and designated as
12 a high misdemeanor shall constitute for the purpose of sentence
13 a crime of the third degree. Notwithstanding any other provision
14 of law, a crime defined by any statute of this State other than this
15 code and designated as a misdemeanor shall constitute for the
16 purpose of sentence a crime of the fourth degree. The provisions
17 of this subsection shall not, however, apply to the sentences autho-
18 rized by the "New Jersey Controlled Dangerous Substances Act,"
19 P. L. 1970, c. 226 (C. 24:21-1 through 45), which shall be continued
20 in effect.

21 Source: N. J. S. 2A:85-1; 2A:85-6; 2A:85-7; Model Penal Code:
22   6.01.

1   2C:43-2. Sentence in Accordance with Code; Authorized Dispo-
2 sitions. a. Except as provided in section 2C:43-1b, as to persons
3 convicted of offenses under the New Jersey Controlled Dangerous
4 Substances Act, all persons convicted of an offense or offenses
5 shall be sentenced in accordance with this chapter.

6   b. Except as provided in subsection a. of this section and subject
7 to the applicable provisions of the code, the court may suspend

147

8 the imposition of sentence on a person who has been convicted of
9 an offense, may proceed as set forth in sections 2C:43–12 and 13
10 to allow supervisory treatment, or may sentence him as follows:
11 　(1) To pay a fine or make restitution authorized by section
12 2C:43–3;
13 　(2) To be placed on probation and, in the case of a person con-
14 victed of an offense, other than a petty disorderly persons offense,
15 to imprisonment for a term fixed by the court not exceeding 90
16 days to be served as a condition of probation;
17 　(3) To imprisonment for a term authorized by sections 2C:11–3,
18 2C:43–5, 6, 7, and 8 or 2C:44–5;
19 　(4) To fine, restitution and probation, or fine, restitution and
20 imprisonment;
21 　(5) To release under supervision in the community;
22 　(6) To a halfway house or other residential facility in the
23 community, including agencies which are not operated by the
24 Department of **⟦Institutions and Agencies⟧** **Human Ser-
24A vices** ; or
25 　(7) To imprisonment at night or on weekends with liberty to
26 work or to participate in training or educational programs.
27 　c. This chapter does not deprive the court of any authority con-
28 ferred by law to decree a forfeiture of property, suspend or cancel
29 a license, remove a person from office, or impose any other civil
30 penalty. Such a judgment or order may be included in the sentence.
31 　d. The court shall state **⟦in writing⟧** **on the record** the
32 reasons for imposing the sentence, including its findings pursuant
33 to the criteria for withholding or imposing imprisonment or fines
34 under sections 2C:44–1 to 3 **and the factual basis supporting its
35 finding of particular aggravating or mitigating factors affecting
36 sentence**.
37 　⟦e. The court shall retain jurisdiction over the defendant and
38 may, on its own motion or on motion of the prosecutor, the de-
39 fendant or the Commissioner of Institutions and Agencies, modify
40 the sentence originally imposed, except that the term of imprison-
41 ment or supervision shall not be increased by such resentencing and
42 the court shall not be required to hear more than one such motion a
43 year.⟧**
44 Source: Model Penal Code: 6.02.

1 　2C:43–3. Fines and Restitutions. A person who has been con-
2 victed of an offense may be sentenced to pay a fine **⟦or⟧** **,**
3 to make restitution **⟦not exceeding⟧** **, or both, such fine or
3A restitution not to exceed**:

148

4 　a. **⟦$15,000.00⟧** **$100,000.00**, when the conviction is of a
5 crime of the first or second degree;
6 　b. $7,500.00, when the conviction is of a crime of the third or
7 fourth degree;
8 　c. $1,000.00, when the conviction is of a disorderly persons
9 offense;
10 　d. $500.00, when the conviction is of a petty disorderly persons
11 offense.
12 　e. Any higher amount equal to double the pecuniary gain to the
13 offender or loss to the victim caused by the conduct constituting
14 the offense by the offender. In such case the court shall make a
15 finding as to the amount of the gain or loss, and if the record does
16 not contain sufficient evidence to support such a finding the court
17 may conduct a hearing upon the issue. For purposes of this sec-
18 tion the terms "gain" means the amount of money or the value of
19 property derived by the offender and "loss" means the amount of
20 value separated from the victim.
21 　f. Any higher amount specifically authorized by statute.
22 　The restitution ordered paid to the victim shall not exceed his
23 loss. **Any restitution imposed on a person shall be in addition
24 to any fine which may be imposed pursuant to this section.**
25 Source: N. J. S. 2A:85–6; 2A:85–7; Model Penal Code: 6.03.

1 　2C:43–4. Penalties Against Corporations; Forfeiture of Corpo-
2 rate Charter or Revocation of Certificate Authorizing Foreign
3 Corporation to do Business in the State. a. The court may suspend
4 the imposition of sentence of a corporation which has been con-
5 victed of an offense or may sentence it to pay a fine of up to three
6 times the fine provided for in section 2C:43–3 or make restitution
7 authorized by section 2C:43–3.
8 　b. When a corporation is convicted of an offense or a high man-
9 agerial agent of a corporation, as defined in section 2C:2–7 is con-
10 victed of an offense committed in conducting the affairs of the
11 corporation, the court may request the Attorney General to insti-
12 tute appropriate proceedings to dissolve the corporation, forfeit
13 its charter, revoke any franchises held by it, or to revoke the cer-
14 tificate authorizing the corporation to conduct business in this
15 State.
16 Source: Model Penal Code: 6.04.

1 　2C:43–5. Young Adult Offenders. Any person who, at the time
2 of sentencing, is less than 26 years of age and who has been con-
3 victed of a crime may be sentenced to the reformatory as defined

149

4 in R. S. 30:4–146, in the case of men, and R. S. 30:4–153, in the
5 case of women, instead of the sentences otherwise authorized by
6 the code.

7 Source: N. J. S. 2A:164–17 amended 1953, c. 276; 1954, c. 174;
8    2A:164–19; Model Penal Code: 6.05.

1   2C:43–6. Sentence of Imprisonment for Crime; Ordinary Terms.
2 a. A person who has been convicted of a crime may be sentenced
3 to imprisonment, as follows:

4   (1) In the case of a crime of the first degree, for a specific term
5 of years which shall be fixed by the court and shall be between
6 *[8]* *10* years and 20 years;

7   (2) In the case of a crime of the second degree, for a specific
8 term of years which shall be fixed by the court and shall be between
9 5 years and *[8]* *10* years;

10   (3) In the case of a crime of the third degree, for a specific term
11 of years which shall be fixed by the court and shall be between 3
12 years and 5 years;

13   (4) In the case of a crime of the fourth degree, for a specific
14 term which shall be fixed by the court and shall not exceed 18
15 months.

16   b. As part of a sentence for a crime of the first or second degree
17 the court may fix a minimum term during which the defendant
18 shall not be eligible for parole and which may be up to one-half of
19 the term set pursuant to subsection a.

20   c. By operation of law, there shall be added to the terms described
21 in subsection a. the separate parole term described in section
22 2C:43–9.

23 Source: N. J. S. 2A:85–6; 2A:85–7; Model Penal Code: 6.06.

1   2C:43–7. Sentence of Imprisonment for Crime; Extended Terms.
2 a. In the cases designated in section 2C:44–3 and 2C:11–3, a person
3 who has been convicted of a crime may be sentenced to an extended
4 term of imprisonment, as follows:

5   (1) In the case of a crime sentenced under 2C:11–3 b. (1) for
6 a specific term of years which shall be fixed by the court and shall
7 be between 30 years and *[50 years]* *life imprisonment*;

8   (2) In the case of a crime of the first degree, for a specific term
9 of years which shall be fixed by the court and shall be between
10 *[15]* *20* years and *[30 years]* *life imprisonment*;

11   (3) In case of a crime of the second degree, for a term which
12 shall be fixed by the court between *[8 and 15]* *10 and 20* years;

13   (4) In the case of a crime of the third degree, for a term which
14 shall be fixed by the court between 5 and *[8]* * *10* years;

15   b. As part of a sentence for an extended term, the court may
16 fix a minimum term during which the defendant shall not be eligible
17 for parole and which may be up to one-half of the term set pursuant
18 to subsection a **or a term of up to 25 years during which time the
18A defendant shall not be eligible for parole where the sentence im-
18B posed was life imprisonment**.

19   c. By operation of law, there shall be added to the terms
20 described in subsection a. the separate parole term described in
21 section 2C:43–9.

22 Source: N. J. S. 2A:85–8 amended 1953, c. 166, s. 1; 2A:85–9
23   amended 1953, c. 166, s. 2; 2A:85–10; 2A:85–11; 2A:85–12
24   amended 1953, c. 166, s. 3; 2A:85–13 amended 1953, c. 166, s. 4;
25   Model Penal Code: 6.07.

1   2C:43–8. Sentence of Imprisonment for Disorderly Persons
2 Offenses and Petty Disorderly Persons Offenses. A person who
3 has been convicted of a disorderly persons offense or a petty dis-
4 orderly persons offense may be sentenced to imprisonment for a
5 definite term which shall be fixed by the court and shall not exceed
6 6 months in the case of a disorderly persons offense or 30 days in
7 the case of a petty disorderly persons offense.

8 Source: N. J. S. 2A:169–4 amended 1968, c. 113; Model Penal
9   Code: 6.08.

1   2C:43–9. First Release of All Offenders on Parole; Sentence of
2 Imprisonment Includes Separate Parole Term; Length of Recom-
3 mitment and Reparole After Revocation of Parole; Final Uncon-
4 ditional Release. a. First release of all offenders on parole. An
5 offender sentenced to a term of imprisonment under sections C:11–3,
6 2C:43–5, 2C:43–6, 2C:43–7, or 2C:44–5 shall be released condi-
7 tionally on parole at or before the expiration of such term, in ac-
8 cordance with the law governing parole.

9   b. Sentence of imprisonment includes separate parole term;
10 length of parole term. A sentence to a term of imprisonment under
11 section 2C:11–3, 2C:43–5, 2C:43–6, 2C:43–7 or 2C:44–5 includes
12 as a separate portion of the sentence a term of parole which governs
13 the duration of parole if the offender has not been released before
14 the expiration of the term of imprisonment imposed. The term is 1
15 year unless the conviction was for a crime of the fourth degree in
16 which case it is 6 months.

17 c. Length of recommitment and reparole after revocation of pa-
18 role. If an offender is recommitted upon revocation of his parole,
19 the term of further imprisonment upon such recommitment and of
20 any subsequent reparole or recommitment under the same sentence
21 shall be fixed by the parole board but shall not exceed the original
22 sentence determined from the date of conviction.

23 d. Final unconditional release. When the parole term has ex-
24 pired or he has been sooner discharged from parole, an offender
25 shall be deemed to have served his sentence and shall be released
26 unconditionally.

27 Source: Model Penal Code: 6.10.

1 2C:43–10. Place of Imprisonment; Beginning Sentences; Trans-
2 fers. a. Sentences for terms of 1 year or longer. Except as pro-
3 vided in section 2C:43–5 and in subsection b. of this section, when
4 a person is sentenced to imprisonment for any term of 1 year or
5 greater, the court shall commit him to the custody of the Commis-
6 sioner of the Department of **[Institutions and Agencies]**
7 **Corrections** for the term of his sentence and until released in
7A accordance with law.

8 b. County institution. In any county in which a county peni-
9 tentiary or a county workhouse is located, a person sentenced to
10 imprisonment for a term not exceeding 18 months may be com-
11 mitted to the penitentiary or workhouse of such county.

12 c. Sentences for terms of less than 1 year. When a person is
13 sentenced to imprisonment for a term of less than 1 year, the court
14 shall commit him either to the common jail of the county, the county
15 workhouse or the county penitentiary for the term of his sentence
16 and until released in accordance with law. In counties of the first
17 class, however, no sentence exceeding 6 months shall be to the com-
18 mon jail of the county.

19 d. Aggregation of sentences when a person is sentenced to more
20 than one term of imprisonment, and the sentences are to be con-
21 secutive, the terms shall be aggregated for the purpose of deter-
22 mining the place of imprisonment under subsections a., b. or c. of
23 this section.

24 e. Duties of sheriff and keeper on sentence to State Prison. In
25 all cases where the defendant, upon conviction, is sentenced by the
26 court to imprisonment, for any term of 1 year or greater, the sheriff
27 of the county or his lawful deputy shall, within 15 days transport
28 him to the State Prison and there deliver him into the custody of
29 the Commissioner of the Department of **[Institutions and
30 Agencies]** **Human Services** together with a copy of the

31 sentence of the court ordering such imprisonment certified by the
32 clerk of the court where the conviction was had, a copy of the
33 court's statement of reasons for the sentence, and a copy of the
34 presentence report or any presentence information used by the
34A judge in determining sentence.

35 In every case at least 48 hours, exclusive of Sundays and legal
36 holidays, shall elapse between the time of sentence and removal
37 to the State Prison.

38 f. Beginning sentences in county institutions. Every person
39 sentenced to the county workhouse or penitentiary shall be trans-
40 ferred to and confined therein within 10 days after the sentence.

41 g. Transfer of persons sentenced to county jail, penitentiary or
42 workhouse from one to another thereof. Every person sentenced
43 to imprisonment in a county jail, penitentiary or workhouse may
44 upon the application of the board of chosen freeholders of such
45 county and by order of the County Court, be transferred from any
46 one of such county penal institutions to any other thereof. No
47 such transfer or retransfer shall in any way affect the term of the
48 original sentence of the person so transferred or retransferred.

49 Source: N. J. S. 2A:164–15 amended 1953, c. 421; 2A:164–18;
50 2A:164–22; 2A:164–23; Model Penal Code: 6.11.

1 2C:43–11. Blank.

1 **[2C:43–12. Supervisory Treatment. a. Referral. *[The]* *At
2 any time prior to trial but after the filing of a criminal complaint
3 or accusation or the return of an indictment, upon the motion of
4 the prosecutor or upon the motion of the defendant with the con-
4A sent of the prosecutor, the* assignment judge, or a judge designated
4B by him may postpone all further proceedings against a defendant
4C and refer said defendant to a program of supervisory treatment
4D *[if:]* *.*

5 *[(1) The prosecutor at any time prior to trial but after the
6 filing of a criminal complaint or accusation or the return of an
7 indictment so moves; or

8 (2) The defendant, subject to the limitations of subsection b.,
9 so moves and the trial court administrator, the chief probation
10 officer or the program director so recommends.]*

11 The prosecutor may call upon the probation service of the court,
12 the trial court administrator or the program director for informa-
13 tion and advice concerning such referrals for treatment *[and the
14 court may not postpone the proceedings under subsection a. (2)
15 without the consent of the prosecutor.

152

153

16    b. Limitations.  Supervisory treatment shall not be available if
17 the defendant is charged with a crime which is found by the court
18 to be a crime of violence unless he has first entered a plea of guilty
19 and unless this is his first such offense]*.

20    *b.  Limitations.  Supervisory treatment, whether under this
21 *section or under section 27 of P. L. 1970, c. 226 (C. 24:21–27), may*
22 *occur only once with respect to any defendant, however, super-*
23 *visory treatment, as provided herein, shall be available to a defend-*
24 *ant irrespective of whether the defendant contests his guilt of the*
25 *charge or charges against him.*

26    c. Termination.  *Termination of supervisory treatment under*
27 *this section shall be immediately reported to the assignment judge*
28 *of the county who shall forward such information to the Attorney*
29 *General.**

30 Source: New.]**

31    **2C:43–12.  *Supervisory Treatment—Pretrial Intervention.  a.*
32 *Public Policy:  The purpose of "The Supervisory Treatment Act"*
33 *is to effectuate a statewide program of Pretrial Intervention.  It is*
34 *the policy of the State of New Jersey that supervisory treatment*
35 *should ordinarily be limited to persons who have not previously*
36 *been convicted of any criminal offense under the laws of New Jersey*
37 *or, subsequent to the effective date of this act, under any criminal*
38 *law of the United States, this State or any other State when super-*
39 *visory treatment would:*

40    (1) *Provide applicants, on an equal basis, with opportunities to*
41 *avoid ordinary prosecution by receiving early rehabilitative ser-*
42 *vices or supervision, when such services or supervision can reason-*
43 *ably be expected to deter future criminal behavior by an appliant,*
44 *and when there is an apparent casual connection between the offense*
45 *charged and the rehabilitative or supervisory need, without which*
46 *cause both the alleged offense and the need to prosecute might not*
47 *have occurred; or*

48    (2) *Provide an alternative to prosecution for applicants who*
49 *might be harmed by the imposition of criminal sanctions as pres-*
50 *ently administered, when such an alternative can be expected*
51 *to serve as sufficient sanction to deter criminal conduct; or*

52    (3) *Provide a mechanism for permitting the least burdensome*
53 *form of prosecution possible for defendants charged with "victim-*
54 *less" offenses; or*

55    (4) *Provide assistance to criminal calendars in order to focus*
56 *expenditure of criminal justice resources on matters involving*
57–59 *serious criminality and severe correctional problems; or*

154

60    (5) *Provide deterrance of future criminal or disorderly behavior*
61 *by an applicant in a program of supervisory treatment.*

62    b.  Admission of an applicant into a program of supervisory
63 *treatment shall be measured according to the applicant's amena-*
64 *bility to correction, responsiveness to rehabilitation and the nature*
65 *of the offense.*

66    c. The decisions and reasons therefor made by the designated
67 *judges (or assignment judges), prosecutors and program directors*
68 *in granting or denying applications for supervisory treatment, in*
69 *recommending and ordering termination from the program or dis-*
70 *missal of charges, in all cases shall be reduced to writing and*
71 *disclosed to the applicant.*

72    d. If an applicant desires to challenge the decision of the prose-
73 *cutor or program director not to recommend enrollment in a pro-*
74 *gram of supervisory treatment the proceedings prescribed under*
75 *section 14 shall be followed.*

76    e. Referral.  At anytime prior to trial but after the filing of a
77 *criminal complaint or accusation or the return of an indictment, with*
78 *the consent of the prosecutor and upon written recommendation of*
79 *the program director, the assignment judge or a judge designated*
80 *by him may postpone all further proceedings against an applicant*
81 *and refer said applicant to a program supervisory treatment*
82 *approved by the Supreme Court.  Prosecutors and program direc-*
83 *tors may consider in formulating their recommendation of an appli-*
84 *cant's participation in a supervisory treatment program, among*
85 *others, the following criteria:*

86    (1) *The nature of the offense;*

87    (2) *The facts of the case;*

88    (3) *The motivation and age of the defendant;*

89    (4) *The desire of the complainant or victim to forego prosecution;*

90    (5) *The existence of personal problems and character traits*
91 *which may be related to the applicant's crime and for which services*
92 *are unavailable within the criminal justice system, or which may*
93 *be provided more effectively through supervisory treatment and the*
94 *probability that the causes of criminal behavior can be controlled*
95 *by proper treatment;*

96    (6) *The likelihood that the applicant's crime is related to a condi-*
97 *tion or situation that would be conducive to change through his*
98 *participation in supervisory treatment;*

99    (7) *The needs and interests of the victim and society;*

100    (8) *The extent to which the applicant's crime constitutes part of*
101 *a continuing pattern of anti-social behavior;*

155

102  *(9) The applicant's record of criminal and penal violations and*
103  *the extent to which he may present a substantial danger to others;*
104  *(10) Whether or not the crime is of an assaultive or violent*
105  *nature, whether in the criminal act itself or in the possible injurious*
106  *consequences of such behavior;*
107  *(11) Consideration of whether or not prosecution would exacer-*
108  *bate the social problem that led to the applicant's criminal act;*
109  *(12) The history of the use of physical violence toward others;*
110  *(13) Any involvement of the applicant with organized crime;*
111  *(14) Whether or not the crime is of such a nature that the*
112  *value of supervisory treatment would be outweighed by the public*
113  *need for prosecution;*
114  *(15) Whether or not the applicant's involvement with other*
115  *people in the crime charged or in other crime is such that the*
116  *interest of the State would be best served by processing his case*
117  *through traditional criminal justice system procedures;*
118  *(16) Whether or not applicant's participation in pretrial inter-*
119  *vention will adversely affect the prosecution of codefendants; and*
120  *(17) Whether or not the harm done to society by abandoning*
121  *criminal prosecution would outweigh the benefits to society from*
122  *channeling an offender into a supervisory treatment program.*
123  *f. Review of Supervisory Treatment Applications. Procedure*
124  *Upon Denial: Each applicant for supervisory treatment shall be*
125  *entitled to full and fair consideration of his application. If an*
126  *application is denied, the program director or the prosecutor shall*
127  *precisely state his findings and conclusion which shall include the*
128  *facts upon which the application is based and the reasons offered*
129  *for the denial. If an applicant desires to challenge the decision of a*
130  *program director not to recommend, or of a prosecutor to consent*
131  *to, enrollment into a supervisory treatment program, a motion shall*
132  *be filed before the designated judge (or assignment judge) autho-*
133  *rized pursuant to the rules of court to enter orders.*
134  *g. Limitations. Supervisory treatment, whether under this section*
135  *or under section 27 of P. L. 1970, c. 226 (C. 24:21–27), may occur*
136  *only once with respect to any defendant, however, supervisory treat-*
137  *ment, as provided herein, shall be available to a defendant irre-*
138  *spective of whether the defendant contests his guilt of the charge*
139  *or charges against him.*
140  *h. Termination: Termination of supervisory treatment under*
141  *this section shall be immediately reported to the assignment judge*
142  *of the county who shall forward such information to the Adminis-*
143  *trative Director of the Courts.*

156

144  *i. Appointment of Program Directors; Authorized Referrals:*
145  *Programs of supervisory treatment and appointment of the pro-*
146  *gram directors require approved by the Supreme Court with the*
147  *consent of the assignment judge and prosecutor. Referrals of*
148  *participants from supervisory treatment programs may be to any*
149  *public or private office or agency, including but not limited to pro-*
150  *grams within the probation service of the Court, offering counseling*
151  *or any other social service likely to aid in the rehabilitation of the*
152  *participant and to deter the commission of other offenses.**

1    2C:43–13. Supervisory Treatment Procedure. **[a. Programs
2    Supervisory treatment may include referral of the defendant to
3    any public or private office or agency, including but not limited to
4    programs within the probation service of the court, offering coun-
5    seling or any other social service likely to aid in the rehabilitation
6    of the defendant and to deter the commission of other offenses,
7    provided said program is approved by the Supreme Court.]**

8    **[b.]** **a.** Agreement. The terms and duration of the super-
9    visory treatment shall be set forth in writing, signed by the prose-
10   cutor and agreed to and signed by the **[defendant]** **partici-
11   pant**. If the **[defendant]** **participant** is represented by
12   counsel, defense counsel shall also sign the agreement.  **[Each
13   agreement shall be filed with the county clerk with a copy of said
14   agreement supplied to the supervisory treatment project director.
15   Such report shall include the name of all defendants and the nature
15A  of the charges against each defendant.]** **Each order of super-
15B  visory treatment shall be filed with the county clerk.**

16   **[c.]** **b.** Charges. During a period of supervisory treat-
17   ment the charge or charges on which the **[defendant]** **partici-
18   pant** is undergoing supervisory treatment shall be held in an
19   inactive status pending termination of the supervisory treatment
20   pursuant to subsections **[e. or f.]** **d. or e.** of this section.

21   *[d. Period of treatment. Supervisory treatment may be for a
22   period not to exceed 1 year, unless the crime was found to be one of
23   violence under subsection b. of section 2C:43–12, in which case the
24   period may not exceed 3 years. Such periods of supervisory treat-
25   ment may be shortened or terminated as determined by the court.]*

25A  **[d. Period of Treatment. Supervisory treatment may be for
25B  such period, not to exceed 3 years, as the prosecutor may determine,
25C  provided however that the period of supervisory treatment may be
25D  shortened or terminated as the prosecutor may determine.]**

25E  **e. Period of Treatment. Supervisory Treatment may be for
25F  such period, not to exceed 1 year, provided, however, that the period*

157

256 *of supervisory treatment may be shortened or terminated as the*
25H *program director may determine with the consent of the prosecutor*
251 *and the approval of the court.***

26    **[c.]** **d.** Dismissal. Upon completion of supervisory treat-
27 ment, and with the consent of the prosecutor, the complaint, indict-
28 ment or accusation against the **[defendant shall]** **participant*
28A *may** be dismissed with prejudice.

29    **[f.]** **e.** Violation of conditions. Upon violation of the
30 conditions of supervisory treatment, the court shall determine,
31 after summary hearing, whether said violation warrants the
32 **[defendant's]** **participant's** dismissal from the super-
33 visory treatment program or modification of the conditions of
34 continued participation in that or another supervisory treatment
34A program. Upon dismissal of **[defendant]** **participant** from
35 the supervisory treatment program, the charges against the
36 **[defendant]** **participant** may be reactivated and the prose-
37 cutor may proceed as though no supervisory treatment had been
37A commenced.

38    **[g.]** **f.** Evidence. No statement or other disclosure by a
39 **[defendant]** **participant** undergoing supervisory treat-
40 ment made or disclosed to the person designated to provide such
41 supervisory treatment shall be disclosed, at any time, to the prose-
42 utor in connection with the charge or charges against the
43 **[defendant]** **participant**, nor shall any such statement or
44 disclosure be admitted as evidence in any civil or criminal pro-
45 ceeding against the **[defendant]** **participant**. Nothing pro-
46 vided herein, however, shall prevent the person providing super-
47 visory treatment from informing the prosecutor, or the court, upon
48 request or otherwise as to whether or not the **[defendant]**
49 **participant** is satisfactorily responding to supervisory
50 treatment.

51    **[h.]** **g.** Delay. No **[defendant]** **participant**
52 agreeing to undergo supervisory treatment shall be permitted to
53 complain of a lack of speedy trial for any delay caused by the
54 commencement of supervisory treatment.
55 Source: New.

56    **2C:43–14. Authority of Supreme Court. The Supreme Court*
57 *may adopt rules dealing with Supervisory Treatment in accordance*
58 *with procedures herein set forth.*

59    *2C:43–15. Presentation of proposed rules at Judicial Conference.*
60 *The subject matter and a tentative draft of a rule or rules proposed*
61 *to be adopted pursuant to this title shall be entered upon the agenda*

62 *and discussed at a Judicial Conference whose membership shall at*
63 *least include delegates from the Supreme Court, the Appellate Divi-*
64 *sion of the Superior Court, the judges of the Law Division and the*
65 *Chancery Division of the Superior Court, the judges of the County*
66 *Courts, the judges of the county district courts, the judges of the*
67 *juvenile and domestic relations courts, the judges of the municipal*
68 *courts, the surrogates, the State Bar Association, the county bar*
69 *associations, the Senate and General Assembly, the Attorney Gen-*
70 *eral, the county prosecutors, the law schools of this State, and*
71 *members of the public.*

72    *2C:43–16. Public announcemnt of proposed rules; delivery of*
73 *copies. The proposed rule or rules shall be publicly announced by*
74 *the Supreme Court on September 15 next following such Judicial*
75 *Conference (or, if such day be a Saturday, Sunday or legal holiday,*
76 *on the first day thereafter that is not), and the court shall, on the*
77 *same day, cause true copies thereof to be delivered to the President*
78 *of the Senate, the Speaker of the General Assembly, and the*
79 *Governor.*

80    *2C:43–17. Effective date of rules; rules subject to cancellation*
81 *by joint resolution. The rule or rules so announced and delivered*
82 *shall take effect on July 1 next following; provided, however, that*
83 *all such rules shall remain subject to cancellation at any time up*
84 *to such effective date by joint resolution to that effect adopted by*
85 *the Senate and General Assembly and signed by the Governor.*

86    *2C:43–18. Change or cancellation of rules by statute or adoption*
87 *of subsequent rules. Any rule or rules so proposed or adopted shall*
88 *be subject to change or cancellation at any time by statute or by a*
89 *subsequent rule adopted pursuant to this act.*

90    *2C:43–19. Adoption of rules at such time, or with such effective*
91 *date, or without presentation at Judicial Conference, as may be*
92 *provided in joint resolution. By joint resolution adopted by the*
93 *Senate and General Assembly and signed by the Governor with*
94 *respect to a particular rule or rules therein specified the Supreme*
95 *Court may adopt such rule or rules at such time or times, or with*
96 *such effective date, or without presentation at a Judicial Confer-*
97 *ence, as may be provided in the joint resolution.*

98    *2C:43–20. Reduction or elimination of time during which rules*
99 *may be cancled by joint resolution. By joint resolution adopted*
100 *by the Senate and General Assembly and signed by the Governor*
101 *with respect to a particular rule or rules therein specified, the*
102 *period of time as provided in 2C:43–17 during which the same may*
103 *be canceled by joint resolution may be reduced or eliminated.***

**[*2C:43-14.]** **2C:43-21.** Index and Reports. a. Index. **[The Attorney General shall establish and maintain an index of cases in which supervisory treatment has been terminated for use by the courts in determining whether or not, in subsequent proceedings, such person qualifies under this chapter.]** **The Administrative Director of the Courts shall establish and maintain an index of cases in which applicants for supervisory treatment has been made and such index shall indicate the dispositions of those applications.**

b. Reports. At the termination of the year in which this chapter takes effect and at the termination of each calendar year thereafter, for a period of 5 years, the **[county prosecutor of]** **assignment judge for** each county shall report the results of the rehabilitative effort prescribed in this act to the **[Attorney General]** **Administrative Director of the Courts**. The report shall include a description of offenses for which supervisory treatment was prescribed, the type of treatment to which defendants were assigned, the number and types of criminal acts, if any, committed by persons during their period of supervisory treatment, the number of persons successfully completing supervisory treatment and against whom charges were dismissed, and, where possible, the number and types of criminal acts, if any, committed by such persons subsequent to successful completion of supervisory treatment.

c. Evaluation. The **[Attorney General]** **Administrative Director of the Courts** shall, from time to time as he deems necessary, or upon request from the Legislature, evaluate the program of supervisory treatment on the basis of reports made to him by county and municipal prosecutors. He shall submit his evaluation, together with special findings and recommendations to the Legislature.

**[2C:43-15.]** **2C:43-22.** Disclaimer. Nothing contained in this act is intended to supersede, repeal or modify the authority granted and procedure prescribed under section 27 of P. L. 1970, c. 226 (C. 24:21-27).*

## CHAPTER 44. AUTHORITY OF COURT IN SENTENCING

Section


2C:44-1. Criteria for Withholding or Imposing Sentence of Imprisonment.

2C:44-2. Criteria for Imposing Fines and Restitutions.




Section


2C:44-3. Criteria for Sentence of Extended Term of Imprisonment.

2C:44-4. Former Conviction in Another Jurisdiction; Definition and Proof of Conviction.

2C:44-5. Multiple Sentences; Concurrent and Consecutive Terms.

2C:44-6. Procedure on Sentence; Presentence Investigation and Report.

2C:44-7. Appellate Review of Actions of Sentencing Court.

2C:44-8. Blank.


2C:44-1. Criteria for Withholding or Imposing Sentence of Imprisonment. a. *[Except as provided in subsection d. of this section, the court shall deal with a person who has been convicted of an offense without imposing sentence of imprisonment unless, having regard to the nature and circumstances of the offense and the history, character and condition of the defendant, it is of the opinion that his imprisonment is necessary for protection of the public because:]* *In determining the appropriate sentence to be imposed on a person who has been convicted of an offense, the court may properly consider the following aggravating circumstances:

(1) The nature and circumstances of the offense**, and the role of the actor therein, including whether or not the crime was committed in an especially heinous, cruel, or depraved manner**;

(2) The gravity and seriousness of harm inflicted on the victim**, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, disability, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance**;

*[(1) There is undue risk that during the period of a suspended sentence or probation]* *(3) The risk that* the defendant will commit another crime;

*[(2) The defendant is in need of]* **[*(4) The need for* correctional treatment]** *[that]* **[*which* can be provided only in an institution;]**

*[(3)]* **[*(5)*]** **(4)** A lesser sentence will depreciate the seriousness of the defendant's crime because it involved a breach of the public trust under chapters 27 and 30**, or the de-

*fendant took advantage of a position of trust or confidence to commit the offense**; or*

*[(4)]* **[*(6)* The offense is characteristic of organized criminal activity.]** **(5) There is a substantial likelihood that the defendant is involved in organized criminal activity.**

**[(7) The defendant has previously been convicted of a crime or other penal offense;]***

**(6) The extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted.**

**[(8) The crime was committed in an especially heinous, cruel or depraved manner;

(9) The defendant committed the offense as consideration for the receipt, or in expectation of the receipt of anything of pecuniary value;

(10) The defendant procured the commission of the offense by payment or promise of payment, of anything of pecuniary value;]**

**(7) The defendant committed the offense pursuant to an agreement that he either pay or be paid for the commission of the offense and the pecuniary incentive was beyond that inherent in the offense itself.**

**[(11)]** **(8)** The defendant committed the offense against a police or other law enforcement officer, correctional employee or fireman, while performing his duties or because of his status as a public servant.**

**[(12)]** **(9)** The need for deterring the defendant and others from volating the law.*

*[b. The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of withholding sentence of imprisonment:]*

*b. In determining the appropriate sentence to be imposed on a person who has been convicted of an offense, the court may properly consider the following mitigating circumstances:*

(1) The defendant's conduct neither caused nor threatened serious harm;

(2) The defendant did not contemplate that his conduct would cause or threaten serious harm;

(3) The defendant acted under a strong provocation;

(4) There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense;

(5) The victim of the defendant's conduct induced or facilitated its commission;

162

(6) The defendant has compensated or will compensate the victim of his conduct for the damage or injury that he sustained**, *or will participate in a program of community service**;*

(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense;

(8) The defendant's conduct was the result of circumstances unlikely to recur;

(9) The character and attitudes of the defendant indicate that he is unlikely to commit another offense;

(10) The defendant is particularly likely to respond affirmatively to probationary treatment;

(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.

**(12) The willingness of the defendant to cooperate with law enforcement authorities.**

*(13) The conduct of a youthful defendant was substantially influenced by another person more mature than the defendant.**

c. A plea of guilty by a defendant or failure to so plead shall not be considered in withholding or imposing a sentence of imprisonment.

d. Presumption of imprisonment. Where a statute defining an offense of the first or second degree provides that a presumption of imprisonment shall be applied upon conviction or where a statute outside the code defining an offense which would be a first or second degree offense under the code provides for a mandatory sentence, the provision as to sentencing without imprisonment under subsection a. shall not apply and a presumption of imprisonment shall apply. The court shall deal with a person who has been convicted of such a crime by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others.

*e. The court shall deal with a person convicted of an offense other than an offense of the first or second degree, who has not previously been convicted of an offense, without imposing sentence of imprisonment unless, having regard to the nature and circumstances of the offense and the history, character and condition of the defendant, it is of the opinion that his imprisonment is necessary for the protection of the public under the criteria set forth in subsection a.*

163

*f. Presumptive Sentences.* (1) When a court determines that a sentence of imprisonment be imposed, it shall sentence the defendant to a term of 15 years for a crime of the first degree, to a term of 7 years for a crime of the second degree, to a term of 4 years for a crime of the third degree and to a term of 9 months for a crime of the fourth degree unless the preponderance of aggravating factors or preponderance of mitigating factors, as set forth in subsections a. and b., weighs in favor of higher or lower terms within the limits provided in 2C:43-6.

(2) In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted. If the court does impose sentence pursuant to this section, such sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution.*

Source: N. J. S. 2A:168-1 amended 1952, c. 267. Model Penal Code: 7:01.

2C:44-2. Criteria for Imposing Fines and Restitutions. a. The court may sentence a defendant to pay a fine or make restitution in addition to a sentence of imprisonment or probation if:

(1) The defendant has derived a pecuniary gain from the offense; or

(2) The court is of opinion that a fine or restitution is specially adapted to deterrence of the type of offense involved or to the correction of the offender.

b. The court may sentence a defendant to pay a fine or make restitution if the court is or, given a fair opportunity to do so, will be able to pay the fine or restitution. The court may sentence a defendant to pay a fine only if the fine will not prevent the defendant from making restitution to the victim of the offense.

c. In determining the amount and method of payment of a fine or restitution, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

d. Nonpayment. When a defendant is sentenced to pay a fine or to make restitution, the court shall not impose at the same time an alternative sentence to be served in the event that the fine is not paid. The response of the court to nonpayment shall be determined only after the fine has not been paid, as provided in section 2C:46-2.

Source: Model Penal Code: 7.02.

2C:44-3. Criteria for Sentence of Extended Term of Imprisonment. The court may sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.

a. The defendant is a persistent offender. A persistent offender is a person who is 21 years of age or over, who has been *previously* convicted *[of a crime involving the infliction, or attempted or threatened infliction of serious bodily injury and who has at least twice previously been sentenced as an adult for such a crime to a custodial term and where one of those prior offenses was committed within the 5 years preceding the commission of the offense for which the offender is now being sentenced.]* *on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes is within 10 years of the date of the current offense.*

b. The defendant is a professional criminal. A professional criminal is a person who committed an offense as part of a continuing criminal activity in concert with *[five]* *two* or more persons, and *[was in a management or supervisory position or gave legal, accounting or other managerial counsel.]* *the circumstances of the crime show he has knowingly devoted himself to criminal activity as a major source of livelihood.*

c. The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value the amount of which was unrelated to the proceeds of the crime or he procured the commission of the offense by payment or promise of payment of anything of pecuniary value.

**[*d. The defendant is a dangerous, mentally abnormal person whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant has been subjected to a psychiatric examination resulting in the conclusion that his mental condition is gravely abnormal; that his criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences; and that such condition makes him a serious danger to others.*]**

164          165

25  Source: N. J. S. 2A:85–8 amended 1953, c. 166, s. 1; 2A:85–9
26    amended 1953, c. 166, s. 2; 2A:85–10; 2A:85–11; 2A:85–12
27    amended 1953, c. 166, s. 3; 2A:85–13 amended 1953, c. 166, s. 4;
28    Model Penal Code: 7.03.

1  2C:44–4.  Former Conviction in Another Jurisdiction; Definition
2  and Proof of Conviction. a. For purposes of section *2C:44–1 e. or
3  section* 2C:44–3 a., a conviction of the commission of an offense in
4  another jurisdiction shall constitute a previous conviction. Such
5  conviction shall be deemed to have been of a crime if sentence of
6  death or of imprisonment of 1 year or more was imposed under the
7  law of such other jurisdiction.

8  b. An adjudication by a court of competent jurisdiction that the
9  defendant committed a crime constitutes a conviction for purposes
10  of section *2C:44–1. of section* 2C:44–3 and of this section,
11  although sentence or the execution thereof was suspended, pro-
12  vided that the time to appeal has expired and that the defendant
13  was not pardoned on the ground of innocence.

14  c. Prior conviction may be proved by any evidence, including
15  fingerprint records made in connection with arrest, conviction or
16  imprisonment, that reasonably satisfies the court that the de-
17  fendant was convicted.

18  Source: N. J. S. 2A:85–8 amended 1953, c. 166, s. 1; Model Penal
19  Code: 7.05.

1  2C:44–5. Multiple Sentences; Concurrent and Consecutive
2  Terms. a. Sentences of imprisonment for more than one offense.
3  When multiple sentences of imprisonment are imposed on a de-
4  fendant for more than one offense, including an offense for which
5  a previous suspended sentence or sentence of probation has been
6  revoked, such multiple sentences shall run concurrently or consecu-
7  tively as the court determines at the time of sentence, except that:

8  (1) A term to a State penal or correctional institution and a
9  definite term to a county institution shall run concurrently and
10  both sentences shall be satisfied by service of the State term; and

11  (2) The aggregate of consecutive terms to a county institution
12  shall not exceed 18 months; and

13  *[(3) The aggregate of consecutive terms shall not exceed the
14  longest extended term authorized for the highest grade and degree
15  of crime for which any of the sentences was imposed; and]*

16  **[(4)]** ** **(3)** ** Not more than one sentence for an extended
17  term shall be imposed.

166

18  b. Sentences of imprisonment imposed at different times. When
19  a defendant who has previously been sentenced to imprisonment
20  is subsequently sentenced to another term for an offense committed
21  prior to the former sentence, other than an offense committed
21A while in custody;

22  (1) The multiple sentences imposed shall so far as possible con-
23  form to subsection a. of this section; and

24  (2) Whether the court determines that the terms shall run con-
25  currently or consecutively, the defendant shall be credited with
26  time served in imprisonment on the prior sentence in determining
27  the permissible aggregate length of the term or terms remaining
28  to be served; and

28A  (3) When a new sentence is imposed on a prisoner who is on
28B parole, the balance of the parole term on the former sentence shall
28C be deemed to run during the period of the new imprisonment.

28D  c. Sentence of imprisonment for offense committed while on
28E parole. When a defendant is sentenced to imprisonment for an
29  offense committed while on parole in this State, such term of im-
30  prisonment and any period of reimprisonment that the parole
31  board may require the defendant to serve upon the revocation of
32  his parole shall run concurrently, unless the court orders them to
33  run consecutively.

34  d. Multiple sentences of imprisonment in other cases. Except
35  as otherwise provided in this section, multiple terms of imprison-
36  ment shall run concurrently or consecutively as the court deter-
37  mines when the second or subsequent sentence is imposed.

38  e. Calculation of concurrent and consecutive terms of imprison-
39  ment.

40  (1) When terms of imprisonment run concurrently, the shorter
41  terms merge in and are satisfied by discharge of the longest term.

42  (2) When terms of imprisonment run consecutively, the terms
43  are added to arrive at an aggregate term to be served equal to the
44  sum of all terms.

45  f. Suspension of sentence or probation and imprisonment; multi-
46  ple terms of suspension and probation. When a defendant is sen-
47  tenced for more than one offense or a defendant already under
48  sentence is sentenced for another offense committed prior to the
49  former sentence:

50  (1) The court shall not sentence to probation a defendant who
51  is under sentence of imprisonment, except as authorized by section
52  2C:43–2 a (2);

167

(2) Multiple periods of suspension or probation shall run concurrently from the date of the first such disposition;

(3) When a sentence of imprisonment in excess of 1 year is imposed, the service of such sentence shall satisfy a suspended sentence on another count or prior suspended sentence or sentence to probation; and

(4) When a sentence of imprisonment of 1 year or less is imposed, the period of a suspended sentence on another count or a prior suspended sentence or sentence to probation shall run during the period of such imprisonment.

g. Offense committed while under suspension of sentence or probation. When a defendant is convicted of an offense committed while under suspension of sentence or on probation and such suspension or probation is not revoked:

(1) If the defendant is sentenced to imprisonment in excess of 1 year, the service of such sentence shall satisfy the prior suspended sentence or sentence to probation:

(2) If the defendant is sentenced to imprisonment of 1 year or less, the period of the suspension or probation shall not run during the period of such imprisonment; and

(3) If sentence is suspended or the defendant is sentenced to probation, the period of such suspension or probation shall run concurrently with or consecutively to the remainder of the prior periods, as the court determines at the time of sentence.

Source: Model Penal Code: 7.06.

2C:44–6. Procedure on Sentence; Presentence Investigation and Report. a. The court shall not impose sentence without first ordering a presentence investigation of the defendant and according due consideration to a written report of such investigation when required by Rules of Court. The court may order a presentence investigation in any other case.

b. The presentence investigation shall include an analysis of the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, family situation, personal habits, the disposition of any charge made against any codefendants and may include a report on his physical and mental condition and any other matters that the probation officer deems relevant or the court directs to be included.

c. If, after the presentence investigation, the court desires additional information concerning an offender convicted of an offense before imposing sentence, it may order that he be examined as to his medical or mental condition except that he may not be committed to an institution for such examination.

d. Disclosure of any presentence investigation report or psychiatric examination report shall be in accordance with law and the Rules of Court.

e. The court shall not impose a sentence of imprisonment for an extended term unless the ground therefor has been established at a hearing after the conviction of the defendant and on written notice to him of the ground proposed. The defendant shall have the right to hear and controvert the evidence against him and to offer evidence upon the issue.

Source: N. J. S. 2A:164–2; 2A:168–3; Model Penal Code: 7.07.

2C:44–7. Appellate Review of Actions of Sentencing Court. Any action taken by the court in imposing sentence shall be subject to review by an appellate court. *The court shall specifically have the authority to review findings of fact by the sentencing court in support of its findings of aggravating and mitigating circumstances and to modify the defendant's sentence upon his application where such findings are not fairly supported on the record before the trial court.*

Source: New.

2C:44–8. Blank.

CHAPTER 45.   SUSPENSION OF SENTENCE; PROBATION

Section

2C:45–1.   Conditions of Suspension or Probation.

2C:45–2.   Period of Suspension or Probation; Modification of Conditions; Discharge of Defendant.

2C:45–3.   Summons or Arrest of Defendant Under Suspended Sentence or on Probation; Commitment Without Bail; Revocation and Resentence.

2C:45–4.   Notice and Hearing on Revocation or Modification of Conditions of Suspension or Probation.

2C:45–1. Conditions of Suspension or Probation. a. When the court suspends the imposition of sentence on a person who has been convicted of an offense or sentences him to be placed on probation, it shall attach such reasonable conditions, authorized by this section, as it deems necessary to insure that he will lead a law-abiding life or is likely to assist him to do so. These conditions may be set forth in a set of standardized conditions promulgated by the county probation department and approved by the court.

9  b. The court, as a condition of its order, may require the
10 defendant:

11 (1) To support his dependents and meet his family responsi-
12 bilities;

13 (2) To find and continue in gainful employment;

14 (3) To undergo available medical or psychiatric treatment and
15 to enter and remain in a specified institution, when required for
16 that purpose;

17 (4) To pursue a prescribed secular course of study or vocational
18 training;

19 (5) To attend or reside in a facility established for the instruc-
20 tion, recreation or residence of persons on probation;

21 (6) To refrain from frequenting unlawful or disreputable places
22 or consorting with disreputable persons;

23 (7) Not to have in his possession any firearm or other dangerous
24 weapon unless granted written permission;

25 (8) To make restitution of the fruits of his offense, in an amount
26 he can afford to pay, for the loss or damage caused thereby;

27 (9) To remain within the jurisdiction of the court and to notify
28 the court or the probation officer of any change in his address or
29 his employment;

30 (10) To report as directed to the court or the probation officer,
31 to permit the officer to visit his home, and to answer all reasonable
32 inquiries by the probation officer;

33 (11) To satisfy any other conditions reasonably related to the
34 rehabilitation of the defendant and not unduly restrictive of his
35 liberty or incompatible with his freedom of conscience.

36 c. When the court sentences a person who has been convicted
37 of an offense, other than a petty disorderly persons offense, to be
38 placed on probation, it may require him to serve a term of imprison-
39 ment not exceeding 90 days as an additional condition of its
40 order. The term of imprisonment imposed hereunder shall be
41 treated as part of the sentence, and in the event of a sentence of
42 imprisonment upon the revocation of probation, the term of
43 imprisonment served hereunder shall be credited toward service
44 of such subsequent sentence.

45 d. The defendant shall be given a copy of the terms of his proba-
46 tion or suspension of sentence and any requirements imposed pur-
47 suant to this section, stated with sufficient specificity to enable him
48 to guide himself accordingly. The defendant shall acknowledge, in
49 writing, his receipt of these documents and his consent to their
50 terms.

170

51 Source: N. J. S. 2A:168–1 amended 1952, c. 267; 2A:168–2; Model
52 Penal Code: 301.1.

1  2C:45–2. Period of Suspension or Probation; Modification of
2 Conditions; Discharge of Defendant. a. When the court has sus-
3 pended sentence or has sentenced a defendant to be placed on
4 probation, the period of the suspension or probation shall be fixed
5 by the court at not to exceed the maximum term which could have
6 been imposed or more than 5 years whichever is lesser. The court,
7 on application of a probation officer or of the defendant, or on its
8 own motion, may discharge the defendant at any time.

9  b. During the period of the suspension or probation, the court,
10 on application of a probation officer or of the defendant, or on its
11 own motion, may (1) modify the requirements imposed on the
12 defendants; or (2) add further requirements authorized by sec-
13 tion 2C:45–1. The court shall eliminate any requirement that
14 imposes an unreasonable burden on the defendant.

15 c. Upon the termination of the period of suspension or probation
16 or the earlier discharge of the defendant, the defendant shall be
17 relieved of any obligations imposed by the order of the court and
18 shall have satisfied his sentence for the offense.

19 Source: N. J. S. 2A:168–1 amended 1952, c. 267; 2A:168–4; Model
20 Penal Code: 301.2.

1  2C:45–3. Summons or Arrest of Defendant Under Suspended
2 Sentence or on Probation; Commitment Without Bail; Revocation
3 and Resentence. a. At any time before the discharge of the defend-
4 ant or the termination of the period of suspension or probation:

5  (1) The court may summon the defendant to appear before it
6 or may issue a warrant for his arrest;

7  (2) A peace officer, having probable cause to believe that the
8 defendant has failed to comply with a requirement imposed as a
9 condition of the order or that he has committed another offense,
10 may arrest him without a warrant;

11 (3) The court, if there is probable cause to believe that the
12 defendant has committed another offense or if he has been held to
13 answer therefor, may commit him without bail, pending a deter-
14 mination of the charge by the court having jurisdiction thereof;

15 (4) The court, if satisfied that the defendant has inexcusably
16 failed to comply with a substantial requirement imposed as a
17 condition of the order or if he has been convicted of another offense,
18 may revoke the suspension or probation and sentence or resentence
19 the defendant, as provided in this section.

171

20  b. When the court revokes a suspension or probation, it may
21 impose on the defendant any sentence that might have been im-
22 posed originally for the offense of which he was convicted, except
23 that the defendant shall not be sentenced to imprisonment unless:
24  (1) He has been convicted of another offense; or
25  (2) The facts supporting the revocation indicate that his con-
26 tinued liberty involves excessive risk that he will commit another
27 offense.
28 Source: N. J. S. 2A:168–4; Model Penal Code: 301.3.

1  2C:45–4. Notice and Hearing on Revocation or Modification of
2 Conditions of Suspension or Probation. The court shall not revoke
3 a suspension of sentence or probation or delete, add or modify con-
4 ditions of probation except after a hearing upon written notice to
5 the defendant of the grounds on which such action is proposed.
6 The defendant shall have the right to hear and controvert the evi-
7 dence against him, to offer evidence in his defense, and to be repre-
8 sented by counsel.
9 Source: N. J. S. 2A:168–4; Model Penal Code: 301.4.

## CHAPTER 46.  FINES AND RESTITUTIONS

Section
1  2C:46–1.  Time and Method of Payment; Disposition of Funds.
2  2C:46–2.  Consequences of Nonpayment; Summary Collection.
3  2C:46–3.  Revocation of Fine.

1  2C:46–1. Time and Method of Payment; Disposition of Funds.
2 a. When a defendant is sentenced to pay a fine or to make restitu-
3 tion, the court may grant permission for the payment to be made
4 within a specified period of time or in specified installments. If
5 no such permission is embodied in the sentence, the fine or restitu-
6 tion shall be payable forthwith.
7  b. When a defendant sentenced to pay a fine or to make restitu-
8 tion is also sentenced to probation, the court may make continuing
9 payment of installments on the fine or restitution a condition of
10 probation.
11  c. The defendant shall pay a fine or any installment thereof to
12 the officer entitled by law to collect the fine. In the event of default
13 in payment, such agency shall take appropriate action for its
14 collection.
15 Source: N. J. S. 2A:168–2; Model Penal Code: 302.1.

172

2C:46–2. Consequences of Nonpayment; Summary Collection.
a. When a defendant sentenced to pay a fine or make restitution
defaults in the payment thereof or of any installment, the court,
upon the motion of the person authorized by law to collect the
fine or restitution, the motion of the prosecutor or upon its own
motion, may recall him, or issue a summons or a warrant of arrest
for his appearance. After a hearing, the court may reduce the fine
or restitution, suspend it, or modify the payment or installment
plan, or, if none of these alternatives is warranted, may impose a
term of imprisonment to achieve the objective of the sentence. The
term of imprisonment in such case shall be specified in the order
of commitment. It need not be equated with any particular dollar
amount but it shall not exceed 1 day for each *[$5.00]* *$20.00*
of the fine nor *[60]* *40* days if the fine was imposed upon con-
viction of a disorderly persons offense nor *[30]* *25* days for a
petty disorderly persons offense nor 1 year in any other case,
whichever is the shorter period. In no case shall the total period of
imprisonment in the case of a disorderly persons offense for both
the sentence of imprisonment and for failure to pay a fine exceed 6
months. When a fine is imposed on a corporation, it is the duty of
the person or persons authorized to make disbursements from the
assets of the corporation or association to pay it from such assets
and their failure so to do may be held to be contumacious.
 b. Upon any default in the payment of a fine, a restitution, or
any installment thereof, execution may be levied and such other
measures may be taken for collection of it or the unpaid balance
thereof as are authorized for the collection of an unpaid civil
judgment entered against the defendant in an action on a debt.
Source: N. J. S. 2A:166–11; 2A:166–14; Model Penal Code: 302.2.

2C:46–3. Revocation of Fine. A defendant who has been sen-
tenced to pay a fine may at any time petition the court which
sentenced him for a revocation of the fine or of any unpaid portion
thereof. If it appears to the satisfaction of the court that the cir-
cumstances which warranted the imposition of the fine have
changed, or that it would otherwise be unjust to require payment,
the court may revoke the fine or the unpaid portion thereof in
whole or in part.
Source: N. J. S. 2A:164–25; Model Penal Code: 302.3.

173

CHAPTER 47.   **[RESERVED]**

CHAPTER 47.   ADULT DIAGNOSTIC AND TREATMENT CENTER.

*Section*

1   2C:47–1.   *Adult Diagnostic and Treatment Center.*
2   2C:47–2.   *Referral.*
3   2C:47–3.   *Examination.*
4   2C:47–4.   *Treatment Arrangements.*
5   2C:47–5.   *Parole.*
6   2C:47–6.   *Compensation.*
7   2C:47–7.   *Cost of Maintenance.*

1   *2C:47–1. Adult Diagnostic Center—Commitment—Examination.*
2   *Whenever a person is convicted of the offense of aggravated sexual*
3   *assault, sexual assault, or aggravated criminal sexual contact, or*
4   *an attempt to commit any such crime, the judge shall order that*
5   *such person be referred to the Adult Diagnostic and Treatment*
6   *Center for such period as shall be necessary to complete a physical*
7   *and psychological examination; said period of referral not to*
8   *exceed 10 days. The referral order shall contain a determination of*
9   *the person's legal settlement in accordance with subdivision D of*
10   *article 3 of chapter 4 of Title 30 of the Revised Statutes.*

1   *2C:47–2. Referral upon completion of the physical and psy-*
2   *chological examination of such person, but in no event later than*
3   *30 days after the date of the order of referral, a written report of*
4   *the results of the examination shall be sent to the court.*

1   *2C:47–3. Examination. a. If the examination reveals that the*
2   *offender's conduct was characterized by a pattern of repetitive,*
3   *compulsive behavior, the court may, upon the recommendation of*
4   *the Adult Diagnostic and Treatment Center, sentence the offender*
5   *to the Center for a program of specialized treatment for his mental*
6   *condition; provided, however, that no such person may be sentenced*
7   *to the Adult Diagnostic and Treatment Center in the absence of*
8   *such a finding that his conduct was characterized by a pattern of*
9   *repetitive, compulsive behavior.*
10   *b. In the event that the court shall sentence a person as provided*
11   *herein, the court shall notwithstanding set the sentence in*
12   *accordance with Chapters 43 and 44 of this code.*
13   *c. In lieu of incarceration, the court may, upon the written*
14   *report and recommendation of the Adult Diagnostic and Treatment*
15   *Center, place such person on probation with the requirement, as a*
16   *condition of such probation, that he receive outpatient psychological*
17   *treatment in a manner to be prescribed in each individual case.*

18   *d. If it shall appear from the report of such examination made*
19   *of such person that the offender's conduct was not characterized*
20   *by a pattern of repetitive, compulsive behavior, the court shall not*
21   *impose sentence on such person as provided by this chapter.*

1   *2C:47–4. Treatment Arrangements. a. The Commissioner of the*
2   *Department of Corrections, upon commitment of such person, shall*
3   *provide for his treatment in the Adult Diagnostic and Treatment*
4   *Center.*
5   *b. The commissioner may, in his discretion, order the transfer*
6   *of a person sentenced under this chapter out of the Adult Diag-*
7   *nostic and Treatment Center. In the event of such a transfer the*
8   *conditions of confinement and release of such person transferred*
9   *shall no longer be governed by this chapter.*
10   *c. If, in the opinion of the commissioner, upon the written recom-*
11   *mendation of the Special Classification Review Board continued*
12   *confinement is not necessary, he shall move before the sentencing*
13   *court for modification of the sentence originally imposed.*

1   *2C:47–5. Parole. Any person committed to confinement under*
2   *the terms of this chapter shall be released under parole super-*
3   *vision when if shall appear to the satisfaction of the State Parole*
4   *Board, after recommendation by a special classification review*
5   *board appointed by the commissioner that such person is capable*
6   *of making an acceptable social adjustment in the community. The*
7   *Chief Executive Officer of the Adult Diagnostic and Treatment*
8   *Center shall report in writing at least semiannually to the special*
9   *classification review board concerning the physical and psycho-*
10   *logical condition of such person with a recommendation as to his*
11   *continued confinement or consideration for release on parole. Any*
12   *person paroled pursuant to this section shall be subject to the pro-*
13   *visions of Title 30 of the Revised Statutes governing parole and*
14   *the regulations promulgated pursuant thereto.*

1   *2C:47–6. Compensation. No statute relating to remission of*
2   *sentence by way of commutation time for good behavior and for*
3   *work performed shall apply to any person sentenced to the Adult*
4   *Diagnostic and Treatment Center pursuant to this chapter, but*
5   *provision shall be made for monetary compensation in amount to*
6   *be established by the Commissioner of the Department of Correc-*
7   *tions, in lieu of remission of sentence for work performed.*

1   *2C:47–7. Cost of Maintenance. The Commissioner shall deter-*
2   *mine and fix the per capita cost of examining and maintaining any*
3   *person transferred to the Adult Diagnostic and Treatment Center*
4   *for examination, and the Adult Diagnostic and Treatment Center*

5  *shall furnish a copy of the order of transfer to the county treasurer*
6  *of the county in which the person has a legal settlement as deter-*
7  *mined in said order, and upon certification of the amount due, the*
8  *board of chosen freeholders of the county shall make provision for*
9  *payment of one-half of the cost thereof to the Adult Diagnostic and*
10  *Treatment Center, the remaining one-half to be borne by the State.*
11  *If the legal settlement in any county, the entire cost shall be borne*
12  *by the State.\*\**

## Chapter 48.   \*\*[Reserved]\*\*

Chapter 48.   Criminal Disposition Commission.

*Section*
1  *2C:48–1.   Composition.*
2  *2C:48–2.   Duties.*
3  *2C:48–3.   Powers.*
4  *2C:48–4.   Reports.*

1  *2C:48–1. Composition. There is hereby created a criminal Dis-*
2  *position Commission, consisting of ten members consisting of two*
3  *members of the Senate, no more than one of whom shall be of the*
4  *same political party, appointed by the President of the Senate; two*
5  *members of the General Assembly, no more than of whom shall be*
6  *of the same political party, appointed by the Speaker of the*
7  *General Assembly; the Chief Justice of the Supreme Court or his*
8  *designee, the Attorney General or his designee, the Public Advocate*
9  *or his designee, the Commissioner of the Department of Correc-*
10  *tions or his designee and two public members to be appointed by the*
11  *Governor. The legislature members shall serve for terms coexten-*
12  *sive with their respective terms as a member of the House of the*
13  *Legislature from which they are appointed and the two public*
14  *members shall serve for a term of 3 years except that one of the*
15  *initial appointments shall be for a term of 1 year. Members shall*
16  *be eligible for reappointment to the commission, and vacancies in*
17  *the commission shall be filled in the same manner as the original*
18  *appointment, but for the unexpired term only. The members of the*
19  *commission shall serve without compensation, but shall only be*
20  *reimbursed for necessary expenses actually incurred in the per-*
21  *formance of their duties under this chapter. The commission shall*
22  *choose a chairman from among its members.*

1  *2C:48–2. Duties. It shall be the duty of the commission to study*
2  *and review all aspects of the criminal justice system relating the*

3  *disposition of criminal offenders, including but not limited to*
4  *terms of imprisonments, fines and other monetary punishments,*
5  *parole, probation and supervisory treatment.*

1  *2C:48–3. Powers. The commission shall be entitled to call to its*
2  *assistance and avail itself of the services of such employees of the*
3  *State and the political subdivisions thereof as it may require and*
4  *as may be available to it for said purpose, and to employ such pro-*
5  *fessional, stenographic, and clerical assistants and incur such*
6  *traveling and other miscellaneous expenses as it may deem*
7  *necessary in order to perform its duties, and as may be within the*
8  *limits of funds appropriated or otherwise made available to it for*
9  *said purposes.*

1  *2C:48–4. Reports. The commission shall file biannually with the*
2  *Governor and the legislature a report containing its findings and*
3  *recommendations concerning the disposition of criminal*
4  *offenders.\*\**

## Chapter 49.   [Reserved]

## Chapter 50.   [Reserved]

## Chapter 51.   Loss and Restoration of Rights Incident to Conviction of an Offense

Section
1  2C:51–1.  Basis of Disqualification or Disability.
2  2C:51–2.  Forfeiture of Public Office.
3  2C:51–3.  Voting and Jury Service.
4  2C:51–4.  Order Sealing Records of Arrest or Conviction; Effect
5        Order of Sealing.

1  2C:51–1. Basis of Disqualification or Disability. a. No person
2  shall suffer any legal disqualification or disability because of his
3  conviction of an offense or his sentence on such conviction, unless
4  the disqualification or disability involves the deprivation of a right
5  or privilege which is:
6    (1)  Necessarily incident to execution of the sentence of the court;
7    (2)  Provided by the Constitution or the code;
8    (3)  Provided by a statute other than the code, when the convic-
9  tion is of an offense defined by such statute; or
10    (4)  Provided by the judgment, order or regulation of a court,
11  agency or official exercising a jurisdiction conferred by law, or by
12  the statute defining such jurisdiction, when the commission of the

13 offense or the conviction or the sentence is reasonably related to
14 the competency of the individual to exercise the right or privilege
15 of which he is deprived.

16   b. Proof of a conviction as relevant evidence upon the trial or
17 determination of any issue, or for the purpose of impeaching the
18 convicted person as a witness is not a disqualification or disability
19 within the meaning of this chapter.

20 Source: Model Penal Code: 306.1.1

1   2C:51-2. Forfeiture of Public Office. a. A person holding any
2 public office, position, or employment, elective or appointive, under
3 the government of this State or any agency or political subdivision
4 thereof, who is convicted of an offense shall forfeit such office or
5 position if:

6   (1) He is convicted under the laws of this State of an offense
7 involving dishonesty or of a crime of the third degree or above or
8 under the laws of another state or of the United States of an offense
9 or a crime which, if committed in this State, would be such an
10 offense or crime;

11   (2) He is convicted of an offense involving or touching such office,
12 position or employment; or

13   (3) The Constitution or a statute other than the code so provides.

14   b. The forfeiture set forth in subsection a. shall take effect:

15   (1) Upon finding of guilt by the trier of fact or a plea of guilty,
16 if the court so orders; or

17   (2) Upon sentencing unless the court for good cause shown,
18 orders a stay of such forfeiture. If the conviction be reversed, he
19 shall be restored, if feasible, to his office, position or employment
20 with all the rights, emoluments and salary thereof from the date of
21 forfeiture.

22   *c. In addition to the punishment prescribed for the offense,*
23 *and the forfeiture set forth in 2C:51-2 a., any person convicted of*
24 *an offense involving or touching on his public office, position or*
25 *employment shall be forever disqualified from holding any office*
26 *or position of honor, trust or profit under this State or any of its*
27 *administrative or political subdivisions.*

28   d. *Except as may otherwise be ordered by the Attorney General*
29 *as the public need may require, any person convicted of an offense*
30 *under sections 2C:27-2, 2C:27-4, 2C:27-6, 2C:27-7, 2C:27-8,*
31 *2C:29-4, 2C:30-2, or 2C:30-3 of this Title shall be ineligible, either*
32 *directly or indirectly, to submit a bid, enter into any contract, or*
33 *to conduct any business with any board, agency, authority, depart-*

178

34 *ment, commission, public corporation, or other body of this State,*
35 *of this or one or more other states, or of one or more political*
36 *subdivisions of this State for a period of, but not more than, 10*
37 *years from the date of conviction for a crime of the second degree,*
38 *or 5 years from the date of conviction for a crime of the third*
39 *degree. It is the purpose of this subsection to bar any individual*
40 *convicted of any of the above enumerated offenses and any business,*
41 *including any corporation, partnership, association or proprietor-*
42 *ship in which such individual is a principal, or with respect to which*
43 *such individual owns, directly or indirectly, or controls 5% or*
44 *more of the stock or other equity interest of such business, from*
45 *conducting business with public entities.*

46   *The Secretary of State shall keep and maintain a list of all cor-*
47 *porations barred from conducting such business pursuant to this*
48 *section.***

49 Source: N. J. S. 2A:93-5; 2A:135-9; Model Penal Code: 306.2.

1   2C:51-3. Voting and Jury Service. A person who is convicted
2 of a crime shall be disqualified

3   a. From voting in any local or municipal primary or general
4 election if and only so long as he is committed under a sentence
5 of imprisonment; and

6   b. From serving as a juror until he has satisfied his sentence and,
7 in the case of a conviction of a crime, for a period of 5 years
8 thereafter.

9 Source: R. S. 19:4-1 amended 1948, c. 438, s. 3; 1955, c. 156; 1957,
10   c. 205; 1959, c. 127, s. 1; 1964, c. 7, s. 1; 1971, c. 280, s. 1; N. J. S.
11   2A:69-1 amended 1953, c. 98; 1964, c. 44; Model Penal Code:
12   306.3.

1   2C:51-4. Order Sealing Records of Arrest or Conviction; Effect
2 of Order of Sealing. a. Any person who has been arrested for a
3 crime or offense and against whom proceedings were dismissed, or
4 who was discharged without a conviction, or who was acquitted,
5 may at any time following the dismissal of proceedings, or the dis-
6 charge without a conviction, or the acquittal, present a duly
7 verified petition to the court in which the judgment of acquittal, dis-
8 charge or dismissal was entered, or, if there were no court pro-
9 ceedings, to the court in whose jurisdiction the arrest occurred,
10 setting forth all the facts in the matter and praying for the relief
11 provided by this subsection.

12   (1) Upon the filing of a petition pursuant to this act the court
13 may by order fix a time, not less than 15 nor more than 45 days

179

14 thereafter, for the hearing of the matter. A copy of this order shall
15 be served pursuant to the Rules of Court upon the Attorney
16 General, upon the prosecutor of the county wherein the court is
17 located, upon the chief of police or other executive head of the
18 police department of the municipality in which the arrest occurred,
19 and upon the chief law enforcement officer of any other law en-
20 forcement agency of this State which participated in the arrest,
21 within 5 days from the date of the order.

22    (2) At the time so appointed the court shall hear the matter and
23 if no compelling public interest in denying said expungement can
24 be shown by substantial and convincing evidence, an order shall be
25 granted directing the clerk of the court, and the parties upon whom
26 notice was served to expunge from their records all evidence of
27 said arrest including evidence of detection relating thereto, and
28 that the person arrested shall be forthwith relieved from any dis-
29 abilities as may have otherwise existed by reason thereof. There-
30 after, the arrest and any proceedings relating thereto shall be
31 deemed not to have occurred, and the petitioner may answer
32 accordingly any question relating to their occurrence. In response
33 to requests for information or records on the person who was
34 arrested, the law enforcement officers and departments shall reply,
35 with respect to the arrests and proceedings which are the subject
36 of the order, that there is no record.

37    (3) For services performed under this act the same fees shall be
38 taxed as are usual for like service in other matters, which fees shall
39 be payable by the petitioner; unless said petitioner is indigent,
40 whereby the fees shall be waived and legal counsel appointed to
41 represent him.

42    (4) As used in this subsection:
43    (a) "Expunge" means the destruction, erasure, obliteration, or
44 blotting out of all records relating to an arrest:
45    (b) "Arrest record" means records, references, data or docu-
46 ments (including fingerprints) compiled by law enforcement
47 agencies for purposes of identifying alleged criminal offenders or
48 maintaining summaries of arrest and the nature and disposition of
49 criminal charges arising out of such arrest.

50    (5) This subsection shall apply to arrests which occurred prior
51 to and which occur after enactment of this act.

52    b. In all cases wherein a person has been found guilty of an
53 offense, it shall be lawful after the lapse of **~~[1 year]~~** ** **5 years**
54 from the date of final discharge or termination of sentence for
55 the person to present a duly verified petition to the County Court

56 of the court in which the conviction was entered, setting forth all
57 the facts in the matter and praying for the relief provided for in
57A this subsection.

58    (1) Upon reading and filing such petition the court may by
59 order fix a time, not less than 10 or more than 30 days thereafter,
60 for the hearing of the matter, a copy of which order shall be served
61 in the usual manner, within 5 days from its date, upon the county
62 prosecutor and upon the chief of police or other executive head of
63 the police department of the municipality wherein the offense was
64 committed and, if the conviction was entered in a municipal court,
65 upon the judge of that court. At the time so appointed the court
66 shall hear the matter and if on material objection is made and no
67 reason appears to the contrary, an order may be granted directing
68 the clerk of the court wherein such conviction was entered to
69 expunge from the records all evidence of said conviction and that
70 the person against whom such conviction was entered shall be
71 forthwith thereafter relieved from such disabilities as may have
72 existed by reason thereof. A denial of such an order shall be
73 appealable by the petitioner and the burden of proof for sustaining
74 the denial shall lay upon the State.

75    (2) If within 5 years, following final discharge of termination of
76 sentence from a conviction of a disorderly persons offense, an order
77 expunging the record of conviction has not been granted, and no
78 subsequent criminal conviction has occurred, the court shall enter
79 such an order on the motion of the ex-offender.

80    (3) The term "expunge" as used in this subsection refers to the
81 destruction, erasure, obliteration, or blotting out of all records and
82 index entries relating to an arrest and conviction of a disorderly
83 persons offense.

84    c. In all cases wherein a person has been convicted of a crime or
85 offense, the person so convicted may petition the court wherein such
86 conviction was entered for an order annulling and sealing the record
87 of such conviction after termination of probation or parole super-
88 vision or after final discharge or release from any term of imprison-
89 ment. He may present such petition in person, by an attorney, or
90 by a probation or parole officer and the expenses coincident with
91 this petition shall be borne by the State.

92    The court shall explicitly state in writing any reasons for not
93 granting an order of annulment and sealing. A denial of such an
94 order shall be appealable by the petitioner and the burden of proof
95 for sustaining the denial shall lay upon the State.

96  (1) Departments of probation, parole, or corrections exercising
97  supervision or custody over any convicted person shall inform such
98  person in writing of the completion of probation, parole or im-
99  prisonment, and the termination of supervision or custody. In-
100 formation concerning annulment and sealing rights shall, in non-
101 technical and clearly understandable language, be included in this
102 written communication.

103  (2) If within **[2]** **10** years, following termination of
104 probation or parole and after final discharge from imprisonment
105 or mandatory release, an order annulling and sealing the record of
106 conviction has not occurred, and no subsequent criminal conviction
107 has occurred, the court shall enter such an order on the motion of
108 the ex-offender. The court shall notify the person whose record
109 has been annulled and sealed, of its effect on his or her legal status.

110  (3) Upon the entry of an order to annul and seal a record of
111 criminal conviction, the petitioner shall be released from all
112 penalties and disabilities resulting from the offense or crime of
113 which he has been convicted. In any subsequent prosecution of such
114 defendant, such prior conviction shall have the same effect as if it
115 had not been annulled. Nothing in this act shall affect any right of
116 the offender to appeal from his or her conviction or to rely on it
117 in bar of any subsequent proceeding for the same offense.

118  (4) Upon granting of the motion to annul the petitioner's convic-
119 tion the court shall order the criminal records of the petitioner
120 physically sealed and removed to a separate location and main-
121 tained in a confidential status. The court shall notify local and
122 State law enforcement agencies and the Federal Bureau of In-
123 vestigation of the order annulling and sealing the conviction.
124 This notification shall direct these agencies not to divulge and
125 release information about the conviction except as otherwise pro-
126 vided in this act. Upon receipt of this notification, these agencies
127 shall take whatever action is necessary to ensure compliance with
128 this order and shall then notify the court that action has been taken.
129 The court shall supervise this action and response and may hold in
130 contempt of court anyone failing to abide by its order.

131  (5) Except under the following circumstances the court's motion
132 and receipt of such a notice shall thereafter prohibit the court and
133 law enforcement agencies from divulging the record of conviction
134 or fact of annulling and sealing:

135  (a) Inquiries received from another court of law;

136  (b) Inquiries from an agency preparing a presentence report for
137 another court;

182

138  (c) Inquiries from law enforcement agencies where the request
139 for information is related to the investigation of a crime or a posi-
140 tion within that agency; and

141  (d) Inquiries from an agency considering the person for a posi-
142 tion immediately and directly affecting the national security. The
143 term "national security" does not include regular military service.

144  (6) Information about an annulled conviction may not other-
145 wise be released. Responses to inquiries concerning a record of
146 criminal conviction, shall not be different from responses made
147 about persons who have no criminal records. In any application,
148 interview, or other form of evaluation process for employment,
149 bonding or any civil right privilege, with only the exceptions enu-
150 merated in this section, a person may be questioned about
151 previous conviction of a crime only in language such as the follow-
152 ing:

153  "Have you ever been convicted of a crime which has not been
154 annulled or sealed by a court?"

155 Source: N. J. S. 2A:164-28; C. 2A:169-11 (1968, c. 279); Model
156   Penal Code: 306.6.

CHAPTER 52.  [RESERVED]

CHAPTER 53.  [RESERVED]

CHAPTER 54.  [RESERVED]

CHAPTER 55.  [RESERVED]

CHAPTER 56.  [RESERVED]

CHAPTER 57.  [RESERVED]

CHAPTER 58.  LICENSING AND OTHER PROVISIONS RELATING
TO FIREARMS

Section

1  2C:58-1.  Registration of Manufacturers and Wholesale Dealers
2      of Firearms.
3  2C:58-2.  Retailing of Firearms.
4  2C:58-3.  Purchase of Firearms.
5  2C:58-4.  Permits to Carry Handguns.
6  2C:58-5.  Licenses to Possess and Carry Machine Guns.
7  2C:58-6.  Limited Licenses to Carry Firearms by Minors.

183

Section

8  2C:58-7.   Persons Possessing Explosives or Destructive Devices
9        to Notify Police.
10  2C:58-8.   Certain Wounds to Be Reported.
11  2C:58-9.   Certain Convictions to Be Reported.
12  2C:58-10.   Incendiary or Tracer Ammunition.
13  2C:58-11.   Property Rights in Weapons; Forfeiture.

1     2C:58-1. Registration of Manufacturers and Wholesale Dealers
2  of Firearms. a. Registration. Every manufacturer and wholesale
3  dealer of firearms shall register with the superintendent as pro-
4  vided in this section. No person shall engage in the business of,
5  or act as a manufacturer or wholesale dealer of firearms, or manu-
6  facture or sell at wholesale any firearm, until he has so registered.
7     Applications for registration shall be made on such forms as
8  shall be prescribed by the superintendent, and the applicant shall
9  furnish such information and other particulars as may be pre-
10  scribed by law or by any rules or regulations promulgated by the
11  superintendent. Each application for registration or renewal shall
12  be accompanied by a fee of $150.00.
13     The superintendent shall prescribe standards and qualifications
14  for the registration of manufacturers and wholesalers of firearms,
15  for the protection of the public safety, health and welfare. He shall
16  refuse to register any applicant for registration unless he is satis-
17  fied that the applicant can be permitted to engage in business as
18  a manufacturer or wholesale dealer of firearms without any danger
19  to the public safety, health or welfare.
20     The superintendent shall issue a certificate of registration to
21  every person registered under this section, and such certificate
22  shall be valid for a period of 3 years from the date of issuance.
23     b. Wholesale dealer's agent. Every registered wholesale dealer
24  of firearms shall cause each of his agents or employees actively
25  engaged in the purchase or sale of firearms to be licensed with the
26  superintendent as a wholesale dealer's agent. Applications for
27  agents' licenses shall be submitted on such forms as shall be pre-
28  scribed by the superintendent, and shall be signed by the registered
29  wholesale dealer and by the agent. Each application shall be ac-
30  companied by a fee of $5.00, and each license shall be valid for so
31  long as the agent or employee remains in the employ of the whole-
32  sale dealer and the wholesale dealer remains validly registered
33  under this section. The superintendent shall prescribe standards
34  and qualifications for licensed wholesale dealers' agents, for the
35  protection of the public safety, health and welfare.

184

36     c. Revocation of certificate of registration or license. The su-
37  perintendent may, after reasonable notice to all affected parties
38  and a hearing if requested, revoke any certificate of registration
39  or agent's license if he finds that the registered or licensed person
40  is no longer engaged in the business of manufacturing or whole-
41  saling firearms in this State or that he can no longer be permitted
42  to carry on such business without endangering the public safety,
43  health or welfare. A certificate or license may be canceled at any
44  time at the request of the registered or licensed person.
45     d. Appeals. Any person aggrieved by the refusal of the superin-
46  tendent to register him as a manufacturer or wholesale dealer or a
47  wholesale dealer's agent, or by revocation of his certificate or
48  license, may appeal to the Appellate Division of the Superior Court.
49     e. Records of Sales. Every manufacturer and wholesale dealer
50  shall keep a detailed record of each firearm sold by him. The record
51  shall include the date of sale, the name and address of the pur-
52  chaser, a description of each firearm and the serial number thereof.
53  The records shall be available for inspection at all reasonable times
54  by any law enforcement officer.
55  Source: N. J. S. 2A:151-19 amended 1966, c. 60, s. 16; 1971, c. 282,
56     s. 1; 2A:151-20; 2A:151-21; 2A:151-22 amended 1966, c. 60, s. 17.

1     2C:58-2. Retailing of Firearms. a. Licensing of retail dealers
2  and their employees. No retail dealer of firearms nor any employee
3  of a retail dealer shall sell or expose for sale, or possess with the
4  intent of selling, any firearm unless licensed to do so as hereinafter
5  provided. The superintendent shall prescribe standards and
6  qualifications for retail dealers of firearms and their employees for
7  the protection of the public safety, health and welfare.
7A     Applications shall be made in the form prescribed by the superin-
8  tendent, accompanied by a fee of $50.00 payable to the superin-
9  tendent, and shall be made to a judge of the county court in the
10  county where the applicant maintains his place of business. The
11  judge **[may]** **shall** grant a license to an applicant if he
12  finds that the applicant meets the standards and qualifications
13  established by the superintendent and that the applicant can be
14  permitted to engage in business as a retail dealer of firearms or
15  employee thereof without any danger to the public safety, health
16  and welfare. Each license shall be valid for a period of 3 years
17  from the date of issuance, and shall authorize the holder to sell
17A  firearms at retail in a specified municipality.
17B     In addition, every retail dealer shall pay a fee of $5.00 for each
17C  employee actively engaged in the sale or purchase of firearms. The

185

17D superintendent shall issue a license for each employee for whom
17E said fee has been paid, which license shall be valid for 3 years or so
17F long as the employee remains in the employ of said retail dealer if
17G such period is less than 3 years.

18 No license shall be granted to any person under the age of 18
19 years or to any person who could not qualify to obtain a permit to
20 purchase a handgun or a firearms purchaser identification card,
21 or to any corporation, partnership or other business organization
22 in which an actual or equitable controlling interest is held or pos-
23 sessed by such an ineligible person.

24 All licenses shall be granted subject to the following conditions,
25 for breach of any of which the license shall be subject to revocation
26 on the application of any law enforcement officer and after notice
27 and hearing by the issuing court:

28 (1) The business shall be carried on only in the building or
29 buildings designated in the license, provided that repairs may be
30 made by the dealer or his employees outside of such premises.

31 (2) The license or a copy certified by the issuing authority shall
32 be displayed at all times in a conspicuous place on the business
33 premises where it can be easily read.

34 (3) No firearm or imitation thereof shall be placed in any window
35 or in any other part of the premises where it can be readily seen
36 from the outside.

37 (4) No rifle or shotgun shall be delivered to any person unless
38 such person possesses and exhibits a valid firearms purchaser
39 identification card and furnishes the seller, on the form prescribed
40 by the superintendent, a certification signed by him setting forth
41 his name, permanent address, firearms purchaser identification
42 card number and such other information as the superintendent
43 may by rule or regulation require. The certification shall be re-
44 tained by the dealer and shall be made available for inspection by
45 any law enforcement officer at any reasonable time.

46 (5) No handgun shall be delivered to any person unless:

47 (a) Such person possesses and exhibits a valid permit to pur-
48 chase a firearm and at least 7 days have elapsed since the date of
49 application for the permit.

50 (b) The person is personally known to the seller or presents
51 evidence of his identity; and

52 (c) The handgun is unloaded and securely wrapped.

53 (6) The dealer shall keep a true record of every handgun sold,
54 given or otherwise delivered or disposed of, in accordance with the
55 provisions of subsections b. through e. of this section.

186

56 b. Records. Every person engaged in the retail business of sell-
57 ing, leasing or otherwise transferring a handgun, as a retail dealer
58 or otherwise, shall keep a register in which shall be entered the
59 time of the sale, lease or other transfer, the date thereof, the name,
60 age, date of birth, complexion, occupation, residence and a physical
61 description including distinguishing physical characteristics, if any,
62 of the purchaser, lessee or transferee, the name and permanent
63 home address of the person making the sale, lease or transfer, the
64 place of the transaction, and the make, model, manufacturer's num-
65 ber, caliber and other marks of identification on such handgun and
66 such other information as the superintendent shall deem necessary
67 for the proper enforcement of this chapter. The register shall be
68 retained by the dealer and shall be made available at all reasonable
69 hours for inspection by any law enforcement officer.

70 c. Forms of register. The superintendent shall prepare the form
71 of the register as described in subsection b. of this section and
72 furnish the same in triplicate to each person licensed to be engaged
73 in the business of selling, leasing or otherwise transferring fire-
74 arms.

75 d. Signatures on register. The purchaser, lessee or transferee
76 of any handgun shall sign, and the dealer shall require him to
77 sign his name to the register, in triplicate, and the person making
78 the sale, lease or transfer shall affix his name, in triplicate, as a
79 witness to the signature. The signatures shall constitute a repre-
80 sentation of the accuracy of the information contained in the regis-
81 ter.

82 e. Copies of register entries; delivery to chief of police or county
83 clerk. Within 5 days of the date of the sale, assignment or transfer,
84 the dealer shall deliver or mail by certified mail, return receipt
85 requested, to the office of the chief of police of the municipality
86 in which the purchaser resides, or to the office of the captain of
87 the precinct of the municipality in which the purchaser resides, and
88 to the superintendent, legible copies of the register forms. If hand
89 delivered a receipt shall be given to the dealer therefor.

90 Where a sale, assignment or transfer is made to a purchaser
91 who resides in a municipality having no chief of police, the dealer
92 shall, within 5 days of the transaction, mail a duplicate copy of the
93 register sheet to the clerk of the county within which the purchaser
94 resides.

95 Source:  N. J. S. 2A:151-24 amended 1966, c. 60, s. 18; 1971, c. 282,
96 s. 2; 1973, c. 264; 2A:151-25 amended 1966, c. 60, s. 19; 2A:151-26
97 amended 1966, c. 60, s. 20; 2A:151-27 amended 1966, c. 60, s. 21;
98 2A:151-28 amended 1966, c. 60, s. 22.

187

2C:58–3. Purchase of Firearms. a. Permit to Purchase a Handgun. No person shall sell, give, transfer, assign or otherwise dispose of, nor receive, purchase, or otherwise acquire a handgun unless the purchaser, assignee, donee, receiver or holder is licensed as a dealer under this chapter or has first secured a permit to purchase a handgun as provided by this section.

b. Firearms purchaser identification card. No person shall sell, give, transfer, assign or otherwise dispose of nor receive, purchase or otherwise acquire a rifle or shotgun unless the purchaser, assignee, donee, receiver or holder is licensed as a dealer under this chapter or possesses a valid firearms purchaser identification card, and first exhibits said card to the seller, donor, transferor or assignor, and unless the purchaser, assignee, donee, receiver or holder signs a written certification, on a form prescribed by the superintendent, which shall indicate that he presently complies with the requirements of subsection c. of this section and shall contain his name, address and firearms purchaser identification card number or dealer's registration number. The said certification shall be retained by the seller, as provided in section 2C:58–2 a., or, in the case of a person who is not a dealer, it may be filed with the chief of police of the municipality in which he resides or with the superintendent.

c. Who may obtain. No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth. No handgun purchase permit or firearms purchaser identification card shall be issued:

(1) To any person who has been convicted in this State of **[the] crime, or elsewhere of the substantively equivalent crime, of assault, robbery, theft, burglary, arson, °[rape]° *an offense under 2C:14–2 or 2C:14–3*, murder, or kidnapping]°° °°a crime,°° whether or not armed with or possessing a weapon at the time of such offense;

(2) To any drug dependent person as defined in P. L. 1970, c. 226 (C. 24:21–2), to any person who is confined for a mental disorder to a hospital, mental institution or sanitarium, or to any person who is presently an alcoholic or an habitual drunkard;

(3) To any person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms unless he produces a certificate of a medical doctor or psychiatrist licensed in New Jersey, or other satisfactory proof, that he is no longer suffering from that particular disability in such a manner that would interfere with or handicap him in the handling of firearms; to any person who knowingly falsifies any information on the application forms for a handgun purchase permit or firearms purchaser identification card;

(4) To any person under the age of 18 years; or

(5) To any person where the issuance would not be in the interest of the public health, safety or welfare.

d. Issuance. The chief of police of an organized full-time police department of the municipality where the applicant resides or the superintendent, in all other cases, shall upon application, issue to any person qualified under the provisions of subsection c. of this section a permit to purchase a handgun or a firearms purchaser identification card.

Any person aggrieved by the denial of a permit or identification card may request a hearing in the County Court of the county in which he resides if he is a resident of New Jersey or in the County Court of the county in which his application was filed if he is a nonresident. The request for a hearing shall be made in writing within 30 days of the denial of the application for a permit or identification card. The applicant shall serve a copy of his request for a hearing upon the chief of police of the municipality in which he resides, if he is a resident of New Jersey, and upon the superintendent in all cases. The hearing shall be held and a record made thereof within 30 days of the receipt of the application for such hearing by the judge of the county court. No formal pleading and no filing fee shall be required as a preliminary to such hearing. Appeals from the results of such hearing shall be in accordance with law.

e. Applications. Applications for permits to purchase a handgun and for firearms purchaser identification cards shall be in the form prescribed by the superintendent and shall set forth the name, residence, place of business, age, date of birth, occupation, sex and physical description, including distinguishing physical characteristics, if any, of the applicant, and shall state whether the applicant is a citizen, whether he is an alcoholic, habitual drunkard, drug dependent person as defined in P. L. 1970, c. 226 (C. 24:21–2) whether he has ever been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim or permanent basis, giving the name and location of the institution or hospital and the dates of such confinement or commitment, whether he has been

85 attended, treated or observed by any doctor or psychiatrist or at
86 any hospital or mental institution on an inpatient or outpatient
87 basis for any mental or psychiatric condition giving the name and
88 location of the doctor, psychiatrist, hospital or institution and the
89 dates of such occurrence, whether he presently or ever has been a
90 member of any organization which advocates or approves the com-
91 mission of acts of force and violence to overthrow the Government
92 of the United States or of this State, or which seeks to deny others
93 their rights under the Constitution of either the United States or
94 the State of New Jersey, whether he has ever been convicted of
95 a crime or disorderly persons offense, and such other information
96 as the superintendent shall deem necessary for the proper enforce-
97 ment of this chapter. The application shall be signed by the appli-
98 cant and shall contain as reference the names and addresses of
99 two reputable citizens personally acquainted with him.

100   Application blanks shall be obtainable from the superintendent,
101 from any other officer authorized to grant such permit or identi-
102 fication card, and from licensed retail dealers.

103   The chief police officer or the superintendent shall obtain the
104 fingerprints of the applicant and shall have them compared with
105 any and all records of fingerprints in the municipality and county
106 in which the applicant resides and also the records of the State
107 Bureau of Identification and the Federal Bureau of Investigation,
108 provided that an applicant for a handgun purchase permit who
109 possesses a valid firearms purchaser identification card, or who
110 has previously obtained a handgun purchase permit from the same
111 licensing authority for which he was previously fingerprinted, and
112 who provides other reasonably satisfactory proof of his identity,
113 need not be fingerprinted again; however, the chief police officer
114 or the superintendent shall proceed to investigate the application
115 to determine whether or not the applicant has become subject to any
116 of the disabilities set forth in this chapter.

117   f. Granting of permit or identification card; fee; term; renewal;
118 revocation. The application for the permit to purchase a handgun
119 together with a fee of $2.00, or the application for the firearms
120 purchase identification card together with a fee of $5.00, shall be
121 delivered or forwarded to the licensing authority who shall investi-
122 gate the same and, unless good cause for the denial thereof appears,
123 shall grant the permit or the identification card, or both, if applica-
124 tion has been made therefor, within 30 days from the date of receipt
125 of the application for residents of this State and within 45 days for
126 nonresident applicants. A permit to purchase a handgun shall be

127 valid for a period of 90 days from the date of issuance and may be
128 renewed by the issuing authority for good cause for an additional
129 90 days. A firearms purchaser identification card shall be valid
130 until such time as the holder becomes subject to any of the dis-
131 abilities set forth in subsection c. of this section, whereupon the
132 card shall be void and shall be returned within 5 days by the holder
133 to the superintendent, who shall then advise the licensing authority.
134 Failure of the holder to return the firearms purchaser identification
135 card to the superintendent within the said 5 days shall be an offense
136 under section 2C:39-10 a. Any firearms purchaser identification
137 card may be revoked by the County Court of the county wherein
138 the card was issued, after hearing upon notice, upon a finding that
139 the holder thereof no longer qualifies for the issuance of such
140 permit. The county prosecutor of any county, the chief police officer
141 of any municipality or any citizen may apply to such court at any
142 time for the revocation of such card.

143   There shall be no conditions or requirements added to the form
144 or content of the application, or required by the licensing authority
145 for the issuance of a permit or identification card, other than those
146 that are specifically set forth in this chapter.

147   g. Disposition of fees. All fees for permits shall be paid to the
148 State Treasury if the permit is issued by the superintendent to the
149 municipality if issued by the chief of police, and to the county
150 treasurer if issued by the judge of the county court.

151   h. Form of permit; quadruplicate; disposition of copies. The
152 permit shall be in the form prescribed by the superintendent and
153 shall be issued to the applicant in quadruplicate. Prior to the time
154 he receives the handgun from the seller, the applicant shall deliver
155 to the seller the permit in quadruplicate and the seller shall com-
156 plete all of the information required on the form. Within 5 days of
157 the date of the sale, the seller shall forward the original copy to
158 the superintendent and the second copy to the chief of police of
159 the municipality in which the purchaser resides, except that in a
160 municipality having no chief of police, such copy shall be forwarded
161 to the superintendent. The third copy shall then be returned to
162 the purchaser with the pistol or revolver and the fourth copy shall
163 be kept by the seller as a permanent record.

164   i. Restriction on number of firearms person may purchase. Only
165 one handgun shall be purchased or delivered on each permit, but a
166 person shall not be restricted as to the number of rifles or shotguns
167 he may purchase, provided he possesses a valid firearms purchaser
168 identification card and provided further that he signs the certifica-
169 tion required in subsection b. of this section for each transaction.

170   j. Firearms passing to heirs or legatees. Notwithstanding any
171 other provision of this section concerning the transfer, receipt or
172 acquisition of a firearm, a permit to purchase or a firearms pur-
173 chaser identification card shall not be required for the passing of a
174 firearm upon the death of an owner thereof to his heir or legatee,
175 whether the same be by testamentary bequest or by the laws of
176 intestacy. The person who shall so receive or acquire said firearm
177 shall, however, be subject to all other provisions of this chapter,
178 and if the heir or legatee of such firearm does not qualify to possess
179 or carry it, the firearm may be possessed by him for the purpose of
180 sale for a period not exceeding 180 days, or for such further
181 limited period as may be approved by the chief law enforcement
182 officer of the municipality in which the heir or legatee resides or
183 the superintendent.

184   k. Sawed-off shotguns. Nothing in this section shall be construed
185 to authorize the purchase or possession of any sawed-off shotgun.
186 Source: 2A:151-32 amended 1954, c. 67; 1966, c. 60, s. 25; 2A:151-33
187   amended 1966, c. 60, s. 26; 1973, c. 174, s. 2; 2A:151-34 amended
188   1966, c. 60, s. 27; 2A:151-35 amended 1966, c. 60, s. 28; 2A:151-36
189   amended 1966, c. 60, s. 29; 2A:151-37; 2A:151-38 amended 1966,
190   c. 60, s. 30; 2A:151-39 amended 1966, c. 60, s. 31; 2A:151-45
191   amended 1959, c. 32; 1966, c. 60, s. 38.

1   2C:58-4. Permits to Carry Handguns. a. Scope and duration
2 of authority. Any person who holds a valid permit to carry a hand-
3 gun issued pursuant to this section shall be authorized to carry a
4 handgun in all parts of this State, except as prohibited by section
5 2C:39-5 e. One permit shall be sufficient for all handguns owned
6 by the holder thereof, but the permit shall apply only to a handgun
7 carried by the actual and legal holder of the permit.

8   All permits to carry handguns shall expire on December 31 of
9 the year in which they were issued, and they may thereafter be
10 renewed annually in the same manner and subject to the same
11 conditions as in the case of original applications.

12   b. Application forms. All applications for permits to carry
13 handguns, and all applications for renewal of such permits, shall
14 be made on the forms prescribed by the superintendent. Each
15 application shall set forth the full name, date of birth, sex, resi-
16 dence, occupation, place of business or employment, and physical
17 description of the applicant, and such other information as the
18 superintendent may prescribe for the determination of the appli-
19 cant's eligibility for a permit and for the proper enforcement of
20 this chapter. The application shall be signed by the applicant under

192

21 oath, and shall be indorsed by three reputable persons who have
22 known the applicant for at least 3 years preceding the date
23 of application, and who shall certify thereon that the applicant is
24 a person of good moral character and behavior.

25   c. Investigation and approval. Each application shall in the first
26 instance be submitted to the chief police officer of the municipality
27 in which the applicant resides, or to the superintendent, if there
28 is no chief police officer in the municipality where the applicant
29 resides or if the applicant does not reside in this State. The chief
30 police officer, or the superintendent, as the case may be, shall cause
31 the fingerprints of the applicant to be taken and compared with
32 any and all records maintained by the municipality, the county in
33 which it is located, the State Bureau of Identification and the
34 Federal Bureau of Identification. He shall also determine and
35 record a complete description of each handgun the applicant in-
36 tends to carry.

37   No application shall be approved by the chief police officer or
38 the superintendent unless the applicant demonstrates that he is
39 not subject to any of the disabilities set forth in 2C:58-3 c., that
40 he is thoroughly familiar with the safe handling and use of hand-
41 guns, and that he has a justifiable need to carry a handgun. If the
42 application is not approved by the chief police officer or the super-
43 intendent within 60 days of filing, it shall be deemed to have been
44 approved, unless the applicant agrees to an extension of time in
45 writing.

46   d. Issuance by County Court; fee. If the application has been
47 approved by the chief police officer or the superintendent, as the
48 case may be, the applicant shall forthwith present it to the County
49 Court of the county in which the applicant resides, or to the County
50 Court in any county where he intends to carry a handgun, in the
51 case of a nonresident. The court shall issue the permit to the
52 applicant if, but only if, it is satisfied that the applicant is a person
53 of good character who is not subject to any of the disabilities set
54 forth in section 2C:58-3 c., that he is thoroughly familiar with the
55 safe handling and use of handguns, and that he has a justifiable
56 need to carry a handgun. The court may at its discretion issue a
57 limited-type permit which would restrict the applicant as to the
58 types of firearms he may carry and where and for what purposes
59 such firearms may be carried. At the time of issuance, the appli-
60 cant shall pay to the county clerk of the county where the permit
61 was issued a permit fee of $10.00

62   e. Appeals from denial of applications. Any person aggrieved by
63 the denial by the chief police officer or the superintendent of ap-

193

64  proval for a permit to carry a handgun may request a hearing in
65  the County Court of the county in which he resides or of any county
66  in which he intends to carry a handgun, in the case of a nonresident,
67  by filing a written request for such a hearing within 30 days of
68  the denial. Copies of the request shall be served upon the superin-
69  tendent, the county prosecutor and the chief police officer of the
70  municipality where the applicant resides, if he is a resident of this
71  State. The hearing shall be held within 30 days of the filing of the
72  request, and no formal pleading or filing fee shall be required.
73  Appeals from the determination at such a hearing shall be in ac-
74  cordance with law and the rules governing the courts of this State.

75  If the superintendent or chief police officer approves an applica-
76  tion and the County Court denies the application and refuses to
77  issue a permit, the applicant may appeal such denial in accordance
78  with law and the rules governing the courts of this State.

79  f. Revocation of permits. Any permit issued under this section
80  shall be void at such time as the holder thereof becomes subject
81  to any of the disabilities set forth in section 2C:58–3 c., and the
82  holder of such a void permit shall immediately surrender the per-
83  mit to the superintendent who shall give notice to the licensing
84  authority.

85  Any permit may be revoked by the County Court which issued
86  it, after hearing upon notice to the holder, if the court finds that
87  the holder is no longer qualified for the issuance of such a permit.
88  The county prosecutor of any county, the chief police officer of any
89  municipality, the superintendent or any citizen may apply to the
90  court at any time for the revocation of any permit issued pursuant
91  to this section.

92  Source:  N. J. S. 2A:151–44 amended 1966, c. 60, s. 35; 2A:151–45
93      amended 1959, c. 32; 1966, c. 60, s. 38; C. 2A:151–44.1 (1966, c. 60,
94      s. 36); C. 2A:151–44.2 (1966, c. 60, s. 37).

1   2C:58–5.  Licenses to Possess and Carry Machine Guns. a. Any
2   person who desires to purchase, possess and carry a machine gun
3   in this State may apply for a license to do so by filing in the County
4   Court of the county in which he resides, or conducts his business
5   if a nonresident, a written application setting forth in detail his
6   reasons for desiring such a license. The County Court shall refer
7   the application to the county prosecutor for investigation and rec-
8   ommendation. A copy of the prosecutor's report, together with a
9   copy of the notice of the hearing on the application, shall be served
10  upon the superintendent, the county sheriff, and the chief police

11  officer of every municipality in which the applicant intends to carry
12  the machine gun, unless, for good cause shown, the court orders
13  notice to be given wholly or in part by publication.

14  b. No license shall be issued to any person who would not qualify
15  for a permit to carry a handgun under section 2C:58–4, and no
16  license shall be issued unless the court finds that the public safety
17  and welfare so require. Any person aggrieved by the decision of
18  the court in granting or denying an application, including the ap-
19  plicant, the prosecutor, or any law enforcement officer entitled to
20  notice under subsection a. who appeared in opposition to the appli-
21  cation, may appeal said decision in accordance with law and the
22  rules governing the courts of this State.

23  c. Upon the issuance of any license under this section, true copies
24  of such license shall be filed with the superintendent and the chief
25  police officer of the municipality where the licensee resides or has
26  his place of business.

27  d. In issuing any license under this section, the court shall attach
28  thereto such conditions and limitations as it deems to be in the
29  public interest. Unless otherwise provided by court order at the
30  time of issuance, each license shall expire 1 year from the date of
31  issuance, and may be renewed in the same manner and under the
32  same conditions as apply to original applications.

33  e. Any license may be revoked by the County Court which issued
34  it, after a hearing upon notice to the holder thereof, if the court
35  finds that the holder is no longer qualified for the issuance of such
36  a license or that revocation is necessary for the public safety and
37  welfare. Any citizen may apply to the court for revocation of a
38  license issued under this section.

39  Source:  N. J. S. 2A:151–52; 2A:151–53 amended 1966, c. 60, s. 41.

1   2C:58–6.  Limited Licenses to Carry Firearms by Minors. a. No
2   person under the age of 18 may carry, fire or use any firearm in
3   this State unless he possesses a valid limited permit to carry fire-
4   arms. Any minor may obtain a limited permit to carry firearms
5   by filing an application together with a fee of $3.00 with the chief
6   of police of the municipality in which he resides or if there is no
7   chief of police, with the superintendent. Such application shall be
8   on a form to be prescribed by the superintendent and shall contain
9   his name, residence, age, date of birth, sex and physical descrip-
10  tion, including distinguishing physical characteristics, if any, of
11  the applicant. The application shall also state whether the minor
12  has ever been adjudged delinquent as defined by P. L. 1973, c. 306,
13  s. 3 (C. 2A:4–44), or otherwise adjudged guilty of a crime or dis-

14 orderly persons offense. The form shall be signed by a parent or
15 legal guardian of the minor and notarized.
16   b. No minor submitting a properly completed form shall be
17 denied a limited permit to carry firearms unless he has previously
18 been adjudged delinquent, or otherwise adjudged guilty of a crime
19 or a disorderly persons offense; provided, however, that if the
20 minor shall have obtained an order sealing the records of any such
21 prior adjudications pursuant to P. L. 1973, c. 306, s. 26 (C. 2A:4–67),
22 the existence of such records shall not be a bar under this section.
23 The chief of police or the superintendent shall grant the permit.
24   c. Such limited permit to carry firearms shall be granted within
25 15 days of filing and shall be valid for a period of 1 year from the
26 date of issuance or until the eighteenth birthday of the applicant,
27 whichever shall come first, and may be renewed annually for a fee
28 of $1.00. No additional application shall be required for renewal.
29   d. Any minor person aggrieved by a denial of application for a
30 limited permit to carry firearms, may request a hearing and, there-
31 after, appeal, in the manner prescribed for denials of permits to
32 purchase a handgun or firearms purchaser identification by section
33 **[2C:58–3e]** **2C:58–3d**.
34   e. Any minor person possessing a valid limited permit to carry
35 firearms granted pursuant to this section and whose conduct is
36 otherwise lawful under this chapter, may carry, fire or use a fire-
37 arm only under the following circumstances:
38   (1) In the actual presence or under the direct supervision of
39 his father, mother or guardian, or some other person who holds
40 a permit to carry a handgun or a firearms purchaser identification
41 card, as the case may be;
42   (2) For the purpose of military drill under the auspices of a
43 legally recognized military organization and under competent
44 supervision;
45   (3) For the purpose of competition or target practice in and
46 upon a firing range approved by the governing body of the munici-
47 pality in which the range is located or the National Rifle Associa-
48 tion, and which is under competent supervision at the time of such
49 competition or target practice;
50   (4) For the purpose of hunting during the regularly designated
51 hunting season, provided that he possesses a valid hunting license
52 and has successfully completed a hunter's safety course taught by
53 a qualified instructor or conservation officer and carries in his pos-
54 session a certificate indicating the successful completion of such
55 a course.

196

56   f. Any person under the age of 18 who violates any provision
57 of this section by carrying, firing or using any firearm, or who
58 otherwise purchases, barters, acquires, exchanges or possesses any
59 firearm shall be deemed a juvenile in need of supervision as defined
60 in P. L. 1973, c. 306, s. 4 (C. 2A:4–45).
61 Source: New.
1   2C:58–7. Persons Possessing Explosives or Destructive Devices
2 to Notify Police. a. Any person who becomes the possessor of any
3 explosive, destructive device, or ammunition therefor, which is or
4 may be loaded or otherwise dangerous, except such as is possessed
5 for any lawful commercial or other purpose in connection with
6 which the use of explosives is authorized, shall within 15 days
7 notify the police authorities of the municipality in which he resides
8 or the State Police that the same is in his possession and shall
9 present the same to them for inspection.
10   b. When any such ammunition, explosive or destructive device
11 is presented for inspection it shall be inspected to ascertain
12 whether or not it is loaded or of a dangerous character, and if it is
13 found to be loaded or of dangerous character, it shall be destroyed
14 or be unloaded or so processed as to remove its dangerous character
15 before being returned to the possessor.
16   c. Any police officer having reasonable cause to believe that any
17 person is possessed of any such ammunition, explosive, or destruc-
18 tive device shall investigate, under a proper search warrant when
19 necessary, and shall seize the same for the purpose of inspection,
20 unloading, processing or destruction, as provided in this section,
21 and the same shall not be returned to the possessor thereof until
22 it has been unloaded or so processed.
23 Source: N. J. S. 2A:170–17.
1   2C:58–8. Certain Wounds to be Reported. Every case of a
2 wound, burn or any other injury arising from or caused by a
3 firearm, destructive device, explosive or weapon shall be reported
4 at once to the police authorities of the municipality where the
5 person reporting is located or to the State Police by the physician
6 consulted, attending or treating the case or the manager, super-
7 intendent or other person in charge, whenever such case is pre-
8 sented for treatment or treated in a hospital, sanitarium or other
9 institution. This section shall not, however, apply to wounds, burns
10 or injuries received by a member of the armed forces of the United
11 States or the State of New Jersey while engaged in the actual
12 performance of duty.
13 Source: C. 2A:170–25.7 (1959, c. 194).

197

2C:58–9. Certain Convictions to be Reported. Every conviction under any provision of chapter 39 of this code of a person who is not a citizen of the United States, shall be certified to the proper officer of the United States Government by the county prosecutor of the county in which such conviction was had, or by the Attorney General or his representative.

Source: N. J. S. 2A:151–17.

2C:58–10. Incendiary or Tracer Ammunition. No incendiary or tracer type ammunition shall be discharged anywhere in this State except for law enforcement purposes by law enforcement officers in the course of their official duties or by members of legally recognized military organizations during the actual course of their official duties in or upon military establishments or ranges constructed or maintained for such purposes. Nonincendiary shotgun tracer ammunition may, however, be used on a trap or skeet field for target purposes. Nothing in this section shall prohibit the carrying or possession for distress signal purposes of flare type guns aboard boats or ships in open tidewater or upon aircraft.

Source: C. 2A:151–57.1 (1966, c. 60, s. 42).

2C:58–11. Property Rights in Weapons; Forfeiture. No property right exists in firearms or other weapons unlawfully possessed, carried, acquired or used, and all such weapons are declared to be nuisances and forfeited to the State. When such forfeited weapons are taken from any person, they shall be surrendered to the sheriff of the county in which taken, or to the chief police officer of the municipality or to the office of the county prosecutor, and they may be disposed of when no longer needed for evidential purposes and after they have been inventoried and their disposition witnessed and recorded by the head of the agency having possession or his representative designated for this purpose. If any such weapons are found to be the legal property of an innocent owner prior to their disposition, they shall be returned to him if no longer needed for evidential purposes.

Source: N. J. S. 2A:151–16 amended 1966, c. 60, s. 14.

Chapter 59.   [Reserved]

Chapter 60.   [Reserved]

Chapter 61.   [Reserved]

Chapter 62.   Willful Nonsupport

Section

2C:62–1.   Support Orders for Willful Nonsupport.

2C:62–1. Support Orders for Willful Nonsupport. a. Order for support pendente lite. At any time after a sworn complaint is made charging an offense under section 2C:24–5 and before trial, the court may enter such temporary order as may seem just, providing for the support of the spouse or children, or both, pendente lite, and may punish a violation of such order as for contempt.

b. Order for future support; release on recognizance conditioned on obeying order; periodic service of sentence. Before trial, with the consent of the defendant, or after conviction, instead of imposing the penalty provided for violation of section 2C:24–5, or in addition thereto, the court, having regard to the circumstances and the financial ability or earning capacity of the defendant, may make an order, which shall be subject to change by the court from time to time as circumstances may require, directing the defendant to pay a sum certain periodically to the spouse, or to the guardian or custodian of the minor child or children, or to an organization or individual approved by the court as trustee. The court may release the defendant from custody on probation, upon his or her entering into a recognizance, with or without surety, in such sum as the court may order and approve. The condition of the recognizance shall be such that if the defendant shall personally appear in court whenever ordered to do so, and shall comply with the terms of the order, or of any modification thereof, the recognizance shall be void, otherwise it will remain in full force and effect. The court may, in addition to or in place of any order under this section, order and direct that any sentence of imprisonment be served periodically, instead of consecutively, during periods of time between Friday at 6 p.m. and Monday at 8 a.m. or at other times or on other days, whenever the court determines the existence of proper circumstances and that the ends of justice will be served thereby. Any person so imprisoned shall be given credit for each day or fraction of a day to the nearest hour actually served.

c. Violation of order. If the court be satisfied by information and due proof under oath that the defendant has violated the terms of the order, it may forthwith proceed with the trial of the defendant under the original charge, or sentence the defendant under the original conviction or plea of guilty, or enforce the suspended sentence or punish for contempt, as the case may be. In case of forfeiture of a recognizance, and the enforcement thereof by execution, the sum recovered may, in the discretion of the court, be paid in whole or part to the spouse, or to the guardian, custodian or trustee of such minor child or children.

43  d. Proof of marriage; husband and wife as witness. No other
44  or greater evidence shall be required to prove the marriage of such
45  husband and wife, or that the defendant is the father or mother of
46  such child or children, than is required in a civil action. In no
47  prosecution under this chapter shall any existing statute or rule
48  of law prohibiting the disclosure of confidential communications
49  between husband and wife apply, and both husband and wife shall
50  be competent and compellable witnesses to testify against each
51  other as to any and all relevant matters, including the fact of the
52  marriage and the parentage of the child or children.

53  e. Place of residence confers jurisdiction of offense. The place
54  of residence at the time of the desertion of the spouse, child or
55  children, under the provisions of this chapter, shall confer juris-
56  diction of the offense set forth therein, upon the county, county
57  district, or juvenile and domestic relations court having territorial
58  jurisdiction of the place of such residence, until the deserted party
59  shall establish a legal residence in some other county or State.

60  Source: N. J. S. 2A:100–3; 2A:100–4 amended 1969, c. 148;
61  2A:100–5; 2A:100–6; 2A:100–7; 2A:100–8.

CHAPTER 63.  [RESERVED]

CHAPTER 64.  FORFEITURE

Section
1  2C:64–1.  Property Subject to Forfeiture.
2  2C:64–2.  Forfeiture Procedures; Prima Facie Contraband.
3  2C:64–3.  Forfeiture Procedures; Other Property.
4  2C:64–4.  Seized Property; Evidentiary Use.
5  2C:64–5.  Seized Property; Rights of Owners and Other Holding
6            Interests.
7  2C:64–6.  Disposal of Forfeited Property.
8  2C:64–7.  Vesting of Title in Forfeited Property.
9  2C:64–8.  Seized Property; Statute of Limitations on Claims.

1  2C:64–1.  Property Subject to Forfeiture. a. The defendant's
2  interest in the following shall be subject to forfeiture and no prop-
3  erty right shall exist in them:

4  (1) Controlled dangerous substances, firearms which are unlaw-
5  fully possessed, carried, acquired or used, illegally possessed gam-
6  bling devices and untaxed cigarettes. These shall be designated
7  prima facie contraband.

8  (2) All property which has been, or is intended to be, utilized
9  in furtherance of an unlawful activity, including, but not limited
10 to, conveyances intended to facilitate the perpetration of illegal

200

11 acts, or buildings or premises maintained for the purpose of com-
12 mitting offenses against the State.

13 (3) Property which has become or is intended to become an
14 integral part of illegal activity, including, but not limited to, money
15 which is earmarked for use as financing for an illegal gambling
16 enterprise.

17 (4) Proceeds of illegal activities, including, but not limited to,
18 property or money obtained as a result of the sale of prima facie
19 contraband as defined by subsection a. (1), proceeds of illegal
20 gambling, prostitution, bribery and extortion. Provided that an
21 individual, who can demonstrate that said money or property was
22 his, may recover such money or property.

23 b. Any article subject to forfeiture under this chapter may be
24 seized by the State or any law enforcement officer upon process
25 issued by any court of competent jurisdiction over the property,
26 except that seizure without such process may be made when:

27 (1) The article is prima facie contraband.

28 (2) The property subject to seizure poses an immediate threat
29 to the public health, safety or welfare.

30 (3) It is otherwise not inconsistent with the Constitution of this
31 State or the United States.

32 Source: New.

1  2C:64–2.  Forfeiture Procedures; Prima Facie Contraband. a.
2  Upon seizure of prima facie contraband, the seizing officer shall
3  immediately file an application with a court of competent jurisdic-
4  tion seeking a judicial declaration that the property has been for-
5  feited to the State. Such a determination may be made in an ex
6  parte proceeding.

7  b. The court shall declare all prima facie contraband forfeited
8  **either** to the State **, or to the county, whichever was the
9  seizing authority,** unless it shall have reason to believe that
10 the seized property was possessed or utilized in a legal manner
11 or that the owner of the article had no knowledge of its illegel
11A possession or use.

12 c. If the court finds that the seized property may have been
13 possessed or utilized in a legal manner or that the owner of the
14 property had no knowledge of its unlawful possession or use, the
15 seizing officer shall be required to serve notice that the property
16 had been seized, in accordance with the provisions of 2C:64–3 c.

17 d. Any person with an interest in the seized property shall file
18 his claim within 30 days. The claim shall set forth the reason or
19 reasons why the claimant has a legitimate interest in the property.

201

20   e. The claimant shall be required to prove, by a preponderance
21 of the evidence, that the property claimed was possessed or utilized
22 by him in a lawful manner, or that he had no knowledge of its
23 illegal possession or use.

24   f. If no action is commenced within 30 days of the service of
25 notice, the property seized shall be disposed of in accordance with
26 the provisions of 2C:64–6.

27 Source: New.

1   2C:64–3. Forfeiture Procedures; Other Property. a. Whenever
2 any property other than prima facie contraband is subject to for-
3 feiture under this chapter, such forfeiture may be enforced by a
4 civil action, commenced by the seizing authority in the name of the
5 State of New Jersey and against the property sought to be for-
6 feited.

7   b. The complaint shall be verified on oath or affirmation. It shall
8 describe with reasonable particularity the property that is the sub-
9 ject matter of the action and shall contain allegations setting forth
10 the reason or reasons the article sought to be or which has been
11 seized is contraband.

12   c. Notice of the action shall be given to any person known to
13 have a property interest in the article. In addition, the notice re-
14 quirements of the Rules of Court for an in rem action shall be
15 followed.

16   d. The claimant of the property that is the subject of an action
17 under this chapter shall file his claim within 10 days after the ser-
18 vice of notice or within such additional time as may be allowed
19 by the court, and shall serve his answer within 20 days after the
20 filing of the claim. The claim shall be verified on oath or affirma-
21 tion, and shall state the interest in the property by virtue of which
22 the claimant demands its restitution and the right to defend the
23 action. If the claim is made in behalf of the person entitled to
24 possession by an agent, bailee or attorney, it shall state that he
25 is duly authorized to make the claim.

26   e. If no claim is filed in accordance with the provisions of sub-
27 section d. the property seized shall be declared forfeited to the
28 State.

29   f. Any person with a property interest in the seized property,
30 other than a defendant who is being prosecuted in connection with
31 the seizure of property may secure its release pending the for-
32 feiture action unless the article is dangerous to the public health,
33 safety and welfare or the seizing officer can demonstrate that the
34 property will probably be lost or destroyed if released.

202

35 Source: N. J. S. 2A:152–7; C. 2A:152–9.2 (1962, c. 160, s. 2);
36   C. 2A:152–9.3 (1962, c. 160, s. 3).

1   2C:64–4. Seized Property; Evidentiary Use. a. Nothing in this
2 chapter shall impair the right of the State to retain evidence
3 pending a criminal prosecution.

4   b. The fact that a prosecution for possession, use or sale of
5 prima facie contraband terminates without a conviction does not
6 preclude forfeiture proceedings against the property.

7   c. If an individual is convicted of the illegal possession, use or
8 sale of prima facie contraband, the article which is the subject
9 matter of the conviction shall be forfeited upon the entry of
10 judgment, subject to the provisions of 2C:64–5 of this chapter.

11 Source: N. J. S. 2A:152–8, 2A:152–9, 2A:152–10.

1   2C:64–5. Seized Property; Rights of Owners and Others Holding
2 Interests. No property subject to seizure under this chapter shall
3 be forfeited unless it shall appear that the owner of the property
4 or his agent was a consenting party or privy to its unlawful pos-
5 session, use or sale, nor shall any forfeiture under this chapter
6 affect the rights of any person holding an interest in property
7 subject to seizure under this chapter unless it shall appear that such
8 person had knowledge of or consented to any act or omission upon
9 which the right of forfeiture is based.

10 Source: New.

1   2C:64–6. Disposal of Forfeited Property. Property which has
2 been forfeited shall be destroyed if it can serve no lawful purpose
3 or it presents a danger to the public health, safety or welfare.
4 Otherwise, articles forfeited pursuant to this chapter may be sold
5 and the proceeds retained by the State or they may be placed at the
6 disposal of any public agency or charitable institution which shall
7 demonstrate a need for the property. All money seized pursuant to
8 this chapter shall become the property of the State.

9 Source: N. J. S. 2A:152–6.

1   2C:64–7. Vesting of Title in Forfeited Property. Title to prop-
2 erty forfeited under this chapter shall be considered to have
3 vested in the State at the time the article was utilized illegally or,
4 in the case of proceeds, when received.

5 Source: New.

1   2A:64–8. Seized Property; Statute of Limitations on Claims.
2 Any person who could not with due diligence have discovered that
3 property which he owns was seized as contraband may file a claim

203

4 for its return within 3 years of the seizure if he can demonstrate
5 that he did not consent to, or have knowledge of its unlawful use.
6 If the property has been sold, the claimant receives a claim against
7 proceeds.
8 Source: N. J. S. 2A :152–9.

CHAPTER 65.   [RESERVED]

CHAPTER 66.   [RESERVED]

CHAPTER 67.   [RESERVED]

CHAPTER 68.   [RESERVED]

CHAPTER 69.   [RESERVED]

CHAPTER 70.   [RESERVED]

CHAPTER 71.   [RESERVED]

CHAPTER 72.   [RESERVED]

CHAPTER 73.   [RESERVED]

CHAPTER 74.   [RESERVED]

CHAPTER 75.   [RESERVED]

CHAPTER 76.   [RESERVED]

CHAPTER 77.   [RESERVED]

CHAPTER 78.   [RESERVED]

CHAPTER 79.   [RESERVED]

CHAPTER 80.   [RESERVED]

CHAPTER 81.   [RESERVED]

CHAPTER 82.   [RESERVED]

CHAPTER 83.   [RESERVED]

CHAPTER 84.   [RESERVED]

CHAPTER 85.   [RESERVED]

CHAPTER 86.   [RESERVED]

CHAPTER 87.   [RESERVED]

CHAPTER 88.   [RESERVED]

CHAPTER 89.   [RESERVED]

CHAPTER 90.   [RESERVED]

CHAPTER 91.   [RESERVED]

CHAPTER 92.   [RESERVED]

CHAPTER 93.   [RESERVED]

CHAPTER 94.   [RESERVED]

CHAPTER 95.   [RESERVED]

CHAPTER 96.   [RESERVED]

CHAPTER 97.   [RESERVED]

CHAPTER 98.   REPEALERS, ALLOCATIONS AND EFFECTIVE DATE
Section
1 2C :98–1.   Construction.
2 2C :98–2.   Repealers.
3 2C :98–3.   Allocations.
4 2C :98–4.   Effective Date.

1   2C :98–1. Construction. The provisions of R. S. 1:1–8 and
2 R. S. 1:1–11 to 1:1–21, both inclusive, shall be applicable to the
3 enactment and operation of said Title 2C. The enactment of this
4 law shall not, due to the repeal set forth in section 2C :98–2:
5   a. Be deemed to revive any common law right or remedy abol-
6 ished by any sections, acts or parts of acts repealed thereby; or
7   b. Affect any right now vested in any person pursuant to the
8 provisions of those sections, acts or parts of acts, nor any remedy
9 where an action or proceeding thereunder has heretofore been
10 instituted and is pending on the effective date of said repeal.

1   2C :98–2. Repealer. All acts and parts of acts inconsistent with
2 this act are hereby superseded and repealed, and without limiting
3 the general effect of this act in superseding and repealing acts so
4 inconsistent herewith, the following sections, acts and parts of acts,
5 together with all amendments and supplements thereto, are spe-
6 cifically repealed:
7   **[Revised]** **New Jersey** Statutes sections:
8   2A :85–1 to 2A :85–5 both inclusive;
9   2A :85–6 to 2A :85–14 both inclusive;
10   2A :86–1 to 2A :88–1 both inclusive;
11   2A :89–1 to 2A :90–3 both inclusive;
12   2A :91–1 to 2A :94–3 both inclusive;
13   2A :95–1 and 2A :95–2;
14   2A :96–1 to 2A :96–4 both inclusive;
15   2A :97–1 to 2A :98–2 both inclusive;
16   2A :99–1 and 2A :99–2;
17   2A :100–1 to 2A :102–12 both inclusive;
18   2A :103–1 to 2A :104–12 both inclusive;

| | |
|---|---|
| 19 | 2A:105–1 to 2A:105–4 both inclusive; |
| 20 | 2A:106–1 to 2A:108–8 both inclusive; |
| 21 | 2A:109–1 to 2A:111–21 both inclusive; |
| 22 | 2A:111–22 to 2A:111–24 both inclusive; |
| 23 | 2A:112–1 to 2A:115–1 both inclusive; |
| 24 | 2A:115–2; |
| 25 | 2A:115–3; |
| 26 | 2A:115–4 and 2A:115–5; |
| 27 | 2A:116–1 to 2A:119–5 both inclusive; |
| 28 | 2A:119–6 to 2A:119–8 both  inclusive; |
| 29 | 2A:119–9; |
| 30 | 2A:120–1 to 2A:121–5 both inclusive; |
| 31 | 2A:122–1 to 2A:122–9 both inclusive; |
| 32 | 2A:123–1 and 2A:123–2; |
| 33 | 2A:124–1 to 2A:127–4 both inclusive; |
| 34 | 2A:128–1 to 2A:145–1 both inclusive; |
| 35 | 2A:146–2 to 2A:148–22 both inclusive |
| 36 | 2A:150–1; |
| 37 | 2A:151–1 to 2A:151–10 both inclusive; |
| 38 | 2A:151–11 and 2A:151–12; |
| 39 | 2A:151–14 to 2A:151–28 both inclusive; |
| 40 | 2A:151–31 to 2A:151–41 both  inclusive; |
| 41 | 2A:151–42 to 2A:151–44 both inclusive; |
| 42 | 2A:151–45 to 2A:151–57 both inclusive; |
| 43 | 2A:151–58 to 2A:151–61 both inclusive; |
| 44 | 2A:152–5 to 2A:152–9 both inclusive; |
| 45 | 2A:152–10 and 2A:152–11; |
| 46 | 2A:152–14 to 2A:152–16 both inclusive; |
| 47 | 2A:159–1 to 2A:159–3 both inclusive; |
| 48 | 2A:163–2; |
| 49 | 2A:163–3; |
| 50 | 2A:164–2 to \*\*⟦2A:164–12⟧\*\* \*\**2A:164–13*\*\* both inclusive; |
| 51 | 2A:164–14 to 2A:164–28 both inclusive; |
| 52 | 2A:165–1 to 2A:165–12 both inclusive; |
| 53 | 2A:166–1 to 2A:166–7 both inclusive; |
| 54 | 2A:166–11; |
| 55 | 2A:166–14 to 2A:166–16 both inclusive; |
| 56 | \*\*⟦2A:167–2 and 2A:167–3;⟧\*\* \*\**2A:167–1 to 2A:167–3 both* |
| 56A | *inclusive;*\*\* |
| 57 | 2A:168–1 to 2A:168–4 both inclusive; |
| 58 | 2A:169–1 to 2A:169–10 both inclusive; |
| 59 | 2A:170–1 to 2A:170–3 both inclusive; |
| 60 | 2A:170–4 to 2A:170–7 both inclusive; |

| | |
|---|---|
| 61 | 2A:170–9 to 2A:170–11 both inclusive; |
| 62 | 2A:170–14; |
| 63 | 2A:170–16 to 2A:170–19 both inclusive; |
| 64 | 2A:170–21 to 2A:170–25 both inclusive; |
| 65 | 2A:170–26 to 2A:170–30 both inclusive; |
| 66 | 2A:170–31; |
| 67 | 2A:170–32 to 2A:170–41 both inclusive; |
| 68 | 2A:170–42 to 2A:170–44 both inclusive; |
| 69 | 2A:170–46 to 2A:170–49 both inclusive; |
| 70 | 2A:170–53; |
| 71 | 2A:170–55 to 2A:170–64 both inclusive; |
| 72 | 2A:170–65 to 2A:170–67 both inclusive; |
| 73 | 2A:170–68 and 2A:170–69; |
| 74 | 2A:170–70 to 2A:170–76 both inclusive; |
| 75 | 2A:170–86 to 2A:170–90 both inclusive; |
| 76 | 2A:170–93 to 2A:170–96 both inclusive; |
| 77 | 2A:171–1; |
| 78 | 2A:171–2; |
| 79 | 2A:171–4 and 2A:171–5; |
| 80 | 2A:171–6 to 2A:171–12 both inclusive. |
| 81 | Pamphlet Laws: |
| 82 | Laws of 1971, c. 450 (C. 2A:85–5.1); |
| 83 | Laws of 1973, c. 191 (C. 2A:85–15 to C. 2A:85–23 both inclusive); |
| 84 | Laws of 1964, c. 74 (C. 2A:88A–1); |
| 85 | Laws of 1962, c. 39 (C. 2A:90–4): |
| 86 | Laws of 1971, c. 314 (C. 2A:94–4); |
| 87 | Laws of 1954, c. 219 (C. 2A:95–3): |
| 88 | Laws of 1953, c. 265 (C. 2A:96–6 to C. 2A:96–8 both inclusive); |
| 89 | Laws of 1961, c. 53 (C. 2A:98–3 and C. 2A:98–4); |
| 90 | Laws of 1960, c. 177 (C. 2A:99A–1 to 2A:99A–4 both inclusive); |
| 91 | Laws of 1970, c. 131 (C. 2A:99B–1); |
| 92 | Laws of 1959, c. 98 (C. 2A:102–12.1); |
| 93 | Laws of 1964, c. 265 (C. 2A:104–13 and C. 2A:104–14); |
| 94 | Laws of 1968, c. 83 (C. 2A:105–5); |
| 95 | Laws of 1964, c. 179 (C. 2A:111–21.1); |
| 96 | Laws of 1952, c. 332 (C. 2A:111–25 to C. 2A:111–27 both inclu- |
| 97 | sive); |
| 98 | Laws of 1954, c. 58 (C. 2A:111–28 to C. 2A:111–31 both inclusive); |
| 99 | Laws of 1960, c. 62 (C. 2A:11–32 and C. 2A:111–33); |
| 100 | Laws of 1964, c. 294 (C. 2A:111–34 to C. 2A:111–36 both inclu- |
| 101 | sive); |
| 102 | Laws of 1968, c. 253 (C. 2A:111–37 and 2A:111–38); |
| 103 | Laws of 1968, c. 260 (C. 2A:111–39); |

104    Laws of 1968, c. 300 (C. 2A:111–40 to C. 2A:111–51 both inclu-
105 sive);
106    Laws of 1962, c. 165 (C. 2A:115–1.1);
107    Laws of 1971, c. 449 (C. 2A:115–1.1a and C. 2A:115–1.1b);
108    Laws of 1971, c. 446 (C. 2A:115–1.6 to C. 2A:115–1.12 both inclu-
109 sive);
110    Laws of 1971, c. 447 (C. 2A:115–2.1 to C. 2A:115–2.4 both inclu-
111 sive);
112    Laws of 1971, c. 448 (C. 2A:115–2.5 to C. 2A:115–2.9 both inclu-
113 sive);
114    Laws of 1953, c. 392 (C. 2A:115–3.1);
115    Laws of 1962, c. 166 (C. 2A:115–3.2 and C. 2A:115–3.5 to
116 C. 2A:115–3.10 both   inclusive);
117    Laws of 1971, c. 376 (C. 2A:115–6);
118    Laws of 1965, c. 52 (C. 2A:119–5.1 to 2A:119–5.5 both inclusive);
119    Laws of 1962, c. 201 (C. 8A:119–8.1);
120    Laws of 1968, c. 349 (C. 2A:119A–1 to C. 2A:119A–4 both inclu-
121 sive);
122    Laws of 1961, c. 39 (C. 2A:121–6);
123    Laws of 1971, c. 87 (C. 2A:122–9.1 and C. 2A:122–9.2);
124    Laws of 1960, c. 5 (C. 2A:122–10);
125    Laws of 1960,   c. 69 (C. 2A:122–11);
126    Laws of 1967, c. 72 (C. 2A:122–12);
127    Laws of 1964, c. 86 (C. 2A:127–5);
128    Laws of 1957, c. 49 (C. 2A:148–22.1);
129    Laws of 1967, c. 182 (C. 2A:149A–1);
130    Laws of 1968, c. 395 (C. 2A:149A–2 and 2A:149A–3);
131    Laws of 1968, c. 147 (C. 2A:151–10.1);
132    Laws of 1969, c. 157 (C. 2A:151–41.1 and C. 2A:151–41.2);
133    Laws of 1966, c. 60 (C. 2A:151–44.1 and C. 2A:151–44.2);
134    Laws of 1966, c. 60 (C. 2A:151–57.1 and C. 2A:151–57.2);
135    Laws of 1952, c. 5 (C. 2A:151–62 and C. 2A:151–63);
136    Laws of 1962, c. 160 (C. 2A:152–9.1 to 2A:152–9.5 both inclu-
137 sive);
138    Laws of 1952, c. 212 (C. 2A:152–15 and C. 2A:152–16);
139    Laws of 1952, c. 74 (C. 2A:159–4);
140    Laws of 1960, c. 24 (C. 2A:166A–1 to C. 2A:166A–4 both inclu-
141 sive);
142    Laws of 1968, c. 279 (C. 2A:169–11);
143    Laws of 1971, c. 315 (C. 2A:170–3.1 to C. 2A:170–3.3 both inclu-
144 sive):
145    **⟦Laws of 1954, c. 181, sections 6 to 8 (C. 2A:170–20.5 to
146 C. 2A:170–20.7 both inclusive);⟧**

208

147    Laws of 1955, c. 105 (C. 2A:170–20.8);
148    **⟦Laws of 1956, c. 230 (C. 2A:170–20.9 to C. 2A:170–20.10 both
149 inclusive);⟧**
150    Laws of 1953, c. 67 (C. 2A:170–25.2);
151    Laws of 1954, c. 147 (C. 2A:170–25.3);
152    Laws of 1955, c. 213 (C. 2A:170–25.4);
153    Laws of 1955, c. 250 (C. 2A:170–25.5);
154    Laws of 1959, c. 194 (C. 2A:170–25.7);
155    Laws of 1964, c. 178 (C. 2A:170–25.8);
156    Laws of 1966, c. 150 (C. 2A:170–25.14 and C. 2A:170–25.15);
157    Laws of 1970, c. 133 (C. 2A:170–25.16);
158    Laws of 1973, c. 258 (C. 2A:170–25.18 to C. 2A:170–25.20 both
159 inclusive);
160    Laws of 1972, c. 159 (C. 2A:170–30.1);
161    Laws of 1956, c. 185 (C. 2A:170–31.1);
162    Laws of 1972, c. 160 (C. 2A:170–41.1);
163    Laws of 1956, c. 195 (C. 2A:170–50.1 to C. 2A:170–50.3 both in-
164 clusive);
165    Laws of 1965, c. 184, sections 3 to 5 (C. 2A:170–50.4 to
166 C. 2A:170–50.6 both inclusive);
167    Laws of 1957, c. 203 (C. 2A:170–54.1);
168    Laws of 1968, c. 324 (C. 2A:170–54.2);
169    Laws of 1953, c. 68 (C. 2A:170–64.1);
170    Laws of 1961, c. 139 (C. 2A:170–64.2);
171    Laws of 1954, c. 16 (C. 2A:170–67.1);
172    Laws of 1954, c. 137 (C. 2A:170–69.1);
173    Laws of 1958, c. 170 (C. 2A:170–69.1a and C. 2A:170–69.1b.);
174    Laws of 1955, c. 245, sections 2 and 3 (C. 2A:170–69.2 and
175 C. 2A:170–69.3);
176    Laws of 1964, c. 53 (C. 2A:170–69.4 to C. 2A:170–69.6 both in-
177 clusive);
178    Laws of 1968, c. 288 (C. 2A:170–69.7 and C. 2A:170–69.8);
179    Laws of 1962, c. 178 (C. 2A:170–97 to C. 2A:170–101 both inclu-
179A sive);
180    Laws of 1968, c. 256 (C. 2A:170–102 and C. 2A: 170–103);
181    Laws of 1955, c. 254 (C. 2A:171–1.1 and C. 2A:171–1.2);
182    Laws of 1958, c. 138 (C. 2A:171–5.1 to C. 2A:171–5.7 both in-
183 clusive);
184    Laws of 1959, c. 119 (C. 2A:171–5.8 to C. 2A:171–5.18 both in-
185 clusive).

1    2C:98–3. Allocations.   **⟦The⟧** **_Pending enactment of acts
2 to revise, repeal or compile the same in Title 2C of the New_**

209

3   *Jersey Statutes, the*** following sections, acts or parts of acts,
3A together with all amendments and supplements thereto, shall
3B **[hereafter be reallocated]** **remain in full force and effect*
3C *for use, administration and enforcement or heretofore**:
4   **[Revised]** **New Jersey** Statutes sections:
5   2A:149–1;
6   2A:152–1;
7   2A:152–2;
8   2A:152–3;
9   2A:152–4;
10   2A:152–12;
11   2A:152–13;
12   2A:153–1 to 2A:153–3 both inclusive;
13   2A:154–1 to 2A:154–3 both inclusive;
14   2A:155–1 to 2A:156–4 both inclusive;
15   2A:157–1 to 2A:158–1 both inclusive;
16   2A:158–2 to 2A:158–10 both inclusive;
17   2A:158–13;
18   2A:158–15;
19   2A:158–16;
20   2A:158–18;
21   2A:158–19 and 2A:158–20;
22   2A:160–1 to 2A:162–8 both inclusive;
23   2A:163–1;
24   2A:164–1;
25   **[2A:164–13:]**
26   2A:166–8 to 2A:166–10 both inclusive;
27   2A:166–12 and 2A:166–13;
28   2A:166–17 to 2A:166–19 both inclusive;
29   2A:167–4 to 2A:167–12 both inclusive;
30   2A:168–5 to 2A:168–17 both inclusive;
31   2A:170–20;
32   2A:170–51;
33   2A:170–77;
34   2A:170–78 to 2A:170–85 both inclusive;
35   2A:170–91 and 2A:170–92;
36   Pamphlet Laws:
37   Laws of 1952, c. 121 (C. 2A:96–5);
38   Laws of 1966, c. 12 (C. 2A:96–5.1);
39   Laws of 1957, c. 182 (C. 2A:102–13 to 2A:102–17 both inclusive);
40   Laws of 1952, c. 95 (C. 2A:108–9);
41   Laws of 1953, c. 267 (C. 2A:123–3 to C. 2A:123–15 both inclusive);

42   Laws of 1971, c. 412 (C. 2A:150A–1 to C. 2A:150A–5 both inclu-
43 sive);
44   Laws of 1973, c. 354 (C. 2A:150A–6);
45   Laws of 1956, c. 134 (C. 2A:152–17 to C. 2A:152–19 both inclu-
46 sive);
47   Laws of 1968, c. 427 (C. 2A:154–4);
48   Laws of 1967, c. 171 (C. 2A:153–4);
49   Laws of 1968, c. 409 (C. 2A:156A–1 to C. 2A:156A–26);
50   Laws of 1970, c. 6 (C. 2A:158–1.1 and C. 2A:158–1.2);
51   Laws of 1970, c. 6 (C. 2A:158–15.1 and C. 2A:158–15.2);
52   Laws of 1957, c. 128 (C. 2A:158–16.1);
53   Laws of 1953, c. 307 (C. 2A:158–18.1 and C. 2A:158–18.2);
54   Laws of 1964, c. 168 (C. 2A:158–21);
55   Laws of 1967, c. 43 (C. 2A:158A–1 to C. 2A:158A–5 both inclu-
56 sive);
57   Laws of 1974, c. 33 (C. 2A:158A–5.1 and C. 2A:158A–5.2);
58   Laws of 1967, c. 43 (C. 2A:158A–6 to C. 2A:158A–20 both inclu-
59 sive);
60   Laws of 1967, c. 43 (C. 2A:158A–22);
61   Laws of 1968, c. 371 **([C. 2A:158–23 to C. 2A:158–25]**
62 **C. 2A:158A–23 to C. 2A:158A–25** both inclusive);
63   Laws of 1958, c. 12 (C. 2A:159A–1 to 2A:159A–15 both inclusive);
64   Laws of 1952, c. 163 (C. 2A:162–9 and C. 2A:162–10);
65   Laws of 1960, c. 24 (C. 2A:166A–1 to 2A:166A–4 both inclusive);
65A   Laws of 1953, c. 83 (C. 2A:168–18 to C. 2A:168–25 both inclusive);
66   Laws of 1968, c. 282 **([C. 2A:168–1]** **C. 2A:168A–1**
67 to C. 2A:168A–3 both inclusive);
68   Laws of 1954, c. 181 (C. 2A:170–20.1 to C. 2A:170–20.4 both inclu-
69 sive);
70   Laws of 1956, c. 230 (C. 2A:170–20.9 and C. 2A:170–20.10);
71   Laws of 1952, c. 106 (C. 2A:170–25.1);
72   Laws of 1965, c. 41 (C. 2A:170–25.9 to C. 2A:170–25.13 both inclu-
73 sive);
74   Laws of 1972, c. 143 (C. 2A:170–25.17);
75   Laws of 1955, c. 48 (C. 2A:170–77.2);
76   Laws of 1962, c. 174 (C. 2A:170–77.2a and C. 2A:17–77.2b);
77   Laws of 1955, c. 277 (C. 2A:170–77.3 to C. 2A:170–77.7 both inclu-
78 sive);
79   Laws of 1962, c. 113 (C. 2A:170–77.8 to C. 2A:170–77.11 both in-
80 clusive);
81   Laws of 1964, c. 230 (C. 2A:170–77.12 to C. 2A:170–77.14 both
82 inclusive);

83
84
1
2
3

Laws of 1966, c. 314 (C. 2A:170-77.15);
Laws of 1966, c. 114 (C. 2A:170-90.1 and C. 2A:170-90.2).
2C:98-4. Effective Date. This act shall take effect *[1 year from the date of enactment]* *the first day of the thirteenth month following enactment*.

212

FROM THE OFFICE OF THE GOVERNOR

FOR IMMEDIATE RELEASE

AUGUST 10, 1978

FOR FURTHER INFORMATION

JOE SANTANGELO

Governor Brendan Byrne today signed into law <u>Senate Bill No. 738</u>, the new Criminal Code sponsored by Senator Martin L. Greenberg (D-Essex).

The measure updates and revises more than 200 years of criminal laws for the State of New Jersey.  It will take effect September 1, 1979.

"This is an historic event," said the Governor.  "This represents the fulfillment of nearly ten years of criminal justice reform efforts and marks the achievement of one of  the major goals of my Administration."

"This legislation will take us a significant step toward swift and sure punishment for crimes against persons and property."

In signing the measure at a public ceremony in the State House, Byrne

Hearings and reports on earlier proposals:

974.90
C929
1972

New Jersey. Legislature. Assembly. Judiciary Committees.
Public hearings on proposed penal code (AR No.13), held 6-20 and 6-27-72. Trenton, 1972.

NJ
KA6.2
2B
1969

New Jersey. Criminal Law Revision Commission.
Study draft of a new penal code for New Jersey. Newark, 1969-1970.

NJ
KA6.2
2B
1971

New Jersey. Criminal Lqaw Revision Commission.
Tentative draft of a new penal code for New Jersey. Newark, 1971.

974.90
C929
1970b

New Jersey. Criminal Law Revision Commission.
Toward a new penal code for New Jersey; an interim report, Newark, 1970.

974.90
C929
1972d

Baime, David S.
Report on the proposed N.J. penal code. Trenton, 1972.

974.90
C929
1972c

New Jersey. Division of Criminal Justice.
Report on the proposed N.J. penal code. Trenton, 1972.

974.90
C929
1972a

New Jersey. Legislature. Assembly. Judiciary Committee.
Report, pursuant to Assembly Resolution 13 of 1972, directing the Committee to review the proposed Penal Code prepared by the Criminal Law Revision Commission.

974.90
C929
1975

New Jersey. Legislature. Assembly. Judiciary, Law Public Safety and Defense Committee.
Public hearing on sentencing provisions of proposed criminal code. 3-10-75.

See also:
—"Criminal Justice Quarterly", vol. 7, no. 2 — entire issue devoted to criminal code.

24  2A:164–1;
25  2A:164–13;
26  2A:166–8 to 2A:166–10 both inclusive;
27  2A:166–12 and 2A:166–13;
28  2A:166–17 to 2A:166–19 both inclusive;
29  2A:167–4 to 2A:167–12 both inclusive;
30  2A:168–5 to 2A:168–17 both inclusive;
31  2A:170–20;
32  2A:170–51;
33  2A:170–77;
34  2A:170–78 to 2A:170–85 both inclusive;
35  2A:170–91 and 2A:170–92;
36  Pamphlet Laws:
37  Laws of 1952, c. 121 (C. 2A:96–5);
38  Laws of 1966, c. 12 (C. 2A:96–5.1);
39  Laws of 1957, c. 182 (C. 2A:102–13 to 2A:102–17 both inclusive);
40  Laws of 1952, c. 95 (C. 2A:108–9);
41  Laws of 1953, c. 267 (C. 2A:123–3 to C. 2A:123–15 both inclusive);
42  Laws of 1971, c. 412 (C. 2A:150A–1 to C. 2A:150A–5 both inclu-
43  sive);
44  Laws of 1973, c. 354 (C. 2A:150A–6);
45  Laws of 1956, c. 134 (C. 2A:152–17 to C. 2A:152–19 both inclu-
46  sive);
47  Laws of 1968, c. 427 (C. 2A:154–4);
48  Laws of 1967, c. 171 (C. 2A:153–4);
49  Laws of 1968, c. 409 (C. 2A:156A–1 to C. 2A:156A–26);
50  Laws of 1970, c. 6 (C. 2A:158–1.1 and C. 2A:158–1.2);
51  Laws of 1970, c. 6 (C. 2A:158–15.1 and C. 2A:158–15.2);
52  Laws of 1957, c. 128 (C. 2A:158–16.1);
53  Laws of 1953, c. 307 (C. 2A:158–18.1 and C. 2A:158–18.2);
54  Laws of 1964, c. 168 (C. 2A:158–21);
55  Laws of 1967, c. 43 (C. 2A:158A–1 to C. 2A:158A–5 both inclu-
56  sive);
57  Laws of 1974, c. 33 (C. 2A:158A–5.1 and C. 2A:158A–5.2);
58  Laws of 1967, c. 43 (C. 2A:158A–6 to C. 2A:158A–20 both inclu-
59  sive);
60  Laws of 1967, c. 43 (C. 2A:158A–22);
61  Laws of 1968, c. 371 (C. 2A:158–23 to C. 2A:158–25 both inclu-
    sive);
    Laws of 1958, c. 12 (C. 2A:159A–1 to 2A:159A–15 both inclusive);
    Laws of 1952, c. 163 (C. 2A:162–9 and C. 2A:162–10);
    Laws of 1960, c. 24 (C. 2A:166A–1 to 2A:166A–4 both inclusive);

184

65A  Laws of 1953, c. 83 (C. 2A:168–18 to C. 2A:168–25 both inclusive);
66  Laws of 1968, c. 282 (C. 2A:168–1 to C. 2A:168A–3 both inclu-
67  sive);
68  Laws of 1954, c. 181 (C. 2A:170–20.1 to C. 2A:170–20.4 both inclu-
69  sive);
70  Laws of 1956, c. 230 (C. 2A:170–20.9 and C. 2A:170–20.10);
71  Laws of 1952, c. 106 (C. 2A:170–25.1);
72  Laws of 1965, c. 41 (C. 2A:170–25.9 to C. 2A:170–25.13 both inclu-
73  sive);
74  Laws of 1972, c. 143 (C. 2A:170–25.17);
75  Laws of 1955, c. 48 (C. 2A:170–77.2);
76  Laws of 1962, c. 174 (C. 2A:170–77.2a and C. 2A:17–77.2b);
77  Laws of 1955, c. 277 (C. 2A:170–77.3 to C. 2A:170–77.7 both inclu-
78  sive);
79  Laws of 1962, c. 113 (C. 2A:170–77.8 to C. 2A:170–77.11 both in-
80  clusive);
81  Laws of 1964, c. 230 (C. 2A:170–77.12 to C. 2A:170–77.14 both
82  inclusive);
83  Laws of 1966, c. 314 (C. 2A:170–77.15);
84  Laws of 1966, c. 114 (C. 2A:170–90.1 and C. 2A:170–90.2).
1   2C:98–4.  Effective Date.  This act shall take effect 1 year from
2   the date of enactment.

Sponsors

## STATEMENT

This code is based upon the final report of the New Jersey Crim-
inal Law Revision Commission of October 1971 and is the result of
a year's review by the Assembly Judiciary, Law, Public Safety and
Defense Committee of a draft which was prepared pursuant to
Assembly Resolution No. 13 of 1972 and which was approved by
the commission. This bill includes the Assembly amendments to
Assembly Bill 642 adopted June 14, 1976.

185

FROM THE OFFICE OF THE GOVERNOR

FOR IMMEDIATE RELEASE

AUGUST 10, 1978

FOR FURTHER INFORMATION

JOE SANTANGELO

Governor Brendan Byrne today signed into law <u>Senate Bill No. 738</u>, the new Criminal Code sponsored by Senator Martin L. Greenberg (D-Essex).

The measure updates and revises more than 200 years of criminal laws for the State of New Jersey.  It will take effect September 1, 1979.

"This is an historic event," said the Governor.  "This represents the fulfillment of nearly ten years of criminal justice reform efforts and marks the achievement of one of  the major goals of my Administration."

"This legislation will take us a significant step toward swift and sure punishment for crimes against persons and property."

In signing the measure at a public ceremony in the State House, Byrne

noted that several actions will be taken for orderly implementation of the new Code in the criminal justice system.

At the Governor's direction, Attorney General John J. Degnan will organize a Coordinating Committee to educate people in the criminal justice system on the Penal Code.

The Committee will include representatives of the Administration, the courts, police, prosecutors, probation officers and the legal profession.

The Governor noted that the courts are expected to draft suggested language for judges to use in charging a jury as to the new criminal laws.

"In addition," Byrne said, "the Administration is prepared to work with legislators to review proposed additions  or amendments that may be necessary before the Criminal Code takes effect next year.

"It is imperative that immediate steps be taken to plan and implement an educational program to inform the people who work with the criminal laws as to the changes," said Byrne.

-3-

The Criminal Code has been actively considered by the Legislature for the past three years.  It is based on the 1971 recommendations of the New Jersey Law Revision Commission, and is patterned after a model penal code proposed by the American Law Institute in 1962.

It includes the following features:

- Classification of crimes.  The Criminal Code classifies crimes as first, second, third and fourth degree based on degrees of severity.

- Sentencing.  The Code sets down determinate sentences based on the degree of the crime, rather than the present practice of sentencing to a minimum/ maximum term.

For example, the second degree crimes of aggravated assault or robbery carry a range of sentences from five to ten years imprisonment.  In such cases,   the judge is presumed to impose a mid-range sentence of seven and one-half years unless he sets down certain    specific mitigating or aggravating circumstances.

"This Criminal Code is intended to make sentencing more definitive," said the Governor. "It is designed to reduce the possibility of one judge giving a stiff sentence and another a light sentence for similar crimes."

The Criminal Code in attempting to update New Jersey law eliminates a number of obsolete crimes.

Included among these are stealing ice, larceny of driftwood, refusing to admit entry to an air raid shelter, and hawking or peddling on the beach or boardwalk.

Other crimes abolished under the new Code are permitting minors in dance halls, using mercury in hatters' fur, fortune telling and interscholastic drinking. It no longer will be an offense to forceably detain homing pigeons.

#####

# SENATE JUDICIARY COMMITTEE

## STATEMENT TO

# SENATE, No. 738

### with Senate committee amendments

———————

# STATE OF NEW JERSEY

———————

## DATED: MAY 15, 1978

Senate Bill No. 738, "The New Jersey Code of Criminal Justice," is based upon the Final Report of the Criminal Law Revision Commission which was created by the Legislature in 1968 and given the responsibility of revising and codifying New Jersey's criminal law.

SUBTITLE I. GENERAL PROVISIONS.

Chapter 1 of the Code contains general operating provisions along with purposes and objections. Many of the criminal law concepts covered by Chapter 1 (i.e. statutes of limitations (2C:1–6), standards of proof (2C:1–13), and double jeopardy (2C:1–9 through 2C:1–12)) are substantially the same as set forth in present statutes or case law.

Among the significant changes in current law made in Chapter 1 are the abolition of all common law crimes (see 2C:1–5). Under current law, any offense not statutorily defined which was an indictable offense at common law is a misdemeanor. Prosecutions under this provision are virtually non-existent since current statutes explicitly cover all actions considered criminal at common law. The Code would eliminate this catchall provision and rely on the crimes specifically defined in the Code.

Another significant change in current law that it found in Chapter 1 is the Code's reclassification of conspiracy. Under current law, conspiracy to commit a crime is a separate and distinct offense from the crime itself. Thus, a person can be convicted of both the conspiracy to commit a robbery and the robbery itself. The Code adopts the view that conspiracy to commit is an included offense like an attempt and that if the crime is actually committed, the person can only be convicted of the crime itself. This approach, reflecting the modern trend, would avoid multiple prosecutions.

By Judiciary Committee amendment, a provision of the Code which would have permitted any person imprisoned on the effective date of

1

the Code, to move to have his sentence reviewed and to be sentenced as if he had been convicted under the Code, is changed to permit such review only if the person was imprisoned for any offense decriminalized by the Code or was sentenced to a maximum term of imprisonment which exceeds the maximum established by the Code for such an offense. In either case, the imposition of a new sentence would be discretionary rather than mandatory.

Also, by Committee amendment, the Senate Judiciary Committee eliminated, at the suggestion of the Attorney General's Office, a provision added in the Assembly during the last session, which would have prohibited the dismissals of prosecutions for certain offenses which involved the use of a firearm if such dismissal is made on a motion by the prosecutor pursuant to a plea bargain. The committee felt that this provision unduly restricted the ability of the prosecutor to handle certain criminal cases.

Chapter 2 sets forth the general *mens rea* requirements for the establishment of criminal liability; that is, the general definitions which establish the mental elements necessary for each of the Code's specific offenses. The Code defines four different kinds of culpability: "purposely," "knowingly," "recklessly" and "negligently" (see 2C:2-2). Under present law, such terms as "premeditatedly," "willfully" and "unlawfully" serve the same function. Chapter 2 also defines various defenses to criminal charges (i.e. duress (2C:2-9) and consent (2C:2-10)) and accomplice liability (see 2C:2-6).

Among the significant changes made in Chapter 2 is the inclusion of mistake of law as a defense to a criminal charge (see 2C:2-4c. Under current law, mistake of law is not a defense to a criminal charge. The Code would allow mistake of law as a defense in certain limited circumstances, i.e. reasonable reliance upon a judicial decision afterwards determined to be invalid. By amendment, the Senate Judiciary Committee increased from "by a preponderance of the evidence," to "by a clear and convincing evidence," the burden of proof which defendants seeking to use the mistake of law defense must satisfy.

Chapter 2 also contains a provision whereby an assignment judge may dismiss a prosecution if the facts of a particular case indicate technical violation of a statute and a conviction would be inappropriate (see 2C:2-11). The judge cannot act under this section unless he first notifies the prosecutor and provides him an opportunity to be heard. No such provision exists under current law.

Chapter 2 also refocuses the legal concept of entrapment. Under current law, the question of whether or not a person was entrapped is on the state of mind of the accused; that is, the defendant's predisposition. Under the Code, the question of entrapment rests upon the behavior of the law enforcement personnel involved.

Chapter 3 deals with justification defenses; those situations in which a person may use force upon another without being criminally liable for his conduct (self-defense (2C:3-4), defense of others, (2C:3-6), defense of property (2C:3-6) and use of force by law enforcement personnel (2C:3-7)).

The major change that the Code makes with regard to justification defenses involves the use of deadly force by law enforcement officers. Current law provides that a police officer can use deadly force to apprehend a fleeing offender if the offender had committed or attempted to commit any felony. The Code would provide that a police officer could use deadly force to apprehend a fleeing offender if the use of such force would not endanger innocent bystanders and if the offender was fleeing after committing or attempting to commit one of the following crimes: homicide, kidnapping, arson, robbery, burglary of an occupied building or a serious sexual assault. (See 2C:3-7b(2) (b) and (c).)

Chapter 4 covers the insanity defense. Prior to review by the Senate Judiciary Committee, the Code abolished insanity as a defense to a criminal charge. The issue of insanity was to be addressed at a post-conviction proceeding for the purposes of determining the disposition of the offender; that is, whether the person should be imprisoned, committed for psychiatric treatment or released. At the suggestion of the Attorney General's Office and the Office of the Public Defender, the Judiciary Committee voted to restore insanity as a defens to a criminal charge.

The Code would have also replaced the so-called M'Naughten rule currently in use in New Jersey as the legal test of sanity with the American Law Institute test for sanity. The Committee decided to retain the M'Naughten rule (see 2C:4-1).

Chapter 5 deals with so-called inchoate crimes; that is, attempts and conspiracies to commit criminal offenses. Under the Code, an attempt or a conspiracy to commit a crime is a crime of the same grade and degree as the most serious crime attempted or the most serious crime which is an object of the conspiracy, except that an attempt or conspiracy to commit a crime of the first degree is a crime of the second degree (see 2C:5-4).

The major change in Chapter 5 is the inclusion of renunciation of criminal purpose as a defense to a charge of criminal attempt. Current law does not recognize such a defense. In order for a defendant to avail himself of this defense, he must have taken whatever actions are necessary to prevent the completion of the crime (see 2C:5-1d. and 2C:5-2e.).

It should also be noted in connection with Subtitle I (first five chapters) of the Code that the development of the legal concepts covered by these chapters, have traditionally been left to the courts in New Jersey. The Code attempts to insure legislative input in these important areas of the criminal law by putting these concepts into statutory form.

SUBTITLE II. DEFINITIONS OF SPECIFIC OFFENSES.

Chapter 11 deals with murder and related offenses. Homicide constitutes murder under the Code when it is committed "purposely," "knowingly," or when it occurs during the commission of certain crimes (robbery, arson, burglary, kidnapping, a serious sexual offense, or a criminal escape).

This third category (traditionally known as felony-murder) was amended by the Senate Judiciary Committee so that participants in the above listed crimes would be guilty of murder, even if the killing actually occurred as the result of an action by a non-participant (i.e. a policeman accidentally shoots an innocent bystander when trying to apprehend persons fleeing a robbery). The Code originally made offenders only liable for killings actually committed by one of the participants. Offenders would still not be liable for the death of a co-participant.

The committee also amended the Code provisions relating to "felony-murder" by deleting language which would have afforded accomplices otherwise guilty under the felony-murder doctrine, a defense under limited circumstances, to a murder charge.

Murder, under the Code, is a crime of the first degree; however, persons found guilty of murder may be sentenced to up to 30 years imprisonment (the maximum for other first degree crimes is 20 years imprisonment) (see 2C:3-11b). The Code also provides a special extended term of imprisonment of between 30 years and a life sentence (see 2C:43-7(1)).

The Senate Judiciary Committee also deleted a section of Chapter 11 which deals with negligent homicide. It was felt that the concept of negligent homicide was too broad and the section was replaced by the current offense of death by auto (see 2C:11-5).

Chapter 12 deals with assaults and related crimes. This chapter represents a generalization and consolidation of current statutory provisions.

Chapter 13 concerns kidnapping and other crimes involving the restraint of persons against their will.

4

The major change in this chapter involves the definition of kidnapping. Under current law, any forcible movement of the victim can constitute kidnapping; in theory, this could result in a charge when the victim of a robbery is forced to the back of his store to open a safe. The Code provides that the victim must be removed from the place where he is found in order for a kidnapping to have occurred. The Code further provides, however, that the confinement of a person for ransom or the use of a person as a shield or hostage would constitute kidnapping (see 2C:13-1). By Senate Judiciary Committee amendment, a term of imprisonment of between 15 and 30 years was added as a special penalty for kidnapping in the first degree.

Chapter 13 also contains a new offense dealing with the interference with custody of minor children (see (2C:13-4). No such offense occurs under current law.

Chapter 14 which deals with sexual offenses was totally revised by the Senate Judiciary Committee during its review of the Code. Under this revision, there are four basic sexual offenses: aggravated sexual assault (a crime of the first degree); sexual assault (a crime of second degree); aggravated criminal sexual contact (a crime of the third degree); and criminal sexual contact (a crime of the fourth degree). The category that a particular fact situation falls among these four offenses is dependent upon the following:

the actual sexual acts committed;

the amount of force and physical injury involved in the offense;

the age of victim and sometimes the age of the accused (i.e. consensual intercourse between a boy of 15 and a girl of 14 would not be an offense; consensual intercourse between a man of 20 and a girl of 14 would be an offense) ;

the mental state of victim (i.e. Was the victim "physically helpless," "mentally defective" or "mentally incapacitated") ; and

the relationship of the accused vis-a-vis the victim (Did the accused have supervisory or disciplinary power over the victim? i.e. a prison guard and an inmate).

It should also be noted with regard to these offenses that they are defined to cover both homosexual and heterosexual situations and that these definitions are intended to focus on the actions of the accused rather than on behavior of the victim.

One change in present law which result from inactment of Chapter 14 is that if the other elements of the offense can be proved, a person may be found guilty of a sexual offense even if the victim is his or her spouse (see 2C:14-5c.).

5

Among the other provisions of Chapter 14 are: a special minimum term of 5 years for all persons convicted as a sexual offender of a sexual offense (see 2C:14-6) and a provision strictly limiting the introduction of evidence of the victim's previous sexual conduct (see 2C:14-7).

Chapter 17 covers arson and related offenses. The major change in this chapter is the division of arson into two categories, aggravated arson and arson. Aggravated arson, a crime of the first degree, is reserved for those circumstances which pose the greatest threat to human life (see 2C:17-1).

Chapter 17 also consolidates and generalizes disparate current statutory provisions dealing with the destruction of property (i.e. desecration of a cemetery) into the broader concept of criminal mischief (2C:17-3).

Chapter 18 deals with burglary and criminal trespass. The major change is the expansion of the definition of burglary to include those circumstances whereby a person gains entrance to a building lawfully and then remains there unlawfully for the purpose of committing an offense (see 2C:18-2a(2)). By committee amendment, the offense of burglary was expanded to cover burglaries of boats and airplanes.

Chapter 19 covers robbery and remains substantially unchanged from present law.

Chapter 20 concerns theft and related offenses. The Code consolidates various property crimes (i.e. larceny, embezzlement, blackmail, extortion, conversion, receiving of stolen property) into a single offense of theft with the aim of aiding prosecutions by permitting a conviction for theft by proving that the offense was accomplished by any of the methods (extortion, deception, etc.) enumerated in the chapter (see sections 2C:20-3 through 2C:20-10).

Chapter 21 covers forgery and other related fraudulent practices, i.e. bad checks, misuse of credit cards, unlawful credit practices. The Code generalizes and consolidates current law in this area.

Chapter 24 deals with offenses against the family, children and incompetents (i.e. bigamy, endangering the welfare of children, unlawful adoptions).

The major change in Chapter 24 involves the inclusion of a defense to a charge of bigamy if the accused reasonably believed his first spouse was dead, or he reasonably believed he was legally eligible to remarry (i.e. possessed a divorce decree which he believed valid) (see 2C:24-1). Current law does not recognize such a defense.

Chapter 24 sets forth a new offense not found in current law, endangering the welfare of an incompetent (see 2C:24-7).

Chapter 27 concerns bribery and corrupt influence with regard to public administration, i.e. threats and other improper influence in official and political matters, retaliation for past official action, and gifts to public servants by persons subject to their jurisdiction.

It should be noted that the provision concerning gifts to public servants by persons subject to their jurisdiction does not include the giving of small gifts which involve "no substantial risk of undermining official impartiality," i.e. a bottle of liquor at Christmas (see 2C:27-6c.(3)).

The Senate Judiciary Committee upgraded offenses involving unlawful gifts to public servants from crimes of the fourth degree to crimes of the third degree.

Chapter 28 covers perjury and other falsifications in official matters. Chapter 28 contains two major changes. Current law does not recognize retraction of false statements as a defense to perjury. The Code would allow retraction as a defense if the retraction is made prior to the termination of the proceeding (see 2C:28-1d.).

The other major change in Chapter 28 concerns the amount of corroboration necessary to sustain a conviction for perjury. Under current law, a conviction for perjury may be sustained based solely upon the contradictory testimony of a single witness. The Code requires contradictory testimony by at least two witnesses (see 2C:28-1e.). This marks a return to the common law rule.

Chapter 29 concerns the obstruction of governmental operations, i.e. escapes, bail jumping, resisting arrest. The major change in the chapter involves the hindering of apprehension. Under present law, a person cannot be prosecuted for helping his spouse avoid apprehension. The Code does not recognize this exception, although such aid by a close family member would result in a lower grade of offense than would normally be assessed for such illegal assistance (see 2C:29-3g.).

Chapter 30 involves misconduct in office. Its provisions present a codification of offenses (i.e. misfeasance in office) which, while not found in current New Jersey statutes, were indictable at common law.

Chapter 33 deals with riot and related public disturbance offenses, i.e. false alarms. The major change in this chapter involves the offense of riot. Under present law, a law enforcement officer who kills or injures a person in the course of dispersing a riot is deemed guiltless despite the circumstances surrounding the incident. The Code eliminates this specific provision, and relies upon the defenses involving use of force by law enforcement officers outlined in 2C:3-7 to cover this situation.

Chapter 33 contains two sections not found in present law. One is titled harassment (see 2C:33-4) and is meant to cover, among other tivities, the making of obscene telephone calls. The other new offense the obstruction of highways and other public passages (see 2C:33-7). third section containing the new offense of cutting in line was deemed necessary and deleted by the Senate Judiciary Committee.

Chapter 34 concerns public indecency, i.e. open lewdness, prostitution, scenity. By Senate committee amendment, a new section making it a sorderly persons offense to sell obscene material to persons 16 years age or older (see 2C:34-3) was included in the Code. Prior to the ddition of this section, the Code prohibited only the sale of obscene aterials to persons under 16 years of age and the public display of scene materials.

Chapter 37 deals with gambling offenses. The major changes in this apter involve the gradation of gambling offenses, the amount of the es prescribed for gambling offenses and the decriminalization of rtain gambling activities.

Recognizing that illegal gambling is a source of substantial revenues those involved in organized crime, the Code adopts a gradation for mbling offenses which focuses law enforcement efforts upon those rsons at the managerial level of gambling operations and a schedule fines which emphasizes fines as a deterrent to the monetary gains hich result from gambling activities.

As an example of the type of gradation employed, under the provi- ons of 2C:37-2, a person who engages in bookmaking to the extent he ceives or accepts in any 1 day more than five bets totaling more an $1,000.00, or receives in connection with a numbers operation oney or records from a person other than a player or more than .00.00 in 1 day in plays, is guilty of a crime of the third degree. person who receives three or more bets in any 2-week period is guilty a crime of the fourth degree. Otherwise, any offense under 2C:37-2 is disorderly persons offense.

In addition to this type of gradation based on the level of organiza- onal involvement which is followed throughout the various sections of hapter 37, the Code prescribes the following fines for gambling ffenses:

| | |
|---|---|
| Crimes of the third degree | up to $25,000.00 |
| Crimes of the fourth degree | up to $15,000.00 |
| Disorderly persons offenses | up to $10,000.00 |

The normal fine prescribed by the Code under the provisions of C:43-5 for crimes of the third or fourth degree is up to $7,500.00 and for disorderly persons offenses, up to $1,000.00.

In addition to the type of gradation and the amount of fines, the major change which would result from the adoption of Chapter 37 would be decriminalization of certain gambling activities now punish- able under our current statutes. Those persons engaging in gambling activities in the capacity that the Code defines as a "player," (see 2C:37-1e.), i.e., a person making a bet, playing a number or participat- ing in a poker game, would no longer be subject to criminal sanctions.

Several amendments in Chapter 37 were made by the Senate Judi- ciary Committee. To aid in the prosecution of gambling, the outright "player" exemption contained in 2C:37-2 was converted to an affirma- tive defense (see 2C:37-2c.) so the burden would be on the defendant to show that he was participating in gambling activities as a player. Also to aid prosecutions, the phrase "rather than in a casual or personal fashion" was deleted from the definition of bookmaking in 2C:37-1g. In making this deletion, it was not the intent of the committee to criminalize casual betting, but rather, to remove any possible impedi- ment to successful prosecutions of professional gamblers.

Other changes made by the Judiciary Committee include:

An amendment to various sections of Chapter 37 to clarify that persons convicted of gambling offenses in addition to the specially pro- vided fines, are subject to other penalties provided in the Code;

An amendment to equalize the penalties for maintenance of a gam- bling resort in a private premises, and for maintenance of a resort in a public premises (the Code had made the former a crime of the third degree and the latter a disorderly persons); the committee made both a crime of the fourth degree (see 2C:37-4); and

An amendment to clarify that the possession of legal out-of-state lottery tickets (i.e. New York lottery tickets) would not be an offense (see 2C:37-6).

Chapter 39 sets forth offenses involving the use of firearms and other weapons. Among the major changes in current law made in Chapter 39 are:

Under the Code, if a firearm is found in an automobile, it is presumed to be possessed by all the occupants unless the firearm is found upon the person of the occupants or concealed out of view, i.e. in the glove com- partment or trunk (see 2C:39-2). No similar provision exists in current law.

Under the Code, possession of "dum-dum" or hollow-nose bullets by persons other than law enforcement officers or persons engaged in hunting or target shooting is an offense. No such prohibition currently exists (see 2C:39-3f).

Under the Code, a person who has a handgun in his possession without having both a permit to purchase a handgun and a permit to carry is guilty of an offense (see 2C:39-5b.). Under current law, a person need only have a permit to carry.

The Code contains a provision permitting the voluntary surrender, without penalty of unlawfully possessed weapons. This provision does not provide immunity from prosecution for an offense other than that of the unlawful possession of such surrendered weapons (see 2C:39-12). No similar provision is found in current law.

Under current law, the prohibition against the possession of certain weapons, i.e. switchblades, stilettos is absolute. The Code would modify this absolute prohibition by prohibiting possession of such weapons without any explainable, lawful purpose (see 2C:39-3e.)

By Senate committee amendment, motor vehicle inspectors were included among those law enforcement officials totally exempted from the provisions of 2C:39-5 which prohibits the possession of weapons without a license. Under the Code, motor vehicle inspectors were included among those exempted from the prohibition against possession of only handguns and rifles without a license (see 2C:39-6).

Chapter 40 deals with minor offenses relating to public safety, i.e. abandonment of refrigerators, refusal to yield a party line. Its provisions represent no change from current law.

It should be noted in connection with Subtitle II that enactment of the Code will result in the nineteen chapters contained in Subtitle II becoming the source of all nondrug related criminal offenses in New Jersey (drug related offenses are presently found in Title 24 and are not affected by this revision). Also, as the result of enactment of the Code, certain acts currently criminal would, because of their omission from Subtitle II, be decriminalized. In addition to social gambling mentioned above in connection with Chapter 37, those acts which would be decriminalized include: consensual sodomy, fornication, adultery and loitering.

SUBTITLE III. SENTENCING.

Chapter 43 includes the classification of offenses under the Code and the authorized disposition of offenders (i.e. the length of prison term and the amount of fines.) Major changes under the provisions of Chapter 43 are as follows:

A. CLASSIFICATION OF CRIMES

Under current New Jersey law, crimes are divided into high misdemeanors and misdemeanors; non-indictable offenses are classified as disorderly persons offenses. The Code would replace this classification

system with a system dividing indictable offenses into crimes of the first, second, third and fourth degree (see 2C:43-1 a). Non-indictable offenses would be divided into disorderly persons offenses and petty disorderly persons offenses (see 2C:43-8);

B. LENGTH OF ORDINARY TERM OF IMPRISONMENT

Under current law, a high misdemeanor is punishable by up to 7 years imprisonment; a misdemeanor is punishable by up to 3 years imprisonment; and a disorderly persons offense is punishable by up to 6 months imprisonment.

The Code provides the following sentencing structure:

| | |
|---|---|
| Crimes of the first degree 2C:43-6 a(1) | between 10 and 20 years |
| Crimes of the second degree 2C:43-6 a(2) | between 5 and 10 years |
| Crimes of the third degree 2C:43-6 a(3) | between 3 and 5 years |
| Crimes of the fourth degree 2C:43-6 a(4) | not to exceed 18 months |
| Disorderly persons offense 2C:43-8 | not to exceed 6 months |
| Petty disorderly persons offense 2C:43-8 | not to exceed 30 days |

(The minimum term for crimes of the first degree was changed from 8 to 10 years and the maximum term for crimes of the second degree was changed from 8 to 10 years by Senate committee amendments.)

It should be noted in connection with this sentence structure that the minimum-maximum sentence now in use in New Jersey would be abandoned. The sentencing judge would only set the maximum sentence from the range of sentences listed above. In cases involving convictions of crimes of the first and second degree, the Code does, however, permit the judge to set a minimum term of one half of the sentence which must be served before the offender is eligible for parole (see 2C:43-6 b).

C. LENGTH OF EXTENDED TERMS OF IMPRISONMENT

The Code also provides for the following extended terms of imprisonment (the criteria for the imposition of these terms will be discussed in connection with Chapter 44).

| | |
|---|---|
| Murder 2C:43-7 a(1) | between 30 years and life imprisonment |
| Crimes of the first degree 2C:43-7 a(2) | between 20 years and life imprisonment |

10

11

Crimes of the second degree 2C:43–7 a(3) — between 10 years and 20 years

Crimes of the third degree 2C:43–7 a(4) — between 5 years and 10 years

(By Senate committee amendments the maximum extended term for murder was changed from 50 years to life imprisonment; the extended term for other crimes of the first degree was changed from between 15 years and 30 years to between 20 years and life imprisonment; the extended term for crimes of the second degree from between 8 years and 15 years to between 10 years and 20 years and the maximum term for crimes of the third degree from 8 to 10 years.).

The court may also set a mandatory minimum in connection with extended terms as was noted above in connection with the ordinary terms (see 2C:43–7 b).

## D. Fines

Under current law, those found guilty of a high misdemeanor are subject to fine of up to $2,000.00; those guilty of a misdemeanor, to fine of up to $1,000.00; and of a disorderly persons offense, to a fine up to $500.00. There are, however, scattered throughout current statutes, a wide range of different fines for different offenses ranging in amount from $25.00 to $100,000.00.

The Code would set up the following fine structure:

| | |
|---|---|
| Crimes of the first or second degree 2C:43–3 (a) | $15,000.00 |
| Crimes of the third or fourth degree 2C:43–3 (b) | $7,500.00 |
| Disorderly persons offense 2C:43–3 (c) | $1,000.00 |
| Petty disorderly persons offense 2C:43–3 (d) | $500.00 |

The Code would also allow for the imposition of a fine of up to double the pecuniary gain to the offender or loss to the victim caused by the conduct constituting the offense (see 2C:43–3 e). No such provision is found under existing law.

## E. Restitution

Under current law, there is no authorization for the imposition of restitution in conjunction with a sentence of imprisonment. The Code would permit the imposition of restitution in cases in which the offender is also sentenced to imprisonment (see 2C:43b b (4)).

## F. Suspension of Sentences

Under current law, a judge has the power to suspend the imposition of sentence (that is, not to pronounce any sentence) or to suspend execution of sentence (that is, pronounce a custodial sentence and suspend serving it). On the rationale that when a suspension is to be revoked, the causes of the revocation should be considered by the judge in imposing sentence and that the judge should not be bound by any previously fixed sentence, but rather, should be free to impose any sentence which could have originally been imposed, the Code would eliminate the power of a judge to pronounce sentence and suspend its execution and only allow a judge to suspend the imposition of sentence (see 2C:43–2 (b));

## G. Expansion of the Jurisdiction of Sentencing Court

Under current law, by court rule, there are strict time limitations on when a motion may be brought for modification of sentences. The Code would allow the sentencing court to retain permanent jurisdiction to hear motions for modification of sentence at any time, although the court would not be required to hear more than one such motion a year (see 2C:43–2 e);

## H. Separate Parole Term

Under the provisions of the Code, a criminal sentence has two parts. The first part is the original term of imprisonment; the second part is the parole term. The Code views parole as a period of supervised release which is an invaluable incident to any prison sentence. This position represents an abandonment of the concept of parole as a portion of the original prison sentence not required to be served in prison. Thus, even if an offender were to serve his entire sentence, he would be on parole for some period of time. Sentences of imprisonment for crimes of the first, second or third degree carry a parole term of one year; crimes of the fourth degree a parole term of 6 months (see 2C:43–9b);

## I. Pretrial Intervention Programs

Pretrial intervention programs are currently operating in New Jersey pursuant to court rule. The Code would place authorization for pretrial intervention programs into our statutes, thus allowing for legislative input into the operation of such programs. As amended by the Senate Judiciary Committee, entrance into a PTI program would be controlled by the prosecutor. All offenders regardless of offense would be eligible for such a program except that a person could only be admitted once to such a program. The committee also lengthened to 3 years the period an offender could spend in supervisory treatment (under current court rule, PTI is available on a 3-month basis with provisions for extensions). To facilitate the administration of PTI programs, the committee added provisions requiring that each county prosecutor file a report with the Attorney General's office on the operation of PTI in their county and requiring the Attorney General's office to keep a central index of all persons admitted to PTI programs.

Chapter 44 sets forth the criteria to be used by courts in deciding whether a particular offender should be sentenced to a regular term of imprisonment, an extended term of imprisonment, or whether a fine or restitution should be imposed. Among the new sentencing concepts and changes in present law in Chapter 44 are the following:

A. PRESUMPTIONS WITH REGARD TO SENTENCE OF IMPRISONMENT

Prior to review by the Senate Judiciary Committee, the basic sentencing presumption provided in the Code was non-imprisonment unless imprisonment was found by the court to be necessary for the protection of the public under criteria favoring imprisonment discussed below (see 2C:44-1a). This presumption of non-imprisonment was deleted by the committee except with regard to first offenders convicted of an offense of the third degree or less (see 2C:44-1e). The committee retained a provision establishing a presumption of imprisonment for those convicted of an offense of the first or second degree (see 2C:44-1 d).

B. CRITERIA IN FAVOR OF A SENTENCE OF IMPRISONMENT (2C:44-1a)

The following factors favoring imprisonment are to be weighted by the sentencing judge:

(1) The nature and circumstances of the offense;

(2) The gravity and seriousness of harm inflicted on the victim;

(3) The risk that the defendant will commit another crime;

(4) The need for correctional treatment which can be provided only in an institution;

(5) A less sentence will depreciate the seriousness of the defendant's crime because it involved a breach of the public trust under chapters 27 and 30;

(6) The offense is characteristic of organized criminal activity;

(7) The defendant has previously been convicted of a crime or other penal offense;

(8) The crime was committed in an especially heinous, cruel or depraved manner;

(9) The defendant committed the offense as consideration for the receipt, or in expectation of the receipt of anything of pecuniary value;

(10) The defendant procured the commission of the offense by payment or promise of payment, of anything of pecuniary value;

(11) The defendant committed the offense against a police or other law enforcement officer, correctional employee or fireman, while performing his duties or because of his status as a public servant;

(12) The need for deterring the defendant and others from violating the law.

Paragraphs (1) and (2) and (7) through (12) were added by Senate Judiciary Committee amendments.

C. CRITERIA TO BE WEIGHED IN FAVOR OF SENTENCE OF NON-IMPRISONMENT (2C:44-1b)

The following criteria in favor of non-imprisonment are to be considered by the sentencing judge:

(1) The offender neither caused nor threatened serious harm;

(2) The offender did not contemplate that his conduct would cause or threaten serious harm;

(3) The offender acted under a strong provocation;

(4) There were substantial grounds to excuse or justify the offender's conduct;

(5) The victim induced or facilitated the crime;

(6) The offender did or will compensate the victim;

(7) The offender has no prior history of criminal activity;

(8) The offender's conduct was the result of circumstances unlikely to recur;

(9) The character and attitudes of the offender indicate that he is unlikely to commit another offense;

(10) The offender is particularly likely to respond to probationary treatment;

(11) The imprisonment of the defendant would detail excessive hardship to himself or his family.

In reviewing both the criteria for and against a sentence of imprisonment, it should be noted that under current New Jersey law, there is no statutory criteria to guide judges in imposing sentences. However, several of the factors listed above have been cited in recent case law as being relevant for the purpose of determining the proper sentence.

C. CRITERIA FOR EXTENDED SENTENCES

Offenders falling under the following four categories are eligible for the extended terms of imprisonment:

| | |
|---|---|
| Persistent offenders | 2C:44-3(a) |
| Professional criminals | 2C:44-3(b) |
| Offenders who commit crimes for pecuniary gain | 2C:44-3(c) |
| Offenders who are found to be dangerous and mentally abnormal | 2C:44-3(d) |

14

15

By committee amendment, the Senate Judiciary Committee added the dangerous and mentally abnormal category and expanded the persistent offender and professional criminal categories. Under current law, there are no provisions for extended sentences, although current law does provide additional penalties for offenses committed while armed and for offenses committed by habitual offenders.

### D. Criteria for Imposition of Fines and Restitution

The Code provides that the fines and restitution may be imposed if the defendant derived a pecuniary gain from the offense or if the court is of the opinion that a fine or restitution is an especially effective deterrent for the type of offense involved (see 2C:44–2 a(1) and (2)).

The Code also provides that the court should consider the offender's ability to pay a fine or make restitution and may sentence a defendant to pay a fine only if such payment would not prevent the defendant from making restitution (2C:44–2 b and c).

Again, as in the case of the criteria for the imposition of sentences of imprisonment, there is no present statutory criteria for the imposition of fines, although present case law does contain criteria with regard to the imposition of monetary penalties similar to that found in the code.

### E. Multiple Sentences

The Code retains the present general rule that multiple sentences run consecutively or concurrently at the discretion of the court. The Code, however, imposes the following limitations not found in current law on that discretion:

A term to a State penal or correctional institution and a term to a county institution shall run concurrently and both sentences shall be satisfied by service of the State term (2C:44–5 a(1)).

The aggregate of consecutive terms to a county institution shall not exceed 18 months (2C:44–5 a(2)).

The aggregate of consecutive terms shall not exceed the longest extended term authorized for the highest grade and degree of crime for which any of the sentences was imposed (2C:44–5 a(3)).

Not more than one sentence for an extended term shall be imposed (2C:44–5 a(4)).

Chapter 45 deals with suspension of sentence and probation. Chapter 46 deals with the collection of fines. Both, with minor exemptions, follow present statutory and case law.

Chapter 58 concerns the licensing of firearms. Two major changes in current law are made in Chapter 58. First, under current law, persons convicted of any offense cannot obtain a permit to purchase a firearm.

The Code enumerates the following specific offenses, conviction of which would be a bar to obtaining a permit: assault; robbery; theft; burglary; arson; a serious sexual offense; murder or kidnapping (see 2C:58–3c. (1)).

Secondly, the Code would require that an order for a minor to use a firearm, he must obtain a license. Under current law, no such license requirement exists (see 2C:58–6).

Other changes found in Chapter 58 include:

The number of days for the period of consideration of an application for a permit to purchase or a firearms identification card has been extended from 10 days to 30 days for residents and from 15 to 45 days for non-residents (see 2C:58–3f);

The fee for a permit to carry a handgun was increased from $3.00 to $10.00 (see 2C:58–4d.); and

The Code shifts responsibility for investigation of applications to possess machineguns from the sheriff to the county prosecutor (see 2C:58–5).

Chapter 51 deals with the loss of rights (i.e. right to vote; right to hold office), which are incident to a conviction for a criminal offense. Chapter 51 also deals with such issues as the sealing of arrest records and the expungement of criminal records. Its provisions represent no significant change from existing law.

Chapter 62 sets forth the procedures to be followed in cases of willful nonsupport and follows existing law.

Chapter 64 concerns the procedures to be followed when contraband (i.e. illegal drugs) or other property (i.e. money resulting from gambling operations) is seized as the result of criminal investigations. These procedures basically follow existing law.

# *The*
# *CRIMINAL JUSTICE*
# *Quarterly*

✓ JERSEY STATE LIBRA
AUG 7 1980
185 W. State St.
Trenton, N J

## VOL. 7  NO. 2          SUMMER

**A REVIEW OF THE LEGISLATIVE HISTORY
OF THE NEW JERSEY CODE OF CRIMINAL JUSTICE**

      **INTRODUCTION**

      **LEGISLATIVE HISTORY OF THE
NEW JERSEY CODE OF CRIMINAL JUSTICE
AND
LEGISLATIVE HISTORY OF THE AMENDMENTS TO THE
NEW JERSEY CODE OF CRIMINAL JUSTICE PASSED
PRIOR TO THE EFFECTIVE DATE OF THE CODE**

          Cameron H. Allen
          *Professor of Law and Law Librarian*
          *Rutgers University, Newark, New Jersey*

      **SENATE JUDICIARY COMMITTEE STATEMENT TO
NEW JERSEY SENATE BILL NO. 738**

      **SENATE JUDICIARY COMMITTEE STATEMENT TO
NEW JERSEY SENATE BILL NO. 3203**

      **ASSEMBLY JUDICIARY, LAW, PUBLIC SAFETY
AND DEFENSE COMMITTEE STATEMENT TO
NEW JERSEY ASSEMBLY BILL NO. 3279**

      **COMMENTS UPON THE NEW JERSEY PENAL CODE**

          Robert E. Knowlton
          *Professor of Law Emeritus*
          *Rutgers University, Newark, New Jersey*



**PREPARED BY:**
  **DIVISION OF CRIMINAL JUSTICE, APPELLATE SECTION
      JOHN J. DEGNAN, ATTORNEY GENERAL
        EDWIN H. STIER, DIRECTOR**

# CRIMINAL JUSTICE
# QUARTERLY

| Volume 7 | Summer | Number 2 |
| --- | --- | --- |

## EDITORIAL BOARD

John DeCicco
*Editor in Chief*

Mary Ann Kenny Pidgeon
*Managing Editor*

Robert E. Rochford
*Executive Editor*

Simon Louis Rosenbach
*Articles Editor*

## CONTENTS

A REVIEW OF THE LEGISLATIVE HISTORY
OF THE NEW JERSEY CODE OF CRIMINAL JUSTICE
INTRODUCTION ............................................. 28
LEGISLATIVE HISTORY OF THE
NEW JERSEY CODE OF CRIMINAL JUSTICE ..................... 31
AND
LEGISLATIVE HISTORY OF THE AMENDMENTS TO THE
NEW JERSEY CODE OF CRIMINAL JUSTICE PASSED
PRIOR TO THE EFFECTIVE DATE OF THE CODE .................. 41
Cameron H. Allen
*Professor of Law and Law Librarian*
*Rutgers University, Newark, New Jersey*

SENATE JUDICIARY COMMITTEE STATEMENT TO
NEW JERSEY SENATE BILL NO. 738 ................................. 53
SENATE JUDICIARY COMMITTEE STATEMENT TO
NEW JERSEY SENATE BILL NO. 3203 ............................... 65
ASSEMBLY JUDICIARY, LAW, PUBLIC SAFETY
AND DEFENSE COMMITTEE STATEMENT TO
NEW JERSEY ASSEMBLY BILL NO. 3279 ........................... 75
COMMENTS UPON THE NEW JERSEY PENAL CODE .................... 89
Robert E. Knowlton
*Professor of Law Emeritus*
*Rutgers University, Newark, New Jersey*

The information contained in this Quarterly is intended for the use and information of all those involved in law enforcement and the general public. Nothing contained herein is to be construed as an official opinion or expression of policy by the Attorney General or any other law enforcement official of the State of New Jersey unless expressly so stated.

Any communication with the staff of the Criminal Justice Quarterly should be addressed Editor, c/o Division of Criminal Justice, Appellate Section, 13 Roszel Road Princeton, New Jersey 08540.

John J. Degnan ..................................... Attorney General
Edwin H. Stier ................... Director, Division of Criminal Justice

# A REVIEW OF THE LEGISLATIVE HISTORY OF THE NEW JERSEY CODE OF CRIMINAL JUSTICE

## INTRODUCTION

In accordance with its continuing efforts to assist the bar, the bench and the general public in the implementation and comprehension of the New Jersey Code of Criminal Justice (penal code), *N.J.S.A.* 2C:1-1 *et seq.*, this issue of the *Criminal Justice Quarterly* is devoted entirely to the legislative history of the penal code. As a new statute, the code will present a series of significant questions in construction. Such questions did not tend to arise under prior law. Some of the most serious crimes, such as murder, were defined in New Jersey through incorporation of common law concepts.[1] Other crimes were created by statute many decades ago and their meaning has been refined through numerous judicial opinions rendered by appellate courts. There were very few criminal proscriptions, arising either by legislation or common law incorporation,[2] that continued to harbor ambiguities relevant to most prosecutions. Criminal practitioners, both prosecutors and defense attorneys, could be confident when evaluating a case and determining whether to initiate (indict) or terminate (plead, seek trial or dismiss) a case. If the criminal bench or bar entertained any doubts as to the applicability of a penal statute to a given set of facts, those doubts could generally be dispelled by a few hours of research into pertinent case law. The research focus was primarily on prior *decisional* source materials. That focus was fully appropriate because New Jersey's criminal law was closely rooted to the common law as it was developed by the judiciary.

*N.J.S.A.* 2C:1-5(a) provides that "[c]ommon law crimes are abolished and no conduct constitutes an offense unless the offense is defined by this code or another statute of this State." By these words, the Legislature annulled centuries of common law development and revolutionized the entire approach to further development in the criminal law of New Jersey. No longer would the criminal law remain the virtually exclusive domain of an unelected judiciary constitutionally insulated from the people. Rather, the authority of the democratic branches of government, the Legislature and the executive, was conclusively established and, for the first time, comprehensively exercised. By enacting the penal code, the Legislature also transformed the nature of legal analysis and research in criminal cases. The predominant inquiry is now addressed to determining the legislative intent in accord with the principles of construction created by the Legislature itself.[3] Obviously, the significance of prior case law has been reduced. It has not been eliminated altogether because the penal code itself provides that the "provisions of the code not inconsistent with those of prior laws shall be construed as a continuation of such laws."[4] Nonetheless, codification has reordered the priorities of legal analysis and largely eliminated judicial flexibility in applying the criminal law. Legislative intent will become the keystone for determining legal rights and responsibilities.

Discerning legislative intent will not always be a simple task. The penal code was written to be clear, but it was not always clearly written. Ambiguities and uncertainties were inevitable for a variety of reasons. There is a degree of precision beyond which human language cannot proceed. There is an understandable inability of any statute to comprehensively dispose of every conceivable factual problem and, by definition, of those myriad fact patterns that could not have been foreseen by the legislative drafters. Some ambiguities were deliberately created as the result of compromise or to afford some slight leeway to courts in the process of construction. Finally, the process

---

1.   See *N.J.S.A.* 2A:113-2; *State v. Young,* 77 *N.J.* 245 (1978).

2.   *N.J.S.A.* 2A:85-1.

3.   *N.J.S.A.* 2C:1-2.

4.   *N.J.S.A.* 2C:1-1(e).

through which the code passed between 1971 when it first surfaced and September 1, 1979, when it became effective, tended to create problems in interpretation. The superb articles prepared by Professor Cameron Allen detail the tortuous path the penal code followed in a series of proposals. Each proposal differed in some respect from the one before it. A stew that has been reheated and reseasoned a number of times by different chefs may be as good as it was originally, but it will undoubtedly taste different.

The criminal law must be certain. It must provide a clear set of rules by which people can regulate their conduct and anticipate the State's compliance with its responsibilities to guarantee "the protection, security, and benefit of the people."[5] The people can only be secure from crime, now the greatest threat to their civil liberties, if swift, sure, and severe punishment is imposed. The penal code, the reformed parole system and the speedy trial program now being developed and implemented in New Jersey represent a concerted endeavor to adjust the criminal process to present conditions. Further adjustment through future amendments will probably be necessary, for by enacting the penal code, the Legislature has assumed an on-going responsibility for monitoring and revising the criminal laws. Since 1978, the penal code has been frequently amended to respond to different conditions and pressures. Amendments will be adopted in the future. This does not represent a failure of the code, but rather its greatest success. Today, unlike during the preceding centuries, alterations in the criminal law are a matter of public debate and resolution by elected officials. Those officials must meet their challenge in the legislative arena. The bar and bench face the challenge in the judicial arena as they attempt to discern the legislative intent.

The available sources of legislative intent for the penal code are limited. The two volume report issued in 1971 by the Criminal Law Revision Commission is a principal resource. Volume II of that report represents a commentary on the meaning of the penal code provisions *as proposed in 1971*. The report itself draws significantly on the Model Penal Code compiled by the American Law Institute. Hence, recourse to the commentary in the various drafts of the model code can be useful where the New Jersey provision closely resembles that proposed in the model code.

Much of the language in the New Jersey Penal Code was adopted during the eight year legislative process. This issue of the *Quarterly* includes three key legislative reports. The first of those reports is the Senate Judiciary Committee's statement on *New Jersey Senate Bill No.* 738 (1978). That bill was signed into law and embodies that penal code itself. A second source of legislative intent is the Senate Judiciary Committee's report on *New Jersey Senate Bill No.* 3203 (1979), which contains the so-called "consensus amendments" to the penal code. A virtually identical set of amendments was considered and approved by the New Jersey Assembly in *New Jersey Assembly Bill No.* 3279 (1979). Largely, although not entirely, for technical reasons, the Senate bill, rather than the Assembly bill, was finally adopted. Hence, the report of the Assembly Judiciary Committee on *New Jersey Assembly Bill No.* 3279 (1979) is also a valuable repository of legislative intent. Both the Senate and Assembly Judiciary Committees considered the "consensus amendments" simultaneously and reviewed the amendments adopted by each other. The reports of the two committees are by no means identical. This reflects the different emphasis of each committee and sometimes the greater focus on those portions of the amendatory legislation first proposed in one committee or the other. Finally, this issue of the *Quarterly* includes "Comments Upon the New Jersey Penal Code," by Professor Robert E. Knowlton, of Arkansas University School of Law, who was the Chairman of the Criminal Law Revision Commission, and could be deemed the "father" of the penal code.

---

5.   *N.J. Const.* (1947), Art. I, par. 2.

The editors of the *Criminal Justice Quarterly* are indebted to Professor Cameron Allen and the Institute for Continuing Legal Education for permission to reprint Professor Allen's compendia of legislative history materials. The editors wish to express their gratitude also to Professor Robert E. Knowlton and the *Rutgers Law Review* for permission to reprint the article by Professor Knowlton that appeared in their May 1979 issue.[6]

## PREFACE

The following Legislative History of the New Jersey Code of Criminal Justice (Title 2C) and its amendments enacted prior to September 1, 1979, was prepared by Cameron H. Allen, Professor of Law and Law Librarian of Rutgers University, for the Institute for Continuing Legal Education, and is being reproduced herein with the permission of the Institute.

---

6.    See Knowlton, "Comments Upon the New Jersey Penal Code," 32 *Rutgers L. Rev.* 1 (1979).

# LEGISLATIVE HISTORY
# OF THE
# NEW JERSEY CODE OF CRIMINAL JUSTICE
## (Title 2C)

*by*

Cameron H. Allen

*Professor of Law and Law Librarian*
*(Rutgers University, Newark, N.J.)*

1. For the first time in its history the New Jersey legislature has totally codified, reorganized and modernized its criminal statutes, by Chapter 95 of L.1978; approved by Governor Byrne on 10 August 1978. The effort involved goes back over ten years. Various personalities at the Rutgers Law School have played prominent roles in its drafting.

2. The impetus for the Code sprang from Governor Richard Hughes:

   New Jersey. Governor (Hughes)
   > Sixth annual message . . . to the Legislature, January 9, 1968, at p. 11, who proposed: "The creation of a blue ribbon commission to review the Criminal statutes of New Jersey . . ."

3. He was led to this step by the work undertaken prior thereto and concurrently therewith by the New Jersey Commission to Study the Causes and Prevention of Crime in New Jersey. This Commission had been created by:

   New Jersey. Senate Bill  386.

   | | | | |
   |---|---|---|---|
   | 9 | May | 1966 | Would create Commission (of the name) |
   | 22 | May | 1966 | Reported, 2d reading |
   | 31 | May | 1966 | Passed in Senate, amended |
   | 6 | June | 1966 | Passed in Assembly |
   | 14 | June | 1966 | Approved as C.84, L.1966. |

4. Subsequently the Commission was directed to study the report of the President's Commission on Law Enforcement and Administration of Justice and to come up with ways and means of implementing the recommendations in that report.

   New Jersey.  Senate Concurrent Resolution No. 18.

   | | | | |
   |---|---|---|---|
   | 6 | March | 1967 | Introduced |
   | 6 | March | 1967 | Passed in Senate |
   | 8 | May | 1967 | Passed in Assembly |
   | 9 | May | 1967 | Filed |

5. Interest in speeding matters is reflected in:

   | | | | |
   |---|---|---|---|
   | 20 | March | 1967 | Would require the Commission to submit a preliminary report before January 1, 1968, and the final report on January 1, 1969. |
   | 10 | April | 1967 | Passed in Senate |
   | 8 | May | 1967 | Passed in Assembly |
   | 7 | July | 1967 | Approved, C.140, L.1967 |

31

6. The work product of this Commission is reflected in the following publications:

> New Jersey. Commission to Study the Causes and Prevention of Crime in New Jersey.
> Staff Report: A Survey of Crime Control and Prevention in New Jersey. March 1968  (208 pp.)

> New Jersey. Commission to Study the Causes and Prevention of Crime in New Jersey.
> A Survey of Crime Control and Prevention in New Jersey. March 1968. (27 pp.)

7. The latter was intended initially as a preliminary Report but became the final Report since Governor Hughes had meanwhile created by:

> New Jersey. Governor (Hughes)
> Executive Order No. 37, 4 Jan. 1968
> New Jersey Council Against Crime. (L.1967, p. 1227-1229) (in anticipation of the enactment of federal legislation referred to under the next item.)

8. This Council was subsequently directed to advise the New Jersey State Law Enforcement Planning Agency created by:

> New Jersey. Governor (Hughes)
> Executive Order No. 45, 13 Aug. 1968
> N.J. State Law Enforcement Planning Agency (L.1968, p. 1713-1716) whose function was to take advantage of recent federal legislation (the "Omnibus Crime Control and Safe Streets Act of 1968")

9. However, in the meantime, Governor Hughes was persuaded that a thorough overhaul of New Jersey's Criminal Statutes might be in order, to assist in the control and prevention of crime. Hence, his reference above in his Sixth Annual Message of 9 January 1968.

10. By 11 March 1968 there had been adopted:

> N.J. Senate Concurrent Resolution No. 44

| | | | |
|---|---|---|---|
| 11 | March | 1968 | Would create 14 member legislative committee to study the system of criminal justice. |
| 11 | March | 1968 | Passed both houses. |
| 14 | March | 1968 | Filed |
| 26 | March | - - | |
| 5 | Apr. | 1968 | Public hearing held |

> which established a Special Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey.

11. This Special Joint Legislative Committee swung almost immediately into action and conducted extensive hearings. These have been published as follows:

> New Jersey. Special Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey, as Created by Senate Concurrent Resolution Number 44.
> Public hearing 26-29 March, 2-5 April 1968 (8 vols. bound in 2 vols. by Rutgers Law Library)

12. As a result of the views it had heard in these hearings, the Committee issued its *Report:*

> New Jersey. Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey.
> Report. April 22, 1968  (27 pp.)

13. This Report made a total of nineteen recommendations, a number of which were legislatively implemented in succeeding years, e.g., the New Jersey Department of Criminal Justice, the New Jersey Commission of Investigation, compensation for innocent victims of violent crime, and the Rutgers School of Criminal Justice. The recommendation of immediate concern here, however, is:

> Recommendation 15: Criminal Law Revision Commission. (at pp. 17-18)
> "It is clear that New Jersey's system for administering criminal justice would be strengthened, individual liberties and fair trials increased, and the cause of justice thereby advanced, if an independent commission were established to make a detailed analysis and redrafting of substantive and procedural criminal law . . ."

14. Little time was lost in the Legislature in the effort to implement Recommendation 15:

> New Jersey. Assembly Bill 710.

| | | | |
|---|---|---|---|
| 29 | April | 1968 | Introduced, to create a nine member bipartisan Criminal Law Revision, 3 Senators, 3 Assemblymen, and 3 Citizens appointed by the Governor. |
| 27 | May | 1968 | Passed the Assembly |
| 13 | June | 1968 | Passed the Senate |
| 4 | Sept. | 1968 | Approved as C281, L.1968 |

15. The Criminal Law Revision Commission was organized in the Spring of 1969. Its membership consisted of:

> Prof. Robert E. Knowlton, T. Girard Wharton, Esq., the Hon. Edward Gaulkin, Dominick J. Farrelli, Alvin E. Granite, and Richard McGlynn, Esq., and three Assemblymen: William K. Dickey, Charles J. Irwin, Ronald Owens.

16. Professor Knowlton of the Rutgers Law School was made Chairman of the Committee and T. Girard Wharton the Vice Chairman. Professor John G. Graham of the Rutgers Law School in Newark was named Secretary of the Commission. The offices of the Commission were established at the Rutgers Law School in Newark, and the following staff of consultants were engaged to assist in the work:

> Daniel Coburn, Rutgers Law School, Newark, Class of 1968,
> Florence E. Peskoe, Rutgers Law School, Newark, Class of 1968,
> Barry E. Evenchick, Rutgers Law School, Newark, Class of 1963
> Prof. Steven E. Gifis, faculty, Rutgers Law School, Newark,
> Louis A. Ruprecht, Rutgers Law School, Newark, Class of 1963.

33

17. Three Rutgers Law School in Newark students were also hired as research assistants:

    Daniel Matyola, Class of 1971,
    Edwin Jacobs, Class of 1968,
    Robert Gluck, Class of 1971.

18. The Commission having been organized in the Spring of 1969 was due to report by 1 April 1970. In lieu thereof there was presented:

    New Jersey. Criminal Law Revision Commission.
      *Toward a New Penal Code for New Jersey: an Interim Report;* April 15, 1979 (6 pp.)

19. At about this same time the following legislation was in process:

    New Jersey. Assembly Bill 346.
      Prefiled - extends from April 1, 1970 to April 1, 1971, the date for the final report of the Criminal Law Revision Commission.
      29  January  1970  Passed the Assembly
      23  April    1970  Passed the Senate
      20  May      1970  Approved as C.68, L.1970.

20. The Commission had already completed, meanwhile, a portion of the work on the first of its three drafts:

    New Jersey. Criminal Law Revision Commission.
      **Study Draft.**
          Part  I        General Provisions. October 1969.
          Part  II.      Definition of Specific Crimes. June 1970.
          (photocopied from typescript bound in three volumes, Rutgers Law Library)

    New Jersey. Criminal Law Revision Commission.
      **Tentative Draft**  January 1971
          Subdiv.   I    General Provisions
          Subdiv.   II   Definition of Specific Offenses
          Subdiv.   III  Sentencing
          Subdiv.   IV   Administrative Provisions
          (photocopied from typescript, bound in two volumes, Rutgers Law Library)

    New Jersey. Criminal Law Revision Commission.
      **Final Report:** The New Jersey Penal Code.
          vol. I:        Report and Penal Code (Oct. 1971) xxxv, 240 pp.
          vol. II:       Commentary xvii, 371 pp.

21. Printed and distributed to the entire membership of the New Jersey Bar, and distributed to the libraries of all approved law schools in the United States by the Rutgers Law Library. In addition, the files and working papers of the Commission were deposited in the Rutgers Law Library, Newark.

34

22. The Commission's work completed, action now shifted to the New Jersey Legislature:

New Jersey. Assembly Resolution 13.

| | | | |
|---|---|---|---|
| 13 | March | 1972 | Directed the Judiciary Committee to review the proposed Penal Code prepared by the Criminal Law Revision Commission, and to report thereon on or before 1 October 1972. |
| 13 | March | 1972 | Passed the Assembly. |
| 10 | April | 1972 | Filed |
| 20, 27 | June | 1972 | Hearing held: |

New Jersey. Legislature. Assembly. Judiciary Committee.
Public hearing . . . on Proposed Penal Code (Assembly Resolution no. 13), held June 20, 1972, Assembly Chamber. State House, Trenton. (60, 55 A pp.)
June 27, 1972  (79 pp.)

23. Among the witnesses were Professors Knowlton and Graham, the Hon. Edward Gaulkin, and Barry Evenchick, Esq.

N.J. Assembly Judiciary Committee:
Report (3 pp.) (undated) (prob. Nov. 1972) reported its inability to come in with a Penal Code based on the Criminal Law Revision Commission's Penal Code; requested extension of time for report until Jan. 1973. Accordingly the Judiciary Committee was allowed an extension:

New Jersey. Assembly Resolution 36.

| | | | |
|---|---|---|---|
| 13 | Nov. | 1972 | To extend until 9 Jan. 1973 the time in |

which the Judiciary Committee shall report on the review of the proposed Penal Code prepared by the Criminal Law Revision Commission.

| | | | |
|---|---|---|---|
| 20 | Nov. | 1972 | Passed Assembly. |

24. The matter began to languish in the Legislature at this point. There were regular and repeated urgings by incumbent governors to give the Code priority in the legislative program:

New Jersey. Governor (Cahill)
First Annual Message to the Legislature,
12   Jan.    1971   (at p. 57)
Third Annual Message to the Legislature,
9   Jan.    1973   (at p. 26)
Fourth Annual Message to the Legislature,
8   Jan.    1974   (at pp. 13-14)

New Jersey. Governor (Byrne)
First Annual Message to the Legislature,
Jan.   14      1975   (at p. 15)
Second Annual Message to the Legislature,
Jan.   13      1976   (at p. 16)
Third Annual Message to the Legislature,
Jan.   11      1977   (at p. 20)
Fourth Annual Message to the Legislature,
Jan.   10      1978   (at p. 20)

35

25. The Code was first introduced into the Legislature in 1975:

New Jersey. Assembly Bill 3281

| 7 | April | 1975 | Provided for the printing and publication of Title 2C, the New Jersey Code of Criminal Justice of the New Jersey Statutes |
|---|---|---|---|
| 7 | April | 1975 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |
| 17 | April | 1975 | Reported, 2d. reading. |

New Jersey. Assembly Bill 3282

| 7 | April | 1975 | Designated the ''Code of Criminal Justice'' to be known as Title 2C of the New Jersey Statutes. |
|---|---|---|---|
| 7 | April | 1975 | Referred to the Judiciary, Law, Public Safety, and Defense Committee. |
| 17 | April | 1975 | Reported 2d reading. |

New Jersey. Assembly Bill 523

| 26 | Jan. | 1976 | Provides for the printing and publication of Title 2C, the New Jersey Code of Criminal Justice of the N.J. Statutes. |
|---|---|---|---|
| 26 | Jan. | 1976 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |

New Jersey. Assembly Bill 642

| 9 | Feb. | 1976 | Adopts a Code of Criminal Justice to be known as Title 2C. |
|---|---|---|---|
| 9 | Feb. | 1976 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |
| 20 | May | 1976 | Reported, 2d reading. |
| 14 | June | 1976 | Amended. |
| 16 | June | 1976 | Second reading, amended. |
| 22 | Nov. | 1976 | Motion to return to the Judiciary Committee lost (37-37) |
| 22 | Nov. | 1976 | Motion to return to 2d reading lost (36-40) |
| 22 | Nov. | 1976 | Passed in Assembly, amended (42-35) |
| 13 | Dec. | 1976 | Received in Senate |
| 13 | Dec. | 1976 | Referred to Senate Judiciary Committee |

New Jersey. Senate Concurrent Resolution 147

| 8 | Nov. | 1976 | Would constitute both Houses as a Committee of the whole for the purpose of discussing the Code of Criminal Justice (A642) |
|---|---|---|---|
| 8 | Nov. | 1976 | Referred to State Government, Federal and Interstate Relations and Veterans Affairs Committee. |

36

New Jersey.  Assembly Bill 2380

| | | | |
|---|---|---|---|
| 6 | Dec. | 1976 | Would amend various sections of the proposed Code of Criminal Justice (A642) |
| 6 | Dec. | 1976 | Referred to Judiciary, Law, Public Safety and Defense Committee. |

New Jersey.  Assembly Bill 3089

| | | | |
|---|---|---|---|
| 10 | Feb. | 1977 | Would repeal the Code of Criminal Justice, now pending before the Legislature as A642 (1976). |
| 10 | Feb. | 1977 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |

26. It was not until this Legislature that the Code was enacted:

New Jersey.  Assembly Bill 229. (A642, 1976)

| | | | |
|---|---|---|---|
| | pre-filed | - - | Would adopt a Code of Criminal Justice to be known as Title 2C. |
| 10 | Jan. | 1978 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |
| 19 | June | 1978 | Reported with Committee amendments |
| 19 | June | 1978 | Second reading |
| 22 | June | 1978 | Substituted by S. 738. |

New Jersey.  Senate Bill 738 (A642, 1976)

| | | | |
|---|---|---|---|
| 26 | Jan. | 1978 | Would adopt a Code of Criminal Justice to be known as Title 2C |
| 26 | Jan. | 1978 | Referred to Judiciary Committee |
| 18 | May | 1978 | Reported with Committee Amendment |
| 18 | May | 1978 | second reading |
| 1 | June | 1978 | Passed in Senate, amended (37-1) |
| 5 | June | 1978 | Received in Assembly |
| 5 | June | 1978 | Referred to Assembly Judiciary, Law, Public Safety and Defense Committee |
| 19 | June | 1978 | Reported with Committee amendment |
| 19 | June | 1978 | Second reading in Assembly |
| 22 | June | 1978 | Substituted for A229 |
| 22 | June | 1978 | Passed in Assembly, amended (50-18) |
| 27 | July | 1978 | Assembly amendment passed in Senate (24-14) |
| 10 | Aug. | 1978 | Approved as C.95, L.1978. |

27. An examination of the sources set out above (most particularly the three drafts of the Code) will show that there is a wide variety of material to mine for legislative intent. The drafts show that the principal source for many New Jersey formulations was the Model Penal Code, but that many variations were imported from certain states that had preceded New Jersey in the adoption of penal codes, especially New York, California, Illinois, Wisconsin, Michigan and Connecticut. All these sources are fair grist for the mill of any New Jersey researcher seeking legislative intent on a particular point.

28. It is interesting to note that the "New Jersey Penal Code" has been referred to in Opinions of the New Jersey Supreme Court many times from 1972 to date (v.61-77), when faced with some of the problems the Code addressed. Since this "Title 2C" was not really part of the statutory law of the jurisdiction, Shepard's *New Jersey Citations has* **not** listed these references:

| | | |
|---|---|---|
| 2C:1-7 | Pashman | (70 N.J. 56 at 68) |
| 2C:1-7 | Clifford | (68 N.J. 69 at 82) |
| 2C:1-7(a)(2) | Pashman (dissent) | (68 N.J. 54 at 65) |
| 2C:1-7(b) | Jacobs | (66 N.J. 510 at 513, 519) |
| 2C:1-7(d) | Jacobs | (63 N.J. 199 at 201, 202, 206) |
| 2C:1-7(d) | Pashman | (75 N.J. 200 at 206, 219) |
| 2C:1-8 | Pashman | (75 N.J. 181 at 193) |
| 2C:1-8 | Pashman (dissent) | (70 N.J. 395 at 427) |
| 2C:1-9a | Schreiber | (70 N.J. 395 at 412-413) |
| 2C:1-9d | Schreiber | (70 N.J. 395 at 410) |
| 2C:1-12 | Pashman | (74 N.J. 421 at 437) |
| 2C:1-12a,b | Conford (concur) | (74 N.J. 421 at 444) |
| 2C:1-12 (b) | Sullivan | (64 N.J. 288 at 294) |
| 2C:2-2,2-4 | Conford | (67 N.J. 439 at 459, 462) |
| 2C:2-6(c) | Wintraub | (61 N.J. 377 at 393) |
| 2C:2-9 | Pashman | (74 N.J. 421 at 439, 440, 441) |
| 2C:2-9a,b | Pashman | (66 N.J. 411 at 413-414) |
| 2C:2-12 | Sullivan | (71 N.J. 160 at 168) |
| 2C:12a(2) | Schreiber (concur) | (71 N.J. 160 at 171) |
| 2C:3-1 | Pashman | (74 N.J. 421 at 437) |
| 2C:4-1 | Sullivan | (64 N.J. 288 at 294) |
| 2C:11-3 | Conford | (73 N.J. 206 at 225) |
| 2C:11-6, 6b | Hughes | (70 N.J. 10 at 52-53) |
| 2C:12-1(b)(3) | Clifford | (75 N.J. 392 at 397-8) |
| 2C:13-1 | Pashman | (73 N.J. 317, at 323, 325, 329) |
| 2C:14-2 | Mountain | (62 N.J. 388 at 398) |
| 2C:14-5 | per curiam | (69 N.J. 574 at 576-77) |
| 2C:18-2(b)(2) | Clifford | (75 N.J. 392 at 397-8) |
| 2C:19-1(b) | Clifford | (75 N.J. 392 at 397-8) |
| 2C:20-10(b) | Sullivan | (69 N.J. 342 at 346) |
| 2C:34-1 | per curiam | (69 N.J. 574 at 576-77) |
| 2C:39-3(i) | Lewis | (62 N.J. 547 at 556) |
| 2C:39-3(i) | Pashman | (70 N.J. 56 at 64) |
| 2C:39-3(9) | Lewis | (62 N.J. 547 at 556) |
| 2C:43 | Sullivan | (63 N.J. 287 at 297) |
| 2C:45-1(b)(8) | Hughes | (70 N.J. 488 at 504) |

IT SHOULD BE NOTED THAT ALL THESE SECTIONAL REFERENCES ARE TO THE PENAL CODE AS PROPOSED BY THE COMMISSION IN 1971, AND NOT TO SECTIONAL REFERENCES IN SUBSEQUENT BILLS, INCLUDING THE AMENDED ONE THAT WAS AT LENGTH ENACTED INTO LAW.

30. In addition to these specific sectional references the Final Report as a whole of the Commission was cited as follows:

| | |
|---|---|
| Jacobs | (62 N.J. 348 at 359) |
| Pashman | (64 N.J. 51 at 58) |
| Pashman | (64 N.J. 382 at 400, 407) |
| Mountain | (64 N.J. 428 at 433, 434) |

31. Two quite recent references are to the final bill version (as apposed to the Commission proposal of 1971:

Proposed New Jersey Code of Criminal Justice,
S. 738, A.3282, approved 1978:

| | | |
|---|---|---|
| 2C:1-5 | Schreiber | (77 N.J. 245 at 258) |
| 2C:2-3 | Schreiber | (77 N.J. 245 at 258) |
| 2C:11-2 & | | |
| 11-3 | Schreiber | (77 N.J. 245 at 258) |
| 2C:37-2 | Clifford | (77 N.J. 459 at 464) |

32. A listing of secondary source comments on the Code awaits another time. It may not be amiss to point out that the most stringent criticisms of the Code to date are contained in the following monograph:

Essex County (N.J.) Prosecutor's Office.
(Hon. Joseph P. Lordi, Prosecutor)
*Report on the Proposed New Jersey Penal Code,*
prepared by David S. Baime, Chief of the
Appellate Section. (n.p., n.d.) (129 pp.)

33. In that the Code (as finally enacted, after amendings) "left undone things that it ought to have done, and did things that it ought not to have done" there are already a number of curative bills under consideration in this legislative session. More doubtless will follow in succeeding years.

# LEGISLATIVE HISTORY OF AMENDMENTS
# TO THE
# NEW JERSEY CODE OF CRIMINAL JUSTICE
# PASSED PRIOR TO THE EFFECTIVE DATE OF THE CODE *

*by*

**CAMERON H. ALLEN**
*Professor of Law and Law Librarian*
*(Rutgers University, Newark, N.J.)*

Even prior to the signing of the Code by the Governor on 10 August 1978, it had become apparent that there were several significant oversights and inadvertent changes made by the Code as it passed both Houses of the New Jersey Legislature. The very first alleged flaws to be noted in the Code were its repeal of New Jersey's Sunday Closing Law and its removal of punishment for sexual acts between consenting adults in private.

According to a news story which appeared in the *Newark Star-Ledger* of 28 July 1978, pp. 1, 14, "the section which would repeal the Sunday closing law . . . was inserted into the proposed code three years ago and not discovered until the Code passed both Houses last month." After the discovery, a compromise was reached between the Democrats in the Senate who were being asked to approve Assembly amendments and top aides to Governor Byrne. "Under the compromise, the Democrats agreed to pass the code without changes in return for Governor Byrne's promise to sign two bills on the blue law: one bill would delete the section of the code that repeals the blue law; the other bill would direct the ten counties which have Sunday closing laws to let the voters decide in November whether stores should be allowed to open on Sundays. Top Byrne aides lobbied hard for the compromise because they said changes in the code to reinstate the blue law or alter the sex provisions could delay the code, maybe forever." Senator Martin Greenberg was quoted as having said, "The State of New Jersey desperately needs a revision and codification of its criminal laws. We'll never be able to satisfy everybody . . . We should pass the code now and make any changes in the year before it takes effect."

The *Newark Star-Ledger* reported further on 30 July 1978: "Untouched through it all was the legalization of private sex acts. The Assembly approved it twice and the Senate once before passing it and never before was there public outcry . . . By an agreement worked out during a heated four-hour Democratic caucus the Criminal Code won passage without further amendment. Those legislators who want to change its provisions will have to file separate bills and hope for passage before the code takes effect, a year after the Governor signs it."

Again just on the eve of the Governor's approval of the Code, the *Newark Star-Ledger* of 10 August 1978 reported: "The code does some things it was not supposed to do, such as repealing laws on Sunday shopping, abortion, anarchy, and the sale of term papers. Lawmakers, who were unaware of those and other repealers, say a package of bills will be introduced in the Fall to reinstate some of the laws before the code takes effect next year. Bills to reinstate the Sunday closing law and the penalties for homosexual acts already have been introduced. A bill to delete the 'combat zones' section also is expected soon."

---

\*     The effective date of the Code was September 1, 1979

The latter two bills were introduced, as stated, but have not been enacted:

S. 1276 -   Prescribes certain homosexual acts as unlawful conduct under the Code of Criminal Justice.

| | | | |
|---|---|---|---|
| 27 | July | 1978 | Introduced by Maressa, Musto, Skevin, Gregorio, Rodgers, Bedell, A. Russo, McDonough, Dumont, Cafiero. |
| 27 | July | 1978 | Referred to the Judiciary Committee. |
| 20 | Nov. | 1978 | Public hearing, Trenton. |
| 29 | Nov. | 1978 | Public hearing, Trenton. |

The bill encountered opposition from, among others:

Attorney General Degnan (*Newark Star-Ledger,* 21 Nov. 1978) the New Jersey County Prosecutors Association (*Newark Star-Ledger,* 22 Nov. 1978)

a member of the Criminal Law Revision Commission, Richard B. McGlynn (*Newark Star-Ledger,* 26 Nov. 1978)

the New Jersey Council of Churches (*Newark Star-Ledger,* 29 Nov. 1978)

and support from, among others:

the New Jersey Catholic Conference (*Newark Star-Ledger,* 30 Nov. 1978).

| | | | |
|---|---|---|---|
| 22 | Jan. | 1979 | Bill withdrawn by sponsor Maressa because of a contrary Appellate Division Opinion. (*Newark Star-Ledger,* 23 Jan. 1979). |

S. 1306 -   Prohibits a municipality from adopting a zoning ordinance which would allow the sale of obscene material (a so-called "combat zone").

| | | | |
|---|---|---|---|
| 11 | Sept. | 1978 | Introduced by Gagliano. |
| 11 | Sept. | 1978 | Referred to the Judiciary Committee. |
| 26 | April | 1979 | Reported with Committee amendment. |
| 26 | April | 1979 | Second reading. |
| 21 | May | 1979 | Passed in the Senate, amended (28-0). |
| 21 | May | 1979 | Received in Assembly. |
| 21 | May | 1979 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |

S. 1333 -   Prohibits a municipality to allow the sale of obscene material in certain specified zones.

| | | | |
|---|---|---|---|
| 18 | Sept. | 1978 | Introduced by Maressa. |
| 18 | Sept. | 1978 | Referred to the Judiciary Committee. |

A third measure would have accomplished a repeal of the "combat zone" possibility, and would also have increased the penalty for prostitution:

S. 1302 -   Upgrades the offense of prostitution and eliminates the authorization for a municipality to allow the sale of obscene material.

| | | | |
|---|---|---|---|
| 11 | Sept. | 1978 | Introduced by Kennedy. |
| 11 | Sept. | 1978 | Referred to the Judiciary Committee. |

The reinstatement of the Sunday closing laws were a far more complicated matter. The following bills were introduced, as the news story in the *Newark Star-Ledger* of 28 July 1978 indicated, in the Senate-Governor Byrne's comprise:

(1)  Deletion of the repeal of the Sunday closing law:

S. 1267 -  Preserves the Sunday Closing Laws that are repealed by the Enactment of S. 738, 1978.

| | | | |
|---|---|---|---|
| 19 | July | 1978 | Introduced by Martin Greenberg. |
| 19 | July | 1978 | Referred to Judiciary Committee. |
| 27 | July | 1978 | Committee relieved of bill. |
| 27 | July | 1978 | Second reading. |
| 14 | Aug. | 1978 | Passed in Senate (37-0). |
| 11 | Sept. | 1978 | Received in Assembly. |
| 11 | Sept. | 1978 | Referred to County and Municipal Government Committee. |
| 25 | Sept. | 1978 | Passed in Assembly (55-17). |

S. 1280-  Reenacts the "Sunday Closing Law".

| | | | |
|---|---|---|---|
| 27 | July | 1978 | Introduced by Hagedorn. |
| 27 | July | 1978 | Referred to the Judiciary Committee. |

an earlier bill with different intent should not be ignored:

A. 462    (A. 1783, 1976) - Pre-filed - Revises the laws pertaining to the transaction of business on Sunday.

| | | | |
|---|---|---|---|
| 10 | Jan. | 1978 | Introduced by Jackman, T. Gallo, Karcher, Martin, Pasculli. |
| 10 | Jan. | 1978 | Referred to the Commerce, Industry & Professions Committee. |

(2)  The November referendum on Sunday store openings in the ten counties prohibiting:

S. 1272 -  Provides for the submission to the voters of each county which has adopted the "Sunday Closing Law" the question as to whether the "Sunday Closing Law" shall continue to be applicable in said county.

| | | | |
|---|---|---|---|
| 27 | July | 1978 | Introduced by Graves. |
| 5 | Oct. | 1978 | Withdrawn from the files. |

S. 1279 -  Provides for the submission to the voters of each county which has adopted the "Sunday Closing Law" the question as to whether the "Sunday Closing Law" shall continue to be applicable in said county.

| | | | |
|---|---|---|---|
| 27 | July | 1978 | Introduced by Graves, Greenberg, Perskie, Rodgers. |
| 27 | July | 1978 | No reference to Committee; Second reading. |
| 14 | Aug. | 1978 | Passed in Senate (27-7). |
| 11 | Sept. | 1978 | Received in Assembly. |
| 11 | Sept. | 1978 | Referred to County Government Committee. |

S. 1327 -  Provides for a referendum in each municipality to determine whether the "Sunday Closing Law" shall remain in effect in said municipality.

| | | | |
|---|---|---|---|
| 18 | Sept. | 1978 | Introduced by Skevin, Graves |
| 18 | Sept. | 1978 | Referred to the Judiciary Committee. |

43

A. 1622   (S. 1279, 1978) -   Provides for the submission to the voters of each county which has adopted the "Sunday Closing Law" the question as to whether the "Sunday Closing Law" shall continue to be applicable in said county.

| | | | |
|---|---|---|---|
| 25 | Sept. | 1978 | Introduced by Kiernan, Muhler. |
| 25 | Sept. | 1978 | Referred to County Government Committee. |

A. 1696   (A. 2183, 1976) -   Changes the requirement of signatures from 10% of the registered voters to 3500 registered voters of the county to resubmit the Sunday Closing Law (P.L. 1959, c.119) question to referendum.

| | | | |
|---|---|---|---|
| 5 | Oct. | 1978 | Introduced by Villane. |
| 5 | Oct. | 1978 | Referred to County Government Committee. |

S. 1390 -   Reenacts the "Sunday Closing Law", provides for a referendum, reduces the number of required signatures for a referendum, effective 60 days following approval.

| | | | |
|---|---|---|---|
| 19 | Oct. | 1978 | Introduced by Graves, Bedell, Hirkala. |
| 19 | Oct. | 1978 | Referred to County and Municipal Government Committee. |

Although it will be noted that S. 1267 was speedily passed in both houses and S. 1279 was passed in the Senate, Governor Byrne took no action, preferring to await a more inclusive measure for amendment.

Meanwhile Senator Greenberg who had been responsible for much of the work in pushing through the Code (and who was to be responsible for much of the amending legislation) began pushing a bill which had been around for some years, which would expunge arrest records:

S. 964   (1974) -   Provides for the expunging of arrest records when acquittal, discharge or dismissal occurred after exclusion of highly probative evidence upon invocation of an exclusionary rule not directed to the truth of the evidence excluded.

| | | | |
|---|---|---|---|
| 18 | March | 1974 | Introduced by Martin Greenberg. |
| 18 | March | 1974 | Referred to County & Municipal Government Committee. |
| 16 | April | 1974 | Reported, second reading. |
| 25 | April | 1974 | Passed in Senate (31-0). |
| 29 | April | 1974 | Received in Assembly. |
| 29 | April | 1974 | Referred to Municipal Government Committee. |
| 16 | May | 1974 | Reported, second reading. |

A. 2339   (1974) -   Provides a procedure for the expungement of arrest records when the charges are dismissed, discharged or the individual is acquitted; provided penalties for the unlawful dissemination of arrest records.

| | 3 | Dec. | 1974 | Introduced by Owens, Brown, Woodson, Gallo, Jackman, Perkins, Marino, Cali, Adubato, Burstein. |
|---|---|---|---|---|
| | 3 | Dec. | 1974 | Referred to Institutions, Health & Welfare Committee. |

A. 1845   (A. 2339, 1974) -   Provides a procedure for the expungement of arrest records when the charges are dismissed, discharged or the individual is acquitted.

| | 5 | April | 1976 | Introduced by Owens, Brown, Scanlon, Shapiro, Hawkins. |
|---|---|---|---|---|
| | 5 | April | 1976 | Referred to Judiciary, Law, Public Safety & Defense Committee. |

S. 511   (S. 964, 1974) -   *Pre-filed* - Eliminates the grounds of the use of the exclusionary rule for denial of a motion to expunge the arrest record of a person acquitted or against whom the charges were dismissed or discharged. (Pre-file by Greenberg).

| | 17 | Jan | 1978 | Referred to the Judiciary Committee. |
|---|---|---|---|---|

Again, in these forms the bill made no progress on its own, but was to become an ingredient in a more inclusive measure, as will be seen.

Other assorted measures began appearing:

A. 3302 - Prohibits the permanent disposal of radioactive waste materials in the State or in the territorial waters thereof.

| | 7 | May | 1979 | Introduced by Bassano. |
|---|---|---|---|---|
| | 7 | May | 1979 | Referred to the Agriculture and Environment Committee. |

It is anomalous that the feature of the adopted Code of Criminal Justice that caused the greatest uproar was nine months in being discovered. In mid-April 1979 a television news program aired a segment about the lowering of the age of sexual consent to 13 from 16 which has been accomplished by the Code. The *Newark Star-Ledger,* of 22 April 1979 reported that legislators' phones had not stopped ringing since the program was aired. Senator Greenberg stated that "The reason we lowered the age is that existing law is unrealistic and unenforceable". "Under existing law, a girl under the age of 16 cannot legally consent to sexual relations. Any man having sex with a girl 15 years of age or younger can be prosecuted for statutory rape. Many of these cases are not prosecuted, officials say, because the man is usually the girl's teen-aged boyfriend. The lowering of the age of consent was drafted by Susan Goldring for Woman's Coalition Against Rape. The group took the position that most statutory rape cases are not actual rape and should not be treated as crimes. "The code recognizes that 15 year-old kids may have a relationship that involves sex and that it should not be a crime," said a long-time code supporter. "That's a hard thing for parents to realize, though." Legislators swung into bill drafting action in the matter following public pressure, and the following measures appeared:

45

S. 3172 - Provides that a person 16 years of age or older is guilty of sexual assault if he commits an act of sexual penetration or sexual contact with a victim who is less than 16 years old.

| | | | |
|---|---|---|---|
| 23 | April | 1979 | Introduced by Kennedy. |
| 23 | April | 1979 | Referred to the Judiciary Committee. |

S. 3178 - Provides that a person is guilty of sexual assault when the victim is at least 13 but less than 16 years old and the actor is at least 4 years older than the victim.

| | | | |
|---|---|---|---|
| 23 | April | 1979 | Introduced by Greenberg. |
| 23 | April | 1979 | Referred to the Judiciary Committee. |

S. 3179 - Provides that a person is guilty of aggravated sexual assault if he commits an act of sexual penetration where the victim is under 13 years old and the actor is at least 16 years old, and of sexual assault when the victim is at least 13 but less than 16 years old and the actor is at least 16 years old.

| | | | |
|---|---|---|---|
| 23 | April | 1979 | Introduced by Gregorio, A. Russo, Weiss, Scardino, Graves, J. Russo, Zane. |
| 23 | April | 1979 | Referred to the Judiciary Committee. |
| 7 | May | 1979 | Reported, second reading. |
| 7 | May | 1979 | Substituted by A. 3194 |

S. 3212 - Provides that an actor is guilty of sexual assault if he commits an act of sexual penetration or sexual contact with a victim less than 16 years of age where the actor is at least one year older than the victim.

| | | | |
|---|---|---|---|
| 3 | May | 1979 | Introduced by Hagedorn. |
| 3 | May | 1979 | Referred to the Judiciary Committee. |

S. 3221 - Provides that a person is guilty of aggravated sexual assault if he commits an act of sexual penetration where the victim is under 13 years of age and the actor is at least one year older, and where the victim is between the ages of 13 and 16 and the actor is at least two years older.

| | | | |
|---|---|---|---|
| 3 | May | 1979 | Introduced by Bedell. |
| 3 | May | 1979 | Referred to the Judiciary Committee. |

A. 3193 - Provides that a person is guilty of sexual assault when the victim is at least 13 but less than 16 years old.

| | | | |
|---|---|---|---|
| 23 | April | 1979 | Introduced by Deverin, Lesniak, Bornheimer, Girgenti, Jackman. |
| 23 | April | 1979 | No Reference to Committee; Second reading. |

A. 3194 - Amends the "Code of Criminal Justice" by raising the age of consent for sexual conduct from 13 years to 16 years of age.

| | | | |
|---|---|---|---|
| 23 | April | 1979 | Introduced by Jackman. |
| 23 | April | 1979 | No reference to Committee; second reading. |
| 3 | May | 1979 | Passed in Assembly (71-2) |
| 7 | May | 1979 | Substituted for S. 3179 |
| 7 | May | 1979 | Passed Senate under emergency resolution (36-1). |

46

A. 3212 - Provides that a person is guilty of sexual assault if he commits an act of sexual penetration or sexual contact with a victim who is less than 16 years old.

| 26 | April | 1979 | Introduced by Kozloski, Van Wagner |
| 26 | April | 1979 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |

A. 3219 - Provides that a person is guilty of aggravated sexual assault if he commits an act of sexual penetration where the victim is under 13 years old and the actor is at least 16 years old, and of sexual assault where the victim is at least 13 but less than 16 years old, and the actor is at least 16 years old.

| 26 | April | 1979 | Introduced by Littell, . . . |
| 26 | April | 1979 | No reference to Committee; second reading. |

It will be observed that A. 3194 passed both houses by 7 May 1979, prompt action indeed. The *Newark Star-Ledger* of 13 May 1979 reported that "Several legal experts feel the bill seems to ensure continuance of the problem the Legislature ostensibly sought to relieve by lowering the age of consent to 13: namely, that of sending New Jersey teenagers who are discovered making love to their younger peers into the criminal justice system. Yet, that is what the legislators say the public wanted. The bill, rushed through the Senate last week amid maximum confusion and minimum debate, has not been signed by Gov. Brendan Byrne. A spokesman for the Governor said Byrne agrees with restoring the consent age to 16, but wants his counsel to review the bill carefully to see that it does just that."

"This was essentially an exercise in the Legislature running for cover," said John Cannell, an attorney with the Public Defender's Office . . . "People felt, all of a sudden, that the Legislature was telling every teenager to go out and copulate. Their emotional reaction to that absolutely drowned out every type of reasoned approach. Suddenly, we have people trying to control other people's activity by using criminal law." Sen. William V. Musto said during debate in the Judiciary Committee, "Let's first of all get the public off our back."

By early June the Assembly Judiciary Committee had abandoned the position that a 16 year old boy could be prosecuted for statutory rape and imprisoned for ten years if he had intercourse with his 15 year old girlfriend. The *Newark Star-Ledger* of 5 June 1979 reported that the Committee concluded the boy could be prosecuted for "immorality" as a Juvenile in need of Supervision (JINS) and possibly for "impairing the morals of a minor."

A number of the measures outlined above were ultimately incorporated into an omnibus amendments measure officially styled the "Consensus Amendments", also referred to as the "Cleanup Bill". This was:

S. 3203 (A. 3279, 1979) - "The Consensus Amendments" - Revises various sections of the Code of Criminal Justice (Title 2C)

| 26 | April | 1979 | Introduced by Greenberg |
| 26 | April | 1979 | Referred to the Judiciary Committee |
| 18 | June | 1979 | Reported with Committee Amendment. |
| 18 | June | 1979 | Second reading. |
| 25 | June | 1979 | Passed in Senate, amended (26-10) |
| 28 | June | 1979 | Received in Assembly. |

| 28 | June  | 1979 | No Reference to Committee: second reading. |
| 9  | July  | 1979 | Substituted for A. 3279. |
| 9  | July  | 1979 | Amended. |
| 9  | July  | 1979 | Second reading, amended. |
| 16 | July  | 1979 | Passed in Assembly, amended (69-0) |
| 2  | Aug.  | 1979 | Senate concurred in Assembly amendment by amendment (26-5). |
| 23 | Aug.  | 1979 | Senate Amendment passed in Assembly (46-25) |
| 29 | Aug.  | 1979 | approved by Gov. Byrne as L.1979, c.178. |

A. 3279   (S. 3203, 1979) - Revised various sections of the Code of Criminal Justice (Title 2C).

| 26 | April | 1979 | Introduced by Herman. |
| 26 | April | 1979 | Referred to the Judiciary, Law, Public Safety & Defense Committee. |
| 28 | June  | 1979 | Reported with Committee Amendment. |
| 28 | June  | 1979 | Second reading. |
| 9  | July  | 1979 | Substituted by S. 3202. |

Chapter 178 (the "Consensus Amendments") accomplishes the following changes in Title 2C as originally passed.

1. It provides prosecutors, to the extent constitutionally permitted, the right to appeal, including the right to challenge sentences which are manifestly too lenient;

2. It strengthens the murder provisions by adding a section on aggravated manslaughter and redefining the intent requirement for murder;

3 It modifies the sex offenses provisions to retain the "age of consent" at 16. A provision prohibiting "impairing the morals of a minor" was added in connection with the "age of consent" section.

4. It adds a provision making it a second degree offense to dispose of hazardous waste illegally, carrying severe penalties with the offense;

5. It adds prohibitions on bringing stolen property into the State;

6. It adds comprehensive credit card fraud provisions;

7. It strengthens and makes more comprehensive the bribery and misconduct in office provisions.

8. It recognizes community service as a sentencing alternative;

9. It requires that the judge consider the parole release date in imposing sentence and clarifies sentencing for drug offenses;

10. It establishes a comprehensive statutory scheme for the expungement of criminal records;

11. It establishes a procedure for the expeditious return of stolen property to victims; and

12. It corrects the repealer section of the Code by maintaining the Sunday closing laws as they presently exist.

While the "Consensus Amendments" (c.178) constitute the major revision of the new Code prior to its effective date, five other laws have also been passed within Title 2C.

First of these to be adopted is:

S. 801 -   Clarifies the law concerning the right to manufacture lottery tickets in this State which are authorized for sale in other jurisdictions.

| | | | |
|---|---|---|---|
| 9 | Feb. | 1978 | Introduced by Martin Greenberg. |
| 9 | Feb. | 1978 | Referred to the Judiciary Committee. |
| 25 | Sept. | 1978 | Reported with Committee Amendment. |
| 25 | Sept. | 1978 | Second reading. |
| 19 | Oct. | 1978 | Passed in Senate, amended (36-0). |
| 19 | Oct. | 1978 | Received in Assembly. |
| 19 | Oct. | 1978 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |
| 11 | Dec. | 1978 | Reported, second reading. |
| 26 | April | 1979 | Passed in Assembly (64-0). |
| 6 | July | 1979 | Approved, Chapter 129, 1979. |

The remaining four laws were all signed into existence by Governor Byrne on the same date as his signing of the "Consensus Amendments":

S. 1295 -   Provides that no provision of the "Code of Criminal Justice" (P.L. 1978, c.95) shall supersede the provisions of the "Casino Control Act" (P.L.177, c.110), prohibits slot machines in the home for social purposes, permits the possession of antique slot machines.

| | | | |
|---|---|---|---|
| 14 | Aug. | 1978 | Introduced by Perskie. |
| 14 | Aug. | 1978 | Referred to the Judiciary Committee. |
| 22 | Jan. | 1979 | Reported with Committee Amendment. |
| 22 | Jan. | 1979 | Second reading. |
| 13 | Feb. | 1979 | Passed in Senate, amend (29-0) |
| 13 | Feb. | 1979 | Received in Assembly. |
| 13 | Feb. | 1979 | Referred to the Judiciary, Law, Public Safety and Defense Committee. |
| 23 | Apr. | 1979 | Reported with Committee Amendment. |
| 23 | Apr. | 1979 | Second reading. |
| 7 | May | 1979 | Amended |
| 7 | May | 1979 | Second reading, amended. |
| 21 | May | 1979 | Passed in Assembly, amended (66-0) |
| 21 | May | 1979 | Received in Senate. |
| 11 | June | 1979 | Assembly amendment passed in Senate (32-0) |
| 29 | Aug. | 1979 | Approved by Gov. Byrne as L.1979, c.176. |

S. 3329 -   "the Firearms Amendments" -amends the firearms sections of the Code of Criminal Justice.

| | | | |
|---|---|---|---|
| 14 | June | 1979 | Introduced by Greenberg. |
| 14 | June | 1979 | Referred to the Judiciary Committee. |
| 18 | June | 1979 | Reported with Committee amendment. |
| 18 | June | 1979 | Second reading. |
| 25 | June | 1979 | Passed in Senate, amended (36-0) |
| 28 | June | 1979 | Received in Assembly. |
| 28 | June | 1979 | No reference to Committee, second reading. |
| 9 | July | 1979 | Substituted for A. 3352. |
| 9 | July | 1979 | Passed in Assembly (66-0) |
| 29 | Aug. | 1979 | Approved by Gov. Byrne as L.1979, c.179. |

A. 3352 -   Proposes various amendments regarding firearms and other weapons
in the Code of Criminal Justice (P.L. 1978, c. 95).

| | | | |
|---|---|---|---|
| 21 | May | 1979 | Introduced by Herman. |
| 21 | May | 1979 | Referred to Judiciary, Law, Public Safety & Defense Committee. |
| 28 | June | 1979 | Reported with Committee amendment. |
| 28 | June | 1979 | Second reading. |
| 9 | July | 1979 | Substituted by S. 3329. |

S. 3330 -   "the Probation Amendments" amends the Code of Criminal Justice
with regard to probation and probation officers.

| | | | |
|---|---|---|---|
| 14 | June | 1979 | Introduced by Greenberg. |
| 14 | June | 1979 | Referred to the Judiciary Committee. |
| 18 | June | 1979 | Reported with Committee Amendment. |
| 18 | June | 1979 | Second reading. |
| 25 | June | 1979 | Passed in Senate, amended (38-0). |
| 28 | June | 1979 | Received in Assembly. |
| 28 | June | 1979 | No reference to Committee, second reading. |
| 9 | July | 1979 | Substituted for A. 3351. |
| 9 | July | 1979 | Passed in Assembly (65-0). |
| 29 | Aug. | 1979 | Approved by Gov. Byrne as L.1979, c.180. |

A. 3351 -   Proposes various amendments regarding probation and probation
officers in the Code of Criminal Justice (P.L. 1978, c.95).

| | | | |
|---|---|---|---|
| 21 | May | 1979 | Introduced by Herman. |
| 21 | May | 1979 | Referred to the Judiciary, Law, Public Safety & Defense Committee. |
| 28 | June | 1979 | Reported with Committee Amendment. |
| 28 | June | 1979 | Second reading. |
| 9 | July | 1979 | Substituted by S. 3330. |

A. 3451 -   Provides jurisdiction in the municipal courts for certain crimes and
offenses under the "Code of Criminal Justice".

| | | | |
|---|---|---|---|
| 18 | June | 1979 | Introduced by Thompson, Flynn, Scanlon, Brown, Burstein, Codey, Herman, Bate, Kern. |
| 18 | June | 1979 | Referred to the Judiciary, Law, Public Safety & Defense Committee. |
| 18 | June | 1979 | Reported, second reading. |
| 21 | June | 1979 | Passed in Assembly (60-0). |
| 25 | June | 1979 | Passed in Senate (32-0). |
| 29 | Aug. | 1979 | Approved by Gov. Byrne as L.1979, c.184. |

All these came into effect as part of the new Code of Criminal Justice on 1 September
1979.

*       *       *

*Note: Selected Bibliography - next page*

Selected Bibliography on the New Jersey Code of Criminal Justice:

Please note -
   that *none* of the periodicals referred to is indexed in the *Index to Legal Periodicals:*

De Cicco, John
   "Proposed New Jersey Penal Code" (1st. installment) 1 *Criminal Justice Quarterly,* N.J.) 98-107 (Spring 1973)

De Cicco, John
   "Proposed New Jersey Penal Code" (2nd. installment) 1 *Criminal Justice Q.* (N.J.) 164-175 (Summer 1973)

Luciani, Alfred J.
   "Proposed New Jersey Penal Code" (3rd. installment) 1 *Criminal Justice Q.* (N.J.) 224-232 (Fall 1973)

Grossman, Daniel Louis,
   "The New Jersey Code of Criminal Justice: Analysis and Overview."
   3 *Seton Hall Legislative Journal* 1-48 (Fall 1977).

Kenneday, John C. and John P. McDonald,
   "State Preemption of Municipal Penal Ordinances Under the New Jersey Code of Criminal Justice," 3 *Seton Hall Legislative Journal* 181-202 (Summer 1978)

"New Criminal Code Signed Into Law: 102 N.J.L.J. 153, 156 (17 Aug. 1978).

Editorial, "The New Jersey Code of Criminal Justice". 102 N.J.L.J. 156 (17 Aug. 1978).

Greenberg, Martin L. and Tumulty, John J.
   "Highlights of the New Code of Criminal Justice"

| | | |
|---|---|---|
| Part I. | 102 N.J.L.J. | 425, 441 (9 Nov. 1978). |
| Part II. | 103 N.J.L.J. | 41, 46, 47 (18 Jan. 1979). |
| Part III. | 103 N.J.L.J. | 505, 510 (21 May 1979). |
| Part IV. | 104 N.J.L.J. | 121, 129 (9 Aug. 1979). |
| Part V. | 104 N.J.L.J. | 345, 361, 367 (18 Oct. 1979). |

Projected Part VI. - Will review the amendments made to the Code since its enactment.

Degnan, John J.,
   "Status Report on Implementation of the Penal Code".
   10 *N.J.L.J.* 433, 442 (10 May 1979).

"New Rule Amendments Re: Criminal Proceedings" 104 *N.J.L.J.* 217, 228, 229 (6 Sept. 1979).

# SENATE JUDICIARY COMMITTEE
# STATEMENT TO
# SENATE, No. 738
### with Senate committee amendments

# STATE OF NEW JERSEY

### DATED: MAY 15, 1978

Senate Bill No. 738, "The New Jersey Code of Criminal Justice," is based upon the Final Report of the Criminal Law Revision Commission which was created by the Legislature in 1968 and given the responsibility of revising and codifying New Jersey's criminal law.

## SUBTITLE I.  GENERAL PROVISIONS.

Chapter 1 of the Code contains general operating provisions along with purposes and objections. Many of the criminal law concepts covered by Chapter 1 (i.e., statutes of limitations (2C:1-6), standards of proof (2C:1-13), and double jeopardy (2C:1-9 through 2C:1-12) ) are substantially the same as set forth in present statutes or case law.

Among the significant changes in current law made in Chapter 1 are the abolition of all common law crimes (see 2C:1-5). Under current law, any offense not statutorily defined which was an indictable offense at common law is a misdemeanor. Prosecutions under this provision are virtually non-existent since current statutes explicitly cover all actions considered criminal at common law. The Code would eliminate this catchall provision and rely on the crimes specifically defined in the Code.

Another significant change in current law that it found in Chapter 1 is the Code's reclassification of conspiracy. Under current law, conspiracy to commit a crime is a separate and distinct offense from the crime itself. Thus, a person can be convicted of both the conspiracy to commit a robbery and the robbery itself. The Code adopts the view that conspiracy to commit is an included offense like an attempt and that if the crime is actually committed, the person can only be convicted of the crime itself. This approach, reflecting the modern trend, would avoid multiple prosecutions.

By Judiciary Committee amendment, a provision of the Code which would have permitted any person imprisoned on the effective date of the Code, to move to have his sentence reviewed and to be sentenced as if he had been convicted under the Code, was changed to permit such review only if the person was imprisoned for any offense decriminalized by the Code or was sentenced to a maximum term of imprisonment which exceeds the maximum established by the Code for such an offense. In either case, the imposition of a new sentence would be discretionary rather than mandatory.

Also, by Committee amendment, the Senate Judiciary Committee eliminated, at the suggestion of the Attorney General's Office, a provision added in the Assembly during the last session, which would have prohibited the dismissals of prosecutions for certain offenses which involved the use of a firearm if such dismissal is made on a motion by the prosecutor pursuant to a plea bargain. The committee felt that this provision unduly restricted the ability of the prosecutor to handle certain criminal cases.

Chapter 2 sets forth the general *mens rea* requirements for the establishment of criminal liability; that is, the general definitions which establish the mental elements necessary for each of the Code's specific offenses. The Code defines four different kinds of culpability: "purposely," "knowingly," "recklessly" and "negligently" (see 2C:2-2). Under present law, such terms as "premeditatedly," "willfully" and "unlawfully" serve the same function. Chapter 2 also defines various defenses to criminal charges (i.e., duress (2C:2-9) and consent (2C:2-10) ) and accomplice liability (see 2C:2-6).

Among the significant changes made in Chapter 2 is the inclusion of mistake of law as a defense to a criminal charge (see 2C:2-4c). Under current law, mistake of law is not a defense to a criminal charge. The Code would allow mistake of law as a defense in certain limited circumstances, i.e., reasonable reliance upon a judicial decision afterwards determined to be invalid. By amendment, the Senate Judiciary Committee increased from "by a preponderance of the evidence," to "by clear and convincing evidence," the burden of proof which defendant seeking to use the mistake of law defense must satisfy.

Chapter 2 also contains a provision whereby an assignment judge may dismiss a prosecution if the facts of a particular case indicate a technical violation of a statute and a conviction would be inappropriate (see 2C:2-11). The judge cannot act under this section unless he first notifies the prosecutor and provides him an opportunity to be heard. No such provision exists under current law.

Chapter 2 also refocuses the legal concept of entrapment. Under current law, the question of whether or not a person was entrapped turns on the state of mind of the accused; that is, the defendant's predisposition. Under the Code, the question of entrapment rests upon the behavior of the law enforcement personnel involved.

Chapter 3 deals with justification defenses; those situations in which a person may use force upon another without being criminally liable for his conduct (self-defense (2C:3-4), defense of other, (2C:3-6), defense of property (2C:3-6) and use of force by law enforcement personnel (2C:3-7) ).

The major change that the Code makes with regard to justification defenses involves the use of deadly force by law enforcement officers. Current law provides that a police officer can use deadly force to apprehend a fleeing offender if the offender had committed or attempted to commit any felony. The Code would provide that a police officer could use deadly force to apprehend a fleeing offender if the use of such force would not endanger innocent bystanders and if the offender was fleeing after committing or attempting to commit one of the following crimes: homicide, kidnapping, arson, robbery, burglary of an occupied building or a serious sexual assault. (See 2C:3-7b(2)(b) and (c).)

Chapter 4 covers the insanity defense. Prior to review by the Senate Judiciary Committee, the Code abolished insanity as a defense to a criminal charge. The issue of insanity was to be addressed at a post-conviction proceeding for the purposes of determining the disposition of the offender; that is, whether the person should be imprisoned, committed for psychiatric treatment or released. At the suggestion of the Attorney General's Office and the Office of the Public Defender, the Judiciary Committee voted to restore insanity as a defense to a criminal charge.

The Code would have also replaced the so-called M'Naughten rule currently in use in New Jersey as the legal test of sanity with the American Law Institute test for sanity. The Committee decided to retain the M'Naughten rule (see 2C:4-1).

Chapter 5 deals with so-called inchoate crimes; that is, attempts and conspiracies to commit criminal offenses. Under the Code, an attempt or a conpiracy to commit a crime is a crime of the same grade and degree as the most serious crime attempted or the most serious crime which is an object of the conspiracy, except that an attempt or conspiracy to commit a crime of the first degree is a crime of the second degree (see 2C:5-4).

The major change in Chapter 5 is the inclusion of renunciation of criminal purpose as a defense to a charge of criminal attempt. Current law does not recognize such a defense. In order for a defendant to avail himself of this defense, he must have taken whatever actions are necessary to prevent the completion of the crime (see 2C:5-1d. and 2C:5-2e.).

It should also be noted in connection with Subtitle I (first five chapters) of the Code that the development of the legal concepts covered by these chapters, have traditionally been left to the courts in New Jersey. The Code attempts to insure legislative input in these important areas of the criminal law by putting these concepts into statutory form.

## SUBTITLE II.   DEFINITIONS OF SPECIFIC OFFENSES.

Chapter 11 deals with murder and related offenses. Homicide constitutes murder under the Code when it is committed "purposely," "knowingly," or when it occurs during the commission of certain crimes (robbery, arson, burglary, kidnapping, a serious sexual offense, or a criminal escape).

This third category (traditionally known as felony-murder) was amended by the Senate Judiciary Committee so that participants in the above listed crimes would be guilty of murder, even if the killing actually occurred as the result of an action by a non-participant (i.e., a policeman accidentally shoots an innocent bystander when trying to apprehend persons fleeing a robbery). The Code originally made offenders only liable for killings actually committed by one of the participants. Offenders would still not be liable for the death of a co-participant.

The committee also amended the Code provisions relating to "felony-murder" by deleting language which would have afforded accomplices otherwise guilty under the felony-murder doctrine, a defense under limited circumstances, to a murder charge.

Murder, under the Code, is a crime of the first degree; however, persons found guilty of murder may be sentenced to up to 30 years imprisonment (the maximum for other first degree crimes is 20 years imprisonment) (see 2C:3-11b). The Code also provides a special extended term of imprisonment of between 30 years and a life sentence (see 2C:43-7(1) ).

The Senate Judiciary Committee also deleted a section of Chapter 11 which deals with negligent homicide. It was felt that the concept of negligent homicide was too broad and the section was replaced by the current offense of death by auto (see 2C:11-5).

Chapter 12 deals with assaults and related crimes. This chapter represents a generalization and consolidation of current statutory provisions.

Chapter 13 concerns kidnapping and other crimes involving the restraint of persons against their will.

The major change in this chapter involves the definition of kidnapping. Under current law, any forcible movement of the vicim can constitute kidnapping; in theory, this could result in a charge when the victim of a robbery is forced to the back of his store to open a safe. The Code provides that the vicim must be removed from the place where he is found in order for a kidnapping to have occurred. The Code further provides, however, that the confinement of a person for ransom or the use of a person as a shield or hostage would constitute kidnapping (see 2C:13-1). By Senate Judiciary Committee amendment, a term of imprisonment of between 15 and 30 years was added as a special penalty for kidnapping in the first degree.

Chapter 13 also contains a new offense dealing with the interference with custody of minor children (see 2C:13-4). No such offense occurs under current law.

Chapter 14 which deals with sexual offenses was totally revised by the Senate Judiciary Committee during its review of the Code. Under this revision, there are four basic sexual offenses: aggravated sexual assault (a crime of the first degree); sexual assault (a crime of the second degree); aggravated criminal sexual contact (a crime of the third degree); and criminal sexual contact (a crime of the fourth degree). The category that a particular fact situation falls among these four offenses is dependent upon the following:

> the actual sexual acts committed;
>
> the amount of force and physical injury involved in the offense;
>
> the age of victim and sometimes the age of the accused (i.e., consensual intercourse between a boy of 15 and a girl of 14 would not be an offense;
>
> consensual intercourse between a man of 20 and a girl of 14 would be an offense);
>
> the mental state of victim (i.e., was the victim ''physically helpless,'' ''mentally defective'' or ''mentally incapacitated''); and
>
> the relationship of the accused vis-a-vis the victim (Did the accused have supervisory or disciplinary power over the victim? i.e., a prison guard and an inmate).

It should also be noted with regard to these offenses that they are defined to cover both homosexual and heterosexual situations and that these definitions are intended to focus on the actions of the accused rather than on behavior of the victim.

One change in present law which result from enactment of Chapter 14 is that if the other elements of the offense can be proved, a person may be found guilty of a sexual offense even if the victim is his or her spouse (see 2C:14-5c.).

Among the other provisions of Chapter 14 are: a special minimum term of 5 years for all persons convicted as a sexual offender of a sexual offense (see 2C:14-6) and a provision strictly limiting the introduction of evidence of the victim's previous sexual conduct (see 2C:14-7).

Chapter 17 covers arson and related offenses. The major change in this chapter is the division of arson into two categories, aggravated arson and arson. Aggravated arson, a crime of the first degree, is reserved for those circumstances which pose the greatest threat to human life (see 2C:17-1).

Chapter 17 also consolidates and generalizes disparate current statutory provisions dealing with the destruction of property (i.e., desecration of a cemetery) into the broader concept of criminal mischief (2C:17-3).

Chapter 18 deals with burglary and criminal trespass. The major change in the expansion of the definition of burglary to include those circumstances whereby a person gains entrance to a building lawfully and then remains there unlawfully for the purpose of committing an offense (see 2C:18-2a(2) ). By committee amendment, the offense of burglary was expanded to cover burglaries of boats and airplanes.

Chapter 19 covers robbery and remains substantially unchanged from present law.

Chapter 20 concerns theft and related offenses. The Code consolidates various property crimes (i.e., larceny, embezzlement, blackmail, extortion, conversion, receiving of stolen property) into a single offense of theft with the aim of aiding prosecutions by permitting a conviction for theft by proving that the offense was accomplished by any of the methods (extortion, deception, etc.) enumerated in the chapter (see sections 2C:20-3 through 2C:20-10).

Chapter 21 covers forgery and other related fraudulent practices, i.e., bad checks, misuse of credit cards, unlawful credit practices. The Code generalizes and consolidates current law in this area.

Chapter 24 deals with offenses against the family, children and incompetents (i.e., bigamy, endangering the welfare of children, unlawful adoptions).

The major change in Chapter 24 involves the inclusion of a defense to a charge of bigamy if the accused reasonably believed his first spouse was dead, or he reasonably believed he was legally eligible to remarry (i.e., possessed a divorce decree which he believed valid) (see 2C:24-1). Current law does not recognize such a defense.

Chapter 24 sets forth a new offense not found in current law, endangering the welfare of an incompetent (see 2C:24-7).

Chapter 27 concerns bribery and corrupt influence with regard to public administration, i.e., threats and other improper influence in official and political matters, retaliation for past official action, and gifts to public servants by persons subject to their jurisdiction.
It should be noted that the provision concerning gifts to public servants by persons subject to their jurisdiction does not include the giving of small gifts which involve "no substantial risk of undermining official impartiality," i.e., a bottle of liquor at Christmas (see 2C:27-6c.(3) ).
The Senate Judiciary Committee upgraded offenses involving unlawful gifts to public servants from crimes of the fourth degree to crimes of the third degree.

Chapter 28 covers perjury and other falsifications in official matters. Chapter 28 contains two major changes. Current law does not recognize retraction of false statements as a defense to perjury. The Code would allow retraction as a defense if the retraction is made prior to the termination of the proceeding (see 2C:28-1d.).
The other major change in Chapter 28 concerns the amount of corroboration necessary to sustain a conviction for perjury. Under current law, a conviction for perjury may be sustained based solely upon the contradictory testimony of a single witness. The Code requires contradictory testimony by at least two witnesses (see 2C:28-1e.). This marks a return to the common law rule.
Chapter 29 concerns the obstruction of governmental operations, i.e., escapes, bail jumping, resisting arrest. The major change in the chapter involves the hindering of apprehension. Under present law, a person cannot be prosecuted for helping his spouse avoid apprehension. The Code does not recognize this exception, although such aid by a close family member would result in a lower grade of offense than would normally be assessed for such illegal assistance (see 2C:29-3g.).

57

Chapter 30 involves misconduct in office. Its provisions present a codification of offenses (i.e., misfeasance in office) which, while not found in current New Jersey statutes, were indictable at common law.

Chapter 33 deals with riot and related public disturbance offenses, i.e., false alarms. The major change in this chapter involves the offense of riot. Under present law, a law enforcement officer who kills or injures a person in the course of dispersing a riot is deemed guiltless despite the circumstances surrounding the incident. The Code eliminates this specific provision, and relies upon the defenses involving use of force by law enforcement officers outlined in 2C:3-7 to cover this situation.

Chapter 33 contains two sections not found in present law. One is entitled harassment (see 2C:33-4) and is meant to cover, among other activities, the making of obscene telephone calls. The other new offense is the obstruction of highways and other public passages (see 2C:33-7). A third section containing the new offense of cutting in line was deemed unnecessary and deleted by the Senate Judiciary Committee.

Chapter 34 concerns public indecency, i.e., open lewdness, prostitution, obscenity. By Senate committee amendment, a new section making it a disorderly persons offense to sell obscene material to persons 16 years of age or older (see 2C:34-3) was included in the Code. Prior to the addition of this section, the Code prohibited only the sale of obscene materials to persons under 16 years of age and the public display of obscene materials.

Chapter 37 deals with gambling offenses. The major changes in this chapter involve the gradation of gambling offenses, the amount of the fines prescribed for gambling offenses and the decriminalization of certain gambling activities.

Recognizing that illegal gambling is a source of substantial revenues to those involved in organized crime, the Code adopts a gradation for gambling offenses which focuses law enforcement efforts upon those persons at the managerial level of gambling operations and a schedule of fines which emphasizes fines as a deterrent to the monetary gains which result from gambling activities.

As an example of the type of gradation employed, under the provisions of 2C:37-2, a person who engages in bookmaking to the extent he receives or accepts in any 1 day more than five bets totaling more than $1,000.00, or receives in connection with a numbers operation money or records from a person other than a player or more than $100.00 in 1 day in plays, is guilty of a crime of the third degree. A person who receives three or more bets in any 2-week period is guilty of a crime of the fourth degree. Otherwise, any offense under 2C:37-2 is a disorderly persons offense.

In addition to this type of gradation based on the level of organizational involvement which is followed throughout the various sections of Chapter 37, the Code prescribes the following fines for gambling offenses:

| Crimes of the third degree | up to $25,000.00 |
| Crimes of the fourth degree | up to $15,000.00 |
| Disorderly persons offenses | up to $10,000.00 |

The normal fine prescribed by the code under the provisions of 2C:43-5 for crimes of the third or fourth degree is up to $7,500.00 and for disorderly persons offenses, up to $1,000.00.

In addition to the type of gradation and the amount of fines, the major change which would result from the adoption of Chapter 37 would be decriminalization of certain gambling activities now punishable under our current statutes. Those persons engaging in gambling activities in the capacity that the Code defines as a "player," (see 2C:37-1c.), i.e., a person making a bet, playing a number or participating in a poker game, would no longer be subject to criminal sanctions.

Several amendments in Chapter 37 were made by the Senate Judiciary Committee. To aid in the prosecution of gambling, the outright "player" exemption contained in 2C:37-2 was converted to an affirmative defense (see 2C:37-2c.) so the burden would be on the defendant to show that he was participating in gambling activities as a player. Also to aid prosecutions, the phrase "rather than in a casual or personal fashion" was deleted from the definition of bookmaking in 2C:37-1g. In making this deletion, it was not the intent of the committee to criminalize casual betting, but rather, to remove any possible impediment to successful prosecutions of professional gamblers.

Other changes made by the Judiciary Committee include:

An amendment to various sections of Chapter 37 to clarify that persons convicted of gambling offenses in addition to the specially provided fines, are subject to other penalties provided in the Code;

An amendment to equalize the penalties for maintenance of a gambling resort in a private premises, and for maintenance of a resort in a public premises (the Code had made the former a crime of the third degree and the latter a disorderly persons); the committee made both a crime of the fourth degree (see 2C:37-4); and

An amendment to clarify that the possession of legal out-of-state lottery tickets (i.e., New York lottery tickets) would not be an offense (see 2C:37-6).

Chapter 39 sets forth offenses involving the use of firearms and other weapons. Among the major changes in current law made in Chapter 39 are:

Under the Code, if a firearm is found in an automobile, it is presumed to be possessed by all the occupants unless the firearm is found upon the person of the occupants or concealed out of view, i.e., in the glove compartment or trunk (see 2C:39-2). No similar provision exists in current law.

Under the Code, possession of "dum-dum" or hollow-nose bullets by persons other than law enforcement officers or persons engaged in hunting or target shooting is an offense. No such prohibition currently exists (see 2C:39-3f).

Under the Code, a person who has a handgun in his possession without having both a permit to purchase a handgun and a permit to carry is guilty of an offense (see 2C:39-5b.). Under current law, a person need only have a permit to carry.

The Code contains a provision permitting the voluntary surrender, without penalty of unlawfully possessed weapons. This provision does not provide immunity from prosecution for an offense other than that of the unlawful possession of such surrendered weapons (see 2C:39-12). No similar provision is found in current law.

Under current law, the prohibition against the possession of certain weapons, i.e., switchblades, stilettos is absolute. The Code would modify this absolute prohibition by prohibiting possession of such weapons without any explainable, lawful purpose (see 2C:39-3e.).

By Senate committee amendment, motor vehicle inspectors were included among those law enforcement officials totally exempted from the provisions of 2C:39-5 which prohibits the possession of weapons without a license. Under the Code, motor vehicle inspectors were included among those exempted from the prohibition against possession of only handguns and rifles without a license (see 2C:39-6).

Chapter 40 deals with minor offenses relating to public safety, i.e., abandonment of refrigerators, refusal to yield a party line. Its provisions represent no change from current law.

It should be noted in connection with Subtitle II that enactment of the Code will result in the nineteen chapters contained in Subtitle II becoming the source of all nondrug related criminal offenses in New Jersey (drug related offenses are presently found in Title 24 and are not affected by this revision). Also, as the result of enactment of the Code, certain acts currently criminal would, because of their omission from

Subtitle II, be decriminalized. In addition to social gambling mentioned above in connection with Chapter 37, those acts which would be decriminalized include: consensual sodomy, fornication, adultery and loitering.

## SUBTITLE III.  SENTENCING.

Chapter 43 includes the classification of offenses under the Code and the authorized disposition of offenders (i.e., the length of prison term and the amount of fines). Major changes under the provisions of Chapter 43 are as follows:

### A.  Classification of Crimes

Under current New Jersey law, crimes are divided into high misdemeanors and misdemeanors; non-indictable offenses are classified as disorderly persons offenses. The Code would replace this classification system with a system dividing indictable offenses into crimes of the first, second, third and fourth degree (see 2C:43-1 a). Non-indictable offenses would be divided into disorderly persons offenses and petty disorderly persons offenses (see 2C:43-8);

### B.  Length of Ordinary Term of Imprisonment

Under current law, a high misdemeanor is punishable by up to 7 years imprisonment; a misdemeanor is punishable by up to 3 years imprisonment; and a disorderly persons offense is punishable by up to 6 months imprisonment.

The Code provides the following sentencing structure:

| | |
|---|---|
| Crimes of the first degree 2C:43-6a(1) | between 10 and 20 years |
| Crimes of the second degree 2C:43-6a(2) | between 5 and 10 years |
| Crimes of the third degree 2C:43-6a(3) | between 3 and 5 years |
| Crimes of the fourth degree 2C:43-6a(4) | not to exceed 18 months |
| Disorderly persons offense 2C:43-8 | not to exceed 6 months |
| Petty disorderly persons offense 2C:43-8 | not to exceed 30 days |

(The minimum term for crimes of the first degree was changed from 8 to 10 years and the maximum term for crimes of the second degree was changed from 8 to 10 years by Senate committee amendments.)

It should be noted in connection with this sentence structure that the minimum-maximum sentence now in use in New Jersey would be abandoned. The sentencing judge would only set the maximum sentence from the range of sentences listed above. In cases involving convictions of crimes of the first and second degree, the Code does, however, permit the judge to set a minimum term of one half of the sentence which must be served before the offender is eligible for parole (see 2C:43-6b).

### C.  Length of Extended Terms of Imprisonment

The Code also provides for the following extended terms of imprisonment (the criteria for the imposition of these terms will be discussed in connection with Chapter 44).

| | |
|---|---|
| Murder 2C:43-7 a(1) | between 30 years and life imprisonment |
| Crimes of the first degree 2C:43-7 a(2) | between 20 years and life imprisonment |
| Crimes of the second degree 2C:43-7 a(3) | between 10 years and 20 years |
| Crimes of the third degree 2C:43-7 a(4) | between 5 years and 10 years |

(By Senate committee amendments the maximum extended term for murder was changed from 50 years to life imprisonment; the extended term for other crimes of the first degree was changed from between 15 years and 30 years to between 20 years and

life imprisonment; the extended term for crimes of the second degree from between 8 years and 15 years to between 10 years and 20 years and the maximum term for crimes of the third degree from 8 to 10 years.)

The court may also set a mandatory minimum in connection with extended terms as was noted above in connection with the ordinary terms (see 2C:43-7 b).

### D.  Fines

Under current law, those found guilty of a high misdemeanor are subject to fine of up to $2,000.00; those guilty of a misdemeanor, to fine of up to $1,000.00; and of a disorderly persons offense, to a fine up to $500.00. There are, however, scattered throughout current statutes, a wide range of different fines for different offenses ranging in amount from $25.00 to $100,000.00.

The Code would set up the following fine structure:

| | |
|---|---|
| Crimes of the first or second degree 2C:43-3 (a) | $15,000.00 |
| Crimes of the third or fourth degree 2C:43-3 (b) | $7,500.00 |
| Disorderly persons offense 2C:43-3 (c) | $1,000.00 |
| Petty disorderly persons offense 2C:43-3 (d) | $500.00 |

The Code would also allow for the imposition of a fine of up to double the pecuniary gain to the offender or loss to the victim caused by the conduct constituting the offense (see 2C:43-3 e). No such provision is found under existing law.

### E.  Restitution

Under current law, there is no authorization for the imposition of restitution in conjunction with a sentence of imprisonment. The Code would permit the imposition of restitution in cases in which the offender is also sentenced to imprisonment (see 2C:43-b b(4) ).

### F.  Suspension of Sentences

Under current law, a judge has the power to suspend the imposition of sentence (that is, not to pronounce any sentence) or to suspend execution of sentence (that is, pronounce a custodial sentence and suspend serving it). On the rationale that when a suspension is to be revoked, the causes of the revocation should be considered by the judge in imposing sentence and that the judge should not be bound by any previously fixed sentence, but rather, should be free to impose any sentence which could have originally been imposed, the Code would eliminate the power of a judge to pronounce sentence and suspend its execution and only allow a judge to suspend the imposition of sentence (see 2C:43-2 (b) );

### G.  Expansion of the Jurisdiction of Sentencing Court

Under current law, by court rule, there are strict time limitations on when a motion may be brought for modification of sentences. The Code would allow the sentencing court to retain permanent jurisdiction to hear motions for modification of sentence at any time, although the court would not be required to hear more than one such motion a year (see 2C:43-2 e);

### H.  Separate Parole Term

Under the provisions of the Code, a criminal sentence has two parts. The first part is the original term of imprisonment; the second part is the parole term. The Code views parole as a period of supervised release which is an invaluable incident to any prison sentence. This position represents an abandonment of the concept of parole as a portion of the original prison sentence not required to be served in prison. Thus, even if an offender were to serve his entire sentence, he would be on parole for some period of time. Sentences of imprisonment for crimes of the first, second or third degree carry a parole term of one year; crimes of the fourth degree a parole term of 6 months (see 2C:43-9b);

## I.  Pretrial Intervention Programs

Pretrial intervention programs are currently operating in New Jersey pursuant to court rule. The Code would place authorization for pretrial intervention programs into our statutes, thus allowing for legislative input into the operation of such programs. As amended by the Senate Judiciary Committee, entrance into a PTI program would be controlled by the prosecutor. All offenders regardless of offense would be eligible for such a program except that a person could only be admitted once to such a program. The committee also lengthened to 3 years the period an offender could spend in supervisory treatment (under current court rule, PTI is available on a 3-month basis with provisions for extensions). To facilitate the administration of PTI programs, the committee added provisions requiring that each county prosecutor file a report with the Attorney General's office on the operation of PTI in their county and requiring the Attorney General's office to keep a central index of all person admitted to PTI programs.

Chapter 44 sets forth the criteria to be used by courts in deciding whether a particular offender should be sentenced to a regular term of imprisonment, an extended term of imprisonment, or whether a fine or restitution should be imposed. Among the new sentencing concepts and changes in present law in Chapter 44 are the following:

### A.  Presumptions with Regard to Sentence of Imprisonment

Prior to review by the Senate Judiciary Committee, the basic sentencing presumption provided in the Code was non-imprisonment unless imprisonment was found by the court to be necessary for the protection of the public under criteria favoring imprisonment discussed below (see 2C:44-1a). This presumption of non-imprisonment was deleted by the committee except with regard to first offenders convicted of an offense of the third degree or less (see 2C:44-1e). The committee retained a provision establishing a presumption of imprisonment for those convicted of an offense of the first or second degree (see 2C:44-1 d).

### B.  Criteria in Favor of a Sentence of Imprisonment (2C:44-1a)

The following factors favoring imprisonment are to be weighted by the sentencing judge:

(1)  The nature and circumstances of the offense;

(2)  The gravity and seriousness of harm inflicted on the victim;

(3)  The risk that the defendant will commit another crime;

(4)  The need for correctional treatment which can be provided only in an institution;

(5)  A less sentence will depreciate the seriousness of the defendant's crime because it involved a breach of the public trust under chapters 27 and 30;

(6)  The offense is characteristic of organized criminal activity;

(7)  The defendant has previously been convicted of a crime or other penal offense;

(8)  The crime was committed in an especially heinous, cruel or depraved manner;

(9)  The defendant committed the offense as consideration for the receipt, or in expectation of the receipt of anything of pecuniary value;

(10)  The defendant procured the commission of the offense by payment or promise of payment, or anything of pecuniary value;

62

(11) The defendant committed the offense against a police or other law enforcement officer, correctional employee or fireman, while performing his duties or because of his status as a public servant;

(12) The need for deterring the defendant and others from violating the law.

Paragraphs (1) and (2) and (7) through (12) were added by Senate Judiciary Committee amendments.

### C.   Criteria to be Weighed in Favor of Sentence of Non-Imprisonment (2C:44-1b)

The following criteria in favor of non-imprisonment are to be considered by the sentencing judge:

(1) The offender neither caused nor threatened serious harm;

(2) The offender did not contemplate that his conduct would cause or threaten serious harm;

(3) The offender acted under a strong provocation;

(4) There were substantial grounds to excuse or justify the offender's conduct;

(5) The victim induced or facilitated the crime;

(6) The offender did or will compensate the victim;

(7) The offender has no prior history of criminal activity;

(8) The offender's conduct was the result of circumstances unlikely to recur;

(9) The character and attitudes of the offender indicate that he is unlikely to commit another offense;

(10) The offender is particularly likely to respond to probationary treatment;

(11) The imprisonment of the defendant would detail excessive hardship to himself or his family.

In reviewing both the criteria for and against a sentence of imprisonment, it should be noted that under current New Jersey law, there is no statutory criteria to guide judges in imposing sentences. However, several of the factors listed above have been cited in recent case law as being relevant for the purpose of determining the proper sentence.

### D.   Criteria for Extended Sentences

Offenders falling under the following four categories are eligible for the extended terms of imprisonment:

| | |
|---|---|
| Persistent offenders | 2C:44-3(a) |
| Professional criminals | 2C:44-3(b) |
| Offenders who commit crimes for pecuniary gain | 2C:44-3(c) |
| Offenders who are found to be dangerous and mentally abnormal | 2C:44-3(d) |

By committee amendment, the Senate Judiciary Committee added the dangerous and mentally abnormal category and expanded the persistent offender and professional criminal categories. Under current law, there are no provisons for extended sentences, although current law does provide additional penalties for offenses committed while armed and for offenses committed by habitual offenders.

### E.   Criteria for Imposition of Fines and Restitution

The Code provides that the fines and restitution may be imposed if the defendant derived a pecuniary gain from the offense or if the court is of the opinion that a fine or restitution is an especially effective deterrent for the type of offense involved (see 2C:44-2 a(1) and (2) ).

The Code also provides that the court should consider the offender's ability to pay a fine or make restitution and may sentence a defendant to pay a fine only if such payment would not prevent the defendant from making restitution (2C:44-2 b and c).

Again, as in the case of the criteria for the imposition of sentences of imprisonment, there is no present statutory criteria for the imposition of fines, although present case law does contain criteria with regard to the imposition of monetary penalties similar to that found in the code.

### F.  Multiple Sentences

The Code retains the present general rule that multiple sentences run consecutively or concurrently at the discretion of the court. The Code, however, imposes the following limitations not found in current law on that discretion:

A term to a State penal or correctional institution and a term to a county institution shall run concurrently and both sentences shall be satisfied by service of the State term (2C:44-5 a(1) ).

The aggregate of consecutive terms to a county institution shall not exceed 18 months (2C:44-5 a(2) ).

The aggregate of consecutive terms shall not exceed the longest extended term authorized for the highest grade and degree of crime for which any of the sentences was imposed (2C:44-5 a(3) ).

Not more than one sentence for an extended term shall be imposed (2C:44-5 a(4) ).

Chapter 45 deals with suspension of sentence and probation.

Chapter 46 deals with the collection of fines. Both, with minor exemptions, follow present statutory and case law.

Chapter 58 concerns the licensing of firearms. Two major changes in current law are made in Chapter 58. First, under current law, persons convicted of any offense cannot obtain a permit to purchase a firearm. The Code enumerates the following specific offenses, conviction of which would be a bar to obtaining a permit: assault; robbery; theft; burglary; arson; a serious sexual offense; murder or kidnapping (see 2C:58-3c. (1) ).

Secondly, the Code would require that in order for a minor to use a firearm, he must obtain a license. Under current law, no such license requirement exists (see 2C:58-6).

Other changes found in Chapter 58 include:

The number of days for the period of consideration of an application for a permit to purchase or a firearms identification card has been extended from 10 days to 30 days for residents and from 15 to 45 days for non-residents (see 2C:58-3f);

The fee for a permit to carry a handgun was increased from $3.00 to $10.00 (see 2C:58-4d.); and

The Code shifts responsibility for investigation of applications to possess machineguns from the sheriff to the county prosecutor (see 2C:58-5).

Chapter 51 deals with the loss of rights (i.e., right to vote; right to hold office), which are incident to a conviction for a criminal offense. Chapter 51 also deals with such issues as the sealing of arrest records and the expungement of criminal records. Its provisions represent no significant change from existing law.

Chapter 62 sets forth the procedures to be followed in cases of willful nonsupport and follows existing law.

Chapter 64 concerns the procedures to be followed when contraband (i.e., illegal drugs) or other property (i.e., money resulting from gambling operations) is seized as the result of criminal investigations. These procedures basically follow existing law.

SENATE JUDICIARY COMMITTEE
STATEMENT TO
SENATE. No. 3203

# STATE OF NEW JERSEY

### DATED: JUNE 18, 1979

The following is a section by section outline of the provisions of Senate Bill No. 3203 as it was released by the Senate Judiciary Committee.

Section 1 adds the words "and dispositions" to 2C:1-1a (Rules of Construction) to clarify that, unless otherwise provided in the code, both the prosecution and disposition of offenses which occurred before the effective date of the code are governed by prior law.

Section 2 adds a new paragraph to 2C:1-2 (Prinicples of Construction) which states that no provision of the code shall be construed to limit the right to an appeal either by the defendant or, subject to the Federal and State Constitutions, by the State.

Section 3 and 4 of the bill clarify ambiguities concerning the effect of the code on those offenses not in Title 2A which have not been revised or replaced as a result of the enactment of the code.

Section 3 amends 2C:1-4 (Classes of Offenses) to provide that an offense established by statute other than the code which is classified as a misdemeanor and sets a possible penalty of imprisonment for 6 months or less, shall after the effective date of the code be classified as a disorderly persons offense.

Section 4 amends 2C:1-5 (Application of the General Provisions of the Code) to provide for the continuation of those penalties for offenses specifically set forth in statutes enacted apart from the code. Should the offense be classified as a misdemeanor but with no provision for a specific penalty, or with provisions for a specific penalty of above 18 months, it will be treated as a crime of the fourth degree after the effective date of the code. If the offense is classified as a high misdemeanor, the offense would be treated after the effective date of the code as crime of the third degree. The only exception to this scheme is in the case of drug offenses in Title 24, which will be discussed in section 81 of this bill.

Section 5 amends 2C:1-6 (Time Limitations) to provide that the statute of limitations will not run during the time a person is fleeing from justice. It establishes a 5-year statute of limitations for any civil action such as forfeiture brought under the provisions of the code. Also, 2C:1-6 is amended to permit the downgrading of indictable offenses to nonindictable offenses at any time so long as the prosecution commenced within the statute of limitations applicable to the indictable offense. Finally, section 5 deletes an erroneous reference to various sections of the code in 2C:1-6c.

Section 6 makes technical amendments to 2C:1-8 (Method of Prosecution When Conduct Constitutes More Than One Offense).

Section 7 amends 2C:1-13 (Affirmative Defenses). At present, 2C:1-13 provides that all affirmative defenses must be proven by "a preponderance of the evidence." In several other sections of the code, however, a different standard of proof for affirmative defenses is required. To clarify this discrepancy, section 7 inserts the phrase "or such other standard as specified in this code" to subsection b. of 2C:1-13. Also, section 7 adds a new subsection which requires that the burden of proof in any civil action commenced pursuant to the code shall be by "a preponderance of the evidence." Section 8 defines the term "offense" in 2C:1-14 (Definitions). This definition specifies that the code's procedural and sentencing provisions apply only to crimes, disorderly persons offenses, and petty disorderly persons offenses and not to such matters as motor vehicle violations or violations of municipal ordinances.

By committee amendment, language was added to 2C:1-14 specifying that wherever in the code, it is necessary to determine value in order to fix the degree of an offense, that value will be the fair market value at the time and place of act constituting the offense.

Section 9 amends 2C:2-12 (Entrapment) to state that the issue of entrapment shall be tried by the "trier of fact," not a "jury." Should this section remain in its present form, the issue of entrapment could only be tried by a jury and not by a judge sitting without a jury.

Section 10 amends 2C:3-7 (Use of Force in Law Enforcement) by deleting the words "physical injury" and inserting "bodily harm." The term "bodily harm," not "physical injury" is used throughout the code. This amendment is designed to attain consistency in terminology.

Section 11 amends 2C:3-11 (Definitions) by deleting the words "aggravated rape" and "aggravated sodomy" and substituting the correct code nomenclature "aggravated sexual assault" and "sexual assault."

As amended by the committee, sections 11A, 11B, 12, 13, 13A, 13B, 14, 15 and 16 make a series of amendments to Chapter 4 (Mental Responsibility). The purpose of these amendments is to clarify that mental disease or defect is not a separate defense apart from insanity but rather that evidence of mental disease or defect is admissible only to negate the mental element of the offense.

Section 17 amends 2C:5-2 (Conspiracy) to provide that even if the one or more objectives of a criminal conspiracy are not criminal acts (e.g., approval of a zoning ordinance), this shall not be a defense to a charge of conspiracy so long as other objectives of the conspiracy or the means of promoting these objectives are unlawful (e.g., bribery).

Also, section 17 amends 2C:5-2f. (2) on the issue of abandonment of a conspiracy. As the code now reads, abandonment of a conspiracy is presumed when no overt act in pursuance of the conspiracy occurs during the period covered by the statute of limitations. The amendment creates an exception to this rule for crimes of the first and second degree because no overt act is deemed necessary to find guilt for a conspiracy to commit such crimes.

Section 18 rewrites 2C:5-4 (Grading of Criminal Attempt and Conspiracy) for purposes of clarity. No substantive changes are made.

By committee amendment, a new section 18A was added to amend 2C:5-5 (Burglar Tools). The purpose of this amendment is to prohibit the publishing of plans or instructions dealing with the manufacture or use of any burglar tools when the intent of such publication is to facilitate the commission of criminal offenses. This amendment is aimed at certain sophisticated burglary tools known as "blue boxes," "black boxes," or "red boxes" which are used to defraud telephone companies.

Section 19 amends 2C:11-1 to make the definition contained therein applicable to Chapters 11 through 15 instead of 11 through 14. This change is necessary because in later amendments in this bill, Chapter 19 of the code the crime of robbery will be allocated to Chapter 15.

Section 20 makes a technical amendment in 2C:11-2 (Criminal Homicide).

Section 21 adds language to 2C:11-3 (Murder) to insure that the specific higher penalties provided in 2C:11-3, rather than the presumptive sentences found in Chapter 44 of the code, are applicable to the offense of murder. Section 21 also corrects an incorrect reference.

By committee amendments, the concept of murder under 2C:11-3 was expanded to include, in addition to those who "knowingly" or "purposely" cause, those individuals who "purposely" or "knowingly" cause serious bodily injury which results in death.

By committee amendments, a section 21A amending 2C:11-4 (Manslaughter) was added to the bill. The purpose of the amendment is to create a new offense of "aggravated manslaughter" when the accused causes death under circumstances manifesting extreme indifference to human life.

Section 22 makes a grammatical correction in the last paragraph of 2C:12-1 (Assault).

Section 23 rewrites 2C:13-1c (Kidnapping) to promote clarity and to insure that the higher specific penalty provided in 2C:13-1c., rather than the general presumptive sentence contained in Chapter 44, is applicable to kidnapping.

Section 24 amends 2C:13-3 (False Imprisonment). Presently, 2C:13-3 provides that it is an affirmative defense to a charge of false imprisonment when the person restrained was a person under 18 and the accused was a relative whose purpose was to assume control of the child. The amendment extends this affirmative defense to legal guardians.

Section 25 clarifies the language in 2C:13-4 (Interference With Custody). There are no substantive changes.

By committee amendments, new sections 26, 27, 27A amending Chapter 14 (Sexual Offenses) were added to the bill. Section 26 amends 2C:14-2 (Sexual Assault) to provide that an act of sexual penetration where the victim is less that 13 years old, no matter the age of the accused, constitutes aggravated sexual assault, a crime of the first degree. Section 26 also provides that an act of sexual penetration where the victim is at least 13 but less than 16 years old and the other party is at least 4 years older than the victim constitutes sexual assault, a crime of the second degree.

Section 27 amends 2C:14-3 (Criminal Sexual Contact) to provide that an act of sexual contact where the victim is at least 13 but less than 16 years of age and the accused is at least 4 years older than the victim constitutes criminal sexual contact, a crime of the fourth degree.

Section 27A adds a new section 2C:14-8 stating that nothing in Chapter 14 will be deemed as limiting the jurisdiction of juvenile and domestic relations courts with regard to sexual activities by teenagers under the Juveniles in Need of Supervision Act (P.L. 1973, c. 306, C. 2A:4-42 et seq.).

Section 28 reallocates "Chapter 19. Robbery" of the code to Chapter 15. The reason for this change is that it is considered more appropriate to place this offense in "Part 1. OFFENSES INVOLVING DANGER TO THE PERSON" rather than in "Part 2. OFFENSES AGAINST PROPERTY."

Section 29 makes a technical change in 2C:17-1 (Arson).

By committee amendment, a new section 29A was added to amend 2C:17-2 (Causing or Risking Widespread Injury or Damage). The purpose of this amendment was to specifically include the dumping or abandonment of hazardous waste among prescribed activities.

Section 30 amends 2C:17-3 (Criminal Mischief) by changing the language in the grading section for purposes of clarity.

Section 31 omits the present language of 2C:17-4 (Endangering Pipes Transmitting Certain Gases) and substitutes the language of the statute enacted by the Legislature in 1976 which deals with the matter.

Section 32 contains the present Chapter 19, Robbery. It is deleted and will become Chapter 15. Chapter 19 will now be "RESERVED."

Section 33 amends 2C:20-2 (Consolidation of Theft Offenses) to clarify that while Chapter 20 does consolidate theft by whatever means, any unrelated criminal acts embodied in different episodes or transactions are subject to separate prosecutions.

By committee amendment, "Horses" were included with property such as guns, boats and automobiles, theft of which, no matter the value, is automatically classified as a crime of the third degree.

Section 34 amends 2C:20-5 (Theft by Extortion), to require that theft by extortion be both "unlawful" as well as "purposely" in order to avoid prosecution of individuals who make legitimate demands.

Section 35 adds language to 2C:20-7 (Receiving Stolen Property), clarifying that the bringing of stolen property into New Jersey is among the activities prohibited.

Through committee amendments, a new section 35A amending 2C:20-10 (Unlawful Taking of Means of Conveyance) was added. The amendments are intended to clarify that "joyriding" is prohibited. By committee amendment, "Theft of Horses" was specifically among the activities proscribed by 2C:20-10. Through committee amendments, a new section 36B amending 2C:20-11 (Shoplifting) was added. The amendment is intended to restore the provision of present law allowing merchants to temporarily detain, with immunity from any criminal or civil liability, suspected shoplifters.

Section 36 deletes the text of 2C:21-6 (Credit Cards) and substitutes present Title 2A provisions dealing with credit card fraud, which are considered by law enforcement officials to be more complete and easier to enforce.

By committee amendment, a new section 36A was added amending 2C:31-7 (Deceptive Business Practices). The purpose of the amendment is to include specific language regulating the sale of kosher foods in the deceptive business practice section.

Sections 37, 38, 39, 40 and 41 amend 2C:21-9 (Misconduct by Corporate Official), 2C:21-10 (Commercial Bribery), 2C:21-11 (Rigging Publicly Exhibited Contest), 2C:21-13 (Fraud in Insolvency) and 2C:21-15 (Misapplication of Entrusted Property). These amendments are of technical nature and are intended to clarify the sentencing portions of those sections.

Section 42 amends 2C:21-19 (Wrongful Credit Practices) by setting the possible fine for criminal usury up to $250,000.00. Section 42 also adds nonprofit social and consumer counseling agencies to the lists of those persons not considered as "debt adjusters." This latter amendment is in accord with legislation enacted in 1979.

Sections 43, 44, 45 of the bill are blank.

Section 46, as amended by the committee, adds language in 2C:24-4 (Endangering Welfare of Children) clarifying that in addition to prohibiting children's participation

68

in pornographic films, permitting children to perform in a live exhibition or performance is prohibited by this section. Section 46 also makes several technical amendments to 2C:24-4.

By committee amendments, the scope of activities prohibited by 2C:24-4 was enlarged to encompass any sexual conduct which would impair or debauch the morals of a child by any person with a legal duty to care for the child or who has assumed responsibility for the child. Such persons would be guilty of a crime of the third degree. Any other person engaging in such conduct with a child under 16 would be guilty of a crime of the fourth degree. These amendments are intended to tie in with the amendments previously discussed in connection with Chapter 14.

Sections 47, 48, 49, 50, 51, 52 and 53 of the bill, as amended by the committee, rewrite and consolidate sections of Chapter 27 (Bribery and Corrupt Influence). After review by the Division of Criminal Justice, Chapter 27 was deemed to be so overly broad and duplicative. A literal reading of its provisions could result in criminal liability attaching to legitimate lobbying and political fund raising activities.

Section 54 amends 2C:28-1 (Perjury), to provide that "retraction" of a perjured statement is not a defense to a charge of perjury if the perjured testimony caused "irreparable harm to any party."

Section 55 amends 2C:28-2 (False Swearing) to make false swearing a crime of the fourth degree rather than a disorderly persons offense.

Section 56 is blank.

Section 57 amends 2C:29-2 (Resisting Arrest) for purposes of clarity.

Section 58 amends 2C:29-4 (Compounding) for purposes of clarity. There are no substantive changes.

By committee amendment, a section 58A was added amending 2C:29-5 (Escape). The purpose of the amendment is to make 2C:29-5 applicable to escapes by persons committed to mental institutions in connection with a criminal offense.

By committee amendment, section 60 which would have amended 2C:30-1 (Official Oppression), was deleted. The committee further found that 2C:30-1 was a duplicate of 2C:30-2 (Official Misconduct) and should be repealed (see section 147).

Section 61 amends 2C:30-2 (Official Misconduct), by removing the word "corrupt" since the phrase is not defined by the code, and since "corrupt" purpose is not an element required by existing case law in order to prove official misconduct.

Section 62 amends 2C:30-3 (Speculating or Wagering on Official Action), to clarify that a former public servant is liable under 2C:30-3 if he committed the unlawful acts while a public servant. The language change in the last paragraph was made for consistency and clarity.

Section 63 makes a technical amendment in 2C:33-1 (Riot). There is no substantive change.

Sections 64, 65 and 66 should be read together. Section 64 amends 2C:33-12 (Maintaining a Nuisance), by deleting the reference to section 2C:56-1. That section is marked "[RESERVED]" in the present code and the reference here is meaningless. Reference to 2C:33-12.1 had been inserted in its stead. Section 66 of the amendatory bill creates a new 2C:33-12.1 which provides a procedure for abating a nuisance after a conviction under 2C:33-12. Section 65 simply adds 2C:33-12.1 to the table of contents for Chapter 33.

By committee amendment, a new section 66A amending 2C:33-13 (Smoking in Public) was added to the bill. The purpose of this amendment is to clarify that

smoking in a public place is to be governed by the municipal ordinance or by the owner or person responsible for the operation of the public place and not by rule or regulations of an executive agency. The amendment would preclude enforcement of smoking regulations by an executive agency.

Section 67 which was deleted by committee amendment, would have amended 2C:34-1 (Prostitution) to include the prostitutes themselves among those guilty of the offense of living off the earnings of a prostitute. The committee felt that this offense should be reserved for pimps and others involved in prostitution operations in a managerial capacity.

By committee amendment, section 68 amends 2C:34-5 (Diseased Person Committing an Act of Sexual Penetration), to correct language defects and include correct code nomenclature.

Sections 69, 70 and 71 amend 2C:37-2 (Promoting Gambling), 2C:37-3 (Possession of Gambling Records), and 2C:37-4 (Maintenance of a Gambling Resort), respectively, in the same manner in the grading subsection of each. Present language has been deleted and new language added so that it will be absolutely clear that a custodial sentence may be given to a person convicted of a gambling offense as well as the specific fine provided for by these sections.

Also the committee amendments added language to 2C:37-3 establishing that an affirmative defense to a charge of possession of gambling records must be proven by "clear and convincing evidence," rather than by the lower standard "by a preponderance of the evidence."

Section 72 makes a technical amendment to 2C:37-8 (Gambling Offenses; Jurisdiction).

Sections 73, 74, 75, 76, 77, 78, 79 and 80 of the bill are blank.

Section 81 amends 2C:43-1 to clarify the legislative intent to preserve existing sentences under the "Controlled Dangerous Substances Act," P.L. 1970, c. 226. Since the general Title 2A authority for imposing sentences on misdemeanors and disorderly person offenses has been repealed, as well as the authority to impose "minimum-maximum" sentences under Title 2A, the intent is to retain the authority to impose the maximum sentences established under Title 24. Section 2C:43-1 embodies the only exceptions applicable to Title 24 offenses. Therefore, the section is designed to clarify that, while Title 24 maxima are to control, the sentences are to be imposed as are other sentences under the code (i.e., subject to definite terms, and not minimum-maximum sentences), and that the other provisions of the subtitle (regarding probation, revocation, fines, restitution, etc.) are to apply.

As amended by the committee, section 82 amends 2C:43-2 (Authorized Dispositions), to increase from 90 to 180 days the period of imprisonment to which a person convicted of a crime may be sentenced as a condition of probation. The 90-day period would be retained for disorderly person offenses. Also, by committee amendment, language was added to 2C:43-2 specifying that performance of community-related service is an authorized noncustodial sentence under the code and that where imprisonment is imposed the court shall state on the record its consideration of the defendant's eligibility for release under the law governing parole.

Section 83 amends 2C:43-3 (Fines and Restitutions), to provide for higher fines than those set forth in this section, if authorized by another code section or any other statute. The present language reads only "authorized by statute," so this amendment is for clarification.

Section 84 amends 2C:43-5 (Young Adult Offenders), to clarify that indeterminate terms are preserved under the code for "youthful offenders."

Section 85, as amended by the committee, clarifies that under the provisions of 2C:43-6 (Ordinary Terms of Imprisonment), a court may fix a term of parole ineligibility of up to one-half the custodial term imposed, provided that no defendant could be eligible for parole at a date earlier than that provided under the law governing parole.

Section 86, as amended by the committee, clarifies 2C:43-7 (Extended Terms of Imprisonment), in the same manner as section 85 does 2C:43-6 (Ordinary Terms of Imprisonment).

By committee amendment, a new section 86A amending 2C:43-9 (First Release of All Offenders on Parole) was added. The purpose of the amendment is to delete reference in 2C:43-9 to a separate parole term. Separate parole term was a concept included in the original draft of the code when it was advocated that all inmates become immediately eligible for parole upon incarceration. Since neither present statutes governing parole nor the pending Parole Act of 1979 envision immediate parole eligibility, the concept of a separate parole term is unnecessary.

Section 87 makes technical amendments to 2C:43-10 (Place of Imprisonment). No substantive changes are made.

Section 88 amends 2C:43-12 (Supervisory Treatment), to clarify that no person would be eligible for pretrial intervention if he was previously convicted of a criminal offense. Section 88 makes several other technical amendments.

Section 89 adds language to 2C:43-13 (Supervisory Treatment Procedure), indicating that the court has the authority to determine the length of the supervisory treatment periods.

Sections 90 and 91 amend 2C:43-15 (Presentation of Proposed Rules at Judicial Conference) and 2C:43-18 (Change or Cancellation of PTI Rules). The changes only delete incorrect language and substitute proper section references.

Section 92 amends 2C:43-21 (PTI Index and Reports), to indicate that no order of expungement or sealing will affect any entry in the index or registry of pretrial intervention information established by the Administrative Office of the Courts.

Section 93 amends 2C:44-1 (Criteria for Withholding or Imposing Sentence of Imprisonment), to permit the prosecution to appeal if a court imposes a noncustodial or probationary sentence for a first or second degree crime. By committee amendment, language was added to 2C:44-1 specifying that when imposing a sentence of imprisonment, the court shall consider the defendant's possible eligibility for parole. The other amendments in section 93 are of a technical nature.

Section 94 amends 2C:44-2 (Criteria for Imposing Fines and Restitutions), for the purpose of language clarification.

Section 95 amends 2C:44-3 (Criteria for Sentence of Extended Term of Imprisonment). As amended by the committee, new language was added to subsection a. of 2C:44-3 with regard to persistent offenders, one of the three categories of defendants eligible for extended terms.

The purpose of these amendments was to clarify that the defendant must be 21 at the time of the commission of the crime for which he is to be judged a persistent offender. Under the present language, it is unclear whether the 21 year age provision refers to the date of the crime or the date of sentencing. Language was also added to clarify the two previous convictions necessary to qualify an individual as a persistent offender, the latest of these convictions must be within 10 years of the crime for which the individual is now being sentenced or within 10 years of the date of the defendant's last release from confinement, whichever is later in time.

By committee amendment, language specifically stating that in order for an extended term to be imposed, the prosecuting attorney must make application to the sentencing court was also added to 2C:44-3.

Section 96 basically rewrites 2C:44-4 (Definition of Prior Conviction), for purposes of clarity. There is, however, a significant change in that a conviction in another jurisdiction would constitute a prior conviction of a crime if a sentence of imprisonment in excess of 6 months was authorized.

Section 97 corrects an incorrect cross reference in 2C:44-5 (Multiple Sentences).

Section 98 amends 2C:45-1 (Conditions of Suspension or Probation), to provide payment of a fine as one of the conditions that may be imposed when a court orders suspension or probation. The committee also amended section 98 to reflect the earlier amendments made to section 82.

By committee amendment, language was added to 2C:45-1 indicating that a court may impose community service as a condition of probation.

Section 99 amends 2C:45-2 (Revocation of Probation). The amendment responds to the concern that the power to resentence to a term of imprisonment, following probation revocation, is too restrictive under the code.

By committee amendment, a sentence of imprisonment could always be imposed on revocation, but language was added to 2C:45-2 providing that no revocation of suspension or probation shall be based on failure to pay a fine or make restitution unless such failure was willful.

Sections 101, 102, and 103 are amendment to the titles of 2C:47-1, 2C:47-2 and 2C:47-3, which relate to the Adult Diagnostic and Treatment Center. Section 100 shows these changes in the table of contents for Chapter 47.

Section 104 and 105 correct language omissions in 2C:47-7 and 2C:48-2.

By committee amendment, a new section 104A amending 2C:48-1 (Composition of the Criminal Disposition Commission). The purpose of the amendment is to include the chairman of the State Parole Board or his designee on the Criminal Disposition Commission.

Section 106 amends 2C:51-3 (Voting and Jury Service). This section currently provides for the disqualification of persons convicted of crimes from voting and jury services. The amendment would remove the substantive language from the code and provide that these matters be governed by the laws concerning elections and jury service, R.S. 19:4-1 and N.J.S. 2A:69-1, respectively.

Sections 107 through 139 contains a new Chapter 52 dealing with expungement. The chapter developed by the Division of Criminal Justice spells out an equitable system of expungement of indictable and nonindictable offenses as well as of arrest records. The chapter provides for a practical administrative procedure within the Division of State Police which requires isolation of expunged but not obliteration of same. Certain uses of expunged records, such as use by the Parole Board and the Department of Corrections, would be specifically authorized. To offset the administrative costs inherent in the expungement process, a fee up to $30.00 would be charged. The original code provisions would be repealed.

By committee amendment, a new Chapter 65 was added to the code in section 140. Chapter 65 establishes uniform procedures for disposition of stolen property and other documentary exhibits as evidence in criminal cases. One of the main objectives of the chapter is to provide a mechanism whereby stolen property may be returned to its rightful owner prior to the termination of the criminal case in which the property is evidence.

Sections 141, 142, 143 and 144 are blank.

72

Section 145 amends section 2C:98-2, the repealer section. This section lists all the statutes in Title 2A that are repealed by the code. The amendments remove several statutes from the repealer and place them in 2C:98-3, which saves them from repeal. The sections thus saved from repeal are:

(1)   N.J.S. 2A:127-4 makes it a misdemeanor for a person to have a short wave radio operating on frequencies assigned for fire, police, municipal or other governmental uses unless a permit has been issued therefor by the police. Fire, police and governmental officials are excepted.

(2)   N.J.S. 2A:151-10 makes it a misdemeanor to offer, sell, lend, lease or give to a person under 18 years of age any firearm, grenade, bomb or other exposive, or the components thereof, or a pistol from which a loaded or blank cartridge may be fired, or loaded or blank cartridges. There is an exception for the minor to borrow a firearm, with his parents' consent, for purposes set forth in N.J.S. 2A:151-11.

(3)   N.J.S. 2A:151-11 makes it a misdemeanor or act of juvenile delinquency for any person under 18 years of age to purchase or acquire any firearm, grenade, bomb or other explosive, or the components thereof. There are various exceptions to permit the juvenile to carry, fire or use any firearm in the presence or under the supervision of his parent or guardian, or of a person who holds a permit to carry or a firearms identification card. The exceptions apply when the juvenile uses the firearm for military drill target shooting, or hunting, if he has completed a hunter's safety course, and has a valid hunting license.

(4)   N.J.S. 2A:164-24 provides the formula for good time credit against sentence for prisoners committed to any county jail or penitentiary. The formula cannot exceed 1 day for every 6 days of sentence.

(5)   N.J.S. 2A:169-3 gives any constable or police officer the power to arrest without warrant, any person committing a disorderly persons offense in such constable or officer's presence.

(6)   Laws of 1960, c. 24 (C. 2A:166A-1 to C. 2A:166A-4 both inclusive) provide for reimbursement to counties for criminal prosecution expenses in connection with the commission of a capital offense by a person while confined to a State penal or correctional institution located in the county. [These sections are currently in both the repealer and thus saved from repeal sections of the code. The New Jersey Budget for Fiscal Year 1979-1980 appropriates $25,000.00 for this compensation. Therefore the statutes should be saved from repeal.]

(7)   Laws of 1955, c. 254 (C. 2A:171-1.1 and C. 2A:171-1.2 both inclusive). C. 2A:171-1.1 makes it a disorderly persons offense to buy, sell or trade new or used motor vehicles on Sunday and provides penalties for violations. C. 2A:171-1.2 is the definitions section for C. 2A:171-1.1.

(8)   Laws of 1959, c. 119 (C. 2A:171-5.8 to C. 2A:171-5.18 both inclusive). These are the "Sunday Closing Laws" passed in 1959. The law, although effective immediately upon enactment, did not become operative in any county until the voters of the county determined by referendum that it should apply therein. These statutes must be distinguished from the Laws of 1958, c. 138 (C. 2A:171-5.1 to C. 2A:171-5.7 both inclusive) which, although not specifically repealed by the 1959 statutes, are now repealed in the code.

Section 146 amends section 2C:98-3, the "saved from repeal" section. Except for (6), items (1) through (8) listed in the section 145 amendments above, are incorporated by amendment into section 2C:98-3. Item (6) is already in section 2C:98-3.

In addition, three other groups of statutes are being put into section 2C:98-3. They are:

(1)  Laws of 1975, c. 183 (C. 2A:170-20.11 and C. 2A:170-20.12). The first section requires certain information to be disclosed by telephone solicitors for contributions. The law covers solicitations on behalf of charitable and noncharitable organizations. The second section makes violation a disorderly persons offense.

(2)  Laws of 1977, c. 215 (C. 2A:170-77.16 to 2A:170-77.18 both inclusive. These statutes are the so-called "term paper" statutes. Although they are now in Title 2A, the violations section specifically states that anyone convicted of violating any provision "shall be guilty of a civil offense." A fine can be levied up to $1,000.00, and there are provisions for injunctive relief.

(3)  Laws of 1975, c. 182 (C. 2A:170-90.3 to C. 2A:170-90.5 both inclusive). These statutes deal with execution against or "garnishment" of earnings. The first section contains the definitions. The second section states that no employer can discharge any employee or take any other disiciplinary action because the employee's earnings have been garnished. The third section makes violation a disorderly persons offense.

Section 147 repeals the following seven statutes:

(1)  2C:27-8 dealing with selling or political endorsements. This section was found to be duplicative and unnecessary under the revision of Chapter 27, as proposed by the Division of Criminal Justice.

(2)  2C:30-1 (Official Oppression). The rationale for repeal of this section is discussed in connection with the deletion of section 60 of this bill.

(3)  N.J.S. 2C:47-6. This section provides that no statute relating to remission of sentence by way of commutation time for good behavior and for work performed, shall apply to any person sentenced to the Adult Diagnostic and Treatment Center. It also requires that provision be made for monetary compensation in lieu of remission of sentence for work performed, in an amount established by the Commissioner of Corrections. The Department of Corrections believes that inmates sentenced to the Adult Diagnostic and Treatment Center should receive communtation credits.

(4)  N.J.S. 2C:51-4. This section dealing with expungement and sealing of records is being replaced by the new Chapter 52.

(5)  N.J.S. 2C:58-6. This section provides for limited licenses to carry firearms by minors. It is being replaced by the transfer of N.J.S. 2A:151-10 and 2A:151-11 from 2C:98-2 (repealer) to 2C:98-3 (saved from repeal).

(6)  N.J.S. 2C:58-11. The provisions of this section concerning property rights in weapons and forfeiture of weapons are covered in Chapter 64 of the present code.

(7)  P.L. 1970, c. 226, s. 28 (C. 24:21-28). The provisions of this section concerning the expungement of records of arrest, trial and conviction for violations of the "New Jersey Controlled Dangerous Substances Act" by any person 21 years of age or younger at the time of the offense, would now be covered in the new Chapter 52.

## ASSEMBLY JUDICIARY, LAW, PUBLIC SAFETY AND DEFENSE COMMITTEE

### STATEMENT TO
## ASSEMBLY, No. 3279

#### with Assembly committee amendments

# STATE OF NEW JERSEY

### DATED: June 28, 1979

This bill amends and supplements the Code of Criminal Justice (Title 2C of the New Jersey Statutes) to effect changes and additions deemed necessary for enactment to become effective on September 1, 1979, the effective date of the code. The bill, as presented to the Assembly Judiciary, Law, Public Safety and Defense Committee, represents a consensus, on changes and additions, by participating staff representatives of the offices of the Governor, the Attorney General, the Public Advocate and Legislative Services. The bill is the product of months of intensive study and review and reflects the input of literally hundreds of individuals and of all components of New Jersey's criminal justice system.

After signing the New Jersey Code of Criminal Justice in August, 1978, Governor Byrne, recognizing the need for the development of a systematic approach regarding implementation, appointed a coordinating committee, chaired by the Attorney General, to implement the Penal Code. The judiciary, county prosecutors, defense attorneys, police officers, corrections and probation officers, educators and members of the general public are represented on the committee.

The primary function of the Penal Code Implementation Committee has been to use the 13-month period between the enactment date of the code and the effective date of the code, September 1, 1979, to insure the proper education of all members of the criminal justice community with respect to the code and its impact.

As a result, police officers, prosecutors, judges, defense attorneys, corrections and probation officers and representatives of all other inter-related and supporting criminal justice agencies have been and are now in the process of being thoroughly educated with respect to the code. This massive educational program is a cooperative effort by all involved. As of May 23, 1979, the Attorney General reported to the Assembly Judiciary, Law, Public Safety and Defense Committee that "The progress to date has been excellent. At present, all of New Jersey's county prosecutors have been trained. The judiciary is now completing its initial training course for all Superior Court Judges."

Approximately 10,000 State, county and municipal police officers have received the required Penal Code training. Municipal court judges, probation and correction officers and members of the defense bar will have received basic Penal Code training prior to June 30, 1979. Thus, to date, an estimated 12,000 individuals have received Penal Code training, and by the summer, all necessary implementation training will have occurred.

One of the key components of this program has been the feedback from the participants. The 13-month period has allowed for a continuous review and discussion of the contents of the Penal Code by the literally thousands of individuals in the criminal justice community. All segments of this community have been able to report on how various aspects of the code might affect them. This process greatly assisted the drafters of this bill in identifying problems and solutions, in creating these consensus amendments to the Penal Code.

This period has also been used by the Assembly Judiciary, Law, Public Safety and Defense Committee in its review of the code, and of the proposed bills to amend the code. Information has been received from all sectors of the criminal justice system. For the past 2 months, the committee has held public hearings and committee meetings to deal with the proposed Penal Code amendments. The committee's review has been extensive and intensive. The following parts of this statement deal section by section with the proposed bill, as amended by the committee.

The Assembly Judiciary Committee amendment to the title reflects the proposed repeal of two additional sections of the code.

Section 1 adds the language "and dispositions" to section 2C:1-1 to cover the situations where offenses occurring before the effective date of the code are disposed of after that date. Unless otherwise provided in the code, the prior law will govern the prosecution and disposition of these offenses.

Section 2 adds a new paragraph to 2C:1-2 stating that nothing in the code is intended to limit the right of a defendant and, subject to the Federal and State Constitutions, the right of the State to appeal.

Sections 3 and 4 amend sections 2C:1-4 and 2C:1-5 to clarify ambiguities concerning the impact of the code on noncode offenses, in particular those offenses not in Title 2A which have not been revised or replaced as a result of the code. Section 2C:1-4 is amended to state that an offense outside the code which is classified as a misdemeanor but provides a penalty of 6 months imprisonment or less shall be now classified as a disorderly persons offense.

Section 2C:1-5 is amended to provide that the penalties for noncode offenses shall be continued as specified in the noncode statutes. However, if a noncode offense is classified as a misdemeanor but with no provision for a specific penalty or with a maximum penalty of more than 18 months of imprisonment, the provisions of section 2C:43-1b. shall apply, which makes it a crime of the fourth degree. Also, if the offense is classified as a high misdemeanor, with no specific penalty, it becomes a third degree crime. Title 24 drugs offenses are an exception to these rules, discussed in section 81 of this bill.

Section 5 amends section 2C:1-6 to provide that the statute of limitations does not run while a person is a fugitive. The section also establishes a 5-year statute of limitations for those civil actions (such as forfeiture) in the code. Section 5 also amends 2C:1-6 to permit downgrading of indictable offenses to nonindictable offenses at any time as long as the case was commenced within the statute of limitations applicable to the indictable offense. Finally, the section deletes erroneous references to various sections of the code.

Section 6 amends section 2C:1-8 by inserting the word "criminal" in subsection b. The Assembly Judiciary Committee amendment relocates the words "criminal" so that the section is easier to understand.

Section 7 amends section 2C:1-13 regarding affirmative defenses, adding "or other standard specified in this code" to the general rule that affirmative defenses must be proven by "a preponderance of the evidence." This amendment is necessary because the code requires certain defenses to be proven by a standard other than by "a preponderance of evidence." Section 6 also adds a new subsection to section 2C:1-13 which states that the burden of proof in any civil action commenced pursuant to the code shall be by "a preponderance of the evidence."

Section 8 provides a definition of "offense" to section 2C:1-14. This would make it clear that the code's procedural and sentencing provisions apply only to "crimes, disorderly persons offenses and petty disorderly persons offenses." The section also defines "county court" in accordance with recent constitutional changes. The

76

Assembly Judiciary Committee amendment adds another new definition to the list of general definitions, to help clarify those sections where it is necessary to determine the value of something.

Section 9 amends section 2C:2-12 to state that the issue of entrapment shall be tried by the "trier of fact," not a "jury." If this section is not amended the issue of entrapment could only be tried by a jury, and not by a judge sitting without a jury.

Section 10 amends section 2C:3-7e.(2) by deleting the words "physical injury" and inserting "bodily harm." "Bodily harm" is used throughout the code; "physical injury" is not. The amendment is for consistency in terminology.

Section 11 amends section 2C:3-11d. In that section, as it now reads, there is a reference to "aggravated rape or aggravated sodomy." These words are no longer defined or used in the code and the amendment would substitute the new, correct language of "aggravated sexual assault or sexual assault."

New section 11A and 11B have been added by Assembly Judiciary, Law, Public Safety and Defense Committee amendments, to amend 2C:4-1 and 2C:4-2. Insanity is made an affirmative defense, to be proven by a preponderance of the evidence. Mental disease or defect is an ordinary defense, that can be used to negate the mental state requirement of an offense, if the defendant offers evidence to overcome the presumption that a person is of sound mind and intends the natural consequences of his acts. The amendments to sections 12, 13, 14, 15 and 16 and new sections 13A and 13B amend 2C:4-3 through 2C:4-8 in order to make consistent this distinction between the affirmative defense or insanity and the ordinary defense of mental disease or defect. Mental Incompetence replaces Mental Disease or Defect as the name for lack of capacity to proceed to trial. The Assembly Judiciary Committee amendment allows for the appearance of the prosecutor at any commitment proceedings for a person found not guilty by reason of insanity.

Section 2C:4-4 is amended to make clear that there need not be a jury in all cases, including indictable cases, if the defendant waives his right to jury trial.

Section 2C:4-9 is amended to comport with the Supreme Court's opinion in *State v. Krol,* 68 N.J. 236 (1975).

Section 17 amends section 2C:5-2 to make clear that it is not a defense to a charge of conspiracy that one or more of the objectives of a conspiracy is not criminal (e.g., approval of a zoning ordinance), provided that the objectives or the means of promoting an objective are criminal (e.g., bribery). Section 2C:5-2f.(2) is amended to eliminate first and second degree crimes from the presumption of abandonment of conspiracy. In general, abandonment of conspiracy is presumed if no avert act in pursuance of the conspiracy occurs during the statute of limitations period. However, since no overt act is necessary in conspiracy to commit crimes of the first or second degree, an exception is made for them.

Section 18 amends section 2C:5-4 by rewriting subsection a. The amendatory language puts an attempt or conspiracy to commit a crime of the first degree in the beginning and then combines the language of subsections a.(1) and a.(2) into one sentence. The title of the section is also amended to delete "Multiple Convictions Barred" because that subject matter is no longer covered in this section. These changes are for clarity.

Section 18A is added by the Assembly Judiciary Committee to amend 2C:5-5. The amendment prohibits publication of plans or instructions dealing with the manufacture or use of burglar tools where the intent is to facilitate criminal offenses. In particular, the amendment covers situations where underground tele-communications specifications, "black boxes" and "blue boxes," are published and used to defraud telephone companies.

Section 19 amends section 2C:11-1 so that the "Definitions" subsection refers to Chapters 11 through 15, not 11 through 14. This is necessary because the crime of robbery will become Chapter 15 instead of being Chapter 19, as now in the code.

Section 20 is simply a grammatical change in section 2C:11-2.

Section 21 contains a technical reference change in section 2C:11-3a. More importantly it adds language in subsection b. that provides that the sentences for murder shall be as set forth in that subsection notwithstanding the presumptive sentences set forth in section 2C:44-1f. Without this change it can be argued that murder could not carry a sentence of more than 15 years, as provided in section 2C:44-1f. The Assembly Judiciary Committee amendments clarify the culpability necessary for murder, and comport the section with, and thereby perpetuates, current case law. They also add a new first degree offense, aggravated manslaughter, when an actor, not knowingly or purposely, causes death under circumstances manifesting extreme indifference to human life.

Section 22 amends section 2C:12-1 only by a grammatical change in the last paragraph, and the Assembly Judiciary Committee amendment corrects a spelling error.

Section 23 amends section 2C:13-1c. The subsection is rewritten to put the more serious degree of crime for kidnapping first. It also includes the same saving provision as in the murder statute so that the 15 to 30 year sentence can be read in harmony with the presumptive sentences called for in section 2C:44-1f.

Section 24 amends section 2C:13-3 by adding the words "or legal guardian." This change would now make section 2C:13-3 consistent with section 2C:13-4, making it an affirmative defense to false imprisonment that the accused was a legal guardian, or a relative, attempting to assume legal control of a person under 18.

Section 25 only cleans up language in various parts of 2C:13-4. There are no substantive changes.

Section 26 amends 2C:14-2. The Assembly Judiciary Committee amendments to 2C:14-2 (sexual assault) should be read in combination with the Assembly Judiciary Committee amendments to 2C:24-4 (Endangering Welfare of Children) (see below, section 46). And both section should be read in the light of 2A:4-42 et seq., the law governing juvenile delinquents and juveniles in need of supervision, which is specifically reaffirmed in 2C:14-2. The Assembly Judiciary Committee amendments, raise the general age of consent to 16, and provide a more comprehensive defintion of illegal sexuality with children under 13. If either of the participants in an act of "consensual" sexual penetration is under 13, then there is liability for aggravated sexual assault. No specified age difference between the participants is required. If the victim of such a "statutory rape" is between 13 and 16, and the actor is at least 4 years older, then the actor is liable for sexual assault. If the victim of a "statutory rape" is between 16 and 18 and the actor is a supervisory member of the victim's household, the actor is liable for sexual assault. If the victim of an act of "consensual" sexual contact is less than 13, and the actor is at least 4 years older, then the actor is liable for sexual assault. If the victim of an act of "consensual" sexual contact is between 13 and 16, and the actor is at least 4 years older, then the actor is liable for criminal sexual contact. Aggravated sexual assault is a first degree crime; sexual assault is a second degree crime; criminal sexual contact is a fourth degree crime. The amendments set a minimum age of 13, below which any act of sexual intercourse is criminalized. They also set a general age of consent of 16 with at least a 4-year age difference required for prosecution of sexual intercourse with a victim between 13 and 16, and a 4-year age difference required for prosecution of any sexual contact with a victim up to 16. In special cases, the age of consent is set at 18.

78

The amendments to 2C:24-4 (section 46 below) broaden the coverage of the law prohibiting what was formerly called, "contributing to the delinquency of a minor." The amendments broaden liability to "any person" who engages in the prohibited behavior, and specifically lists "sexual conduct which would impair or debauch the morals of the child" as prohibited behavior. Socially unacceptable sexual conduct between a person over 16 and a person under 16, which may not otherwise be covered by 2C:14-2 or 2C:14-3, would be covered by this section, and would be a third or fourth degree crime.

In specifically reaffirming 2A:4-42 et seq., the amendments point to another statute which prohibits juvenile sexuality and to the noncriminal disposition of cases involving defendants under 18 year of age. Where there is a violation of 2C:14 or 2C:24, in every case where the defendant is less than 14, and in all but exceptional cases where the defendant is betwen 14 and 18, the defendant may be adjudged a delinquent, rather than guilty of a crime. Delinquency proceedings are "quasi-criminal," are handled by the Juvenile and Domestic Relations Court, and the law provides a wide variety of possible dispositions (2A:4-61). This same statute also allows for Juvenile and Domestic Relations Court jurisdiction over juveniles in need of supervision (J.I.N.S.). The law provides for a noncriminal, essentially "civil," judicial disposition of cases involving juvenile "immorality" or "deportment which endangers the juvenile's own morals, health or general welfare." These provisions cover socially unacceptable sexual behavior involving persons under 18 years of age which might not be covered by 2C:14 or 2C:24. The provisions also allow for a less punitive treatment of juvenile sexuality than a delinquency, or possibly criminal, proceeding.

With these several amendments, the Assembly Judiciary Committee has addressed the public concern with statutory prohibition of socially unacceptable juvenile sexuality and has attempted to fill the gaps in law. These amendments are a result of several public meetings, at which representatives of numerous public groups and government agenices were consulted. The amendments to 2C:14 and 2C:24 are an attempt to address the legitimate concerns of all the parties, and they provide a more comprehensive coverage of the subject than existing law, and the existing code. The provisions of 2C:14 and 2C:24, as amended have the support of the New Jersey Catholic Conference, which supports the idea of not condoning juvenile sexuality, but at the same time not criminalizing it.

Section 27 has been deleted and will be marked "Blank" on the printed bill.

Section 28 relocates "Chapter 19. Robbery" as Chapter 15 in the code. The reason for this change is that robbery ought more reasonably be placed in "PART 1. OFFENSES INVOLVING DANGER TO THE PERSON" than in "PART 2. OFFENSES AGAINST PROPERTY." The only change in the chapter is the addition of the words "to be included in the phrase" in subsection a.(3). There is no substantive change.

Section 29 only adds an "or" after 2C:17-1a.(1). The Assembly Judiciary Committee amendments make one spelling and one grammatical change.

In Section 29A the Assembly Judiciary Committee amendments to 2C:17-2 add hazardous wastes and toxic pollutants to the list of harmful or destructive substances, the unlawful release or abandonment of which is made a second degree crime.

Section 30 amends section 2C:17-3 by changing the language in the grading section for clarity.

Section 31 deletes section 2C:17-4 as it now appears in the code. It is rewritten to set forth the amendments to the present law dealing with the matter that were passed by the Legislature in 1976.

Section 32 contains the present Chapter 19, Robbery. It is deleted out and will become Chapter 15. Chapter 19 will now be "BLANK."

Section 33 amends section 2C:20-2 to make clear that unrelated criminal acts embodied in different episodes or transactions are subject to separate prosecutions. There is a further amendment in subsection b.(3) dealing with grading. It only changes language for clarity. The Assembly Judiciary Committee amendment adds horse theft to the list of third degree crimes.

Section 34 amends section 2C:20-5 to require that theft by extortion be both "unlawful" as well as "purposely" in order to avoid the possibility of prosecution of individuals who make "lawful" demands.

Section 35 amends section 2C:20-7 to reincorporate into the code the provisions of N.J.S. 2A:119-2 and thereby clarify that it is a crime to knowingly bring stolen property into this State. The Assembly Judiciary Committee amendment makes a minor grammatical change.

In section 35A, the Assembly Judiciary Committee amendments to 2C:20-10, clarifying that joyriding is a disorderly persons offense, and add horses to the list of specified "means of conveyance," the temporary taking of which is an offense.

In section 35B the Assembly Judiciary Committee amends 2C:20-11, the shoplifting section, to restore present law, and to provide guidelines for the detention and arrest of suspected shoplifters. This amendment outlines a three-step process in cases of suspected shoplifting: the initial detention of a suspect, the arrest of a suspect, the subsequent detention of an arrested suspect. A key provision is that a merchant has an immunity from criminal and civil liability for detaining or arresting a suspect if the merchant has probable cause for the detention or arrest and acts reasonably in the course of the detention. The merchant has, thus, a conditional immunity in such cases, dependent upon his behaving as a reasonable man under the circumstances.

Section 36 amends section 2C:21-6 which is entitled "Credit Cards." The amendatory language follows closely the language of the present law found in N.J.S. 2A:111-40 et seq., which is considered more complete and easier to enforce.

In section 36A the Assembly Judiciary Committee amends 2C:21-7, on deceptive business practices, to specifically prohibit the sale of food falsely represented as kosher.

Sections 37, 38, 39, 40 and 41 amend sections 2C:21-9, 2C:21-10, 2C:21-11, 2C:21-13 and 2C:21-15 respectively. There is an amendment to each section dealing with the amount of benefit necessary for each degree of crime. The amendments are technical and for clarity purposes. There is an additional amendment to section 2C:21-11d. The word "not" appears in that section, obviously inadvertently, but its presence makes the whole section inoperative. The word "not" is being deleted.

Section 42 amends section 2C:21-19. There are two amendments. The first, in subsection 2C:21-19b, deletes the language "and may be subject  to a fine not to exceed $25,000.00." The offense proscribed here is a second degree crime and there is no sound reasoning to limit the fine for criminal usury to $25,000.00. The Assembly Judiciary Committee amendment raises the limit of possible fines to $250,000.00, above the usual $100,000.00 limit for the second degree crimes. This is in consideration of the fact that usury is a monetary crime, sometimes involving large amounts of ill-gotten gains, and it is necessary, in order to achieve the desired deterrent and other appropriate effects of sentencing, to allow the court to impose a fine commensurate with the amounts involved in the crime.

The second amendment is to subsection 2C:21-9f. The words "a nonprofit social service or consumer credit counseling agency" are added to the list of persons not included as "debit adjusters" for the purpose of the section. The amendment is is accord with the language of P.L. 1979, c. 16.

Sections 43, 44 and 45 have been deleted and will be marked "Blank" on the printed bill.

Section 46 amends section 2C:24-4. The Assembly Judiciary Committee amendments to subsection a. are designed to reinstate those aspects of repealed sections 2A:96-3 and 2A:96-4, on debauching or impairing the morals of a child under 16 and contributing to the delinquency of a child, which were not covered by 2C:24-4 as initially enacted. The key provision is in expanding liability under this section from supervisors, of children under 16, to any person who deals with a child under 16. These provisions are intended to be read along with the amendments to 2C:14.

The Assembly Judiciary Committee amendments to subsection b. do two things. Some language is omitted which was felt to be vague, unnecessary surplusage, and other language is inserted which would clarify that using a child in a live sex show is a second degree crime.

In section 46A, the Assembly Judiciary Committee amendment deletes the provisions of 2C:24-6, unlawful adoptions, and refers to the provisions of Title 9 which govern the subject. N.J.S. 9:3-39 and 9:3-54, which prohibit adoptions without legal authority and adoptions for consideration, was adopted in 1977, and the provisions of 2C:24-6 were considered to be duplicative and unnecessary.

Section 47 amends section 2C:27-1. The language change in the first line is purely a form matter. The other change, in subsection 2C:27-1a., amends the definition of "benefit" to include "pecuniary benefit" to avoid any argument that a "pecuniary benefit" is not a "benefit" given the different use of the terms in Chapters 27 through 30.

Section 48 amends section 2C:27-2. By amendment, receipt of unauthorized benefits as a public official is made illegal with respect to ministerial as well as discretionary acts. There are other amendments but only as to language for consistency and clarity. There are no other substantive changes. The Assembly Judiciary Committee amendments are as to language for consistency and clarity.

Section 49 amends section 2C:27-3 with a punctuation change and the addition of an "or." The Assembly Judiciary Committee amendments make some minor language change, and delete subsection (4) as being vague, overbroad and substantively covered by other sections of 2C:27.

Sections 50, 51, 52 and 53 amend sections 2C:27-4, 2C:27-6, 2C:27-7 and 2C:27-8 respectively, for consistency and clarity. The Assembly Judiciary Committee amendments are of two kinds. Some are for consistency and clarity. Others are to delete certain sections which, upon review by the Division of Criminal Justice, were found to be vague, overboard and unnecessary, as their substance is covered by other sections of 2C:27. The deleted sections might have been read as prohibiting legitimate lobbying activities and political contributions.

Section 54 amends section 2C:28-1. That section, governing perjury, is amended to provide that "retraction" of a perjurious statement is not a defense to a charge of perjury if the perjured testimony caused "irreparable harm to any party." For example, if the statute of limitations runs or a witness disappears before a matter can be presented to a grand jury, there would be irreparable harm. Similarly, if after the defendant testifies and the case is "closed" or submitted to the jury, irreparable harm would result.

Section 55 amends section 2C:28-2. The change would make false swearing a crime of the fourth degree, not a disorderly persons offense.

Section 56 has been deleted and will be marked "Blank" on the printed bill.

Section 57 amends section 2C:29-2. The language changes are only for clarity and there is no substantive change.

Section 58 amends section 2C:29-4. The changes are only for consistency and clarity and there are no substantive changes.

In section 58A the Assembly Judiciary Committee amends 2C:29-5, on escape, to criminalize an escape by a person civilly committed after being found not guilty by reason of insanity, mental disease or mental defect.

81

Section 59 amends section 2C:29-6 by adding the words "an institution" in subsection a. This would enable this section to cover institutions other than detention facilities, e.g., mental hospitals.

Section 60 has been left blank by Assembly Judiciary Committee amendment, as its original subject matter, 2C:30-1, has been repealed in section 147.

Section 61 amends section 2C:30-2. The amendment deletes the word "corrupt" since that phrase is not defined by the code, is not required by existing case law and need not be an element of the offense given the elements required by subsections a. and b. There is also a language amendment to the last paragraph of this section made for consistency and clarity.

Section 62 amends section 2C:30-3 to make clear that a former public servant is liable under this section if he committed unlawful acts while a public servant. There is also a language amendment to the last paragraph of this section made for consistency and clarity.

Section 63 amends section 2C:33-1. The amendment is to subsection b. and changes the language from four to five persons. This seems consistent with the provisions of subsection a. which speaks of a person who participates with four or more others. That makes the basic number five and so it should be in subsection b.

Section 64, 65 and 66 must be read together. Section 64 amends section 2C:33-12 by deleting the reference to section 2C:56-1. That section is marked "RESERVED" in the present code and the reference is a nullity in this section. Section 2C:33-12.1 has been inserted in its stead. As written in section 66 of the amendment bill it creates a new section, 2C:33-12.1. It would provide a procedure for abating a nuisance after a conviction under section 2C:33-12. Section 65 simply adds new section 2C:33-12.1 to the table of contents for Chapter 33.

By committee amendment, a new section 66A amending 2C:33-13 (Smoking in Public) is added. The purpose of this amendment is to clarify that smoking in a public place is to be governed by the municipal ordinance or by the owner or person responsible for the operation of the public place.

Section 67 has been left blank by Assembly Judiciary Committee amendment, as it was decided to leave 2C:34-1 intact.

Section 68 amends section 2C:34-5 by deleting "or deviate sexual intercourse." That phrase is not defined in the code and should not remain in this section. The Assembly Judiciary Committee amendments, in turn, substitute the phrase "sexual penetration" for "sexual intercourse," as the former phrase is defined by the code, while the latter phrase is not.

Sections 69, 70 and 71 amend section 2C:37-2, 2C:37-3 and 2C:37-4, respectively, all in the same manner in the grading subsections. Present language has been deleted new language added so that it will be absolutely clear that a custodial sentence may be given to a person convicted of a gambling offense as well as a fine as provided for by the sections. The Assembly Judiciary Committee amendments to 2C:37-3, Possession of Gambling Records, raise, from a preponderance of the evidence to clear and convincing evidence, the burden of proof a defendant must meet to prove that records in his possession, of a kind commonly used in illegal gambling activities, were not in fact part of illegal gambling activities.

There are further amendments to section 2C:37-3 that provide that certain defenses to gambling charges need only be proven by the defendant by a preponderance of the evidence. These are in 2C:37-3b. (1) and (2).

Section 72 amends section 2C:37-8 and deletes "County" and substitutes "Superior" for the forum where offenses under Chapter 37 shall be tried.

Sections 73, 74, 75, 76, 77, 78, 79 and 80 have been deleted and will be marked "Blank" on the printed bill.

Section 81 amends section 2C:43-1. This section classifies crimes into various degrees. The first amendment to it incorporates the exceptions made by amendments to sections 2C:1-4c. and 2C:1-5b. in the code. The other amendment clarifies the legislative intent to preserve existing sentences under the "Controlled Dangerous Substances Act," P.L. 1970, c. 226. As the general Title 2A authority for imposing sentences on misdemeanors and disorderly persons offenses has been repealed as well as the authority to impose "minimum-maximum" sentences under Title 2A, Section 2C:43-1 is intended to retain the authority to impose the maximum sentences established under Title 24. Section 2C:43-1 embodies the only exceptions applicable to Title 24 offenses. Therefore, the section is designed to make clear that, while Title 24 maxima are to control, the sentences are to be imposed as other sentences under the code (i.e., subject to definite terms, and not minimum-maximum sentences) and the other provisions of the subtitle (regarding probation, revocation, fines, restitution, etc.) are to apply.

Section 82 amends section 2C:43-2. This section set forth the various sentence dispositions that can be made under the code. The amendment in subsection a. makes an exception for any disposition provided by the code other than in Chapter 43. The amendment in subsection b. deletes the reference to sections 2C:43-12 and 2C:43-13 (pretrial intervention). There are further minor language changes. The Assembly Judiciary Committee amendments do three things. The first amendment modifies the probation provision to allow the court to sentence a person convicted of a disorderly or petty disorderly persons offenses to up to 90 days imprisonment as a condition of probation, and to sentence a person convicted of a crime up to 180 days imprisonment as a condition of probation. The second amendment adds community-related service to the list of possible sentencing alternatives. The third amendment requires the court to consider and report upon possible parole eligibility as a factor in determining a sentence.

Section 83 amends section 2C:43-3. The amendment is to subsection f. and provides for higher fines than set forth in this section if authorized by another code section or any other statute. The present language reads only "authorized by statute," so this amendment is for clarification.

Section 84 amends section 2C:43-5 to clarify that indeterminate terms are preserved under the code for "youthful offenders."

Section 85, as amended by the Assembly Judiciary Committee, amends section 2C:43-6. This section fixes the ordinary terms of imprisonment for the four degrees of crime. The first amendment provides an exception for different terms fixed by other sections of the code. The first amendment to subsection b. makes it clear that a court may fix a term of parole ineligibility of up to, but not to exceed, one-half of the custodial term imposed for a first or second degree crime, provided that the parole ineligibility term set must be at least as long as the term of incarceration that would be served under the parole laws. This latter provision is necessary in order not to conflict with the parole laws. The second amendment to subsection b. deletes the reference to the extra parole term which was in 2C:43-9, but which is being deleted by section 86A.

Section 86, as amended by the Assembly Judiciary Committee, amends section 2C:43-7. This section fixes the extended terms of imprisonment. The amendments are similar to those made in section 2C:43-6 and permit a court to fix a term of parole ineligibility not to exceed one-half of the custodial term imposed. They also permit the setting of a period of 25 years for parole ineligibility where the sentence imposed was life imprisonment and the reference to 2C:43-9 is deleted.

In section 86A the Assembly Judiciary Committee amendment deletes the provision for a separate parole term, deferring the subject to the law governing parole.

Section 87 amends section 2C:43-10. The principal amendment is in subsection c. and pertains to sentences for less than 1 year. The language "having a workhouse or penitentiary" provides an exception for Bergen County, which although a first class county, has neither. The other amendment merely changes the court reference from "County" to "Superior,"

Section 88 contains technical amendments to section 2C:43-12. The phrase "The Supervisory Treatment Act" in subsection a. is replaced by the appropriate section numbers in Chapter 43. The other amendment is also in subsection a. The present language states that pretrial intervention should ordinarily be limited to persons who have not been previously convicted of any criminal offense under New Jersey law, and under the law of the United States or any other state only after the *effective date of the code* (emphasis added). The amendment would delete this obvious inconsistent provision. Failure to make this change would lead to this result: A person convicted of armed robbery in Pennsylvania in 1978 could contend he is eligible for pretrial intervention consideration after September 1, 1979. The Assembly Judiciary Committee amendment clarifies requirements of subsection e.

Section 89 amends section 2C:43-13. The only substantive amendment is in subsection c., where the language "as determined by the designated judge or the assignment judge" is added to provide who fixes the length of the supervisory treatment period.

Sections 90 and 91 amend sections 2C:43-15 and 2C:43-18. The changes are only deletions of incorrect language and substitution of proper section references.
Section 92 amends section 2C:43-21. Subsection d. is added to provide that no order of expungement or sealing will affect any entry in the index or registry of pretrial intervention information established by the Administrative Office of the Courts.

Section 93 amends section 2C:44-1. With the exception of the amendments to subsections c. and f., all the other changes in section 2C:44-1 are either language changes or deletions for clarity, punctuation changes, or changes from the word "offense" to "crime" where necessary.
New paragraph 2C:44-1c(2) requires the court to consider the defendant's parole eligibility when decidiing on his sentence.
Section 2C:44-1f. has two changes. The first is the exception for the crime of murder or kidnapping from the presumptive sentences in subsection f. The cross reference to section 2C:44-1f. has been previously mentioned in the sections dealing with the amendments to the murder and kidnapping sections in the code. The other change would permit the prosecution to appeal if a court imposes a noncustodial or probationary sentence for a first or second degree crime.

Section 94 amends section 2C:44-2. The only changes are in the language for clarity purposes.

Section 95 amends section 2C:44-3. This section contains the criteria for imposing a sentence of extended term. The principal amendment is in subsection a. and it clears up ambiguous language in this persistent offender section. The change states that the defendant must be 21 at the time of the commission of the offense (emphasis added). The present language leaves it unclear whether 21 year age provision pertains to the crime date or the sentence date. The other change in this subsection is only a language change for clarity.
The changes in subsections b. and c. delete "offense" and insert "crime" This is the extended term section and only applies to crimes, so "offense" is not the right word. The first Assembly Judiciary Committee amendment clarifies that only the prosecutor may apply for an extended sentence. The other amendment clarifies the defintion of a persistent offender.

Section 96 amends section 2C:44-4. The entire section has been rewritten so that it is definitive and not merely a cross reference for other sections. There is, however, a significant change in that a conviction in another jurisdiction would constitute a prior conviction of a crime if a sentence of imprisonment in excess of 6 months was authorized. This would put the time period in harmony with the code definition of a crime in section 2C:1-4.

Section 97 amends section 2C:44-5 by correcting a cross reference to a code section in subsection f. (1).

Section 98 amends section 2C:45-1 by adding subsection (11) under subsection b. to provide payment of a fine as one of the conditions that may be imposed in a court order for suspension of sentence or probation. The Assembly Judiciary Committee amendments do two things. The first amendment adds community-related service to the list of possible court ordered conditions of probation. The second amendment allows for the split sentencing provided for and described in section 82, amending 2C:43-2.

Section 99, as amended by the Assembly Judiciary Committee, amends section 2C:45-3. The amendment is in response to conceerns that the power to resentence to a term of imprisonment, following probation revocation, is too restrictive under the code. These amendments broaden the power of a court to incarcerate a defendant following probation revocation, but provide that no revocation shall be based on failure to pay money, unless the failure was willful.

Sections 101, 102 and 103 are amendments to the titles of sections 2C:47-1, 2C:47-2 and 2C:47-3. Section 100 shows these changes in the table of contents for Chapter 47.

Section 104, as amended by the Assembly Judiciary Committee, amends section 2C:47-7. There was a language omission in the last sentence of this section and the amendment corrects it. A minor language clarification is also made.

In section 104A, the Assembly Judiciary Committee increases the membership of the Criminal Disposition Commission to eleven, by adding a representative of the State Parole Board.

Section 105 amends section 2C:48-2. The word "to" was omitted at the end of the second line. It has been added.

Section 106 amends section 2C:51-3. This section, as written, provides for the disqualfication of persons convicted of crimes from voting and jury services. The amendment would remove the substantive language from the code and provide that these matters be governed by the laws concerning elections and jury service, R.S. 19:4-1 and N.J.S. 2A:69-1, respectively.

Sections 107 through 139 contain the table of contents and the 32 sections of new Chapter 52. This chapter spells out an equitable system of expungement of indictable and nonindictable convictions, as well as of arrest records following disposition favorable to defendant. It provides for a practical administrative procedure within the Division of State Police which requires isolation of expunged records but not obliteration of same. Certain uses of expunged records are specifically authorized. This section would save the State substantial amounts of money which would have to be expended under the expungement provisions as enacted. It also permits the State to be reimbursed for certain costs incurred in processing expungements. The Assembly Judiciary Committee amendements are for clarity and consistency of language.

In section 140, the Assembly Judiciary Committee amendment inserts a new Chapter 65 into the code providing for a fair and effective procedure for returning stolen property to victims, while retaining adequate evidence for criminal prosecution. These provisions follow the procedures already used in many jurisdictions, and have proven to be workable.

Sections 141, 142, 143 and 144 have been deleted and will be marked "Blank" on the printed bill.

Section 145 amends section 2C:98-2, the repealer section. This section lists all the statutes in Title 2A that are repealed by the code. The amendments remove several statutes from the repealer and place them in 2C:98-3, which saves them from repeal. The sections deleted are:

(1) N.J.S. 2A:127-4 makes it a misdemeanor for a person to have a short wave radio operating on frequencies assigned for fire, police, municipal or other governmental uses unless a permit has been issued therefor by the police. Fire, police and governmental official are excepted.

(2) N.J.S. 2A:151-10 makes it a misdemeanor to offer, sell, lend, lease or give to a person under 18 years of age any firearm, grenade, bomb or other explosive, or the components thereof, or a pistol from which a loaded or blank cartridge may be fired, or loaded or blank cartridges. There is an exception for the minor to borrow a firearm, with his parents' consent for purposes set forth in N.J.S. 2A:151-11.

(3) N.J.S. 2A:151-11 makes it a misdemeanor or act of juvenile delinquency for any person under 18 years of age to purchase or acquire any firearm, grenade, bomb or other explosive, or the components thereof. There are various exceptions to permit the juvenile to carry, fire or use any firearm in the presence of or under supervision of his parent or guardian or a person who holds a permit to carry or a firearms identification card. The exceptions apply when the juvenile will use the firearm for military drill target shooting, or hunting, if he has completed a hunter's safety course, and has a valid hunting license.

(4) N.J.S. 2A:164-24 provides the formula for good time credit against sentence for prisoners committed to any county jail or penetentiary. The formula cannot exceed 1 day for every 6 days of sentence.

(5) N.J.S. 2A:169-3 gives the power to arrest a person without warrant to any constable or police officer for any disorderly persons offense committed in his presence.

(6) Laws of 1960, c. 24 (C. 2A:166A-1 to C. 2A:166A-4 both inclusive) provide for reimbursement to counties for criminal prosecution expenses in connection with the commission of a capital offense by a person while confined to a State penal or correctional institution located in the county. These sections show in the code in both the repealer and saved from repeal sections. The New Jersey Budget for Fiscal Year 1979-1980 appropriates $25,000.00 for this compensation. Therefore, the statutes should be saved from repeal.

(7) Laws of 1955, c. 254 (C. 2A:171-1.1 and C. 2A:171-1.2 both inclusive). C. 2A:171-1.1 makes it a disorderly persons offense to buy, sell or trade new or used motor vehicles on Sunday and provides penalties for violations. C. 2A:171-1.2 is a definition section for C. 2A:171-1.1

(8) Laws of 1959, c. 119 (C. 2A:171-5.8 to C. 2A:171-5.18 both inclusive). These are the "Sunday Closing Laws" passed in 1959. The law, although effective immediately upon enactment did not become operative in any county until the voters of the county determined by referendum that it should apply therein. These statutes must be distinguished from the Laws of 1958, c. 138 (C. 2A:171-5.1 to C. 2A:171-5.7 both inclusive) which although not specifically repealed by the 1959 statutes are now repealed in the code.

The Assembly Judiciary Committee amendment removes from the repealer list two statutes already repealed, between the time of the drafting of the code and its upcoming effective date.

Section 146 amends section 2C:98-3, the "saved from repeal" section. Except for (6), items (1) through (8) listed in the section 145 amendments above, are incorporated by amendment into section 2C:98-3. Item (6) is already in section 2C:98-3.

In addition three other groups of statutes are being put into section 2C:98-3. They are:

(1) Laws of 1975, c. 183 (C. 2A:170-20.11 and C. 2A:170-20.12). The first section requires certain information to be disclosed by telephone solicitors for contributions. The law covers solicitations on behalf of charitable and non-charitable organizations. The second section makes violation a disorderly persons offense.

(2) Laws of 1977, c. 215 (C. 2A:170-77.16 to C. 2A:170-77.18 both inclusive). These statutes are the so-called "term paper" statutes. Although they are now in Title 2A the violations section specifically states that anyone convicted of violating any provision "shall be guilty of a *civil offense*." (Emphasis added). A fine can be levied up to $1,000.00 and there are provisions for injunctive relief.

(3) Laws of 1975, c. 182 (C. 2A:170-90.3 to C. 2A:170-90.5 both inclusive). These statutes deal with execution against or "garnishment" of earnings. The first section contains the definitions. The second section states that no employer can discharge any employee or take any other disciplinary action against him because his earnings have been subjected to a garnishment. The third section makes violation a disorderly persons offense.

Section 147, as amended by the Assembly Judiciary Committee, repeals seven statutes. They are:

(1) N.J.S. 2C:47-6. This section provides that no statute relating to remission of sentence by way of commutation time for good behavior and for work performed shall apply to any person sentenced to the Adult Diagnostic and Treatment Center. It further states that provision shall be made for monetary compensation in lieu of remission of sentence for work performed, the amount to be established by the Commissioner of Corrections.

(2) N.J.S. 2C:51-4. This is the section in the present code dealing with expungement and sealing of records. It is being replaced by new Chapter 52.

(3) N.J.S. 2C:58-6. This section provides for the limited licenses to carry firearms by minors. It is being replaced by the transfer of N.J.S. 2A:151-10 and 2A:151-11 from 2C:98-2 (repealer) to 2C:98-3 (saved from repeal).

(4) N.J.S. 2C:58-11. This section deals with property rights in weapons and forfeiture of weapons. The forfeiture of guns is covered in present Chapter 64 of the code.

(5) P.L. 1970, c. 226, s. 28 (C. 24:21-28). This section provides for the expungement of records of arrest, trial and conviction for violations of the "New Jersey Controlled Dangerous Substances Act" by any person 21 years of age or younger at the time of the offense. The subject matter would now be covered in the new Chapter 52.

(6) N.J.S. 2C:27-8. This section prohibits selling political endorsements and trading in special influence. It is being repealed as being overbroad and unnecessary, the subject being covered by other sections of Chapter 27.

(7) N.J.S. 2C:30-1. This section prohibits official oppression. It is being repealed as being overbroad and unnecessary, the subject being covered by other sections of Chapter 30.

## COMMITTEE STATEMENT

In addition to the committee amendments included in the ''Advance Copy of the Official Copy Reprint,'' the committee adopted ''Additional Assembly Committee Amendments'' prior to reporting the bill; these additional amendments are designed to conform the text of the bill to Senate Bill No. 3203 as reported with Senate committee amendments. The additional Assembly committee amendments will be indicated in the Official Copy Reprint by ''* * . . . * *''.

# COMMENTS UPON THE NEW JERSEY PENAL CODE*

Robert E. Knowlton **

## I. INTRODUCTION

In the early 1950's, the American Law Institute began a major study designed to establish a Model Penal Code.[1] This study continued for nearly ten years before the Institute adopted its final draft. It was an attempt to correlate the learning and expertise of lawyers, judges, law professors, social workers, and social and behavioral scientists in order to provide a model for consideration by the several state legislatures. The Code's success is demonstrated by the number of new codes which have been based in whole or in part upon it.[2]

The New Jersey codification effort began in 1968 with the report of the Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey[3] and the subsequent adoption of its proposal to establish a commission.[4] This commission was mandated to propose a code "to modernize the criminal law . . . to embody principles representing the best in modern statutory law, to eliminate inconsistencies, ambiguities, outmoded and conflicting, overlapping and redundant provisions and to revise and codify the law in a logical, clear and concise manner."[5]

After working for more than a year the commission submitted its fourth and final draft and the report[6] to the Governor and the Legislature in October 1971.[7] The commission draft was studied and revised for several years before it was finally enacted in 1978 and codified in Title 2C of New Jersey Statutes Annotated.[8]

## II. BACKGROUND: THE GOALS OF A REVISION

The purpose of criminal law is to effect social control through deterrence, incapacitation, and reformation.[9] One problem is that the effectiveness of these methods can not be demonstrated in concrete terms.[10] Furthermore, the courts have no particular ability to determine or evaluate the facts upon which the appropriateness of these methods may depend. Finally, there is an unascertainable element of retribution in most sentencing decisions. Since criminal conduct normally reflects some individual or social maladjustment, effective social control can be achieved only in the grossest terms through the use of criminal sanctions.

The most obvious goal of a new code, therefore, is to deal rationally with the outer limits of what should be criminal. The history of criminal law has been one of legislative reaction to specific concerns rather than one of developing rational

---

* Reprinted by permission of Rutgers Law Review.

** Professor of Law Emeritus, Rutgers Law School, Newark; Professor of Law, University of Arkansas School of Law, Fayetteville.

1. For a discussion of the Model Penal Code Project, see Wechsler, *The Challenge of a Model Penal Code*, 65 HARV. L. REV. 1097 (1952). *See also* Wechsler, *A Thoughtful Code of Substantive Law*, 45 J. CRIM. L.C. & P.S. 524 (1955).

2. *See e.g.*, N.J. CODE OF CRIMINAL JUSTICE, N.J. STAT. ANN. § 2C (Supp. 1979); N.Y. PENAL LAW § 15.20 (McKinney 1975); VT. STAT. ANN. tit. 13 § 4801 (1974).

3. JOINT LEGISLATIVE COMMITTEE TO STUDY CRIME AND THE SYSTEM OF CRIMINAL JUSTICE IN NEW JERSEY, 192D SESS., REPORT 17-18 (1968).

4. 1968 N.J. LAWS ch. 281 (repealed 1978).

5. *Id.*

6. The expenditure of time involved was a very costly contribution for the private practitioners on the commission, a sacrifice which had received little note.

7. In order to permit a less costly printing of the bill when introduced, the commission issued its final report in two volumes. The first volume was the proposed Code and the second contained the comments.

8. N.J. STAT. ANN. § 2C (Supp. 1979) (effective Sept. 1, 1979).

9. *Cf.* State v. Ivan, 33 N.J. 197, 199-200, 162 A.2d 851, 852 (1960) (suggested purposes of punishment: retribution, deterrence, rehabilitation, protection of public). *See also* N.J. STAT. ANN. § 2C:1-2.

10. N.J. CRIMINAL LAW REVISION COMMISSION, II FINAL REPORT: COMMENTARY 3-4 (1971) (quoting State v. Ivan, 33 N.J. at 201-02, 162 A.2d at 853-54) [hereinafter cited as II FINAL REPORT: COMMENTARY].

principles. As a result, criminal sanctions have been applied with no real service to the goal of social control, or only at an exorbitant cost to individuals.[11] Aside from the inherent injustice arising from overly broad use of the criminal process, the failure to limit properly the scope of the criminal law results in the costly waste of law enforcement and judicial resources. Moreover, the police must use very aggressive tactics to ferret out and arrest violators of many of the so-called "crimes," often at an unacceptable cost to individual rights and the police-community relationships so necessary to the enforcement of more significant crimes.

A second goal of a new code is to achieve greater individual justice through a closer relation between guilt and culpability, requiring workable definitions of the various culpability factors.[12] These factors must be related precisely to each element of an offense, defense, or mitigation, and all unnecessary limitations upon individual culpability should be eliminated. In addition to bearing upon the achievement of individual justice, culpability factors also relate to the control factors of deterrence, reformation, and incapacitation.

A third goal of a new code is to establish a rational and related framework with overriding basic principles and accurate definitions. Such a code gives notice and the appearance of justice to people involved in the criminal process. Equally important, precise definitions limit the overlap of crimes. The undue multiplication of offenses relative to a factual occurrence unnecessarily broadens unchecked prosecutorial discretion far beyond what is necessary for the enforcement of criminal law.

Finally, a code must arrive at a viable formula for the allocation of sentencing power among the various decision making bodies. While sentencing alternatives and methods remain an area of confusion and dispute, the legislature should define criminal conduct and evaluate the relationship between social harm and sanction requirements in maximum terms.[13] Within these limits the amount of discretion to be permitted and its allocation between judicial and administrative bodies are still the subject of heated argument. As the trend in criminal sanctions has moved from fixed terms to judicial discretion, discontent with unexplained variations in sentencing has led to restrictions being placed upon judges. One early consequence of these restrictions was to shift substantial discretion from judges to parole boards. Parole board decisions, or the lack thereof, have come under attack, and a movement to limit or destroy such administrative discretion has begun.[14]

## III. THE GENERAL PROVISIONS
### A. *Introduction*

Historically, the general provisions of criminal law have been developed judicially with little legislative correction or innovation.[15] One of the major contributions of the new Code is the codification of the general provisions[16] relating to specific offenses, such as culpability factors, justifications, defenses, and liability for acts of another. Although precise definitions of crimes are needed to give notice of proscribed behavior, prevent official harassment, and establish a definite standard of guilt,[17]

11. "Nothing has been more widely recognized in modern criminal law scholarship than the danger of creating more evil by ill-considered use of the criminal law than is caused by the target misconduct." Schwartz, *The Proposed Federal Criminal Code, reprinted in* KADISH & PAULSEN, CRIMINAL LAW AND ITS PROCESSES 40 (3d ed. 1975).

12. The Code delineates minimum levels of culpability stating that "a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently . . ." N.J. STAT. ANN. §2C:2-2. These four kinds of culpability are defined precisely in the Code, *id.* §§ 2C:2-2(b)(1) to -2(b)(4), and are based upon the proposals found in MODEL PENAL CODE § 2.02 (proposed Official Draft 1962), as was the commission proposal.

13. *See, e.g.,* THE PRESIDENT'S COMMISSION ON LAW ENFORCEMENT AND ADMINISTRATION OF JUSTICE, TASK FORCE REPORT: THE COURTS 14-15 (1967).

14. *See generally* Wechsler, *The Challenge of a Model Penal Code,* 65 HARV. L. REV. 1097, 1126-29 (1952).

15. The need for codification of the general part was recognized by the commission. N.J. CRIMINAL LAW REVISION COMMISSION, I FINAL REPORT: REPORT AND PENAL CODE ix (1971) [hereinafter cited as I FINAL REPORT: PENAL CODE].

16. The codification in this area appears in the first five chapters of the new statute. N.J. STAT. ANN. §§ 2C:1-1 to 5-6.

17. This is, of course, a constitutional requirement, although the precise requirement for clarity is usually shrouded in a mass of words. *See, e.g.,* Papachristou v. City of Jacksonville, 405 U.S. 156, 162-71 (1972). As is frequently the case, the constitutional standard represents the bare minimum rather than the desirable goal.

history demonstrates that the need for a concrete legislative statement of the general provisions is much less important to citizens or law enforcement personnel. To the extent that basic policy decisions are made in formulating the general part, however, they should be made by the politically responsive branches of government. The need for legislative determination appears to be especially relevant to criminal matters involving the coercive power of the state. Despite the desirability of a legislative determination, it must be recognized that codification often limits the power of the courts to deal with particular problems and freezes the solutions for an unforeseeable length of time. Therefore, to the extent that legislative reaction to needed change may be sluggish, codification of restrictive or undesirable solutions will inhibit change and growth.[18]

## B. *Specific Problems in the General Provisions*
### 1.   The Requirement of Reasonableness

The common law required mistakes of fact or law to be reasonable before they could be a defense.[19] Reasonable belief was also required before justifications were acceptable.[20] The imposition of an objective requirement effectively divorced liability from culpability and transformed culpability crimes into crimes of negligence. For example, if an actor kills in an actual but unreasonable belief that killing is necessary for self-defense, the actor is negligent in forming the belief. He nonetheless will be guilty of an intentional killing if the negligence defense is unavailable. Negligence is an unusual form of culpability both because it inflicts criminal sanctions upon persons whose sole dereliction is that they are not of average intelligence or awareness,[21] and because in most instances deterrence and other intermediate goals of the criminal law have little effect upon such persons.

The common law imposed guilt upon objective rather than subjective culpability because of the fear that too many people would be able to assert these defenses even though they did not actually have the requisite subjective belief.[22] As a practical matter, it is unlikely that the jury would find that the accused had the unreasonable belief based solely upon his own testimony, since the interest of the defendant as a witness is transparent. If sufficient extrinsic evidence of the defendant's belief exists, however, the jury should be permitted to find mere negligence. The jurors as fact finders should be trusted to determine subjective culpability without the added factor of reasonableness.

The problem with respect to the reasonableness requirement is most obvious in the chapter dealing with justification, where the Legislature inserted the requirement of reasonableness as an element.[23] Section 2C:3-9(b) provides that in cases where the actor recklessly or negligently arrives at the belief required by the justifications, the actor is guilty of an offense which requires recklessness or negligence. By its terms, the literal effect of this section is to limit a defense that does not exist. Once again, assume an unreasonable belief in the necessity of killing in self-defense. Under the self-defense section, the defense is not available because it requires a reasonable belief. In these circumstances the actor commits murder because to him it is a purposeful killing. If section 2C:3-9(b) applies, however, the act is a criminal homicide only insofar as the killing is reckless, because the generalized negligent homicide has been replaced by a death by automobile statute.[24] The significant difference is that the justification

---

18.   A good example of freezing an unfortunate decision into statutory form is the adoption of M'Naughten's rule as the test for responsibility. N.J. STAT. ANN. § 2C:4-1.

19.   *See* J. MICHAEL & H. WECHSLER, CRIMINAL LAW AND ITS ADMINISTRATION 756 (1940).

20.   *See, e.g.,* II FINAL REPORT: COMMENTARY, *supra* note 10, at 82-87 (use of force in self-defense and defense of another required "reasonable and honest belief").

21.   *But see* WILLIAMS, CRIMINAL LAW: THE GENERAL PART §122 (2d ed. 1961).

22.   *See* O. W. HOLMES, THE COMMON LAW 48 (1881).

23.   *See* N.J. STAT. ANN. § 2C:3-2 to 11.

24.   N.J. STAT. ANN. § 2C:11-2(a).

focuses upon its own elements, and the absence of one such element negates the defense, while section 2C:3-9(b) focuses upon the definition of the crime once the actual belief is established.

## 2. The Test of Responsibility

After starting to abolish the defense of lack of criminal responsibility, the Legislature took an almost unbelievable turn by enacting the M'Naghten rule.[25] New Jersey continues to ask the impossible questions of whether the defendant knew the nature and consequences of his act and whether he knew that this act was wrong. Other than New Jersey, there is not a single jurisdiction that has adopted the M'Naghten rule in recent years.[26] The attack on the rule has been broad based and quite persuasive.[27] The test is absolute in an area where all answers are relative.[28] It is moralistic when the issue is the utility of the criminal law as a method of control. It is cognitional when the primary focus is operational.[29] It is phrased in terminology that limits the ability of experts to testify.[30] It is limited to a ''disease'' of the mind, without regard to a ''defect.''

While the commissioners had recommended adopting a slightly modified Model Penal Code test of responsibility, with the addition of the word ''adequate,''[31] it is beyond the scope of this general comment to detail the reasons for rejecting the rule of M'Naghten. It is sufficient to note that some people who lack substantial and adequate capacity to appreciate the wrongfulness of their conduct or to conform it to the requirements of law will be convicted of crimes under the narrower M'Naghten test. If these persons lack the capacity required by the commissioners' proposed test, there is no moral or utilitarian reason to convict them.[32] Since there is neither moral culpability nor hope for deterrence, mental care rather than incarceration seems to be the appropriate remedy.

## 3. Liability for the Acts of Others

Both the commission and the Legislature generally followed the changes in the law of conspiracy contained in the Model Penal Code,[33] although in one significant respect the Legislature departed from the Model Code by making one person liable for the conduct of another when both are engaged in a conspiracy.[34]

The need for such a broad provision governing vicarious liability is not apparent, but the dangers are obvious. If a person bears any substantial relation to a crime, he will be

---

25. N.J. STAT. ANN. § 2C:4-1 (stating the insanity defense).

26. The New Jersey Legislature, in adopting the M'Naghten rule, resists the marked trend towards adoption of alternative approaches, in particular that of the Model Penal Code. See, e.g., United States v. Currens, 290 F.2d 751 (3d Cir. 1961); N.Y. PENAL LAW § 15.20 (McKinney 1975); VT. STAT. ANN. § 4801 (1974); II FINAL REPORT: COMMENTARY, supra note 10, at 98. See also ARK. STAT. ANN. § 41-601 (1977); United States v. Brawner, 471 F.2d 969 (D.C. Cir. 1972) (rejecting Durham and adopting the Model Penal Code proposal).

27. See e.g., Durham v. United States, 214 F.2d 862 (D.C. Cir. 1954) (Bazelon, J.); W. LAFAVE & A. SCOTT, HANDBOOK ON CRIMINAL LAW 280-83 (2d ed. 1972) [hereinafter cited as LAFAVE & SCOTT]; Wechsler, The Criteria of Criminal Responsibility, 22 U. CHI. L. REV. 367 (1955); II FINAL REPORT: COMMENTARY, supra note 10, at 95-100. But see State v. Lucas, 30 N.J. 37, 87 (1959) (Weintraub, C.J., concurring) (defense of M'Naghten rule). Consider, however, that to the extent the Chief Justice's opinion relies upon the need for legislative action, it does not seem to be relevant to the codification effort.

28. In contrast, the commission proposal required that the actor lack ''substantial and adequate capacity . . .'' II FINAL REPORT: COMMENTARY, supra note 10, at 97. The term ''substantial'' comes from the Model Penal Code § 4.01 and ''adequate'' from the Vermont statute, VT. STAT. ANN. tit. 13 § 4801 (1974).

29. California has managed to establish that the concept of operative knowledge includes the inability to conform when M'Naghten although M'Naghten appears to be purely cognitive. See People v. Wolff, 61 CAL. 2d 795, 394 P.2d 959, 40 Cal. Rptr. 271 (1964). See also LAFAVE & SCOTT supra note 26, at 280-81.

30. But see LAFAVE & SCOTT, supra note 26, at 282-83.

31. I FINAL REPORT: PENAL CODE, supra note 15 § 2C:4-1(a). ''A person is not criminally responsible for conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial and adequate capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.''

32. See LAFAVE & SCOTT, supra note 27, at 281-82 (1972).

33. The Model Penal Code and the commission for example defined liability individually so that unknown reservations in the mind of the other party would not be a defense for the party who in fact agreed. See II FINAL REPORT: COMMENTARY, supra note 10, at 131-32; MODEL PENAL CODE § 503.

34. N.J. STAT. ANN. § 2C:2-6(b)(4) (''A person is legally accountable for the conduct of another person when . . . he is engaged in a conspiracy with such other person.'').

subject to the accomplice liability provisions. These provisions are broad enough to encompass the conduct of leaders of criminal organizations or participants in the planning and execution of crimes. Liability for the conspiracy as distinct from the substantive offense also continues to exist. Thus there seems to be no need to multiply the potential for punishment by making conspirators liable for each and every substantive offense committed by a large criminal group, no matter how remote the person was from the substantive crime nor how tangential his relationship to the conspiracy.

4. Entrapment

New Jersey case law had adopted the federal test for entrapment,[35] which focuses upon whether or not the defendant was otherwise innocent and whether or not the intent to commit a crime originated with the police or the defendant. The new Penal Code adopts the view espoused by a minority of the United States Supreme Court.[36] This test makes it entrapment to employ "methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are willing to commit it."[37] The latter test is the better one because it prevents the introduction of highly prejudicial evidence demonstrating the accused's propensity to commit crime, and it applies the same standard of police conduct for everyone. Moreover, it reflects the fact that it is the police conduct that is important, not the character of the accused.[38]

Because the guilt of the actor is unaffected by the issue of entrapment,[39] the sole rationale for the defense is, like the exclusionary rule for unconstitutionally obtained evidence, to control police conduct. Police officers should not be paid to elicit conduct that the Legislature has deemed to be criminal.[40] In sumptuary crimes, however, the police claim that it is necessary to provide the opportunity for crime as a detection method. Without disputing that assertion, the line between acceptable and unacceptable behavior should rest upon the conduct of the police rather than the character of the defendant.

The statute differs from the commission report in one significant respect in that it provides that entrapment is to be decided by the jury;[41] the commission recommended that it be decided by the judge.[42] Unless additional procedural changes are made, decision by the jury makes entrapment a trial issue, which appears to limit the defendant's right to demand that the state prove him guilty beyond a reasonable doubt.[43] It is not at all clear why a defendant should be required to forego this right to proof beyond a reasonable doubt in order to claim entrapment even if the defenses are inconsistent. Secondly, the entrapment defense and the exclusionary rule of evidence both focus upon an evaluation of police conduct in the light of society's needs. The mere fact that one merely excludes evidence while the other precludes conviction neither obviates the greater expertise of judges nor the need for principled rather than

---

35.   *See* State v. Dolce, 41 N.J. 422, 197 A.2d 185 (1964).

36.   *See* Sherman v. United States, 356 U.S. 369 (1958), and United States v. Russell, 411 U.S. 423 (1973), for a development of the differing positions.

37.   N.J. STAT. ANN. § 2C:2-12.

38.   *See* Sherman v. United States, 356 U.S. 369, 378-85 (1958) (Frankfurter, J., concurring).

39.   This is demonstrated by the fact that the same persuasion by a private person would be no defense to the charge. In entrapment cases the normal situation is that the accused believes the officer to be a private person. Therefore, the difference between a defense or no defense depends upon the existence of a fact unknown to the actor.

40.   "The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly that function does not include the manufacturing of crime. . . ." Sherman v. United States, 356 U.S. 369, 372 (1958) (Warren, C.J.).

41.   N.J. STAT. ANN. § 2C:2-12(b) ("The issue of entrapment shall be tried by the jury.").

42.   N.J. STAT. ANN. § 2C:2-12; II FINAL REPORT: COMMENTARY, *supra* note 10, at 78 ("[T]he issue of entrapment should be tried to the court rather than to the jury."). The commission's recommendation would have changed the New Jersey law since the issue is tried by the jury. *Id.*

43.   *Cf.* Traynor, C.J., in People v. Perez, 62 Cal. 2d 769, 401 P.2d 934, 44 Cal. Rptr. 326 (1965). Even if a formal admission of guilt is not required, the jurors are probably unable to keep the defenses separate in their minds.

*ad hoc* determinations.[44] Finally, there seems to be no constitutional need for a jury trial since the entrapment defense is new and it is neither related to the defendant's guilt or to the jury's role in evaluating a defendant's substantive conduct in the light of societal mores.[45] Nevertheless it should be noted that the change in the test for entrapment eliminates the gravest difficulty with a jury determination — the introduction at trial of evidence of the defendant's criminal propensity.

## IV.   PARTICULAR CRIMES
### A.   *The Law of Homicide*

The Penal Code simplifies the definition of murder through the removal of the issue of capital punishment, making it unneccessary to distinguish between degrees.[46] A straightforward statement of culpability was made possible by the Code's precise definition of the kinds of culpability factors.[47]

The statute departs significantly from the commission report in two respects. The first is the elimination of reckless murder.[48] This is highly desirable since a homicide is murder if it is committed knowingly.[49] The element of "recklessness" requires personal awareness of the risk and a conscious disregard of it,[50] while the term "knowingly" requires the actor to be "practically certain that his conduct will cause such a result."[51] These two factors codify degrees of culpability for homicide: the more stringent one of "knowingly" is more suitable for murder because of its greater sanction; "recklessness" killings are properly made manslaughter.[52]

The second change is the enlargement of the felony murder doctrine, which seems both unnecessary and unjustified. The statute extends the liability of the person committing the underlying felony to a killing by a third person.[53] The commission's proposal would have limited the felon's liability to killings committed by him "or another participant."[54] The difference is that if *A* and *B* begin to rob a bank and a bank guard shoots and kills an innocent bystander, *A* and *B* are guilty of murder under the statute, but not under the commission's proposal. Liability under the severe felony murder rule must be based upon the assumption that deaths arise out of the listed felonies often enough to justify holding criminals to having foreseen them.[55]

---

44.   Equally important is the consideration that a jury verdict, although it may settle the issue of entrapment in the particular case, cannot give significant guidance for official conduct for the future. Only the court, through the gradual evolution of explicit standards in accumulated precedents, can do this with the degree of certainty that the wise administration of criminal justice demands. Sherman v. United States, 356 U.S. 369, 385 (1958) (Frankfurter, J., concurring).

45.   The requirement of the jury probably started when, in Sorrells v. United States, 287 U.S. 435 (1932), Chief Justice Hughes made the defense depend upon an implied exception to the statute. This was done, no doubt, to justify the refusal to permit a conviction when the actor had done precisely what the statute condemned. In *Sorrells*, the Chief Justice in referring to the implied exception doctrine, said "it obviates the objection to the exercise by the court of a dispensing power in forbidding the prosecution of one who is charged with the conduct assumed to fall within the statute." 287 U.S. at 449. Such considerations have little to do with the normal function of a jury. *See* Duncan v. Louisiana, 391 U.S. 145 (1968).

46.   Degrees of murder were first introduced in the Pennsylvania murder statute to limit the application of the death penalty. Keedy, *History of the Pennsylvania Statute Creating Degrees of Murder*, 97 U. PA. L. REV. 759 (1949).

47.   N.J. STAT. ANN. §2C:2-2(b). See note 12 *supra*.

48.   *Compare* N.J. STAT. ANN. § 2C:11-3 *with* I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:11-3.

49.   N.J. STAT. ANN. § 2C:11-3(a)(2).

50.   N.J. STAT. ANN. § 2C:2-2(b)(3).

51.   N.J. STAT. ANN. § 2C:2-2(b)(2).

52.   N.J. STAT. ANN. § 2C:11-4(a)(1). This provision was subsequently amended to divide manslaughter between aggravated manslaughter and reckless manslaughter depending upon the presence of "circumstances manifesting extreme indifference to human life."

53.   N.J. STAT. ANN. § 2C:11-3(a)(3). Perhaps the best criticism of the felony murder doctrine as embodied in the statute is found in Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958), and in State v. Canola, 73 N.J. 206, 374 A.2d 20 (1977).

54.   I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:11-3(a)(4). The commission discussed at length the utility of the felony murder rule, and it was this writer's position that it should have been abolished, as the English did in the Homicide Act, 1957, 5 & 6 Eliz. 2, c. 11. § 1 (1957).

55.   See Judge Conford's disposal of that argument in State v. Canola, 73 N.J. 206 (1977). *But see* Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958) (Jones, C.J.) (co-felon not guilty of murder where policeman justifiably kills other felon).

Nonetheless, the fact remains that the harsh sanctions for murder are imposed upon an unintended consequence even when the felons themselves have not killed anyone.

Two factors somewhat limit the statute governing felony murder. If the person killed by the third party is one of the participants in the crime, the other participants are not guilty of murder.[56] While liability for this conduct would be questionable, there is no merit in imposing liability contingent upon the aim of third persons reacting to the felony. In the hypothetical above, A would be guilty of murder if the bank guard shot and killed an innocent bystander, but not if the guard killed A's accomplice. Since the guard was shooting at A or B it is hard to understand why the fact that he missed them and hit an innocent bystander reflects any increased culpability on the part of A and B. The second limitation upon felony murder is the express defense provided for the felon who did not commit the act that caused the death or did not "solicit, request, command, importune, cause or aid" in its commission, if certain additional requirements are met.[57] This defense was first articulated by the Model Penal Code and was a part of the commission's recommendation. Although it is desirable in itself, it does little to alleviate the problem created by the statute's undue extension of liability.

The statute creates two forms of manslaughter: the first is an unintentional but reckless homicide;[58] the second replaces the commission's complicated proposal with a straightforward "heat of passion resulting from a reasonable provocation."[59] The Legislature's formulation ignores the commission's attempt to define reasonableness,[60] and neither the statute nor the commission's proposal requires "adequate" as opposed to "reasonable" provocation.[61] The Legislature has given the jury greater freedom to determine reasonableness without being confined by arbitrary legal rules.

The final important change in the commission's homicide proposals was the replacement of negligent homicide with a death by automobile provision.[62] The restriction of criminal sanctions for negligence to deaths involving automobiles is a worthwhile contribution; however, in doing so, the Legislature unfortunately has reenacted the jargon of the original death by auto section.[63] In the past, the New Jersey courts have struggled to make "carelessly and heedlessly, in a willful or wanton disregard of the rights or safety of others" mean something that is not contradictory on its face.[64] Even assuming that these decisions make the standard intelligible, the relation of these words to the Code's definition of culpability and reckless manslaughter is unclear.[65]

---

56.  "[I]f any person causes the death of a person other than one of the participants . . ." N.J. STAT. ANN. § 2C:11-3(a)(3).

57.  *Id.* § 2C:11-3(a)-(d). There are in fact four requirements for the defense. It is an affirmative defense if the defendant:
     (a)  Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
     (b)  Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
     (c)  Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
     (d)  Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

58.  N.J. STAT. ANN. § 2C:11-4(a)(1).

59.  N.J. STAT. ANN. § 2C:11-4(a)(2).

60.  The commission proposed to add: "The reasonableness of such explanation or excuse shall be determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be." I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:11-4(a)(2). See the discussion in II FINAL REPORT: COMMENTARY, *supra* note 10, at 159. Impotency would be a part of the actor's situation. *But see* Bedder v. Director of Public Prosecutions, 2 ALL E.R. 801 (1954) (objective reasonable man standard applied).

61.  The most obvious application of the requirement of adequate provocation was to hold mere words insufficient provocation as a matter of law. *See* State v. King, 37 N.J. 285, 181 A.2d 158 (1962).

62.  N.J. STAT. ANN. § 2C:11-5(a).

63.  The original death by auto statute was codified at N.J. STAT. ANN. § 2A:113-9.

64.  *See, e.g.,* Justice Brennan's opinion in *In re* Lewis, 11 N.J. 217, 94 A.2d 328 (1953).

65.  It is not clear whether death by auto is the equivalent of negligence defined by the statute in N.J. STAT. ANN. § 2C:2-2(b)(4). It would have been better to have defined the crime in the terms defined by the statute. Given Justice Brennan's opinion in *In re Lewis,* the liability would not be substantially broadened by use of the negligence definition, and consistency in meaning would have been achieved.

Though it would seem to be an unjust result, it is not clear whether a reckless or knowing homicide by auto is limited to the death by auto section, or whether it could constitute a greater offense. In addition, the statute adds an anglicized *non vult* statement which might be better left to the rules of procedure.[66]

## B. *Sex Offenses*

The law pertaining to sex offenses was completely reformulated by the commission, and then revamped once more by the Legislature. Nevertheless, certain improvements survived the revisions. Consensual sex acts between adults in private were excluded from criminal conduct.[67] The Code imposes criminal liability in instances when force, taking advantage, and age factors are involved. Several differences between the commission report and the legislation are worthy of comment, however. Unlike the commission report, the statute applies the criminal law to conduct between spouses.[68] The exclusion of spousal conduct today cannot be based upon any waiver or implied consent doctrine. To the extent that such an exception might have been based upon some concept of ownership, it also would be unacceptable today. Questions as to the utility of such a provision relate to the difficulties of proof within the intimate marital relationship.[69] Force which left significant, visible bodily damage obviously would suffice to convict for assault or aggravated assault, but in the absence of such evidence great confidence in the factual resolution seems unwarranted. Moreover, the danger exists that threats of prosecution might give one spouse an undue weapon in marital disputes. Because rape is both reprehensible and dangerous, it may be a good time to find out whether these fears are merely idle speculation. It should also be noted that prosecutors will use an informed discretion to determine whether prosecution is justified on the facts of a particular case. Nonetheless, a continuing evaluation of the impact of this change should be undertaken.

Another difficult area in sexual assault cases concerns the admission of evidence of the victim's past sexual activities. This problem centers about the claimed relevance of such evidence as opposed to its obvious prejudicial impact upon the jury and its denigration of the victim. Like Rule 4 of the Rules of Evidence,[70] the statute requires a balancing of need against the potential for harm.[71] The statute is more specific, however, in that it requires the issue to be raised before trial, presumably to assure that the jury will be kept unaware of the problem or to preclude exploration of collateral issues during the trial.[72] The statute specifically delineates the factors to which past sexual activity can be relevant[73] and the considerations to be weighed on the other side.[74] Finally, by requiring clear and convincing proof to support admission of the

---

66. See N.J. CT. R. 3:9-2 permitting the judge to limit a plea of guilty to any offense by not permitting it to be used as evidence in a civil proceeding. The statute also deals with compelled joinder. N.J. STAT. ANN. § 2C:1-8(b). *Cf.* N.J. CT. R. 3:15-1(b). The statutory provisions and the rules are not inconsistent, but the courts, through annual meetings and constant committee study are more likely to be able to keep the rules ahead of developing problems. As to the fact that the State Constitution gives the supreme court power over rules of procedure, *see* R. KNOWLTON & D. COBURN, NEW JERSEY CRIMINAL PROCEDURES § 1:8, at 8 (1976) [hereinafter cited as KNOWLTON & COBURN].

67. This was done by drafting statutory provisions which did not include such conduct. This deletion includes consensual adultery. This is one of the reasons it was felt that a relatively broad pre-emption statute which prohibits local governments from enacting ordinances which conflict with or are pre-empted by "any policy of this State expressed by this code . . ." was necessary. N.J. STAT. ANN. § 2C:1-5(d) (Supp. 1979). *See* II FINAL REPORT: COMMENTARY, *supra* note 10, at 13 (1971).

68. The Commission proposal expressly precluded liability between husband and wife for rape offenses by saying "female not his wife . . ." I FINAL REPORT: PENAL CODE, *supra* note 15, §§ 2C:14-1(a),(b). With respect to sodomy, deviate sexual intercourse is defined as conduct "between human beings who are not husband and wife." *Id.* § 2C:14-2(a). The statute omits any such limiting words. N.J. STAT. ANN. §§ 2C:14-1 to 14-7.

69. The difficulty of proof has also led to restrictions upon the offense of interspousal theft. *See* N.J. STAT. ANN. § 2C:20-2(d).

70. Rules of Evidence, N.J. STAT. ANN. § 2A:84A, Rule 4 (1976).

71. N.J. STAT. ANN. § 2C:14-7.

72. *Compare* N.J. STAT. ANN. § 2C:14-7(a) *with* N.J. CT. R. 3:5-7 and reasons for the motion to suppress contained therein. *See* KNOWLTON & COBURN, *supra* note 66, at 73.

73. Past sexual conduct "shall not be considered relevant unless it is material to negating the element of force or coercion or to proving that the source of semen, pregnancy or disease is a person other than the defendant." N.J. STAT. ANN. § 2C:14-7(c).

74. At an in camera hearing the court must find "that the probative value of the evidence . . . is not outweighed by its collateral nature or the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim . . ." N.J. STAT. ANN. § 2C:14-7(a).

evidence if the sexual activity was more than one year before the alleged offense, the statute effectively precludes consideration of stale evidence.[75] As a practical matter, given the limits of relevancy established by the statute, it is difficult to imagine how situations in which the conduct was more than a year old could be considered.

The Legislature also changed the commission report's provision relating to age factors. Contrary to the trend, the first version of the statute that went into effect expressly provided that even a reasonable belief that the victim was over the critical age of 13 was no defense.[76] But this statute was not as harsh as it appeared to be for two reasons: if the child was under 13, her youth would be obvious;[77] and, in addition, the statute applied only when the actor was at least four years older.[78] If the critical age was higher than 13, a special relationship to the woman had to be present before criminal liability would be imposed. It was assumed that the special relationship would have given notice of the woman's age and that in most cases it would involve the potential for "taking advantage" which might justify the sanction even without the express age factor.[79]

### C.  *Burglary*

In *Davis v. Hellwig*[80] the New Jersey Supreme Court noted that the crime of burglary could be committed by a person entering with intent to shoplift from a store that was open and doing business. Because there is no reason to believe that such a person should be subjected to the severe sanctions of the burglary statute in addition to those of the theft statute, the anomaly of *Davis* has been obviated by the new Code.[81] Incidentally, double punishment is still possible, since the new Code omitted a provision in the commission report that prevented multiple convictions.[82]

## V.  SENTENCING PROVISIONS

### A.  *Introduction*

The problem of sentencing mainly involves the allocation of power among three branches of government. Even though the various discretionary schemes created since the demise of fixed and mandatory sentences have proven difficult to control, certain abstract guidelines are generally accepted. One of these is the need for legislative determination of substantive crimes and maximum penalties. The creation of sentencing alternatives, such as fines, restitution, probation, or imprisonment, and the creation of the various correctional institutions are also a Legislative function. Finally, the Legislature must allocate decision making responsibility between the judicial and executive branches. General dissatisfaction has been expressed with respect to both judicial and executive decisions. The courts have tried to rectify sentencing disparities by using procedures that make rational decisions more likely,[83] but these reforms have

---

75.  N.J. STAT. ANN. § 2C:14-7(b).

76.  N.J. STAT. ANN. § 2C:14-5(c). Note that the commission proposed that a reasonable mistake concerning a child below the age of 12 was no defense but that such a mistake was a defense for other ages. I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:14-6(a).

77.  See note 76 *supra*.

78.  N.J. STAT. ANN. §§ 2C:14-2(a)(1), 14-2(b).

79.  N.J. STAT. ANN. §§ 2C:14-2(a)(2), 14-2(b)(4). The Legislature's refusal to permit reasonable mistake of fact as to the woman's age as a defense to statutory rape is flatly contrary to the trend in other jurisdictions. Although the provision was not unduly harsh when the critical age was set at 13, the Legislature subsequently raised the age of consent to 16. Insofar as 16 is generally the critical age, a reasonable mistake of fact should be a defense to statutory rape.

80.  21 N.J. 412, 122 A.2d 497 (1956).

81.  This appears from the fact that, while "breaking" is not required, the entry is not criminal if the "premises are at the time open to the public . . ." N.J. STAT. ANN. § 2C:18-2(a)(1).

82.  The commission suggested a provision which read: "A person may not be convicted both for burglary and for the offense which it was his purpose to commit after the burglarious entry or for an attempt to commit that offense." I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:18-2(c).

83.  In New Jersey, excessive sentences may be corrected. See II FINAL REPORT: COMMENTARY, *supra* note 10, at 339. A presentence investigation and report are required to develop facts for consideration in sentencing. N.J. CT. R. 3:21-2 (Pressler ed. 1978) Additionally, the facts used in sentencing must be disclosed to the defendant. The sentencing court must state its reasons for imposing this sentence. N.J. CT. R. 3:21-4(e). Finally, as a further protection the defendant is entitled to counsel at the sentencing hearing. State v. Jenkins, 32 N.J. 109, 112 160 A.2d 25, 27 (1960). *Cf.* Mempa v. Rhay, 389 U.S. 128 (1967) (felony-defendant must be afforded counsel at deferred sentencing stage).

Case 2:21-cv-03400-JMV-JBC   Document 2-5   Filed 03/09/21   Page 195 of 197 PageID: 303

proven inadequate, given the breadth and predictive nature of the decision making process and the institutional pressures bearing upon it.

The sentencing provisions of the Model Penal Code were based upon the premise that sentencing decisions should be made by the body acting closest to the point in time at which the decision must be made.[84] In other words, while sentencing decisions are always predictive in nature, they are better informed when they are based upon all of the facts that have accumulated up until the very moment the decisions have to be made. Though logically desirable, a system based upon that idea clearly would still suffer the defects arising from the fact that sentencing decisions are necessarily predictive in nature. Institutional pressures and differing views of the applicability of deterrence, incapacitation, and reformation to the facts of particular cases also will inevitably hinder the development of a rational and coherent sentencing system.

## B.  The Judicial Discretion

Under the prior New Jersey statutes sentencing courts had broad discretion[85] to impose penalties ranging from probation or fines to long prison sentences. This discretion was exercised without formal guidelines, although the appellate courts' review of sentences, aided by judicial seminars, did establish some relevant factors as well as some uniformity of results. If imprisonment was imposed, for example, the judge was required to establish minimum and maximum terms within the range permitted by the statute.[86]

The commission report attempted to limit judicial discretion in a variety of ways including the establishment of presumptions regarding imprisonment, fines, and restitution,[87] as well as the criteria for overcoming them.[88] The Model Penal Code does not require a mimimum and maximum sentence, but it does require the judge to mete out sentences within a statutory range.[89] Under certain circumstances the commission report would have allowed the judge to enter judgement for a lesser included offense.[90] Finally, the result of the judge's discretion in establishing the term was subject to immediate alteration by the parole board, unless the sentence was one of life imprisonment.[91] In other words, the highly speculative nature of the decision was accounted for by permitting another body to make a release decision based upon information available to it at a later date.

The statute codifies some of the methods of the commission report but with several significant changes and additions. It carries the presumptions one step further by presuming specific terms of incarceration for each category of crime.[92] Although this provision significantly limits judicial discretion, the criteria for change are amorphous enough to allow judges to change the presumptive terms. Another major change in the sentencing provisions recommended by the commission involved the continuation of a form of the old sex offender statute. Persons convicted of listed sex crimes may be given a program of specialized treatment recommended by the Adult Diagnostic Center if the Center found that the defendant's conduct ''was characterized by a pattern of repetitive, compulsive behavior.''[93] The new system differs from the old one

---

84. *See, e.g.,* N. MORRIS, THE FUTURE OF IMPRISONMENT 28-50 (1974); Kastenmeir & Eglit, *Parole Release Decision-making: Rehabilitation, Expertise, and the Demise of Mythology,* 22 AM. U. L. REV. 477 (1973); Cohen, *Abolish Parole: Why Not?* 46 N.Y.S.B.J. 517 (1974).

85. *See,* KNOWLTON & COBURN, *supra* note 66, at 265.

86. N.J. STAT. ANN. § 2A:164-17 (1971).

87. I FINAL REPORT: PENAL CODE, *supra* note 15, §§ 2C:44-1 to -2. Additionally, the commission recognized a presumption in favor of imprisonment where a statute outside of the Code provided for a mandatory sentence. Certain statutes within the Code also carried a presumption of imprisonment. *See id.* II FINAL REPORT: COMMENTARY, *supra* note 10, at 325-27 (1971).

88. I FINAL REPORT: PENAL CODE, *supra* note 15, §§ 2C:44-1 to -2; II FINAL REPORT: COMMENTARY, *supra* note 10, at 324-28.

89. I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:43-6.

90. *Id.* § 2C:43-11.

91. See the proposed amendment to N.J. STAT. ANN. § 30:4-123.10. FINAL REPORT: PENAL CODE, *supra* note 15, at 168. A person sentenced to life imprisonment would not be eligible for release on parole until fifteen years after confinement.

92. N.J. STAT. ANN. § 2C:44-1(f).

in that the judge is required to sentence the offender under the regular provisions as well.[94] Further, a special classification board must recommend an offender's release to the state parole board before it may grant parole.[95] Good behavior time and work time are not available under a special sentence as they are under a traditional sentence.[96] For several reasons, the commission did not recommend the retention of the sex offender statute.[97] The idea that sex offenders progress to more vicious or dangerous offenses is simply not true; nor is there any reason to believe that sex criminals have a greater need for treatment than other offenders. Finally, society's failure to provide adequate treatment facilities is grossly unfair to persons subject to the special treatment provisions.

### C. *Parole*

Both the commission report and the statute provide for a separate parole term for each sentence to assure that all prisoners will have an adjustment period between imprisonment and complete freedom.[98] Under the prior system a person who was not paroled until the maximum sentence was served was unconditionally released. Under the new Code, however, every prisoner will have to serve a parole term of some sort. This obviously assumes that parole serves a purpose in helping former inmates to adjust to society. Of course, the amount of assistance given in this regard depends upon the number and the effectiveness of parole officers, but society has once again failed to devote sufficient resources to assure success. Nevertheless, the alternative of unconditional release does not provide sufficient hope for adjustment in enough cases to make it preferable to the new approach.

Both the Model Penal Code and the commission report recommended the use of broad administrative discretion within the statutory and judicial limits with respect to parole decisions. Parole decisions are made at the time that they are necessary and the the parole board has more evidence concerning a defendant than either the judges or legislators. While unhappiness with parole board decisions has led to criticism of the parole system, it seems that expert and effective decision making can be obtained only by allowing for the discretion to make the necessary decisions.

### D. *Sentencing Alternatives*

Under the new Code, restitution is made a sentencing alternative as well as a possible condition for probation.[99] This change in the status of restitution should bring it into greater use, especially with respect to acquisitive crimes, for which it seems a particularly appropriate remedy.[100]

Diversion is another alternative way of proceeding,[101] although in a strict sense diversion is not a punishment alternative since it arises before the trial which establishes guilt. Rather, it is an alternate mode of proceeding in lieu of the criminal process this is a worthwhile concept but it is hardly new except insofar as it has now

---

93. N.J. STAT. ANN. § 2C:47-3.

94. N.J. STAT. ANN. § 2C:47-3(b).

95. N.J. STAT. ANN. § 2C:47-5.

96. N.J. STAT. ANN. § 2C:47-6. Monetary compensation is provided, however, instead of remission of sentence for work performed.

97. An extended term provision incorporated some of the terminology but applied to more than just sex offenders. *See* I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:44-3. See comments by the commission in volume II at 329. Transfer within the institutions is, of course, administratively possible.

98. N.J. STAT. ANN. § 2C:43-9(b). For the commission's parole recommendations, see II FINAL REPORT: COMMENTARY, *supra* note 10, at 319.

99. N.J. STAT. ANN. § 2C:43-3.

100. N.J. STAT. ANN. §2C:43-3(f) expressly limits restitution to the amount of the victim's loss. Therefore, to obtain any punitive effect, a fine or imprisonment would have to be imposed. The same section provides that restitution "shall be in addition to any fine which may be imposed . . . ." *Id.*

101. N.J. STAT. ANN. § 2C:43-14 authorizes the Supreme Court to formulate rules of pretrial intervention so that those individuals best suited to rehabilitation and supervision may receive these benefits without standing trial. These rules would be subject to legislative cancellation or change. N.J. STAT. ANN. § 2C:43-18. *Compare* this authorization of pretrial intervention *with* N.J. CT. R. 3:28.

been made statutory. The New Jersey Supreme Court has had rules dealing with the system, but legislative formulation may add lustre and increased acceptability to the device, leading to its more frequent use.

Finally, it should be noted that the habitual offender statute is no longer in force. The court instead has the power to sentence an offender to an extended term upon the finding of certain facts.[102] These fact requirements are broader than the existence of prior convictions required by the traditional habitual offender statute.

## VI. DECRIMINALIZATION

The basic premise that consensual sex acts between adults in private should not be criminal is widely accepted today. Thus, as previously mentioned, neither the commission's report nor the statute provides for the punishment of such conduct. This serves to repeal the crimes of fornication and sodomy as well as adultery. The legislature went further than the commission report in some respects, however. The political body presumably was better able to determine what would be acceptable than the commission, and several provisions that the Legislature eliminated from the criminal code indeed should have been taken out. Public drunkenness is a case in point.[103] Both the commission and the Legislature saw no reason to make this an offense. Nonetheless, some alternative needs to be developed to deal with the problem. Because the Legislature did not follow the commission's lead in making public drunkenness an offense, it is reasonable to suppose that the Legislature will provide another means of assuring the protection of the intoxicated person and the public. Finally, loitering was an offense that was wisely decriminalized under the new Code. Clearly section 2A:170-1 was difficult to accept even after Chief Justice Weintraub's attempt to make it respectable.[104] The Model Penal Code draftsmen and the commissioners tried with little success to develop a defensible statute on loitering[105] that would be definite enough to give notice, provide a standard of guilt, and prevent official harassment. To its credit, the Legislature abandoned the effort. It also deleted many additional sections in a valiant effort to bring criminal law back into a meaningful framework. This was probably its most significant accomplishment.

## VII. CONCLUSION

A criminal code is the product of the political process. During the deliberations of the commission there were heated debates in which each commissioner was on the losing side may times. Thus the fact that the final proposal was unanimously adopted did not mean that any commissioner believed that each and every provision was the best one possible. Each commissioner had to determine whether the disagreements so outweighed the advances made as to warrant a dissent in particular or general terms. The length of the legislative consideration also demonstrates genuine concern over problems that undoubtedly merit argument. The end product is necessarily an accommodation of many different viewpoints. The code as enacted is, nevertheless, in many ways a major improvement over existing law. As the legal community gains experience under it, a more significant evaluation will be forthcoming.

---

102. N.J. STAT. ANN. §§ 2C:44-3(a), (b). The two most important facts to be considered in sentencing are whether the defendant is a persistent offender or a professional criminal.

103. The commission proposal, based upon the ALI MODEL PENAL CODE § 250.6 (1975), is found in I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:33-5. For the commission's proposal to make public drunkenness a criminal offense, *see* I FINAL REPORT: PENAL CODE, *supra* note 15, § 2C:33-5. The proposal was made because there was no adequate noncriminal method of dealing with the problem. II FINAL REPORT: COMMENTARY, *supra* note 10, at 296 (1971).

104. State v. Zito, 54 N.J. 206, 254 A.2d 769 (1969). For a discussion on the constitutional problems underlying loitering statues, see People v. Berck, 32 N.Y. 2d 567, 300 N.E.2d 411, 347 N.Y.S.2d 33, *cert. denied*, 414 U.S. 1093 (1973).

105. It was gratifying to find that loitering to solicit sexual activity and jostling, which were proposed as criminal offenses by the commission, see I FINAL REPORT: PENAL CODE, *supra* note 15, §§ 2C:33-6, 34-3, were not enacted as such by the legislature.